UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>     Plaintiff,<br><br>v.<br><br>DAWN DORLAND PERRY,<br><br>COHEN BUSINESS LAW GROUP, PC<br><br>and<br><br>JEFFREY A. COHEN, ESQUIRE<br><br>     Defendants. | Civil Action |

**COMPLAINT**
**AND DEMAND FOR TRIAL BY JURY**

  This action for declaratory judgment and damages is brought in part under the Copyright Act of the United States as amended, 17 U.S.C. §§ 101 et seq.  Defendant, Dawn Dorland Perry has accused Plaintiff of copyright infringement.  Plaintiff is seeking a declaration that her accused short story does not infringe Dorland Perry's copyright to a letter that Dorland Perry posted on Facebook, and therefore, that Dorland Perry is not entitled to copyright damages and attorney's fees.

  Plaintiff is also seeking damages for the intentional interference with two of Plaintiff's advantageous contractual relationships perpetrated by all Defendants, as well as for certain unfair and deceptive acts and practices committed in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, and for defamation of the Plaintiff by one or more of the

Defendants. Jurisdiction is conferred upon this Court under Count XI pursuant to 28 U.S.C. §

1338(a). Supplemental jurisdiction is conferred on this Court under the remaining counts

pursuant to 28 U.S.C. § 1367(a). Proper venue exists against the Defendants pursuant to 28

U.S.C. §1400(a), and the Massachusetts Long Arm Statute, M.G.L. c. 223A § 3, for causing

tortious injury in this Commonwealth.

### Parties

1.      Plaintiff, SONYA LARSON (hereinafter, "Larson"), is an individual who resides

at 89 Concord Avenue, Somerville, Middlesex County, Commonwealth of Massachusetts.

Larson is a mixed-race Chinese-American woman.

2.      Larson is a professional writer and a Director at GrubStreet, Inc., a Boston area

not-for-profit corporation dedicated to educating and helping creative writers.

3.      Defendant, DAWN DORLAND PERRY, also known as Dawn Chryselle

Dorland Perry (hereinafter, "Dorland"), is an individual who once lived in or around Boston,

Massachusetts, and now resides at 3111 W 69th Street, Los Angeles, California 90043.

4.      Upon information and belief, Dorland is an aspiring writer whose writing career

to date seems focused primarily on teaching occasional writing workshops.

5.      Defendant, COHEN BUSINESS LAW GROUP, P.C. (hereinafter, "Cohen Law"),

is a law firm incorporated in the State of California, with a usual place of business at 10990

Wilshire Boulevard, Los Angeles, California 90024.

6.      Cohen Law claims that it has nearly three decades of experience in business,

intellectual property and internet law.

7.      Defendant, JEFFREY A. COHEN, ESQUIRE (hereinafter, "Attorney Cohen"), is

an attorney in the Cohen Law firm, and he is the sole officer and director of Cohen Law where

he holds the positions of Chief Executive Officer, Chief Financial Officer and Secretary of the

firm.  Attorney Cohen maintains an office for the practice of law at Cohen Law located at 10990

Wilshire Boulevard, Los Angeles, California 90024.

<u>Dorland donated one of her kidneys to an unknown recipient and</u>
<u>publicized this gesture extensively on social media and elsewhere.</u>

8.      Dorland claims to have donated one of her kidneys to an unknown recipient in or

around 2015.

9.      In or around July 2015, Dorland wrote a half-page letter addressed to the recipient

of her kidney, in which Dorland introduces herself, outlines her reasons for donating the kidney,

expresses an interest in learning more about her recipient, and possibly meeting that person one

day.  The letter is hereinafter referred to as the "Factual Letter."  A copy of the Factual Letter is

attached hereto as "Exhibit A" and is incorporated herein by reference.

10.     Sometime around July 2015, Dorland posted the Factual Letter on a private group

forum on Facebook, which at the time, included approximately 250 to 300 people.  Larson was

added to this Facebook group forum without her permission or authority.  Larson does not know

why she was added to this group.

11.     The primary purpose of this Facebook group seems to have been the creation of a

platform for Dorland to share her personal experiences with donating a kidney.  Dorland's

Factual Letter was posted on Facebook without a copyright notation.

12.     The Factual Letter is dated July 2, 2015, and it was registered with the United

States Copyright Office about three years after it was posted on Facebook, under the title

"Dorland kidney chain final recipient letter July 2, 2015." The Factual Letter was given copyright registration number TXu 2-101-420, effective June 10, 2018. A copy of the Copyright Office registration information along with a copy of the deposit material consisting of the Factual Letter is attached hereto as "Exhibit B" and is incorporated herein by reference.

13.     Since the time that Dorland donated her kidney, she has been very public and outspoken about her kidney donation experience and organ donations in general. She has used social media extensively to publicly raise awareness about kidney donations.

<u>Larson is the author of a fictional short story<br>that is at the heart of this Action.</u>

14     Larson is the author of a fictional short story entitled, *The Kindest*. *The Kindest* is a story about a working-class Chinese-American woman who receives a kidney donation from a wealthy white woman. The story explores the complexities of indebtedness, addiction, love, shame, and race, and its central aim is to depict a person of color resisting a white savior narrative. A copy of *The Kindest* (hereinafter referred to either as "*The Kindest*," the "Short Story" or the "Work"), is attached hereto as "Exhibit C" and is incorporated herein by reference.

