# Exhibit H

Barker, Epstein & Loscocco
176 Federal Street
Boston, Massachusetts 02110
----------
(617) 482-4900
FAX: (617) 426-5251

Andrew D. Epstein
Photolaw@aol.com

September 28, 2018

**U.S. Express Mail**
**Return Receipt Requested**

**PERSONAL AND CONFIDENTIAL**

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
10990 Wilshire Blvd., Suite 1025
Los Angeles, CA 90024

> **Re:**   **Sonya Larson**
> **v.**    **Cohen Business Law Group and Jeffrey A. Cohen**
>           **Thirty (30) Day Demand Letter Under Mass. Gen. Laws. C. 93A**

Dear Mr. Cohen:

I represent Sonya Larson as successor counsel to James A. Gregorio of Greensboro, North Carolina. I will be representing Ms. Larson going forward regarding all claims for plagiarism and copyright infringement raised by your client, Dawn Dorland Perry (hereinafter, "Dorland"), and by you (Jeffrey A. Cohen), and Cohen Business Law Group relative to my client's short story, *The Kindest*.

Ms. Larson contends that you and Cohen Business Law Group ("Cohen Law") violated one or more of my client's rights by defaming her, interfering with an advantageous contractual relationship, and committing unfair and deceptive acts and practices. The facts and circumstances of these claims, which are outlined below, are based on presently available information and belief.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 2.

A somewhat revised version of this letter is being sent simultaneously to Ms. Dorland and is enclosed. Both the letter to Dorland as well as this letter are thirty (30) day demand letters sent pursuant to the Massachusetts Consumer Protection Act, Massachusetts General Laws, Chapter 93A. Under the Act, you and Cohen Law have thirty days from receipt of this letter within which to respond to the allegations and claims for relief that are outlined herein. If you and Cohen Law fail to make a reasonable written response to this letter within thirty (30) days, a Massachusetts court can award treble but no less than double damages against you and Cohen Law, in addition to awarding my client her costs and attorney's fees.

Sonya Larson is a mixed-race Chinese-American professional writer residing in the Boston area. My client works at GrubStreet, Inc., a not-for-profit organization dedicated to educating and helping creative writers. Over the course of her young career, Larson has had several of her works published. See, www.larsonya.com for a list of her publications to date.

Dorland appears to be a minimally published writer who once lived in the Boston area and now lives in Los Angeles. Her writing career seems focused primarily on teaching occasional writing workshops. In 2015, Dorland claims to have donated a kidney to an anonymous recipient. Dorland wrote a letter to her anonymous kidney recipient in which she introduces herself, outlines her reasons for donating a kidney, and expresses an interest in learning more about the recipient and even meeting that person one day. A copy of the letter (the "Factual Letter") is enclosed.

Larson and Dorland appear to have had a nominal relationship with each other, the majority of which took place through a few dozen emails (most of which were in response to mass emails concerning conferences and class logistics), scant social media exchanges, a few exchanged pleasantries, and a large dinner party my client attended about eight years ago when Dorland lived in the Boston area.

Since the time that Dorland donated her kidney in 2015, she has not, by any stretch of the imagination, been subtle about her kidney donation and her advocacy for organ donations in general. Dorland has utilized social media extensively (e.g., Twitter, Facebook and Instagram) to raise awareness about her kidney donation and organ donations in general. In addition, Dorland posted a copy of the Factual Letter to a relatively large Facebook group. The letter may also have been posted elsewhere. The letter on Facebook was posted without a copyright notation.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 3.

Ms. Larson was inexplicably and involuntarily added as a member of Dorland's Facebook group, which included approximately 250 to 300 people.  It appears that the primary focus of this group was to create a platform for Dorland to share her personal experiences with donating a kidney.  Ms. Larson saw the Factual Letter on Facebook after it was posted.  Ms. Larson found the letter interesting.  She did not copy the Factual Letter but instead recorded a few thoughts and phrases from the letter into her notes for future reference.

My client was intrigued by the idea of kidney donations and began to fabricate a fictional short story from the perspective of an alcoholic, working class Chinese-American woman living in Boston with her husband, who receives a kidney donation from a wealthy white woman and then prepares to meet her.  The story explores the complexities of indebtedness, addiction, love, shame and race.  Its central aim is to depict a person of color resisting a white savior narrative.

Larson's eventual short story included a letter received by the kidney recipient character and sent by the donor character.  The letter was a small part of the story and used primarily to introduce the character of the kidney donor, and to set the stage for the eventual meeting of the recipient and donor characters.  When Ms. Larson was writing her story, she researched and viewed dozens of other organ donation letters that were widely available online.  She also viewed many websites devoted to advising organ donors and recipients on how to correspond with one another, including bullet points of the kinds of things people share with one another and in what order.[1]

Ms. Larson worked on her story for several months and was ultimately scouted by Plympton Literary Studio for a possible audiobook production of this story, among others, via www.Audible.com ("Audible").  Audible accepted Larson's story entitled, *The Kindest*, and prepared to publish it as an audio book.  As the story was being recorded in the summer of 2016, my client asked the producer if Audible would re-record the story using different wording in the story's fictional letter to avoid any conceivable resemblance to the Factual Letter.  Audible agreed to re-record that section, but accidentally posted the incorrect version on August 3, 2016, in downloadable mp3 format and print-on-demand CD format.  They agreed to remove this recording from its site entirely until the correct version was recorded and posted on October 25, 2016.  Larson was paid $125 for *The Kindest* from Plympton Literary Studio.  She received nothing from Audible.

---

[1] See, for example, http://www.donorrecovery.org/families-of-donors/writing-to-transplant-recipients/.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 4.

