UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON, | ) |
| Plaintiff | ) |
| | ) |
| v. | )   **C.A. No.: 1:19-CV-10203-IT** |
| | ) |
| DAWN DORLAND PERRY, | ) |
| COHEN BUSINESS LAW GROUP, PC and | ) |
| JEFFREY A. COHEN, ESQUIRE, | ) |
| Defendants | ) |

**DEFENDANTS COHEN BUSINESS LAW GROUP, PC, AND JEFFREY A. COHEN, ESQ.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF SONYA LARSON'S COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Defendants Cohen Business Law Group, PC, and Jeffrey A. Cohen, Esq. ("Attorney Cohen") (collectively, the "Firm") move pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6) to dismiss Plaintiff Sonya Larson's ("Larson") Complaint and Demand for Trial by Jury ("Complaint").

Taking the allegations of the Complaint at face value, the Plaintiff cannot successfully establish tort liability, against the Firm for performing routine legal services in pursuit of their client's interests.  But before the Court can address the issues on the merits, it must first determine whether it has subject matter jurisdiction to adjudicate this action and personal jurisdiction over the Firm.  The Plaintiff has no established the Court has subject matter jurisdiction or personal jurisdiction over the Firm.  Therefore, the claims against the Firm must be dismissed.

## I.      FACTUAL BACKGROUND[1]

In 2015, Defendant Dawn Dorland Perry ("Dorland") donated one of her kidneys to an unknown recipient.  Complaint, ¶ 8.  That July, she wrote a letter addressed to her recipient ("Factual Letter") to introduce herself, explain why she donated her kidney, express an interest in learning more about her recipient, and propose meeting her recipient.  *Id.* at ¶ 9.  Soon after, Dorland posted the Factual Letter to a private Facebook group, to which she and Larson were both members.  *Id.* at ¶¶ 9-10.

### A.      Larson's Short Story

According to the Complaint, Larson saw the Factual Letter on the private Facebook group and was inspired; she recorded her thoughts and ideas from the Factual Letter and some other letters from organ donors.  *Id.* at ¶¶ 17, 20.  In fact, Larson was beginning to write a Short Story[2] about "an alcoholic, working class Chinese-American woman living in Boston with her husband, who receives a kidney donation from a wealthy white woman."  *Id.* at ¶ 17.  Notably, the Short Story includes a letter sent by the donor character to her kidney recipient ("Fictional Letter").  *Id.* at ¶ 19.  The Short Story revolves around their eventual meeting following the Fictional Letter.  *Id.* at ¶ 15.

In December 2015, Audible, Inc. ("Audible") accepted the Short Story for publication as an audio story.  *Id.* at ¶ 26.  Larson then began changing the content of the Fictional Letter to "avoid any resemblance between Larson's Fictional Letter and Dorland's Factual Letter."  *Id.* at ¶ 27.  Before Larson finished her revisions, however, Audible uploaded an earlier version of the

[1] The Firm, solely for the purposes of this motion, assumes the truth of the well-pleaded factual allegations in the Complaint.  The Firm reserves the right to dispute those factual allegations should this case survive initial dispositive motions by any party.
[2] The Complaint refers to the short story as "*The Kindest*," the "Short Story," or "The Work").  *Id.* at ¶ 14.  For purposes of clarity, this motion will refer to Larson's story that she submitted to Audible and ASF as the "Short Story" and the later version she submitted to the BBF as "*The Kindest.*"

Short Story in downloadable and print-on-demand CD format.  *Id.* at ¶ 28.  Audible would later publish Larson's revised Short Story.  *Id.*

Dorland learned of the Short Story in June of 2016 – one month before Audible published the revised Short Story – after Larson read a preliminary draft at a Boston bookstore.  *Id.* at ¶ 21. One of Dorland's friends was in attendance.  *Id.*  She contacted Dorland afterwards because the plot – anonymous kidney donor contacting their recipient – reminded her of Dorland.[3]  *Id.* Dorland contacted Larson about Short Story and, after she read a copy, became upset with Larson because Larson's Fictional Letter resembled her Factual Letter.  *Id*.  On August 3, 2016, Audible published Larson's revised Short Story.  *Id.* at ¶ 28.  American Short Fiction ("ASF") also published an earlier version of the Short Story in its August 2017 literary magazine and featured it online in May 2018.  *Id.* at ¶ 29.  Audible and ASF respectively paid Larson $125 and $300 to publish the Short Story.  *Id.* at ¶¶ 28-29.