15.     In *The Kindest*, the kidney recipient, the main character in Larson's Short Story, unexpectedly receives a letter from her previously anonymous kidney donor. The Short Story revolves around the eventual meeting between the kidney donor and the recipient. The letter, hereinafter referred to as the "Fictional Letter," appears on pages 4 and 5 of the Short Story. A separate copy of Larson's Fictional Letter as it appears in *The Kindest* is attached hereto as "Exhibit D" and is incorporated herein by reference.

### Larson and Dorland are nominal acquaintances of each other.

16.     Larson and Dorland have had a nominal relationship with each another in the past. The relationship consisted mostly of a few dozen emails, scant social media exchanges, and a few in-person pleasantries at various social gatherings when Dorland was living in the Boston area.

17.     Larson saw the Factual Letter that Dorland posted on Dorland's Facebook group page and she found it interesting. Larson did not download or print the Factual Letter but instead recorded a few thoughts and ideas from the letter in her notes for future reference.

### Larson wrote a story about a kidney donor meeting a kidney recipient.

18.     In or around 2015, Larson began to fabricate a fictional short story about an alcoholic, working class Chinese-American woman living in Boston with her husband, who receives a kidney donation from a wealthy white woman. The story is divided into four parts, which explore four different stages in the main character's journey.

19.     Larson's Short Story includes a brief letter sent by the donor character to the kidney recipient character. The Fictional Letter appears in the second part of the story. The Fictional Letter is a small part of the narrative and it is used primarily to introduce the character of the kidney donor, and to set the stage for the eventual meeting of the recipient character and the donor character. (See Exhibit C, at pages 4-5 and Exhibit D.)

20.     When Larson was writing her story, she researched and viewed dozens of letters from other organ donors that were widely available on the internet. She also viewed many websites devoted to advising organ donors and recipients on how to correspond with each another, including bullet points of the kinds of information people share and in what order. Some of the online letters include points matching those raised by Dorland in her Factual Letter.

## Dorland heard about Larson's Short Story in 2016.

21.    On June 22, 2016, Larson read a preliminary draft of *The Kindest* during a public

reading at a Boston bookstore.  She read from the fourth part of the story, where the donor and

recipient finally meet. The Fictional Letter that is included in the Short Story was not part of the

reading.  A mutual acquaintance of both Larson and Dorland attended the reading and posted the

following comment about Larson's Short Story on Dorland's Facebook page:

> Sonya [Larson] read a cool story about giving out a kidney, you
> came to mind, and I wondered if you were the source of the inspiration.

Dorland apparently saw the post.

22.    Once Dorland learned that Larson was writing a story about a kidney donation,

Dorland began to hound Larson with emails and text messages insinuating that the Short Story in

its entirety was based on Dorland's life experiences.  Dorland asked to read the Short Story.

## Dorland was upset with Larson's Short Story.

23.    Dorland claimed that Larson had no right to fabricate a fictional story about a

kidney donation without consulting Dorland, on the basis that they were "friends."

24.    Dorland insisted on an apology and threatened to write about Larson in a memoir

or essay.  Even though Larson's Short Story was fiction, Dorland seemed very threatened

by Larson's Short Story.

25.    Larson repeatedly informed Dorland that the Work was not about Dorland, nor

was it about Dorland's personal experience as a kidney donor.

26.     Larson was ultimately scouted by a literary studio for the possible production of the Work as an audio book.  In December 2015, the Work was accepted by www.Audible.com ("Audible") for publication as an audio story.

27.     After Audible accepted the Short Story, Larson continued to refine the Work in order to smooth out the language, rhythm and tone of the Story, and she sent her revisions to Audible.  In light of Dorland's behavior, Larson also changed parts of the Fictional Letter to avoid any resemblance between Larson's Fictional Letter and Dorland's Factual Letter.

28.     Larson's Short Story was recorded by Audible and posted online on August 3, 2016.  Audible inadvertently posted an earlier version of the Short Story in downloadable and print-on-demand CD format and was asked to remove the earlier version of the Work from its site until the revised version was recorded and posted.  Larson was paid $125 for the audio recording of the Work.

29.     About a year after Audible published the Short Story, American Short Fiction ("ASF") published an earlier version of *The Kindest* in its literary magazine in August 2017, and featured the Work online in May 2018.  Larson was paid $300 by ASF.

<u>Larson submitted her Short Story to a competition<br>run by the Boston Book Festival.</u>

30.     In 2018, Larson submitted her Short Story to the Boston Book Festival, Inc. ("BBF"), a not-for-profit organization that promotes reading and ideas for writers and bibliophiles.

31.     The BBF presents year-round events culminating in an annual festival that promotes a culture of reading and ideas for writers and readers.  As part of its annual festival, which is the organization's premier annual event, the BBF features a short story that it

distributes extensively in the Boston area through an event called, "One City/One Story." Over 30,000 copies of the story are sent to BBF members, participants in the Festival, local libraries and participating businesses. The Festival features the story for educational and discussion purposes in the hope of incorporating divergent audiences in new conversations about an important topic.

32.     In May 2018, *The Kindest* was chosen by the BBF to be the central literary work that would be featured from August through October 2018, as its One City/One Story selection.