On June 22, 2016, my client did a reading from *The Kindest* at a bookstore in Boston. The reading did not include any portion the letter in her story. Someone who attended the reading posted a comment on Dorland's Facebook page about Ms. Larson's story. Dorland apparently saw the post and noticed it included a kidney donation.[2]

Dorland soon became incensed by the concept of Ms. Larson's story, and she proceeded to hound my client with constant emails and text messages. Dorland insinuated that the story was based on her life experience and that Sonya Larson had no right "as a friend" to fabricate a story about a kidney donation without consulting her. Despite my client's insistence that the story was not about Dorland, and that she and all other writers have the right to write fiction about kidney donations, your client refused to desist. Dorland expressed dismay that my client had not "liked" and commented on her Facebook posts about her kidney donation. Dorland demanded to read the story, insisted on an apology, and threatened to write about Ms. Larson in a memoir or essay. Even though Ms. Larson's short story was fiction, Dorland seemed very threatened by *The Kindest*.

In August 2017, American Short Fiction ("ASF") published *The Kindest* in its literary magazine and featured it online in May 2018. Ms. Larson was paid $300 by ASF.

Meanwhile, the Boston Book Festival, Inc. ("BBF"), a not-for-profit organization that promotes reading and ideas for writers and bibliophiles in and around Boston, sponsors a project called One City/One Story as part of its annual festival for writers and readers. One short story is selected for distribution throughout the Boston area. Copies of the selected story are sent to BBF members, participants in the Festival, local libraries and participating businesses and it is promoted by the Eastern Massachusetts public transportation authority, the MBTA. The Festival features the story for educational and discussion purposes in hopes of incorporating divergent audiences in new conversations about an important topic. Larson's *The Kindest* was chosen in May 2018, to be the short story that it was going to feature as the One City/One Story work at its premier annual event in October 2018.[3]

---

[2] Tom Meek, a mutual Facebook friend of both Dorland and Larson, posted a comment on a Facebook post of Dorland: "Sonya read a cool story about giving out a kidney, you came to mind, and I wondered if you were the source of the inspiration."

[3] Former winners of the One City/One Story honor have credited the publicity and exposure to numerous professional achievements. Former winners express that "One City/One Story was a total game-changer for my writing career" and "speaking career," and that they have earned literally thousands of dollars for speaking engagements related to the honor. These include engagements in New England, Texas, and Chicago, and at Laboure College, Milton Academy, UMASS-Boston, Swarthmore College, Worcester State, and many more. "It really built up my 'cred' in terms of earning these speaking gigs," says one winner. "I was also interviewed on NPR and by reporters for the *Globe* and *Milton Times* and *Patriot Ledger*. Nice articles that I've used on my website and CV."

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 5.

In June 2018, Dorland apparently heard about the choice of *The Kindest* as the BBF selection and she started a multifaceted smear campaign against Sonya Larson by accusing my client of plagiarizing her Factual Letter. Dorland contacted ASF, the BBF, GrubStreet, members of Ms. Larson's writing group, and, inexplicably, the Bread Loaf Writer's Conference, hosted by Middlebury College in Vermont.[4] Dorland did not specify how the language of her Factual Letter was plagiarized in *The Kindest* but simply stated that the relatively short letter in Ms. Larson's story was a "paraphrase" of her considerably longer Factual Letter.

To the Bread Loaf Writers' Conference, Dorland made the additional false claim that Larson applied for and received a prestigious fellowship to the conference using this story, which she misleadingly claimed "plagiarizes my unpublished work." Once again Dorland offered zero evidence to substantiate her claim, but nonetheless asked that something "be done, retroactively, about it." When Bread Loaf declined to engage with her, she threatened the conference by saying that she was "writing an article about plagiarism in the writing community and will list this response on behalf of the Breadloaf Writing Conference." Dorland continued to call and email Bread Loaf staff-- and even the retired Director, Michael Collier-- through late August and September 2018.

Although requested to do so by James Gregorio, my predecessor counsel, Dorland refused to contact him with supporting evidence for her claim of plagiarism so that my client and her attorney could respond. Instead, Dorland emailed and called ASF and BBF multiple times per day, demanding at various times, a citation for the Factual Letter, or that Ms. Larson's story be pulled from ASF and the BBF in its entirety, and/or that ASF publish one of Dorland's essays, purportedly about friendship, ethics and writing.

Neither ASF nor BBF acquiesced to Dorland's demands. Nevertheless, BBF did offer for Ms. Larson to change some of the language in her fictional letter to avoid <u>any</u> possibility of any legal claims against the BBF.[5] My client agreed to the BBF's suggestion, since the fictional letter was only a minor part of the story. Besides, Ms. Larson had already changed many

---

Says another winner, "To be selected for One City One Story is an honor. I got a beautiful email just two weeks ago from someone who had read this story. It's a matter of prestige, it can bring you speaking events, and increase your worth when you sell your first story collection or novel...Your story is published in many different languages, so whole new audiences get to engage."

[4] To date, over a dozen individuals and organizations have been contacted by Dorland, an assault which she continues by Dorland's recent contacts of present and even retired staff of the Bread Loaf Writers Conference. As described by *The New Yorker* magazine, Bread Loaf is known in literary and publishing worlds as "the oldest and most prestigious writers conference in the country."

[5] This was done to placate Dorland and was not an admission of any wrongdoing.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 6.

elements of her story for the BBF publication specifically-- including locations in the fictional story, objects, details, several lines of dialogue, gestures, word choices and the ending.

None of Sonya Larson's efforts appeased Dorland. Dorland next contacted the *Boston Globe* to further publicize her claim of plagiarism against Ms. Larson, and then made a professional complaint to GrubStreet, Ms. Larson's employer, repeating her accusation that my client plagiarized her Factual Letter. Dorland also apparently complained, falsely and frivolously, that my client did not speak with Dorland at a GrubStreet event, and that she advised Dorland not to write about certain topics.