### B.    Larson Submits *The Kindest* to the Boston Book Festival

Larson eventually submitted *The Kindest* to the Boston Book Festival ("BBF").  In May 2018, the BBF selected *The Kindest* as its central literary work to feature from August to October 2018 as its One City/One Story selection.  *Id.* at ¶ 32.  Dorland, after learning of the selection, contacted ASF, the BBF, Larson's employer, and other writing organizations to complain that Larson's Work plagiarized the Factual Letter.  *Id.* at ¶ 53.  The BBF expressed concern to Larson that the Fictional Letter resembled the Factual Letter.  *Id.* at ¶ 39.  Larson then agreed to modify her Fictional Letter in *The Kindest*.  *Id.* at ¶ 40.  This revision to *The Kindest* was one of many that Larson made for the BBF.  *Id.*  In fact, Larson also revised the "story's location and certain objects, details, dialogue, gestures, word choices[,] and the ending."  *Id.*

---

[3] Dorland's friend posted, "Sonya [Larson] read a cool story about giving out a kidney, you came to mind, and I wondered if you were the source of the inspiration."  *Id.* at ¶ 21 (alteration in original).

On June 10, 2018, Dorland obtained a copyright for the Factual Letter.[4]  *Id.* at ¶ 12.  That same month, Larson retained Attorney James A. Gregorio to "deal with the hornet's nest that Dorland was stirring up."  *Id.* at ¶ 42.  Gregorio requested ASF – a non-party – to forward his contact information to Dorland or her attorney to discuss the Work.  *Id.*

### C.      Involvement of the Firm

On July 3, 2018, the Firm wrote a letter to the BBF stating that Larson's Short Story contained the Factual Letter "in whole or in part."  *Id.* at ¶ 43.  The Firm's letter states that "any decision by the BBF to publish Larson's Short Story would infringe Dorland's rights" and requests that the BBF cease and desist from further printing, copying, distributing, or undertaking any other activities related to Larson's Short Story.  Exhibit A, Cease and Desist Letter.[5]  If not, the Firm's letter states that the BBF would risk incurring damages under the Copyright Act.  Complaint, ¶ 74.  The BBF ultimately rescinded its selection of *The Kindest* as its One City/One Story selection.  *Id.* at ¶ 50.

## II.      THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OR PERSONAL JURISDICTION OVER THE DEFENDANTS, COHEN BUSINESS LAW GROUP, PC AND JEFFREY A. COHEN, ESQUIRE

The Court should dismiss this action because Larson's count for a declaratory judgment (Count IX) does not raise a dispute that is real, substantial, concrete, or definite.  Without Count IX, the Court cannot exercise supplemental jurisdiction to adjudicate her remaining tort claims.

---

[4] The Factual Letter's copyright title is "Dorland kidney chain final recipient letter July 2, 2015" and its registration number is TXu 2-101-420.  *See* Complaint, Exhibit B.

[5] Under Fed. R. Civ. P. 12(b)(1), the Court may consider documents outside the pleadings, such as exhibits and affidavits attached to the motion to dismiss, and the opposition.  *González v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).  Similarly, given that the plaintiff has explicitly incorporated the Cease and Desist letter in the Complaint, the Court may take notice of the letter and its contents without converting the instant motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56. Bedall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)("When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"). See also Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir.1988).

Moreover, the Court does not have personal jurisdiction over Defendants because they are California residents with limited in-forum conduct.  Finally, if the Court determines that it does have jurisdiction to decide this action, it should dismiss all claims against Defendants because their conduct is protected by the litigation privilege.

Larson bears the burden of proving jurisdiction.  *Amgen, Inc. v. F. Hoffman-LaRoche Ltd.*, 456 F. Supp. 2d 267, 274 (D. Mass. 2006), citing *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996).  "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).  Before the Court addresses whether the plaintiff has stated a claim for which relief can be granted, therefore, it must first address jurisdictional issues.  *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. CIV.A. 10-12043-GAO, 2012 WL 1065578, at *7 (D. Mass. Mar. 27, 2012).