Dorland was incensed with the selection of
Larson's Short Story by the BBF.

33.     In June 2018, Dorland apparently heard that the BBF selected Larson's Work and she started a multifaceted smear campaign against Larson by accusing Larson of "plagiarizing" her Factual Letter in creating the Fictional Letter in *The Kindest*.

34.     Dorland contacted ASF, the BBF, Larson's employer, GrubStreet, members of Larson's writing group, and the Bread Loaf Writers' Conference, which is a prestigious and influential writer's organization ("Bread Loaf"). Dorland complained that Larson's Work was a "paraphrase" of Dorland's Factual Letter, and that Larson received a prestigious fellowship to Bread Loaf using Dorland's "plagiarized" Factual Letter in Larson's Short Story.

35.     For months, Dorland relentlessly called and emailed ASF staff and board members, as well as BBF staff multiple times per day with her claim of alleged plagiarism, demanding at different times, a citation for the authorship of Dorland's Factual Letter, that Larson's Short Story be pulled from ASF and the BBF in its entirety, that ASF publish one of Dorland's essays instead of Larson's Work and/or that she be paid several thousand dollars. Neither ASF nor the BBF acquiesced to Dorland's demands.

36.     In addition, Dorland apparently complained to GrubStreet, Larson's employer, repeating her accusation that Larson's Short Story plagiarized Dorland's Factual Letter.

37.     Dorland also asserted the utterly false claim to Bread Loaf that Larson's fellowship application contained plagiarism, starting with an email entitled "Plagiarism in Tuition Fellow's 2017 Application." Dorland's claim was baseless since Larson did not include *The Kindest* in her application to Bread Loaf.

38.     With total disregard for the truth, Dorland pressed repeatedly for Bread Loaf to sanction Larson "retroactively." Dorland continued her phone calls, voice messages, and emails to Bread Loaf's staff and even its retired staff for many months. In addition, Dorland told Bread Loaf in June 2018, that she contacted "other writing conferences of similar repute" about Larson's "plagiarism."

Larson tried to appease Dorland by making
further changes to the Fictional Letter.

39.     Based in part on Dorland's persistent and continuing demands, the BBF suggested that Larson change some of the language in the Fictional Letter that is part of *The Kindest* to avoid any possibility of claims by Dorland against the BBF.

40.     In an attempt to appease Dorland and stop her frequent contacts with the BBF and others, Larson agreed to modify the Fictional Letter in *The Kindest*, which was only a minor part of Larson's Short Story. Larson had already made a number of unrelated revisions to *The Kindest* for the BBF, including the story's location and certain objects, details, dialogue, gestures, word choices and the ending.

41.     None of Larson's efforts seemed to satisfy Dorland. Dorland continued her attacks on Larson by repeatedly contacting members of various writing communities in the

United States.  She also contacted the *Boston Globe* where she publicly disparaged Larson with her claim of plagiarism.  Dorland's actions were done in large part to pressure the BBF to drop *The Kindest* from its One City/One Story program.

42.     In June 2018, Larson hired Attorney James A. Gregorio to deal with the hornet's nest that Dorland was stirring up.  Dorland refused to permit a representative of ASF to share Dorland's communications and demands with Larson or Larson's attorney.  Accordingly, Attorney Gregorio requested that ASF forward his contact information to Dorland, and convey that he would be happy to talk with Dorland or her attorney about any concerns she might have regarding the Work.

### Dorland hired legal counsel to escalate her claim from plagiarism to copyright infringement.

43.     Dorland refused to contact Attorney Gregorio and instead had her lawyer, Attorney Cohen of Cohen Law, send a letter to the BBF on July 3, 2018, stating that Larson's Short Story contains Dorland's Factual Letter "in whole or in part."

44.     Even without reviewing the revisions that were made to Larson's Short Story to determine whether there was any infringement of the Factual Letter, Attorney Cohen claimed that any decision by the BBF to publish Larson's Short Story would infringe Dorland's rights.

45      Attorney Cohen demanded that the BBF cease and desist from further printing, copying, distributing or undertaking any other activities related to Larson's Short Story.  He stated that unless the BBF acquiesced in Dorland's demand for an acknowledgement of Dorland's Factual Letter in Larson's Short Story, Dorland's claim would be for copyright infringement for which Statutory Damages under 17 U.S.C. § 504(c) could amount to $150,000.

46. Attorney Gregorio responded to Attorney Cohen by letter dated July 17, 2018. Gregorio asked for a copy of Dorland's Factual Letter and evidence of the allegedly egregious "duplication in some instances, and striking similarity in others" between the Fictional Letter in *The Kindest* and Dorland's Factual Letter. By this time, both Gregorio and the BBF had supplied Attorney Cohen with a copy of the Short Story that the BBF was planning to publish. A copy of the letter from Attorney James A. Gregorio, dated July 17, 2018, is attached hereto as "Exhibit E" and is incorporated herein by reference.

47. When Attorney Cohen wrote to the BBF, he knew or should have known that Dorland had no legal basis for claiming statutory damages in any amount since Dorland's Factual Letter was registered on June 10, 2018, almost a year after the Short Story was initially published by both ASF and Audible, and long after Dorland knew that Larson was using a letter from a kidney donor to a recipient as a literary device in a story about kidney donors.