Then, on July 3, 2018, obviously realizing that plagiarism is not actionable, you and Cohen Law ratcheted things up to copyright infringement by sending a letter to the Boston Book Festival stating that *The Kindest* contains Dorland's Factual Letter "in whole or in part." You further stated that even without having the benefit of reviewing any revisions that may have been made to *The Kindest*, "to determine whether any infringement remains," you boldly claimed that any decision by the BBF to publish the story would infringe Dorland's rights. You then demanded that the BBF cease and desist from further printing, copying, distributing or undertaking other activities related to *The Kindest*.

You also said that if the BBF did not supply you with a copy of the revised story within ten days, you would act to prevent the publication of Ms. Larson's story, and seek damages under 17 U.S.C. § 504(c), for up to $150,000 in statutory damages.

According to the Copyright Office records, Dorland's Factual Letter was registered as unpublished text entitled "Dorland kidney chain final recipient letter July 2, 2015," effective June 10, 2018, under registration number TXu 002101420. As will be shown, the June 10, 2018 date is significant.

Next, on July 20, 2018, Michael S. Hanna of Cohen Law wrote to Attorney Gregorio expressing a willingness to settle Dorland's claims without a full recovery of damages to which Dorland claims to be entitled. There appears to have been some discussions with Attorney Gregorio and with Paul Sennott, BBF's lawyer, of settling Dorland's claims for $5,000 plus attribution and/or a referral link to a kidney donor site. The discussions did not lead to a resolution of Dorland's claims for monetary compensation, attribution or the payment of her legal fees.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 7.

Dorland continued her attack on Ms. Larson by contacting the press where she masterminded a smear campaign against my client by publicly accusing Ms. Larson of plagiarism.[6] This occurred even before the BBF announced that Ms. Larson's story was chosen as the One City/One Story selection. During those initial settlement negotiations, when it became clear that the *Boston Globe* would run the article that Dorland prompted, Mr. Hanna told James Gregorio, Larson's attorney, that if Ms. Larson gave Dorland everything she wants, Dorland would give her "full effort to try to kill the [Globe's] story." After the article came out, Dorland emailed members of Ms. Larson's writing group, accusing them of "complicity" in "artistic betrayal." She continued to contact them through September 2018.

I am told that on August 10, 2018, just as the *Boston Globe* was about to print its second newspaper article about Dorland's plagiarism claims, Hanna called Attorney Sennott and increased his settlement demand to $10,000. At this time, Hanna likely knew that the BBF would be publishing a revised version of *The Kindest*, which the BBF had previously supplied to him, that was rewritten to fully remove any possible offending portions. Accordingly, Hanna knew or should have known that Dorland did not have a cause of action against Larson because her letter was not registered at the appropriate time. The increased demand to $10,000 was apparently the straw that broke BBF's back.

As a direct and proximate result of this and other actions by Dorland, you and Cohen Law, the BBF rescinded its selection of *The Kindest* for fear of being sued by your client.[7] The BBF had already printed 30,000 of *The Kindest* at a reported cost of $13,000, and it was concerned that continuing legal fees, already in the thousands of dollars, would strain its modest budget and jeopardize its existence. The BBF decision had nothing to do with any concern of actual plagiarism or copyright infringement. The decision was based entirely on Dorland's persistence which was aided and abetted by claims of copyright infringement and threats of tens of thousands of dollars in legal fees and damages by you and your office.

Not satisfied with the extensive damage already brought to bear on Ms. Larson, Attorney Hanna again wrote to Attorney Gregorio on September 6, 2018, claiming Ms. Larson continues to infringe Dorland's rights by reproducing the Factual Letter, preparing a derivative copy of the letter, and distributing copies of the letter to ASF, Audible.com, BrillianceAudio.com, and the BBF. Hanna is again seeking damages and attorney's fees for "a full litany of claims" he asserts will be filed against Ms. Larson in Federal Court in Los Angeles.

---

[6] Graham Ambrose, "Inspiration or plagiarism? Writing hackles raised in Boston dispute." *Boston Globe*, July 26, 2018. https://tinyurl.com/ybo3xbl5; Graham Ambrose, "Boston Book Festival cancels One City One Story event amid plagiarism flap." *Boston Globe*, August 14, 2018. https://tinyurl.com/yb6vqgnq.

[7] Emails from Deborah Porter state that the BBF did not want to get sued because the financial risk and burden would cripple the organization.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 8.

    In its latest letter, Cohen Law is seeking a judgment for $180,000, which it proposes will
be held in escrow to ensure that Ms. Larson will never violate Dorland's rights in the Factual
Letter. Hanna is also demanding that Ms. Larson pay Dorland's legal expenses that now amount
to $15,000. Hanna's allegations and demands are absurd and completely without merit. It must
be noted that *The Kindest* is not presently available in any form from ASF, Audible.com,
BrillianceAudio.com or the BBF.

    Certainly, Ms. Larson was inspired by Dorland's kidney donation, and she admits that
she initially used a few words and phrases that appear in Dorland's Factual Letter in preliminary
drafts of her story. However, Ms. Larson's actions do not amount to copyright infringement
under any interpretation of the law. There is no one who would ever consider the final version of
*The Kindest* that was to be distributed by the BBF to be similar in any respect to Dorland's
Factual Letter other than as an idea or a *scene-á-faire*. Dorland is not the only person who has
written to their organ recipient and she is still free to write either a fictional or factual account of
her kidney donation experience.

    I am enclosing for your reference, a copy of the final version of *The Kindest* that was to
be distributed by the BBF as the One City/One Story. This is the same version that was
previously supplied to Attorney Hanna.

    Cohen Law's website says that the firm has extensive experience in handling and
litigating intellectual property matters. Accordingly, when you sent a letter to the BBF on July 3,
2018, you knew or should have known that damages under Section 504(c) of the Copyright Act
are available only if the provisions of Section 412 of the Copyright Act are satisfied. If any
version of *The Kindest* infringed Dorland's rights in the Factual Letter, which we vociferously
deny, the registration of the Factual Letter effective June 10, 2018, does not satisfy Section 412,
because any perceived infringement of Dorland's Factual Letter occurred years earlier.