**A.     The Court Does not Have Subject Matter Jurisdiction to Adjudicate this Action**

Larson contends that the Court has subject matter jurisdiction, 28 U.S.C. § 1338(a), to adjudicate Count IX and supplemental jurisdiction, 28 U.S.C. § 1367(a), to decide her remaining tort claims.  Larson's claim seeking a copyright for *The Kindest* and a declaration of non-infringement (Count IX) fails to present an "actual controversy" as required by the Declaratory Judgment Act.  28 U.S.C. § 2201(a).  Since Larson fails to establish the jurisdictional predicate of an action under the Declaratory Judgment Act, 28 U.S.C. § 2201, subject matter jurisdiction is absent.  *See Micro Focus (US), Inc. v. Genesys Software Sys., Inc.*, No. CV 14-14049-NMG, 2015 WL 4480358, at *2 (D. Mass. July 21, 2015) ("The party seeking a declaratory judgment bears the burden of demonstrating the existence of an actual controversy.").  Even if it were

present, the Court's considerable discretion is best exercised by declining, as is its right, to adjudicate what is essentially an allegation of common law tortious interference with contractual relations.

### 1.    Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction.  Once a defendant challenges a court's subject matter jurisdiction, the burden shifts to the plaintiff to establish a foundation for jurisdiction by a preponderance of the evidence.  *Padilla-Mangual v. Pavia Hosp.*, 516 F.3d 29, 31 (1st Cir. 2008); *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993) ("[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence.").  To determine whether a plaintiff has met its burden, the Court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor."  *Fothergill v. United States*, 566 F.3d 248, 251 (1st Cir. 2009).  The Court may also consider "whatever evidence has been submitted, such as depositions and exhibits."  *Carroll v. United States*, 661 F.3d 87, 94 (1st Cir. 2011) (citation omitted).

### 2.    Declaratory Judgment Act

The Declaratory Judgment Act allows "any court of the United States" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," but only "[i]n a case of actual controversy within [that court's] jurisdiction."  28 U.S.C. § 2201(a); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 916 F.3d 98, 110–11 (1st Cir. 2019).  The Act does not provide an independent basis for federal

jurisdiction, but rather is limited to cases of "actual controversy" that are justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations omitted); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 118, 127 (2007) (the Act creates a remedy, not an independent source of subject matter jurisdiction).

To satisfy the "actual controversy" requirement, the Court considers whether there is "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*, citing *MedImmune, Inc.*, 549 U.S. at 127. As the First Circuit recently summarized:

> Although there is not "the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not," [*MedImmune, Inc.*, 549 U.S. at 127], "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 916 F.3d at 110-11.

### 3.     There is no dispute between Larson and the Firm that is real, substantial, definite, or concrete

There is no actual controversy between Larson and the Firm that warrant the Court to exercise subject matter jurisdiction. The BBF has already rescinded its selection of *The Kindest* as its One City/One Story selection. Complaint, ¶ 50. Where there is no anticipated or imminent publications of *The Kindest*, there is no justiciable controversy. Accordingly, Larson has failed to establish that an infringement dispute between the parties is "of sufficient immediacy and reality" to warrant a declaratory judgment. *Micro Focus (US), Inc.*, No. CV 14-14049-NMG, 2015 WL 4480358, at *3, citing *MedImmune*, 549 U.S. at 127. Larson concedes that her request

for a declaratory judgment is the sole basis that this Court has jurisdiction to hear her claims; she alleges that the Court has supplemental jurisdiction to hear her remaining tort claims. *See* Complaint, p. 2. However, there is no justiciable controversy between the parties because the BBF has already rescinded its selection of *The Kindest*. The only remaining dispute is whether that decision resulted in tortious damages, a dispute of state law that can and should be adjudicated in state court. The Court, therefore, should dismiss Count IX. Without Count IX, the Court should dismiss the entire action because it no longer would have the basis for subject matter jurisdiction to adjudicate Larson's tort claims.

### 4.    The Declaratory Relief Sought by Larson is Not  Properly Before This Court

The relief Larson seeks in Count IX can be divided into two categories: (1) Larson requests a judgment that she owns and possesses a copyright for *The Kindest*; and (2) Larson requests a judgment that she has not infringed on *any* other rights Dorland *may* have under the Copyright Act.