48. Dorland escalated her demands to the BBF, demanding thousands of dollars in compensation, full attribution to Dorland for Larson's Short Story, and a link to Dorland's favored kidney donation website. In August 2018, Dorland further intensified her threats against the BBF by doubling her monetary demand mere days before BBF was set to distribute Larson's Short Story.

49. Cohen Law and Attorney Cohen made demands against the BBF for Statutory Damages and legal fees under the Copyright Act in order to pressure the BBF into acquiescing to Dorland's unfounded claim of copyright infringement, and her unwarranted demand for an acknowledgment in Larson's Short Story and a link to a kidney donation website.

### The BBF rescinded its selection of Larson's Short Story.

50.     As a direct and proximate result of these and other actions by Dorland, acting alone and/or in concert with Attorney Cohen and Cohen Law, the BBF rescinded its selection of *The Kindest* as the One City/One Story selection.

51.     Upon information and belief, the BBF had already printed 30,000 copies of the Short Story at a cost of around $10,000, and spent thousands of dollars in attorneys' fees.  Irrespective of the merits of Dorland's claims, the BBF was concerned that a lawsuit by Dorland had the potential to financially cripple the BBF, risk sponsorship dollars, and jeopardize its future existence.

52.     The BBF's decision to pull Larson's Short Story had nothing to do with the purported validity of Dorland's claims of plagiarism or copyright infringement.  The decision was based on Dorland's persistence, which was aided and abetted by claims of copyright infringement made by Attorney Cohen and Cohen Law, and warnings of thousands of dollars in legal fees and substantial Statutory Damages under the Copyright Act, to which Cohen Law and Attorney Cohen knew or should have known that Dorland was not entitled.

53.     Even after the BBF rescinded its decision to use *The Kindest* as its One Story/One City selection, Larson is informed and believes that Dorland continued to call and email members of Larson's writing group through September 2018, accusing them of "complicity" and "artistic betrayal."  Upon information and belief, Dorland also repeatedly called and emailed current and former staff of Bread Loaf through September 2018, promoting the utterly false claim that Larson applied for and received a prestigious fellowship with plagiarized material.

<u>Cohen Law knew or should have known that</u>
<u>Dorland had no claim to Statutory Damages.</u>

54.     Dorland's Factual Letter was registered with the Copyright Office as unpublished

text effective June 10, 2018. This date is almost three years after Dorland's Factual Letter was

posted on Facebook in 2015. Cohen Law, which claims to have extensive experience in

handling and litigating intellectual property matters, knew or should have known that under 17

U.S.C. § 412, statutory damages and attorney's fees under the Copyright Act are available to

Dorland only if Dorland's Factual Letter was registered with the Copyright Office before the

claimed infringement by Larson. Thus, Dorland was never entitled to Statutory Damages or

attorney's fees under Sections 504 and 505 of the Copyright Act.

55.     Cohen Law and Attorney Cohen's only reason for making erroneous claims for

Statutory Damages and substantial legal fees against the BBF was to conspire with Dorland and

pressure the BBF and others into giving in to Dorland's unfounded claim of copyright

infringement and her unwarranted demands, including an acknowledgment in Larson's Short

Story.

56.     Dorland's actions and those of Cohen Law and Attorney Cohen in making

unsupportable claims, misrepresenting the facts, and deploying overly aggressive and coercive

correspondence with ASF, the BBF and Bread Loaf were calculated to cause damage to Larson,

which they did. These actions directly resulted in the BBF's decision to pull *The Kindest* from

the One City/One Story project. The decision of the BBF to pull *The Kindest* was made to

mollify BBF's sponsors and to avoid additional legal fees. It was not a concession of wrong-

doing by the BBF or Larson.

## Count I
### (Intentional Interference by Dorland with Larson's ASF Contract)

57.     Plaintiff realleges Paragraphs 1 through 56 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

58.     In May 2017, ASF offered to publish *The Kindest* and Larson accepted the offer and agreed to let ASF publish her Short Story in ASF's literary magazine, and to feature the Work on its website.  Larson was paid $300 by ASF.

59.     At all relevant times, Dorland and her agents, servants and/or attorneys knew that Larson's Work was published by ASF.

60.     Sometime after the Work was published, Dorland contacted ASF and accused Larson of "plagiarizing" the Factual Letter by using it in *The Kindest*.  Dorland complained that Larson's Work was a "paraphrase" of Dorland's Factual Letter, and that Larson "plagiarized" the Factual Letter in Larson's Short Story.

61.     Dorland relentlessly called and emailed various ASF employees and board members for weeks, sometimes multiple times per day, asserting her unfounded claim of plagiarism.

62.     Dorland's actions in making claims of plagiarism and sending aggressive and coercive correspondence to ASF without just cause were calculated to cause damage to Larson.

63.     ASF told Larson that it did not have the financial means nor sufficient staff to deal with Dorland's demands, and as a direct and proximate result of Dorland's demands and actions, ASF, in consultation with Larson, decided to pull *The Kindest* from the ASF website.

64.     Larson was damaged in that she lost the benefit of widespread online distribution of her Short Story and the exposure of her work to new audiences.  Additionally, Larson lost a

significant professional achievement, which would likely have advanced her career. All of this has been to Larson's great damage.