    The only conceivable reason for including erroneous and unavailable claims for statutory
damages and attorney's fees was to pressure the BBF into complying with your unfounded claim
of copyright infringement. Agreeing with a client to pursue legally baseless claims merits a
cause of action for our client. See Rickley v. Goodfriend, 212 Cal. App. 4th 1136, 1153, 151
Cal. Rptr. 3d 683, 699 (2013) ("A license to practice law does not shield an attorney from
liability when he or she engages in conduct that would be actionable if committed by a
layperson. An attorney who commits such conduct may be liable under a conspiracy theory when
the attorney agrees with his or her client to commit wrongful acts.")

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 9.

Furthermore, your latest claim that a lawsuit will be brought in Federal Court in Los Angeles is flagrantly unfounded.  Simply put, California does not have jurisdiction over my client.  Dole Food Co. v. Watts, 303 F.3d 1104, 1110–11 (9th Cir. 2002).  Ms. Larson does not have continuous and systematic contacts with California and all relevant acts, and most potential witnesses are located in Massachusetts.  If you bring any action against Sonya Larson in California, we will seek an immediate dismissal for lack of jurisdiction.  We will also seek attorney's fees and costs, which under the circumstances, we are confident that any court will be eager to award.

We believe that your actions and those of Cohen Law far exceed the bounds of zealous representation of a client.  Although we dispute every notion of copyright infringement by Ms. Larson, Dorland would, at a maximum, be entitled only to her actual damages and any profits that Ms. Larson earned from any infringement of the Factual Letter.

It is a mystery exactly how Dorland was damaged.  Ms. Larson simply took a factual letter written by a kidney donor that was posted on a group Facebook page without a copyright notation, used it as inspiration for a fictional letter, and used that fictional letter as a small set-up for a fictional encounter between a Chinese-American kidney recipient and a white donor.  That Ms. Larson may have initially used a few words and phrases in her fictional story that are included in the Factual Letter will not support an award of anything other than nominal damages at best.

Furthermore, my client's gross receipts from *The Kindest* amounted to $425.  Since the word count for the letter which is part of the story is less than 5% of the total word count of the story, Dorland's profit damages might amount to $21.25 (5% of $425 = $21.25).  Damages at this level do not warrant your intentional interference with my client's relationship with the BBF, which resulted in the loss of the prestige and notoriety she would have received if her story was distributed by the Boston Book Festival.  Additionally, it absolutely does not merit the contact with Bread Loaf, Larson's writing group, GrubStreet, or the more than a dozen other people and organizations that Dorland contacted.

We contend that your inflated claims for damages and attorney's fees, and your failure to articulate reasonable demands on behalf of Dorland in light of the limited damages available for any perceived copyright infringement under the facts presented, resulted in the BBF withdrawing its use of *The Kindest* from the One City/One Story project.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 10.

The BBF clearly stated that it only pulled Ms. Larson's story because the BBF did not want to get sued. The BBF has limited financial resources and it did not want to incur legal expenses in fighting Dorland's claims. Your actions and that of Cohen Law in making unsupportable claims, misrepresenting the facts, and deploying overly aggressive and coercive correspondence with the BBF was calculated to cause damage to my client. Furthermore, these actions contributed directly in the decision by the BBF to pull *The Kindest* from the One City/One Story project. The combination of your letters and your exaggerated and unsupported monetary demands surpasses the bounds of zealous advocacy, and amount to an interference with Larson's advantageous contractual relationships with the BBF for which Sonya Larson is entitled to substantial damages for the irreparable injuries to her reputation and her career.

The totality of circumstances including the combination of Dorland's unrelenting, multifaceted campaign to damage and defame Sonya Larson's reputation and career, your letter and the letters and demands of Michael Hanna of Cohen Law consisting of wholly insupportable claims and demands that further Dorland's defamatory behavior, are evidence of outrageous conduct that constitutes a violation of Massachusetts General Laws, chapter 93A. See Kattar v. Demoulas, 433 Mass. 1, 12–13 (2000) (Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975). The relief available under c. 93A is "sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action." Id. at 704. It "mak[es] conduct unlawful which was not unlawful under the common law or any prior statute." Commonwealth v. DeCotis, 366 Mass. 234, 244 n. 8 (1974). Thus, a cause of action under c. 93A is "not dependent on traditional tort or contract law concepts for its definition." Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 626 (1978). See Nei v. Burley, 388 Mass. 307, 313 (1983) ("[A]nalogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims").

Under Massachusetts Law, you have thirty (30) days from receipt of this letter to answer the allegations herein and provide a reasonable explanation for your actions or make a reasonable settlement offer, failing which, my client can file an action in court in which she will be seeking up to three times her damages plus attorney's fees. Cassano v. Gogos, 20 Mass. App. Ct. 348, 350-53 (1985); Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 802-03 (1976); (Defendants who make a timely and reasonable offer of settlement limit the scope of possible damages). Failure to provide a reasonable settlement offer may allow the plaintiff to receive treble damages. Loddie v. Anton's Cleaners, 1993 Mass. App. Div. 29 (defendant's offer of only $100 for mink coat valued at $4,000 was made in bad faith, therefore damages were trebled).

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 11.


I urge you to respond to this letter within thirty days of receipt.