As to the former, Larson has not alleged that she has registered *The Kindest* with the United States Copyright Office, the appropriate venue to register copyrights. *See* 17 U.S.C. § 408 (outlining steps to register a copyright). The declaration that Larson seeks – that she owns a copyright to *The Kindest* – is akin to seeking copyright registration. Instead of utilizing the procedures prescribed in 17 U.S.C. § 408, Larson now seeks an end-run around the copyright registration procedures that Congress enacted. A federal court cannot and should not be available to litigants seeking regulatory acknowledgement when a statutory procedure exists for the same relief.

As to the latter, there is no contemplated or alleged infringement where the BBF is not publishing *The Kindest*. As a result, Larson is seeking a blanket order of non-infringement in the

present and future.  As discussed above, without imminent infringement the matter is not ripe and the Court cannot reach a sweeping judgment on such speculative grounds.

> **B.      The Court Does Not Have Personal Jurisdiction Over the Firm**

Neither the Firm nor Attorney Cohen are Massachusetts residents, own property in Massachusetts, or have otherwise consented to this Court's jurisdiction.  The Complaint fails to set forth any facts showing the required minimum contacts with Massachusetts to satisfy the Long Arm statute.

> **1.      Standard of Review Pursuant to Fed. R. Civ. P. 12(b)(2)**

When analyzing a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden showing that jurisdiction exists through pleadings, affidavits, and other competent evidence.  *Droukas v. Divers Training Acad., Inc.*, 375 Mass. 149, 151 (1978).  The Court will "accept the allegations in the Complaint as true and construe the facts in the light most favorable to the plaintiff."  *Phillips v. Prairie Eye Center*, 530 F.3d 22, 24 (1st Cir. 2008).

When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the "prima facie" standard governs its determination. *See United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43 (1st Cir. 1993); *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).  "Under this standard, it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." *United Elec. Radio & Mach. Workers of Am.*, 987 F.2d at 44 (internal quotation marks omitted).  "The prima facie showing must be based upon evidence of specific facts set forth in the record."  *Id.*  To meet this requirement, the plaintiff must "go beyond the pleadings and make affirmative proof."  *Id.*

(internal quotation marks omitted).  In evaluating whether the prima facie standard has been satisfied, however, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618-19 (1st Cir. 2001) (citation omitted). The prima facie method is appropriate here, as it is a "useful means of screening out cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus."  *Sporfschahnel New England Ltd. P'ship v. Fancaster, Inc.*, 2010 WL 3895177 at *3 (D. Mass. 2010), *citing Swiss Am. Bank, Ltd.*, 274 F.3d at 618.

## 2.  Massachusetts does not have general jurisdiction over the Firm or Attorney Cohen

Larson cannot establish that the Court has general or specific jurisdiction over the Firm. A court may exercise authority over a defendant by virtue of either general or specific jurisdiction.  *Massachusetts Sch. of Law at Andover, Inc. v. American. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).  General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit.  *United Elec., Radio & Mach. Workers of Am.*, 960 F.2d at 1088.

Here, the allegations in the Complaint limit the Firm's behavior to sending letters from California to North Carolina and Massachusetts.  Specifically, the Complaint alleges that the Firm sent the cease and desist letter and at least three other letters to Larson's attorneys.  Absent from the Complaint are any allegations that the Firm is domiciled in Massachusetts, owns property in Massachusetts, or transacts business regularly in Massachusetts.  *See* Complaint, ¶¶ 5, 7.  Further, Larson has not alleged that the Firm has had any contacts with Massachusetts unrelated to this action.  *See generally*, Complaint.  In the absence of a sufficient showing of continuous and systematic activity in Massachusetts, Larson cannot meet her burden of

demonstrating that Massachusetts has general jurisdiction over the Firm.  *United Elec., Radio & Mach. Workers of Am.*, 960 F.2d at 1088.