### Count II
#### (Intentional Interference by Dorland with Larson's BBF Contract)

65.     Plaintiff realleges Paragraphs 1 through 56 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

66.     In June 2018, after the BBF selected Larson's Short Story as its 2018 One City/One Story winner, the BBF and Larson entered into an agreement memorializing the selection of Larson's Work. Larson granted the BBF a license to publish the Short Story online in multiple languages, and to print and distribute 30,000 free copies of *The Kindest* throughout the Greater Boston Area.

67.     Dorland and her agents, servants and/or attorneys subsequently knew that Larson's Work was selected as the winner of the BBF short-story competition and that it was going to be featured in the One City/One Story event.

68.     Starting in June 2018, Dorland and her agents, servants and attorneys contacted the BBF and frequently made unsupportable claims of plagiarism and copyright infringement against Larson and the BBF, as well as claims for Statutory Damages and attorney fees that are clearly not available to Dorland under the Copyright Act. Dorland and her agents, servants and/or attorneys intentionally utilized aggressive and coercive language and made demands in correspondence with the BBF in order to cause damage to Larson and coerce the BBF either to attribute *The Kindest* to Dorland, or ultimately pull *The Kindest* from BBF's One City/One Story project.

69.     Dorland's communications with the BBF were made to pressure the BBF into acquiescing with Dorland's unfounded claim of plagiarism and copyright infringement and her unwarranted demands for attribution and damages.

70.     Dorland's actions in making unsupportable claims, intentionally misrepresenting the facts, and deploying aggressive and coercive correspondence with the BBF without just cause were calculated to cause damage to Larson.  These actions directly resulted in the BBF's decision to pull *The Kindest* from its One City/One Story project.

71.     As a direct and proximate result of this and other actions by Dorland, and/or her agents, servants or attorneys, the BBF rescinded its selection of *The Kindest* to Larson's great damage.  Larson was further damaged in that she was publicly humiliated when the BBF rescinded her Short Story as the 2018 One City/One Story selection, and she has had to explain this event to her friends, family, employer, and colleagues.  In addition, Larson has lost the publicity and exposure that would have resulted from widespread distribution of the Work in multiple languages before whole new audiences.  The loss of this significant professional achievement was substantial in that it would likely have resulted in numerous speaking engagements and print, television and radio interviews, as previous One City/One Story winners received, all to Larson's great damage.

**Count III**
(Interference by Cohen Law with Larson's BBF Contract)

72.     Plaintiff realleges Paragraphs 1 through 56 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

73.     In May 2018, the BBF announced its selection of Larson's Short Story as its 2018 One City/One Story winner.  In June 2018, the BBF and Larson entered into an agreement,

memorializing the selection of Larson's Work. In the agreement, Larson granted the BBF a license to publish the Short Story online in multiple languages, and to print and distribute 30,000 free copies of *The Kindest* throughout the Greater Boston Area.

74.   On July 3, 2018, with knowledge that Larson's Short Story was the winner of the 2018 BBF short-story competition, Cohen Law sent a letter to the BBF alleging that *The Kindest* infringed the copyright to Dorland's Factual Letter. Cohen Law demanded that the BBF cease and desist from printing, copying and distributing Larson's Short Story, or risk incurring damages of up to $150,000 in Statutory Damages under the Copyright Act.

75.   At the time that the July 3, 2018 letter was written, Cohen Law knew or should have known that under 17 U.S.C. § 412, Statutory Damages and attorney's fees were not available to Dorland under the Copyright Act, because Dorland's Factual Letter was registered with the Copyright Office after the alleged infringement was made by Larson.

76.   Cohen Law's primary reason for making erroneous claims for Statutory Damages and attorney's fees against the BBF was to conspire with Dorland to pressure the BBF and others into submitting to Dorland's unfounded claim of copyright infringement and damages, and her unwarranted demand for attribution in Larson's Short Story.

77.   Cohen Law's actions in making unsupportable claims, misrepresenting the facts, and deploying aggressive and coercive correspondence with the BBF were calculated to cause damage to Larson. These actions directly resulted in the decision by the BBF to pull *The Kindest* from the One City/One Story event.

78.   As a direct and proximate result of this and other actions by Cohen Law, the BBF rescinded its selection of *The Kindest* and Larson was greatly damaged. Further, Larson has had to endure the public humiliation resulting from the BBF's decision to rescind the Short Story as

its One City/One Story selection, has had to explain the events to her friends, family, employer, and colleagues. Additionally, Larson has lost the publicity and exposure that the widespread distribution of the Work to over 30,000 new readers would have created. In addition, Larson lost a significant professional achievement that likely would have resulted in receiving numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

### Count IV
(Interference by Attorney Cohen with Larson's BBF Contract)

79.     Plaintiff realleges Paragraphs 1 through 56 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

80.     Starting in or around June 2018, Attorney Cohen began to represent Dorland with respect to her alleged plagiarism and copyright infringement claims against Larson.

81.     In May 2018, the BBF announced its selection of Larson's Short Story as its 2018 One City/One Story winner. In June 2018, the BBF and Larson entered into an agreement, memorializing the selection of Larson's Work. In the agreement, Larson granted the BBF a license to publish the Short Story online, and to print and distribute 30,000 free copies of *The Kindest* throughout the Greater Boston Area.