Very truly yours,

Andrew D. Epstein

ADE/d

cc: James A. Gregorio, Esquire

**Barker, Epstein & Loscocco**
176 Federal Street
Boston, Massachusetts 02110

----------

(617) 482-4900
FAX: (617) 426-5251

Andrew D. Epstein
Photolaw@aol.com

September 27, 2018

**U.S. Express Mail**
**Return Receipt Requested**

Dawn Dorland Perry
11910 Venice Blvd., #3
Los Angeles, CA 90066

   **Re:** **Sonya Larson**
   **v.**  **Dawn Dorland Perry**
     <u>**Thirty (30) Day Demand Letter Under Mass. Gen. Laws. C. 93A**</u>

Dear Ms. Dorland-Perry:

  I represent Sonya Larson as successor counsel to James A. Gregorio of Greensboro, North Carolina. I will be representing Ms. Larson going forward regarding all claims for plagiarism and copyright infringement raised by you and your legal counsel relative to my client's short story, *The Kindest*.

  Ms. Larson contends that you violated one or more of her rights by defaming her, interfering with an advantageous contractual relationship, and committing unfair and deceptive acts and practices. The facts and circumstances of my client's claims, which are outlined below, are based on presently available information and belief.

  This letter is a thirty (30) day demand letter sent pursuant to the Massachusetts Consumer Protection Act, Massachusetts General Laws, Chapter 93A. Under the Act, you have thirty days from receipt of letter to respond to the allegations and claims for relief that are outlined herein. If you or legal counsel fails to make a reasonable written response to this letter within thirty (30) days, a Massachusetts court can award treble but no less than double damages against you in addition to awarding Ms. Larson her costs and attorney's fees.

Dawn Dorland Perry
September 27, 2018
Page 2.

Sonya Larson is a mixed-race Chinese-American professional writer residing in the Boston area. As you know, my client works at GrubStreet, Inc., a not-for-profit organization dedicated to educating and helping creative writers. Over the course of her young career, Ms. Larson has had several of her works published. See www.larsonya.com for a list of her publications to date.

You appear to be a minimally published writer who once lived in the Boston area and now lives in Los Angeles. Your writing career seems focused primarily on teaching occasional writing workshops. In 2015, you claim to have donated a kidney to an anonymous recipient. You wrote a letter to your anonymous kidney recipient in which you introduce yourself, outline your reasons for donating a kidney, and express an interest in learning more about your recipient and even meeting that person one day. A copy of the letter (hereinafter, the "Factual Letter") is enclosed.

You and Ms. Larson appear to have had a nominal relationship with each other, most of which transpired through a few dozen emails (the majority of which were in response to mass emails concerning conference and class logistics), scant social media exchanges, a few exchanged pleasantries, and a large dinner party my client attended about eight years ago when you lived in the Boston area.

Ms. Larson was involuntarily and inexplicably added to your Facebook group in 2015, which included approximately 250 to 300 people. It appears that the primary focus of this group was to create a platform for you to share your personal experiences with donating a kidney.

Since the time that you donated your kidney, you have not, by any stretch of the imagination, been subtle about your kidney donation and your advocacy for organ donations in general. You have used social media extensively (e.g., Twitter, Facebook and Instagram) to publicly raise awareness about your own kidney donation and organ donations in general. In addition, you posted a copy of the Factual Letter to your relatively large Facebook group. The letter may also have been posted elsewhere. The letter on Facebook was posted without a copyright notation.

My client was intrigued by the idea of kidney donations and began to fabricate a fictional short story from the perspective of an alcoholic, working class Chinese-American woman living in Boston with her husband, who receives a kidney donation from a wealthy white woman and then prepares to meet her. The story explores the complexities of indebtedness, addiction, love, shame, and race, and its central aim is to depict a person of color resisting a white savior narrative.

Dawn Dorland Perry
September 27, 2018
Page 3.

     Ms. Larson saw the Factual Letter on Facebook after it was posted, and found it interesting.  She did not copy the Factual Letter but instead recorded a few thoughts and phrases from the letter into her notes for future reference.  Larson's eventual short story included a letter received by the kidney recipient character and sent by the donor character.  The letter was a small part of the story and used primarily to introduce the character of the kidney donor, and to set the stage for the eventual meeting of the recipient character and the donor character.  When Ms. Larson was writing her story, she researched and viewed dozens of other organ donation letters that were widely available online.  She also viewed many websites devoted to advising organ donors and recipients on how to correspond with one another, including bullet points of the kinds of things people share with one another, and in what order.[1]

     Ms. Larson worked on her story for several months and was ultimately scouted by Plympton Literary Studio for a possible audiobook production of this story, among others, via www.Audible.com ("Audible").  Audible accepted Larson's story entitled, *The Kindest*, and prepared to publish it as an audio book.  As the story was being recorded in the summer of 2016, my client asked the producer if Audible would re-record the story using different wording in the story's fictional letter to avoid any conceivable resemblance to your Factual Letter.  Audible agreed to re-record that section, but accidentally posted the incorrect version on August 3, 2016, in downloadable mp3 format and print-on-demand CD format. They agreed to remove this recording from its site entirely until the correct version was recorded and posted on October 25, 2016.  Larson was paid $125 for *The Kindest* from Plympton Literary Studio.  She received nothing from Audible.

     On June 22, 2016, my client did a reading from *The Kindest* at a bookstore in Boston. The reading did not include any portion of the letter that Ms. Larson incorporated into her story. Someone who attended the reading posted a comment on your Facebook page about Ms. Larson's story.  You apparently saw the post and noticed that it referred to a kidney donation.[2]

     You soon became incensed by the concept of Ms. Larson's story, and you proceeded to hound my client with constant emails and text messages. You insinuated that the story was based on your life experience and that Sonya Larson had no right "as a friend" to fabricate a fictional story about a kidney donation without consulting you.  Despite my client's insistence that the

---

[1] See, for example, http://www.donorrecovery.org/families-of-donors/writing-to-transplant-recipients/.

[2] Tom Meek, a mutual Facebook friend of both you and Larson, posted a comment on a Facebook post of yours: "Sonya read a cool story about giving out a kidney, you came to mind, and I wondered if you were the source of the inspiration."