### 3. Massachusetts does not have specific jurisdiction over the Firm or Attorney Cohen

Larson also cannot establish that the Court has specific jurisdiction over the Firm.  *See Massachusetts Sch. of Law at Andover, Inc.*, 142 F.3d at 34.  ("In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction.").  To establish specific jurisdiction, Larson must demonstrate that the Massachusetts long-arm statute grants jurisdiction over the Firm and that the exercise of that jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.  *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 720 (1st Cir. 1991) (per curiam).  The constitutional analysis has three distinct components: (1) relatedness; (2) purposeful availment; and (3) reasonableness."  *Hannon v. Beard*, 524 F.3d 275, 282 (1st Cir. 2008) (internal quotations and citations omitted).   If the plaintiff cannot satisfy the relatedness or purposeful availment components, the Court will not review the reasonableness element in its jurisdictional analysis.  *Swiss Am. Bank*, 274 F.3d at 625; *see Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995) (plaintiff bears the burden "of persuasion on the elements of relatedness and minimum contacts").

### (a) Relatedness

To satisfy the relatedness component, Larson's claims must "arise out of, or be related to, the defendant's in-forum activities."  *Hannon*, 524 F.3d at 282; *see Adamchek v. Costco Wholesale Corp.*, No. 1:08-CV-10182, 2008 WL 7536878, 2008 WL 7536878, at *5 (D. Mass. June 11, 2008).  In particular, the Firm's in-state conduct must form an important, or at least material, element of proof in Larson's case.  *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005).

The allegations in the Complaint demonstrate that the Firm had minimal in-forum activities.  Indeed, Larson's claims against the Firm stem from the cease and desist letter that it sent the BBF and the Firm's ensuing correspondence with Larson's counsel; correspondence that Laron's counsel initiated.  The Firm's letter to the BBF – a non-party – does not constitute in-forum activity.  Simple allegations of acts by a non-party which may have been motivated by a letter received in forum do not give rise sufficient in-forum activity.  *See Adamchek*, No. 1:08-CV-10182, 2008 WL 7536878, at *5 (D. Mass. June 11, 2008) (email communications alone did not satisfy the contacts requirement).  Moreover, speculative allegations as to why BBF decided to rescind its offer to publish *The Kindest* is the exact type of but-for arguments that the Court should reject.  *Harlow*, 432 F.3d at 61 (broad but-for arguments are generally insufficient).

The correspondence between the Firm and Larson's counsel is insufficient to satisfy the relatedness component because the Firm was responding to correspondence that Larson's counsel initiated.  *Hannon*, 524 F.3d at 284 (defendant's contacts "must be voluntary and not based on the unilateral actions of another party").  Furthermore, the counsel that contacted the Firm was from North Carolina; Larson later hired Massachusetts counsel.  Larson cannot manufacture the relatedness component of personal jurisdiction by abandoning her out-of-forum counsel, retaining in-forum counsel, and directing her in-forum counsel to initiate correspondence – with threats of litigation and a thirty-day response deadline, G. L. c. 93A – to the Firm.  *See id.*

### (b)    Purposeful Availment

Even if Larson could demonstrate that the Firm's contacts with Massachusetts were related to this action, she must also show that the Firm's contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the

benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." *Hannon*, 524 F.3d at 284.  To satisfy the purposeful availment prong, the defendant's contacts "must be voluntary and not based on the unilateral actions of another party" and "must be such that [the] defendant could reasonably anticipate being haled into court there."  *Id.*  To sustain her burden, Larson "must do more than simply surmise the existence of a favorable factual scenario; [s]he must verify the facts alleged through materials of evidentiary quality."  *Barrett v. Lombardi*. 239 F.3d 23, 27 (1st Cir. 2001).

Larson is unable to establish the purposeful availment component because the Firm did not avail itself to benefits and protections of the laws of Massachusetts.  The Firm always maintained that should litigation arise, California would be the proper venue.  In its communications with Larson's counsel, the Firm maintained that "the only appropriate jurisdiction applicable to the dispute between our clients as to your client's infringement of her copyright is California, with the appropriate venue being Los Angeles."  The Firm's letter also asserts that if Larson files suit in Massachusetts, it will swiftly move to dismiss the suit for lack of jurisdiction.  Simply put, the Firm's responses to Larson's counsels' correspondence is insufficient to establish that it purposefully availed them to Massachusetts.  *Hannon*, 524 F.3d at 284.  Furthermore, given the protections afforded by the litigation privilege, discussed in detail below, the Firm had no reasonable expectation that it would be sued in a Massachusetts court for actions taken on behalf of a California client.