82.     On July 3, 2018, with knowledge that Larson's Short Story was the winner of the 2018 BBF short-story competition, Attorney Cohen sent a letter to the BBF alleging that *The Kindest* infringed the copyright to Dorland's Factual Letter. Attorney Cohen demanded that the BBF cease and desist from printing, copying and distributing Larson's Short Story, or risk incurring up to $150,000 in Statutory Damages under the Copyright Act.

83.     At the time that the July 3, 2018 letter was written, Attorney Cohen knew or should have known that under 17 U.S.C. § 412, Statutory Damages and attorney's fees were not

available to Dorland under the Copyright Act, because Dorland's Factual Letter was registered with the Copyright Office after the alleged infringement was made by Larson.

84.   Attorney Cohen's primary reason for making erroneous claims for Statutory Damages 5and attorney's fees against the BBF was to pressure the BBF into submitting to Dorland's unfounded claim of copyright infringement, and her unwarranted demand for damages and attribution in Larson's Short Story.

85.   Attorney Cohen's actions in making unsupportable claims, misrepresenting the facts, and deploying aggressive and coercive correspondence with the BBF were calculated to cause damage to Larson.

86.   Larson contends that the wholly unsupported claims for Statutory Damages and attorney's fees proffered by Attorney Cohen for any perceived copyright infringement under the facts presented, directly resulted in the decision by the BBF to pull *The Kindest* from the One City/One Story event.

87.   As a direct and proximate result of this and other actions by Attorney Cohen, the BBF rescinded its selection of *The Kindest* and Larson was greatly damaged.  Further, Larson has had to endure the public humiliation resulting from the BBF's decision to rescind the Short Story as its One City/One Story selection, and has had to explain this event to her friends, family, employer, and colleagues.  Additionally, Larson has lost the publicity and exposure that the widespread distribution of the Work to over 30,000 new readers would have created.  Moreover, Larson lost a significant professional achievement that likely would have resulted in receiving numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

**Count V**
(Commission by Dorland of
Unfair and Deceptive Acts and Practices in violation of M.G.L. c. 93A.)

88.    Plaintiff realleges Paragraphs 1 through 78 of the complaint as if said allegations have been restated and realleged herein, in their entirety.

89.    By September 2018, Larson was aware of over a dozen individuals and organizations that were contacted by Dorland regarding Dorland's claims that *The Kindest* plagiarized or infringed Dorland's copyright to the Factual Letter.

90.    In or around June 2018 and at various times thereafter, Dorland communicated with ASF, erroneously claiming that Larson had plagiarized Dorland's Factual Letter by using a similar letter in *The Kindest.*

91.    At various times in 2018, Dorland communicated with Larson's employer, GrubStreet erroneously claiming that Larson plagiarized Dorland's Factual Letter by using a similar letter in *The Kindest.*

92.    On or around June 2018, Dorland contacted a reporter for the *Boston Globe* and misrepresented facts relating to Larson and her Short Story. The *Globe* subsequently published two articles based on statements made by Dorland accusing Larson of plagiarism.

93.    The *Boston Globe* published the first article, "Inspiration or Plagiarism? Writing Hackles Raised in Boston Dispute," on July 26, 2018 (hereinafter referred to as the "July 26th Article"). The July 26th Article is attached as "Exhibit F" and incorporated herein by reference.

94.    The *Boston Globe* published the second article, "Boston Book Festival Cancels One City One Story Event Amid Plagiarism Flap," on August 14, 2018 (hereinafter referred to as the "August 14th Article"). The August 14th Article is attached as "Exhibit G" and incorporated herein by reference.

95.     During the summer of 2018, Dorland emailed and called various board and staff members of ASF and the BBF multiple times a day to claim that *The Kindest* plagiarized or infringed on Dorland's copyright to the Factual Letter in full or in part.

96.     On July 3, 2018, Dorland, through agents, servants or attorneys, misrepresented facts to the BBF in writing regarding Dorland's claims of plagiarism and copyright infringement and demanded unwarranted damages and attorney's fees.

97.     The claims made by Dorland, her agents, servants or attorneys about plagiarism and copyright infringement and the demand for substantial damages and attorney's fees were made with knowledge that they were false, and lacked any verification or legal justification.

98.     As a result of these actions, ASF and Larson decided that ASF should remove the Work from its website, the BBF cancelled *The Kindest* as the winner of its One City/One Story event, and the July 26th Article and August 14th Articles were published by Boston's leading newspaper, portraying Larson as a plagiarist.  The articles are still available online.

99.     Pursuant to Massachusetts Consumer Protection Act, Massachusetts General Laws, Chapter 93A, a thirty-day demand letter was sent to Dorland, Attorney Cohen, and Cohen Law, a copy of which is attached hereto as "Exhibit H" and is incorporated herein by reference.  Defendants responded to said letter within thirty days, however their response was inadequate under the law.  Copies of Cohen Law's response and Larson's attorney's further letter to Attorney Cohen and Cohen Law are attached hereto as Exhibits "I" and "J" respectively, and are incorporated herein by reference.

100.    The totality of circumstances including Dorland's unrelenting, multifaceted campaign to damage, disparage and defame Sonya Larson's reputation and harm her career, Dorland's lawyers' letters containing wholly insupportable legal claims and demands, and

Dorland's dogged, ongoing communications with anyone remotely connected with Larson and her writing career, are evidence of outrageous conduct in trade or commerce in Massachusetts which constitutes a violation of Massachusetts General Laws, chapter 93A.