Dawn Dorland Perry
September 27, 2018
Page 4.

story was not about you, and that she and all other writers have the right to write fiction about kidney donations, you refused to give up. You expressed dismay that my client had not "liked" and commented on your Facebook posts about your kidney donation. You demanded to read her story, insisted on an apology, and you threatened to write about Ms. Larson in a memoir or essay. Even though Ms. Larson's short story was fiction, you seemed very threatened by *The Kindest*.

In August 2017, American Short Fiction ("ASF") published *The Kindest* in its literary magazine, and featured it online in May 2018. Ms. Larson was paid $300 by ASF.

Meanwhile, the Boston Book Festival, Inc. ("BBF"), a not-for-profit organization that promotes reading and ideas for writers and bibliophiles in and around Boston, sponsors a project called One City/One Story as part of its annual festival for writers and readers. One short story is selected for distribution throughout the Boston area. Copies of the selected story are sent to BBF members, participants in the Festival, local libraries and participating businesses and it is promoted by the Eastern Massachusetts public transportation authority, the MBTA. The Festival features the story for educational and discussion purposes in hopes of incorporating divergent audiences in new conversations about an important topic. Ms. Larson's *The Kindest* was chosen in May 2018, to be the short story that the BBF was going to feature as the One City/One Story work at its premier annual event in October 2018.[3]

In June 2018, you apparently heard about the selection of *The Kindest* by the BBF and started a multifaceted smear campaign against Sonya Larson by accusing my client of plagiarizing your Factual Letter. You contacted ASF, the BBF, GrubStreet, members of Ms.

---

[3] Former winners of the One City/One Story honor have credited the publicity and exposure to numerous professional achievements. Former winners express that "One City/One Story was a total game-changer for my writing career" and "speaking career," and that they have earned literally thousands of dollars for speaking engagements related to the honor. These include engagements in New England, Texas, and Chicago, and at Laboure College, Milton Academy, UMASS-Boston, Swarthmore College, Worcester State, and many more. "It really built up my 'cred' in terms of earning these speaking gigs," says one winner. "I was also interviewed on NPR and by reporters for the *Globe* and *Milton Times* and *Patriot Ledger*. Nice articles that I've used on my website and CV." Another winner said, "To be selected for One City One Story is an honor. I got a beautiful email just two weeks ago from someone who had read this story. It's a matter of prestige, it can bring you speaking events, and increase your worth when you sell your first story collection or novel...Your story is published in many different languages, so whole new audiences get to engage."

Dawn Dorland Perry
September 27, 2018
Page 5.

Larson's writing group, and—inexplicably—the Bread Loaf Writers' Conference, hosted by Middlebury College in Vermont.[4] You did not specify how the language of your Factual Letter was plagiarized in *The Kindest* but simply stated that the relatively short letter in Ms. Larson's story was a "paraphrase" of your considerably longer Factual Letter.

You made the additional false claim to the Bread Loaf Writers' Conference that Larson applied for and received a prestigious fellowship to the conference using this story, which you misleadingly claimed "plagiarizes [your] unpublished work." Once again you offered no evidence to substantiate your claim, but nonetheless asked that something "be done, retroactively, about it." When Bread Loaf declined to engage with you, you threatened the conference by saying that you were "writing an article about plagiarism in the writing community and will list this response on behalf of the Bread Loaf Writing Conference." You continued to call and email Bread Loaf staff, and even the retired Director, Michael Collier, in August and September 2018.

In June 2018, James Gregorio, Ms. Larson's previous lawyer, requested that you and your legal counsel contact him to supply supporting evidence for your claim of plagiarism so that my client and her attorney could respond. You refused to comply with this request. Instead, you emailed and called the staff and even board members of ASF and BBF multiple times per day, demanding at various times a citation for your Factual Letter, that Ms. Larson's story be pulled from ASF and the BBF in its entirety, and/or that ASF publish one of your essays instead, purportedly about friendship, ethics and writing.

Neither ASF nor BBF acquiesced to your demands. Nevertheless, the BBF did offer for Ms. Larson to change some of the language in her fictional letter to avoid <u>any</u> possibility of legal claims against the BBF.[5] My client agreed to the BBF's suggestion, since the fictional letter was only a minor part of her story. Besides, Ms. Larson had already changed many elements of her story for the BBF publication specifically-- including locations in the fictional story, objects, details, several lines of dialogue, gestures, word choices, and the ending.

None of Sonya Larson's efforts seemed to satisfy you. Next, you contacted the *Boston Globe* to further publicize your claim of plagiarism by Ms. Larson, and then made a professional complaint to GrubStreet, Ms. Larson's employer, repeating your accusation that my client

---

[4] To date, over a dozen individuals and organizations have been contacted by you, an assault which you continue by recently contacting members of the present staff and even retired staff of the Bread Loaf Writers' Conference. Bread Loaf, as described by *The New Yorker* magazine, is known in the literary and publishing worlds as "the oldest and most prestigious writers' conference in the country."

[5] The letter was changed in an attempt to appease you and to stop your frequent contacts of the BBF and others.

Dawn Dorland Perry
September 27, 2018
Page 6.

plagiarized your Factual Letter. You also apparently complained—falsely and frivolously—that Ms. Larson did not speak with you at a GrubStreet event, and that she advised you not to write about certain topics.

Then, on July 3, 2018, your lawyer, Jeffrey A. Cohen of Cohen Business Law Group, sent a letter to the Boston Book Festival stating that *The Kindest* contains your Factual Letter "in whole or in part." Even without having the benefit of reviewing any revisions that may have been made to *The Kindest*, "to determine whether any infringement remains," your lawyer boldly claimed that any decision by the BBF to publish the story would infringe your rights. Your lawyer then demanded that the BBF cease and desist from further printing, copying, distributing or undertaking other activities related to *The Kindest*.