(c)      **Adjudicating this Dispute in Massachusetts is Unreasonable**

To determine the reasonableness element of whether to exercise personal jurisdiction over a defendant, a court considers:

> [T]he defendant's burden of appearing in the forum state, the
> forum state's interest in adjudicating the dispute, the plaintiff's

interest in obtaining convenient and effective relief, the judicial
system's interest in obtaining the most effective resolution of the
controversy, and the common interests of all sovereigns in
promoting substantive social policies.

*A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 61 (1st Cir. 2016).

Adjudicating this dispute in Massachusetts would impose a significant burden on the Firm. Attorney Cohen resides in California. Requiring him to retain Massachusetts counsel and travel to Massachusetts to defend against Larson's claims will be inordinately expensive. Massachusetts has limited interest in adjudicating this dispute because the conflict does not raise policy questions. Although Larson's interest in relief is real, her interest in the venue is less important because she can request the same relief in a more appropriate jurisdiction.

Accordingly, the Court should dismiss Larson's claims because she cannot meet her burden establishing that the Court has personal jurisdiction over the Firm.

## III. ALL ALLEGATIONS AGAINST THE FIRM ARE PROTECTED BY LITIGATION PRIVILEGE

Even if the Court determines that it has subject matter jurisdiction through Count IX and personal jurisdiction over the Firm, it should nevertheless dismiss all claims against the Firm under Fed. R. Civ. P. 12(b)(6) because their conduct is protected by the litigation privilege.

### A. Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss an action against it based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a plausible entitlement to relief." *Foran v. Styker Sales Corp.*, 2011 WL 652778, *1 (D. Mass. Feb. 14, 2011), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). The grounds of plaintiff's "entitlement to relief requires more than labels and conclusions." *Bell Atl.*

*Corp.*, 550 U.S. at 555.  The Court must accept as true all of the factual allegations contained in the complaint, but does not extend this consideration to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009).

### B.      The Firm's Conduct is Protected by the Litigation Privilege

A court may dismiss an action under Fed. R. Civ. P. 12(b)(6) if the alleged wrongful acts are protected by the litigation privilege.  *See Riverdale Mills Corp. v. Cavatorta North Am., Inc.*, 189 F.Supp.3d 317, 321 (D. Mass. 2016); *see also Smartling, Inc. v. Easyling LLC*, 2016 WL 913142 at *1 (D. Mass. 2016).  "[A] motion to dismiss on the basis of the litigation privilege only succeeds when the entitlement to the privilege is demonstrated by the complaint itself." *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, 2012 WL 1065578 at *23 (D. Mass. 2012). Moreover, application of the litigation privilege is fact-specific.  *Riverdale Mills Corp.*, 189 F.Supp.3d at 321.

"The litigation privilege protects statements made in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Riverdale Mills Corp.*, 189 F.Supp.3d at 321.  The privilege "rests on the policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Encompass Ins. Co. of MA v. Giampa*, 522 F.Supp.2d 300, 308 (D. Mass. 2007).  The privilege may extend to statements made to non-parties, so long as the statement is pertinent to the supervening litigation.  *Id.*; *Loomis v. Tulip, Inc.*, 9 F.Supp.2d 22, 25 n.4 (D. Mass. 1998) ("It is, therefore, apparent that nonparty status does not act as a bar to application of the litigation privilege where either the communicatee or the communicator is the nonparty to the relevant litigation.").  The privilege applies broadly, even to statements made maliciously or in bad faith.

*Riverdale Mills Corporation*, 189 F.Supp.3d at 321.  The only statements taken in the context of litigation that would not be so protected are statements that are defamatory on their face.  *Id.*

The gravamen of Larson's claim is that the Firm, when it wrote the letter to the BBF, knew or should have known that Dorland had no legal basis for claiming statutory damages because the Factual Letter copyright was registered almost a year after the Short Story was initially published by ASF and Audible.[6]  The Firm should have known, Larson continues, that under 17 U.S.C. § 412, statutory damages and attorney's fees under the Copyright Act are available only if Dorland's Factual Letter was registered with the Copyright Office before the claimed infringement.