101.    As a result of the conduct of Larson, her agents, servants or attorneys, in making false statements and accusations of plagiarism and copyright infringement and demanding substantial damages, Larson's Short Story was removed by ASF from online publication, the BBF canceled the selection of *The Kindest* from the One City/One Story event, and has greatly injured Larson's reputation and her reputation as a writer within and among writer's groups, friends, colleagues and others.  In addition, Larson has had to endure the public humiliation resulting from the BBF's decision to rescind the honor, and has had to explain the events to her friends, family, employer, and colleagues. Further, Larson has lost the publicity and exposure that the widespread distribution of the Work before whole new audiences would have created and has lost numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition have received, all to her great damage.

### Count VI
(Commission by Cohen Law of
Unfair and Deceptive Acts and Practices in violation of M.G.L. c. 93A.)

102.    Plaintiff realleges Paragraphs 1 through 78 of the complaint as if said allegations have been restated and realleged herein, in their entirety.

103.    On July 3, 2018, Cohen Law sent a letter to the BBF on behalf of Dorland making claims of plagiarism and copyright infringement against the BBF, and demanding unwarranted Statutory Damages under the Copyright Act.

104.     The claims made by Cohen Law about plagiarism and copyright infringement and the demand for substantial damages were made with knowledge that they were false, and lacked any verification or legal justification.

105.     As a result of these actions, the BBF cancelled *The Kindest* as the winner of its One City/One Story event.

106.     Pursuant to Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A, a thirty-day demand letter was sent to Cohen Law (See Exhibit H).  Cohen Law responded to said letter within thirty days, however its response was inadequate under the law. (See Exhibit I).

107.     The totality of circumstances including Cohen Law's various letters to the BBF and Larson's attorney starting on July 3, 2018, and continuing thereafter, contain wholly insupportable legal claims and demands, and are evidence of outrageous conduct in trade or commerce within Massachusetts, which constitutes a violation of Massachusetts General Laws, chapter 93A.

108.     As a result of the conduct of Cohen Law, in making false statements and accusations of plagiarism and copyright infringement and threatening substantial damages from Larson and the BBF, the BBF canceled the selection of *The Kindest* from the One City/One Story event. The BBF's cancelation has greatly injured Larson's reputation and her reputation as a writer within and among writer's groups, friends, colleagues and others.  In addition, Larson has had to endure the public humiliation resulting from the BBF's decision to rescind the honor, has had to explain the events to her friends, family, employer, and colleagues.  Further, Larson has lost the publicity and exposure that the widespread distribution of the Work before whole new audiences would have created and has lost numerous speaking engagements and print,

television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

### Count VII
(Commission by Attorney Cohen of
Unfair and Deceptive Acts and Practices in violation of M.G.L. c. 93A.)

109.     Plaintiff realleges Paragraphs 1 through 78 of the complaint as if said allegations have been restated and realleged herein, in their entirety.

110.     On July 3, 2018, Attorney Cohen sent a letter to the BBF on behalf of Dorland making claims of plagiarism and copyright infringement against the BBF, and demanding unwarranted Statutory Damages under the Copyright Act.

111.     The claims made by Attorney Cohen about plagiarism and copyright infringement and the demand for substantial damages and attorney's fees were made with knowledge that they were false, and lacked any verification or legal justification.

112.     As a result of these actions, the BBF cancelled *The Kindest* as the winner of its One City/One Story event.

113.     Pursuant to Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A, a thirty-day demand letter was sent to Attorney Cohen (See Exhibit H).  Attorney Cohen responded to said letter within thirty days, however its response was inadequate under the law.  (See Exhibit J).

114.     The totality of circumstances including Attorney Cohen's various letters to the BBF and Larson's attorney starting on July 3, 2018, and continuing thereafter, contain wholly insupportable legal claims and demands, and are evidence of outrageous conduct in trade or

commerce in Massachusetts, which constitutes a violation of Massachusetts General Laws, chapter 93A.

115.   As a result of the conduct of Attorney Cohen, in making false statements and accusations of plagiarism and copyright infringement and demanding substantial damages, Larson's Short Story, the BBF canceled the selection of *The Kindest* from the One City/One Story event, and has greatly injured Larson's reputation and her reputation as a writer within and among writer's groups, friends, colleagues and others.  In addition, Larson has had to endure the public humiliation resulting from the BBF's decision to rescind the honor, has had to explain the events to her friends, family, employer, and colleagues. Further, Larson has lost the publicity and exposure that the widespread distribution of the Work before whole new audiences would have created and has lost numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

## Count VIII
### (Defamation Claim against Dorland)

116.   Plaintiff realleges Paragraphs 1 through 78 of the complaint as if said allegations have been restated and realleged in their entirety.

117.   In or around 2018, Dorland started a campaign against Larson, orally and in writing, accusing Larson of plagiarizing her Factual Letter by including it in whole or in part in *The Kindest*.  Dorland contacted ASF, the BBF, GrubStreet, Bread Loaf, the *Boston Globe*, Larson's writer's group, and in Dorland's own words, "other writing conferences of similar repute," spreading false and malicious claims of plagiarism against Larson.