Attorney Cohen also said that if the BBF did not supply him with a copy of the revised story within ten days, he would act on your behalf to prevent the publication of Ms. Larson's story, and seek damages under the Copyright Act for up to $150,000 in statutory damages. Attorney Cohen's claim for statutory damages is available only in limited circumstances. As will be shown, the circumstances Attorney Cohen presented do not permit you to recovery statutory damages in any amount under any circumstances.

According to the Copyright Office records, your Factual Letter was registered as unpublished text entitled "Dorland kidney chain final recipient letter July 2, 2015," effective June 10, 2018, under registration number TXu002101420. The June 10, 2018 date is significant.

Next, on July 20, 2018, Michael S. Hanna of Cohen Law wrote to Attorney Gregorio expressing a willingness to settle your claims without a full recovery of damages to which Hanna claimed you were entitled. Of course, there has been no substantiated demand for monetary damages to date; just a continuing request that Larson acknowledge that your Factual Letter was an idea behind *The Kindest*, and a demand that Ms. Larson pay exorbitant damages plus your legal fees.

You then continued your attack on Ms. Larson by repeatedly contacting the press, where you masterminded a disparaging campaign against my client by publicly accusing Ms. Larson of plagiarism.[6] This occurred even before the BBF announced that Ms. Larson's story was chosen as the One City/One Story selection. During those initial settlement negotiations, when it likely

---

[6] Graham Ambrose, "Inspiration or plagiarism? Writing hackles raised in Boston dispute." *Boston Globe*, July 26, 2018. https://tinyurl.com/ybo3xbl5; Graham Ambrose, "Boston Book Festival cancels One City One Story event amid plagiarism flap." *Boston Globe*, August 14, 2018. https://tinyurl.com/yb6vqgnq.

Dawn Dorland Perry
September 27, 2018
Page 7.

became clear that the *Globe* would run the article you prompted, your attorney Michael Hanna told James Gregorio, Larson's attorney, that if Ms. Larson gave you "everything that you want," you would "give your full effort to try to kill the [Globe's] story." After the article came out, you emailed members of Ms. Larson's writing group, accusing them of "complicity" in "artistic betrayal." You continued to contact them through September 2018.

You also continued to escalate your demands to the BBF—demanding $10,000, full attribution, and more—upon discovery of a mistakenly available print-on-demand CD file of the story. Though this file had no bearing on what the BBF was scheduled to print, you dramatically escalated your legal threats to the BBF, mere days before they were set to distribute the story.

As a direct and proximate result of this and other actions by you, acting alone or in concert with your attorneys, the BBF rescinded its selection of *The Kindest* for fear of being sued by you.[7]  When the BBF made this decision, it had already printed 30,000 of *The Kindest* at a cost of approximately $13,000, plus amassed thousands of dollars in attorney fees, and it was concerned that continuing legal fees and risked sponsorship dollars would strain its modest budget and jeopardize its existence. The BBF decision had nothing to do with your claims of plagiarism or copyright infringement.  The decision was based entirely on your persistence, which was aided and abetted by claims of copyright infringement and threats of thousands of dollars in legal fees and substantial statutory damages by your legal counsel.

On September 6, 2018, Attorney Hanna again wrote to Attorney Gregorio claiming that Ms. Larson continues to infringe your rights by reproducing the Factual Letter, preparing a derivative copy of the letter, and distributing copies of the letter to ASF, Audible.com, BrillianceAudio.com, and the BBF.  Hanna again sought damages and attorney's fees for "a full litany of claims" he asserts will be filed against Ms. Larson in Federal Court in Los Angeles.

In its latest letter, Cohen Business Law Group is seeking judgment for $180,000, which it proposes will be held in escrow to ensure that Ms. Larson will never violate your rights in the Factual Letter. Hanna also demands that Ms. Larson pay your legal expenses that now amount to $15,000.  Hanna's allegations and demands are absurd and completely without merit.

Certainly, Ms. Larson was inspired by your kidney donation and she admits that she initially used a few words and phrases that appear in your Factual Letter in preliminary drafts of

---

[7] Emails from Deborah Porter state that the BBF did not want to get sued because it had potential to financially cripple the organization.

Dawn Dorland Perry
September 27, 2018
Page 8.

her story. However, Ms. Larson's actions do not amount to copyright infringement under any interpretation of the law. You are not the only person who has ever written to their organ recipient and you are still free to write either a fictional or factual account of your kidney donation experience.

Furthermore, there is no one who would ever consider the final version of *The Kindest* that was to be distributed by the BBF to be similar in any respect to your Factual Letter other than as an idea or a scene-a-faire.[8] So that you can see this for yourself, I am enclosing a copy of the final version of *The Kindest* that was to be distributed by the BBF as part of the One City/One Story project.

Your lawyers claim to have extensive experience in handling and litigating intellectual property matters. Accordingly, your lawyers knew or should have known that statutory damages and attorney's fees under the Copyright Act are available only if your Factual Letter was registered with the Copyright Office before, or within three months of the claimed infringement, which it was not.

It appears that your attorneys' only reason for making erroneous claims for statutory damages and substantial legal fees against the BBF was to conspire with you to pressure the BBF into acquiescing with your unfounded claim of copyright infringement and your unwarranted demands.

My client disputes every notion of copyright infringement by you. However, even if there was an infringement, you would <u>at best</u>, be entitled <u>only</u> to your actual damages and any profits that Ms. Larson earned from any infringement of the Factual Letter.

Frankly, it is a mystery how you were damaged. Ms. Larson simply took a factual letter written by a kidney donor that was posted on a group Facebook page without a copyright notation, used it as inspiration for a fictional letter, and used that fictional letter as a small set-up for a fictional encounter between a Chinese-American kidney recipient and a white donor. That Ms. Larson may have used a few words and phrases in preliminary versions of her fictional story that are included in your Factual Letter will not support an award of anything other than nominal damages <u>at best</u>.