The Firm communicated with the BBF and Larson's attorneys to protect its client's intellectual property.  The BBF was already on notice of the controversy surrounding *The Kindest* because Dorland had previously contacted the organization in June 20198.  Complaint, ¶¶ 33-34.  The Firm sent its cease and desist letter on July 3.  Larson's allegations, at best, are that the Firm's legal analysis in the cease and desist letter was incorrect.  Legal analysis, however, is an activity that the litigation privilege protects if it is part of communications preliminary to litigation.  *See Encompass Ins. Co. of MA*, 522 F.Supp.2d at 308 ("The absolute [litigation] privilege protects statements made in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.") (citations and internal quotations omitted).

Even accepting Larson's allegations that the Firm only sent the cease and desist letter to prevent the BBF from publishing *The Kindest* as true (the Firm disputes this), the Firm's

---

[6] To the extent Larson is attempting to assert a claim for copyright misuse, the Court still does not have subject matter jurisdiction.  *Grubb & Weaver, PLLC*, No. CIV.A. 10-12043-GAO, 2012 WL 1065578, at *32 (holding that copyright misuse may not be brought as an independent cause of action).

correspondence is *still* protected by the litigation privilege because it did not defame Larson.  *Id.* The Firm did not make statements to the press or another public forum. *Contrast Encompass Ins. Co. of MA*, 522 F.Supp.2d at 308 (press release published in a public trade publication was not privileged because the statements were to the media and went beyond restating information that had already been published).  Rather, the Firm's statements were made in furtherance of protecting its client's intellectual property rights; its communications were limited to the potential publisher and the author's attorneys.

A finding that the Firm's cease and desist letter is not protected by the litigation privilege would reflect an ominous departure from case law protecting routine advocacy.  *Davidson v. Cao*, 211 F.Supp.2d 264, 275 (D. Mass. 2002) (quotations and citations omitted) (litigation privilege "rests on the policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients"); *Encompass Ins. Co. of MA*, 522 F.Supp.2d at 308.  Such a ruling, in addition to being a departure from established jurisprudence, would have a chilling effect on the practice of law.  Accordingly, the Court should dismiss all counts against the Firm under Fed. R. Civ. P. 12(b)(6).

## IV.     CONCLUSION

For the reasons set forth above, Cohen Business Law Group, P.C. and Jeffrey A. Cohen, Esq. respectfully request that this Court ALLOW their Motion to Dismiss.

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.1(d), counsel for the Defendants, Cohen Business Law Group, P.C. and Jeffrey A. Cohen, Esquire, hereby requests a hearing for oral argument in connection with this motion.

THE DEFENDANTS,
COHEN BUSINESS LAW GROUP, PC,
AND JEFFREY A. COHEN, ESQUIRE,
BY THEIR ATTORNEYS,


DATED: 04/01/2019          */s/ Matthew H. Greene, Esq. (BBO# 673947)*
                          Mark W. Shaughnessy, Esq. (BBO# 567839)
                          mshaughnessy@boyleshaughnessy.com
                          Matthew H. Greene, Esq. (BBO# 673947)
                          mgreene@boyleshaughnessy.com
                          Jeffrey W. Gordon, Esq. (BBO# 698874)
                          jgordon@boyleshaughnessy.com
                          Boyle | Shaughnessy Law, P.C.
                          695 Atlantic Avenue, 11th Floor
                          Boston, MA  02111
                          Phone: (617) 451-2000
                          Fax: (617) 451-5775

## L.R. 7.1(a)(2) CERTIFICATION

I, Matthew H. Greene, certify that on March 29, 2019, I conferred with Plaintiff's counsel pursuant to Local Rule 7.1(a)(2), and Plaintiff's counsel indicated that he would oppose this motion.

DATED: 04/01/2019          */s/ Matthew H. Greene, Esq. (BBO# 673947)*
                          *Counsel for Defendants, Cohen Business Law*
                          *Group, PC and Jeffrey A. Cohen, Esquire*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 1st day of April, 2019.

| *Counsel for Plaintiff, Sonya Larson:* | *Defendant, Dawn Dorland Perry* |
|---|---|
| Andrew D. Epstein, Esq. | Appearance not yet entered for this Party |
| Barker, Epstein & Loscocco | |
| 176 Federal Street, Suite 502 | |
| Boston, MA 02110 | |

*/s/ Matthew H. Greene, Esq. (BBO# 673947)*
*Counsel for Defendants, Cohen Business Law Group, PC and*
*Jeffrey A. Cohen, Esquire*