118.    Dorland's statements were false and had no validity in fact or in law, and they were made in large part to discredit Larson, to force ASF to remove Larson's Short Story from its website, to pressure the BBF to cancel *The Kindest* as the winner of the BBF's One City/One Story competition, and to discredit and disparage Larson in front of her friends, acquaintances, colleagues, relatives, employers and other professionals in the writing community throughout the United States.

119.    The nature of the statements damaged Larson's reputation in the Boston writing community at the time they were made, because they portrayed Larson as a plagiarist and a copyright infringer, caused two organizations to discontinue involvement with Larson and distance themselves from her work, caused harm to Larson's reputation within the writing community in Boston and beyond, and damaged and discredited her career as a writer.

120.    Dorland was at fault for claiming that Larson's Short Story infringed on Dorland's Factual Letter because the Fictional Letter in Larson's Short Story is not substantially similar to Dorland's Factual Letter.

121.    Dorland's false statements and accusations of plagiarism and copyright infringement have resulted in ASF removing *The Kindest* from publication, and the BBF canceling the Work's inclusion in its One City/One Story event, and has otherwise greatly injured Larson's personal reputation and her reputation as a writer among writer's groups, friends, colleagues, and others. In addition, Larson has had to endure the public humiliation which has accompanied the BBF rescinding the honor of the selection of *The Kindest*, has had to explain this event to her friends, family, employer, and colleagues, and has lost the publicity and exposure that would have been created through the widespread distribution of the Work before whole new audiences. Further, as an award-winning author Larson would have garnered a

significant professional achievement, and likely would have received numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

## Count XI
### (Declaration of Rights - Declaratory Judgment)

122.     Larson repeats and realleges paragraphs 1 through 78 of this Complaint, as if each paragraph was restated herein.

123.     Larson is the author of *The Kindest* and she is the owner of all rights to the Short Story including the copyright thereto.

124.     *The Kindest* contains a brief Fictional Letter written by a kidney donor to her kidney recipient.

125.     Larson is seeking judgment from this court declaring her rights as follows:

    a.     Larson is the author of *The Kindest*;

    b.     Larson owns the copyright to *The Kindest*;

    c.     *The Kindest* is a fictional story that includes the Fictional Letter;

    d.     The Fictional Letter in *The Kindest* does not infringe on Dorland's Factual Letter.

    e.     Larson has not infringed on the copyright to Dorland's Factual Letter nor on any other rights Dorland may have under the U.S. Copyright Act;

    f.     Dorland is not entitled to actual or profit damages under the U.S. Copyright Act, 17 U.S.C. § 504(b); and

g.    Dorland is not entitled to statutory damages under the U.S. Copyright Act,

17 U.S.C. § 504(c), or attorney's fees under the U.S. Copyright Act 17

U.S.C. § 505;

WHEREFORE, Plaintiff, SONYA LARSON, demands judgment against

Defendants, DAWN DORLAND PERRY, COHEN BUSINESS LAW GROUP, P.C., and

JEFFREY A. COHEN, as follows:

a)    That under Count I, Defendant Dorland be required to pay Plaintiff damages for

her intentional interference with Larson's contractual business relationship with ASF in an

amount to be determined by the court.

b)    That under Count II, Defendant Dorland be required to pay Plaintiff damages for

her intentional interference with Larson's contractual business relationship with the BBF in an

amount to be determined by the court.

c)    That under Count III, Defendant Cohen Law be required to pay Plaintiff damages

for its intentional interference with Larson's contractual business relationship with the BBF in an

amount to be determined by the court.

d)    That under Count IV, Defendant Attorney Cohen be required to pay Plaintiff

damages for his intentional interference with Larson's contractual business relationship with the

BBF in an amount to be determined by the court

e)    That under Count V, Defendant Dorland be required to pay Plaintiff damages for

the commission of unfair and deceptive acts and practices in an amount to be determined by the

court, and that said damages be trebled but no less than doubled and that Larson be awarded her costs and attorney's fees.

f)      That under Count VI, Defendant Cohen Law be required to pay Plaintiff damages for the commission of unfair and deceptive acts and practices in an amount to be determined by the court, and that said damages be trebled but no less than doubled and that Larson be awarded her costs and attorney's fees.

g)      That under Count VII, Defendants Attorney Cohen be required to pay Plaintiff damages for the commission of unfair and deceptive acts and practices in an amount to be determined by the court, and that said damages be trebled but no less than doubled and that Larson be awarded her costs and attorney's fees.

h)      That under Count VIII, Defendant Dorland be required to pay Larson damages for defaming Larson in an amount to be determined by the court.

i)      That under Count IX, the court declare that the Plaintiff is the owner of all rights to *The Kindest*, that the Short Story does not infringe on Defendant Dorland's copyright to the Factual Letter, that Dorland is not entitled to damages, attorney's fees or costs, and that Larson be awarded damages, costs and attorney's fees.

j)      That Plaintiff have such other and further relief as is deemed to be just and proper by the court.

## PLAINTIFF CLAIMS TRIAL BY JURY

SONYA LARSON,
By her attorney,

/s *Andrew D. Epstein*
_____

January 29, 2019

Andrew D. Epstein, Esquire (BBO #155140)
Barker, Epstein & Loscocco
176 Federal Street
Boston, MA 02110
Tel: (617) 482-4900
Fax: (617) 426-5251
Photolaw@aol.com