---

[8] Scènes à *faire* (meaning "*scenes* that must be done") refers to elements that are standard, or indispensable in the type of work at issue or sequences of events that necessarily result from the choice of a setting or situation. Compare, Shakespeare's *Romeo and Juliet* with the play and movie, *West Side Story*.

Dawn Dorland Perry
September 27, 2018
Page 9.

Furthermore, my client's gross receipts from *The Kindest* to date amount to $425. Since the fictional letter which is part of my client's story constitutes less than 5% of the total word count in Larson's narrative, your profit damages might amount to $21.25 (5% of $425 = $21.25). Damages at this level do not warrant your intentional interference with my client's relationship with the BBF, which resulted in the loss of the prestige, notoriety, and potential numerous opportunities for speaking engagements, income and readership that she would have received if her story was distributed as part of the Boston Book Festival One City/One Story project.

Additionally, your direct contact with the Bread Loaf Writers' Conference, members of Ms. Larson's writing group, GrubStreet, her colleagues, and any of the more than a dozen other people and organizations that you have contacted to date, is evidence of malevolent behavior that is not acceptable under any circumstances.

My client contends that the inflated damage claims proffered by you and your attorneys—as well as the failure by you and your attorneys to articulate reasonable demands in light of the limited damages available for any perceived copyright infringement under the facts presented—resulted in the BBF withdrawing its use of *The Kindest* from the One City/One Story project.

The BBF stated that they pulled Ms. Larson's story because the BBF and their sponsors did not want to get sued by you. The BBF has limited financial resources and it did not want to incur legal expenses, time, and staff resources in fighting your claims, especially as the festival neared and their workloads were already strained by your actions. Your actions and those of your attorneys in making unsupportable claims, misrepresenting the facts, and deploying overly aggressive and coercive correspondence with the BBF were calculated to cause damage to my client. These actions directly resulted in the decision to pull *The Kindest* from the One City/One Story project. The decision of the BBF to pull *The Kindest* was made to mollify its sponsors and to avoid additional legal fees. It was in no way a concession of wrong-doing by the BBF or Ms. Larson.

The totality of circumstances including the combination of your unrelenting, multifaceted campaign to damage, disparage and defame Sonya Larson's reputation and career, your lawyers' letters containing wholly insupportable claims and demands, and your dogged, ongoing communications with anyone professionally connected with Ms. Larson, are evidence of outrageous conduct which constitutes a violation of Massachusetts General Laws, chapter 93A. See Kattar v. Demoulas, 433 Mass. 1, 12–13 (2000) (Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975).

Dawn Dorland Perry
September 27, 2018
Page 10.

The relief available under c. 93A is "sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action." 366 Mass. at 704. It "mak[es] conduct unlawful which was not unlawful under the common law or any prior statute." Commonwealth v. DeCotis, 366 Mass. 234, 244 n. 8 (1974). Thus, a cause of action under c. 93A is "not dependent on traditional tort or contract law concepts for its definition." Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 626 (1978). See Nei v. Burley, 388 Mass. 307, 313 (1983) ("[A]nalogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims").

In addition, a claim for defamation is actionable under c. 93A. Dulgarian v. Stone, 420 Mass. 843, 852-53 (1995). In determining whether a publication is defamatory, courts must also consider, "all the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." Reilly v. Associated Press, 59 Mass. App. Ct. 764, 770 (2003).

Under Massachusetts Law, you have thirty (30) days after receipt of this letter to answer these allegations and provide a reasonable explanation for your actions or make a reasonable settlement offer, failing which, my client can file an action in court in which she will be seeking up to three times her damages plus attorney's fees. Cassano v. Gogos, 20 Mass. App. Ct. 348, 350-53 (1985); Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 802-03 (1976); (Defendants who make a timely and reasonable offer of settlement limit the scope of possible damages). Failure to provide a reasonable settlement offer may allow the plaintiff to receive treble damages. Loddie v. Anton's Cleaners, 1993 Mass. App. Div. 29 (defendant's offer of only $100 for mink coat valued at $4,000 was made in bad faith, therefore damages were trebled).

Clearly, you are very upset that Ms. Larson used the idea of a letter from an organ donor to her organ recipient as part of The Kindest. No matter how angry this may have made you, this did not give you the right to demean my client's character and reputation, and to conspire with your attorneys to interfere with the selection of The Kindest as the One City/One Story selection by the BBF. Be advised, that your past actions and your continuing contacts with Bread Loaf and others will not be tolerated.

If you persist in your attacks on my client and her reputation, we can spend the next several years in litigation. However, it is in all parties' best interests to end this matter and move on.

Dawn Dorland Perry
September 27, 2018
Page 11.

Accordingly, <u>for settlement purposes</u> pursuant to the Massachusetts Guide to Evidence, Rule 408, and Federal Rules of Evidence, Rule 408, my client might consider stating that she was inspired to write a small portion of *The Kindest* based on your 2015 Facebook post.

In return you will have to acknowledge that you dramatically overreacted to the situation. Additionally, we will require that you write a letter of apology to Ms. Larson, to your Facebook group, the BBF, to ASF, to Audible, to the *Boston Globe* and to Bread Loaf, completely exonerating Ms. Larson from any wrongdoing. These letters will be subject to my client's prior approval. We will also require that you reimburse the BBF for its printing costs which we are told amount to $13,000 and its legal fees of $3,000, as well as reimbursing Ms. Larson for her legal costs to date. Lastly, we require that you pay damages to Sonya Larson in a sum to be determined either through direct negotiations with you, your legal counsel or through binding mediation with an independent professional mediator.

I urge you to seriously consider my client's willingness to end this horrible and very damaging chapter in her life and move on. Alternatively, I will expect a formal written response to this letter from you or your legal counsel within the next thirty days.

Very truly yours,

Andrew D. Epstein

ADE/d

cc: James A. Gregorio, Esquire
    Jeffrey A. Cohen, Esquire and
    Michael S. Hanna, Esquire