UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                    Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS,
COHEN BUSINESS LAW GROUP, PC, AND JEFFREY A. COHEN,
AND MEMORANDUM IN SUPPORT THEREOF**

**<u>Plaintiff, Sonya Larson Requests Oral Argument</u>**

Plaintiff opposes the Motion to Dismiss of Cohen Business Law Group, PC (the "Law

Firm") and Jeffrey A. Cohen ("Attorney Cohen").  Unless otherwise stated, the Law Firm and

Attorney Cohen will be collectively referred to as the "Law Firm."  Plaintiff will be referred to as

"Larson," and Defendant, Dawn Dorland Perry will be referred to as "Dorland."

As grounds for this Opposition, Larson states as follows:

This is an action between a published author (Larson) and an aspiring author (Dorland)

and the law firm and principal attorney that represented Dorland.  The Law Firm has challenged

Larson's complaint on several fronts.

First, the Law Firm denies that there is an actual case or controversy between Larson and

the Law Firm under Article III, Section 2, Clause 1 of the Constitution that will permit this Court

to render declaratory judgment.  Second, the Law Firm disputes that this court has jurisdiction over the California defendants under the Massachusetts Long Arm Stature, M.G.L. c. 223A § 3. Third, the Law Firm claims that it is protected by the "litigation privilege" which protects statements made in communications preliminary to litigation as long as the statements are pertinent to the litigation.

As will be shown, this court has both subject matter jurisdiction over Larson's claim for declaratory judgment as well as personal jurisdiction over the Law Firm and Attorney Cohen for purposefully causing tortious injury within the Commonwealth and for violating M.G.L. c. 93A. In the alternative, the Law Firm's actions are so inextricably intertwined with what Dorland did that this Court should exercise supplemental jurisdiction over the Law Firm.  Furthermore, Larson will show that the litigation privilege extends only to statements made preliminary to litigation but <u>not</u> to misstatements of fact and law that were made by the Law Firm to mislead and intimidate potential litigants about damages available under the Copyright Act.  Knowingly making a false statement of material fact or law to a third person is a violation of Rule 4.1 of the Massachusetts Rules of Professional Conduct.[1]

### <u>Legal Standard to Survive a Motion to Dismiss</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on it face.'"  <u>Ashcroft v Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v Twombly</u>, 550 U.S. 544, 570 (2007)).  In ruling on a motion to dismiss, a court must accept as true all well-pled facts alleged in the complaint and "in the light most favorable to the nonmovant and draw all reasonable inferences

---

[1] California now has an identical provision.  See Rule 4.1 of the Rules of the State Bar of California, proposed on November 17, 2016, and adopted unanimously, effective November 1, 2018.  The California Rule essentially tracks the language of American Bar Association, Model Rule 4.1.

therefrom."  <u>In re: Loestrin 24 Fe Antitrust Litigation</u>, 814 F.3d 538, 549 (1st Cir. 2016) (citations omitted).

In addition to the complaint, a district court considering a Rule 12(b)(6) motion may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65 (1st Cir. 2008) (citation omitted).   See also, <u>Jovani Fashion, Ltd. v. Cinderella Divine, Inc.</u>, 808 F.Supp.2d 542, 545 (S.D.N.Y. 2011) (courts may also consider "documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit...."

## <u>Facts pertinent to this Motion</u>

Sonya Larson works at GrubStreet, Inc., a not-for-profit creative writing center located in Boston.  GrubStreet supports writers at all stages of development through workshops, seminars, events and programs.  [Complaint ¶ 2; <u>see also</u>, https://grubstreet.org]  Additionally, Larson is very active in the writing community and she has received honors and fellowships from organizations such as the Bread Loaf Writers' Conference at Middlebury College (Vermont), Vermont Studio Center, University of Wisconsin-Madison, and St. Botolph Club Foundation. (<u>See</u>, https://larsonya.com).

Larson is a published author whose short story entitled, *The Kindest* is at the heart of this Action.[2]  *The Kindest*, hereinafter the "Short Story" or the "Story," has received wide-spread acclaim and was published both as an audio book and an on-line book.  The Story also won a prestigious competition in 2018, organized by the Boston Book Festival, a not-for-profit

---

[2] A copy of *The Kindest* is attached to the Complaint as Exhibit C.  *The Kindest* was registered with the U.S. Copyright Office <u>before</u> this Action was filed and it was given Registration No. TX-8-678-446, effective December 17, 2018.  A copy of the Certificate of Registration is attached hereto as "Exhibit A."

organization that promotes reading and ideas for writers and bibliophiles. [Complaint ¶ 30] Furthermore, after the Complaint in this Action was filed, Larson learned that her Story was accepted for publication in an anthology of short stories to be published in the Fall 2019, by Ohio University Press/Swallow Press. (Larson Affidavit, attached as "Exhibit B," ¶ 1.)

*The Kindest* is a story about a kidney donation. The kidney was given anonymously by a wealthy, white, female donor to a poor Chinese-American female recipient. [Complaint ¶ 18]

Dorland claims to be an anonymous kidney donor. Dorland's 2015 Facebook post contains a letter she either sent or intended to send to the recipient of her kidney. In the letter, Dorland introduces herself, explains why she donated her kidney, and asks to meet her recipient someday. Dorland's letter is similar in many respects to several sample letters that are readily available online for use by kidney donors to send to their recipients.[3] A copy of Dorland's letter (hereinafter the "Factual Letter" or the "2015 Letter" is attached as Exhibit C.

While Dorland's 2015 Letter was one of many inspirational elements for Larson's Short Story, Larson did not copy the Letter. Larson uses the letter in her Story as a literary device to introduce her characters. Larson's letter is not the central focus of the Story. [Complaint ¶ 19] A copy of the letter Larson uses in the final version of *The Kindest* (the "Fictional Letter"), is attached as Exhibit D. There is not one phrase or group of words in Larson's Fictional Letter that matches the language used in Dorland's Factual Letter.

The concept or idea of writing a letter to a kidney recipient is not capable of being copyrighted. Johnson v. Gordon, 409 F.3d 12, 19 (1st Cir. 2005) ("copyright law protects original expressions of ideas but it does not safeguard either the ideas themselves or banal

---

[3] See, for example, https://www.kidney.org/atoz/content/writing-to-transplant-recipients-guide-donor-families-and-living-donors. Other letters can be found by doing a Google search using the phrase: "Letters from organ donors to anonymous recipients."

expressions of them"); <u>Matthews v. Freedman</u>, 157 F.3d 25, 27 (1st Cir. 1998) ("A major limitation on what is protectible under the copyright laws is capsulized in the notion that copyright protects the original expressions of ideas but not the ideas expressed.")

### <u>*The Kindest* was written in several drafts.</u>

Larson wrote several versions of *The Kindest* over a period of about one year. The first version was accepted for publication in December 2015, by www.Audible.com ("Audible") as an online audio story. [Complaint ¶ 26] After Audible accepted the Short Story, Larson continued to refine *The Kindest* in order to smooth out the language, rhythm and tone, and she sent her revisions to Audible. [Complaint ¶ 27] Larson was paid $125 for the audio recording of the Story. [Complaint ¶ 28]

On June 22, 2016, Larson read a selection from *The Kindest* at a Boston bookstore. A mutual acquaintance of both Larson and Dorland attended the reading. Larson did not read from that part of *The Kindest* that included Larson's letter from the kidney donor to her recipient. Nevertheless, the reading was clearly about a kidney donation where the donor and recipient finally meet. The mutual acquaintance posted a comment about Larson's Short Story on Dorland's Facebook page asking if she was the inspiration behind Larson's Story. Dorland apparently saw the post. [Complaint ¶ 21]

Once Dorland learned that Larson was writing a story about a kidney donation, Dorland began to hound Larson with emails and text messages insinuating that the Short Story in its entirety was based on Dorland's life experiences. Dorland asked to read the Short Story. [Complaint ¶ 22]

In August 2017, about a year after Audible published the Short Story, American Short Fiction ("ASF") published an early version of *The Kindest* in its literary magazine, and featured the Work online in May 2018.  Larson was paid $300 by ASF.  [Complaint ¶ 29]

Dorland was obviously angry, and she started a campaign to discredit Larson by calling her a plagiarist.  Dorland contacted Audible, Larson's writing group, Larson's employer, college writing programs and others, accusing Larson of plagiarism.  [Complaint ¶¶ 60-61].  Dorland acted relentlessly, calling and emailing various ASF employees and board members for weeks, sometimes multiple times per day, asserting her unfounded claim of plagiarism. [Complaint ¶¶ 60-61].  Dorland's allegations of plagiarism were devastating to Larson.

Dorland contacted ASF sometime after it published *The Kindest*, and accused Larson of "plagiarizing" her 2015 Letter in the Story.  ASF told Larson that it did not have the financial means nor sufficient staff to deal with Dorland's demands, and ASF, in consultation with Larson, decided to pull *The Kindest* from its website.  [Complaint ¶ 63].

In 2018, Larson submitted her Short Story to the BBF. [Complaint ¶ 30].  The BBF presents year-round events culminating in an annual festival that promotes reading and ideas for writers and readers.  As part of its annual festival, which is the organization's premier event, the BBF features a short story that it distributes extensively in the Boston area through a program called, "One City/One Story."  Over 30,000 copies of the selected story are distributed each year to BBF members, participants in the Festival, local libraries and participating businesses.  The Festival features the story for educational and discussion purposes in the hope of incorporating divergent audiences in new conversations about an important topic.  [Complaint ¶ 30-31].

In May 2018, Larson was honored that *The Kindest* was chosen by the BBF to be the central literary work that would be featured from August through October 2018, as the BBF's One City/One Story selection.  [Complaint ¶ 32]

Eventually, Dorland's claim of plagiarism, which is damaging enough on its own especially to a writer, escalated to copyright infringement when Dorland hired Attorney Cohen and the Law Firm to write to the BBF in order to try to stop the BBF from using *The Kindest* in its One City/One Story program.

Attorney Cohen's letter to the BBF dated July 3, 2018, demanded that the BBF not use Larson's Story and threatened that if it did, it would be liable under 17 U.S.C. § 504(c), for statutory damages of up $150,000 plus attorney's fees.  Attorney Cohen's letter is referenced in the Complaint at ¶ 45, and a copy is attached hereto as Exhibit E.[4]

Attorney Cohen's letter says the Law Firm is copyright counsel to Dorland.  This is consistent with the Law Firm's letterhead (Exhibit E), which touts the Firm's areas of expertise including copyright law and litigation.  Despite this claimed expertise, Attorney Cohen said in his letter that if the BBF does not cease and desist from copying, printing and distributing *The Kindest*, his office would be left with no alternative but to seek "the full measure of penalties for statutory copyright infringement under 17 U.S.C. § 504(c), which . . . could be as high as $150,000."   Attorney Cohen knew or should have known that damages for copyright infringement are not available under §504(c) unless the allegedly infringed work is registered before it is infringed or within 90 days after its first publication.  [Complaint ¶ 75].

---

[4] In exercising caution, the letters from the Law Firm to the BBF were not attached to the Complaint because they were sent as "settlement communications" pursuant to Federal and California Rules of Evidence.  Nevertheless, these letters were referenced in the Complaint in Exhibit H, the Chapter 93A demand letters to Attorney Cohen and Dorland.

While Larson included a kidney donor letter in her Short Story in 2016, Dorland did not register the copyright to her 2015 Letter until June 10, 2018.[5]  Section 412 of the Copyright Act (Title 17) does not permit recovery of statutory damages or attorney's fees for works that were registered with the Copyright Office after an alleged infringement.  There was and is absolutely no statutory basis for the Law Firm's demand that Larson pay "penalties for statutory copyright infringement" and reimburse Dorland for her legal fees.  However, there is legal basis for Larson to expect reimbursement for her fees from all of the Defendants.  Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers (ASCAP), 642 F.3d 87, 90 (1st Cir. 2011) (Section 412 only applies to plaintiffs who assert copyright infringement claims and not to defendants who successfully defend against such claims).  If Dorland is entitled to any damages, she is limited to actual damages plus any profits earned by Larson from the publication of her Short Story.[6]

Thus, there is no way that Dorland can recover statutory damages or attorney's fees under the Copyright Act.  The Law Firm knew this or should have known this.  Similarly, Attorney Michael S. Hanna, an attorney in the Law Firm, doubled-down on Cohen's claim for statutory damages and attorney's fees on behalf of Dorland in a letter dated July 20, 2018, sent to the BBF.  A copy of Attorney Hanna's letter, which is referenced in the Complaint ¶ 99, and in Exhibit H to the Complaint, is attached hereto as "Exhibit F."

On information and belief, the BBF rescinded the selection of *The Kindest* as its One City/One Story winner rather than risk a legal challenge to the Story and face possible substantial statutory damages and its own attorney's fees as well as those of Dorland.  The Law Firm's

---

[5] See Complaint "Exhibit B," Copyright Registration record for "Dorland kidney chain final recipient letter July 2, 2015" Registration No. TXu 2-101-420, underline June 10, 2018.

[6] Larson earned a total of $425 to date for her Short Story. It hard to imagine that any portion of this sum is profit.

escalating demands, the prospect of huge damages and the possibility of adverse publicity were too much for a small non-profit to risk.  [Complaint ¶¶ 48-49].

Even though the BBF decided not to use Larson's Short Story on August 13, 2018, Dorland continued with her campaign to discredit Larson by pressing her unfounded allegations of plagiarism and copyright infringement.  [Complaint ¶ 53].  The only thing that appears to have quelled Dorland's disparaging campaign against Larson is this lawsuit.   In fact, neither the Law Firm nor Attorney Cohen have ever notified Larson's counsel that it was terminating its representation of Dorland.  As late as October 26, 2018, Attorney Cohen responded to Larson's Chapter 93A demand letter stating that the Law Firm 'is counsel for Dawn Dorland."  See, Exhibit I to the Complaint.

### Lack of Subject Matter Jurisdiction.

While Larson lost the opportunity to have *The Kindest* used by the BBF as part of its One City/One Story project, she continued to market the Story.  After the Complaint in this Action was filed, Larson was notified that *The Kindest* is going to be included in an upcoming anthology of short stories to be published in the Fall 2019.  Larson Aff. ¶ 1.  Also, since the BBF has already printed 30,000 copies of *The Kindest*, it is possible that the BBF can be persuaded to distribute the Story in the future, either as part of an upcoming One City/One Story project, or as a teaching tool for writers on copyright law.   However, unless and until this Court declares that Larson's Story does not infringe Dorland's copyright in the 2015 Letter, two things seem certain:

1.     The BBF is not going to reproduce, distribute or display *The Kindest*; and

2.     Larson is not 100% certain that Dorland will let Ohio University

        Press/Swallow Press or anyone else publish *The Kindest*.

These fears are not mere speculation.  For example, even after Larson's legal counsel sent a demand letter to Dorland under M.G.L. c. 93A, on September 27, 2018 [a copy of which is attached to the Complaint as Exhibit H], Dorland continued to contact writer's groups and conferences closely associated with Larson.  [Complaint ¶ 53]   The only thing that appears to have stopped Dorland from continuing her campaign against Larson is the filing of this lawsuit. Without a declaration from this Court that Larson's Short Story does not infringe Dorland's 2015 Letter, Dorland will be free to continue to claim that Larson infringed her copyright.

## Case or Controversy under Article III

The Law Firm claims that this Action does not present a case or controversy within the meaning of Article III, and therefore, the Court is powerless to issue a declaratory judgment in this Action.  In its July 3, 2018 letter, the Law Firm threatened "formal action" to protect Dorland's rights, which would include preventing the intended publication of *The Kindest* and seeking "the full measure of penalties for statutory copyright infringement."  (Exhibit E)

If Larson did not bring the present law suit, Dorland's threat of an action for copyright infringement and damages would be hanging over Larson's head until either Dorland sued or the statute of limitations expired.

This is the same dilemma that the court encountered in Young Women's Christian Association of U. S., Nat. Board v. HMC Entertainment, Inc., No. 91 CIV. 7943 (KMW), 1992 WL 279361, at *2–3 (S.D.N.Y. Sept. 25, 1992) (hereinafter cited as "YWCA").  In YWCA, the court said that the Declaratory Judgment Act ("DJA") (28 U.S.C. § 2201), brings issues before courts that otherwise might require a delay until the declaratory judgment defendant brings a coercive action.  The fundamental purpose of the DJA is to,

avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.  Additionally, actions for declaratory judgment should be permitted 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' (citations omitted)

In light of defendant's statements in YWCA that it intended to "take all necessary legal action" to protect the work it undertook with respect to its contract with plaintiff, the court found that plaintiff provided sufficient evidence of an actual controversy to sustain the action for a declaratory judgment.

Mailer v. Zolotow, 380 F. Supp. 894, 895 (S.D.N.Y. 1974), also provides authority for using declaratory judgments in copyright disputes.  "Suits for declaratory judgments are not uncommon in the area of patents and copyrights.  If a defendant has threatened plaintiff with suit, a justiciable controversy is ordinarily present.  Indeed, a justiciable controversy exists even where there has been no actual threat of suit, so long as defendant has notified plaintiff that defendant claims his copyright has been infringed."  (citations omitted).

The Supreme Court confirmed the use of declaratory judgments in patent cases in Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S.Ct. 764 (2007), which involved a dispute between a patent licensee against a licensor.  Defendant (licensor) claimed that plaintiff (licensee) owed it royalties under their agreement, for producing a drug that plaintiff was manufacturing under defendant's patent.  Although plaintiff believed that no royalties were due because the patent was invalid and unenforceable, plaintiff believed that defendant's letter was a clear threat that if plaintiff did not pay royalties, plaintiff could be liable for treble damages and attorney's fees.

Plaintiff paid the royalties under protest and filed an action for declaratory judgment. The Supreme Court held that plaintiff was not required to break or terminate its license

agreement before seeking a declaratory judgment that the underlying patent is invalid,

unenforseable or not infringed.  Plaintiff's complaint for declaratory judgment action satisfied

the case or controversy requirement of Article III and presented a substantial controversy

between parties having adverse legal interests of sufficient immediacy and reality to warrant

relief.  Id.

Larson alleges that Dorland continued to call and email members of Larson's writing

group through September 2018, long after the BBF rescinded its decision to use *The Kindest* as

its One Story/One City selection, accusing them of "complicity" and "artistic betrayal."  Larson

further alleges that Dorland repeatedly called and emailed current and former staff of Bread Loaf

through September 2018, promoting the utterly false claim that Larson applied for and received a

prestigious fellowship with plagiarized material.  [Complaint ¶ 53.]

Under the reasoning in Medimmune, the only viable remedy available to Larson is a

claim for declaratory judgment.  Otherwise, Larson would have had to wait until Dorland

decided to sue for copyright infringement, if she was ever going to do this.  With the prospect of

a copyright infringement action hanging over her head, Larson could not wait for Dorland to act.

Larson wanted her Story to be disseminated and she had to act.  Nothing else was going to

effectively stop Dorland from continuing to accuse Larson of copyright infringement.  Given

Dorland's past behavior, the controversy between the parties is of sufficient immediacy to

warrant declaratory judgment.  Declaratory judgment will finalize the controversy and bring

Larson relief from uncertainty.

### Subject matter jurisdiction

The Law Firm says that if Larson's suit belongs anywhere, it is in state court and not in

federal court because Larson's tortious interference and Chapter 93A claims against the Law

12

Firm are not really copyright related.  The Law Firm is missing the point of jurisdiction over federal claims.  Federal courts have exclusive jurisdiction over matters involving copyrights.  28 U.S.C. § 1338(a).  "An action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ..., or asserts a claim requiring construction of the Act, ..., or, at the very least . . . presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.  Gener-Villar v. Adcom Grp., Inc., 417 F.3d 201, 203–04 (1st Cir. 2005)

Larson's complaint against the Law Firm clearly involves the question of whether the Law Firm was truthful in making material statements of fact or law to the BBF about potential copyright damages available to Dorland.  Larson alleges that the Law Firm, experts in copyright law and litigation, were not truthful when it said that statutory damages and attorney's fees were available to Dorland.  This involves an interpretation of Copyright Law, which is squarely within the province of federal courts.  Issues of copyright, including infringement and damages, arise under the Copyright Act and must be resolved in federal court.  Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir.2003).

### Personal Jurisdiction over the Law Firm and Attorney Cohen

The Massachusetts Long Arm Statute (M.G.L. c. 223A § 3(c)) provides that courts may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's causing tortious injury by an act or omission in this Commonwealth.

Although Dorland lived and worked in Massachusetts at one time, she now appears to be a resident of California.  (Complaint ¶ 3).  The Law Firm and Attorney Cohen also appear to conduct business primarily in California.  (See, https://www.cohenblg.com)  On the other hand,

Larson lives and works in Massachusetts and she has had minimal contacts with the State of California consisting of a few personal visits, one writer's conference and correspondence with a literary scout who has recently moved to San Francisco.  (Larson Aff. ¶ 2)

Although this Action is primarily one grounded on copyright law, jurisdiction against the Law Firm and Larson could also have been established on diversity.  Regardless, Dorland contacted numerous people and entities in Massachusetts, Vermont, Texas, Maryland, California and elsewhere, accusing Larson of plagiarism.  While the allegations were false and the contacts were hurtful, the last straw came when Dorland, Attorney Cohen and the Law Firm accused Larson of copyright infringement, and demanded that the BBF stop reproducing and distributing Larson's Short Story.

**<u>There are Many Massachusetts Contacts Involved in this Dispute.</u>**

As its name implies, the BBF is a Boston based not-for-profit entity firmly entrenched in the Boston area.  (<u>See</u>, https://bostonbookfest.org).  Attorney Cohen and the Law Firm wrote a series of demand letters and made demanding telephone calls to the BBF, a Massachusetts' entity, that directly impacted Larson, a Massachusetts' resident, and attacked a contract that the BBF and Larson negotiated for the publication and distribution of Larson's Short Story in the Boston area.  These are significant contacts by the Law Firm with Massachusetts parties involving a Massachusetts contract that was to be performed entirely in the Commonwealth.  The resulting controversy involving the conduct of Attorney Cohen and the Law Firm are certainly sufficient to satisfy the due process provisions of the Fourteenth Amendment.  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

The recent case of <u>Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.</u>, 825 F.3d 28 (1st Cir. 2016) is highly instructive.  In <u>Baskin-Robbins</u> the court had to determine if an out-

of-state defendant had sufficient contacts with Massachusetts for the court to exercise personal

jurisdiction.  Baskin-Robbins looked to see if the defendant's contacts with Massachusetts were

sufficient so as to not offend the notions of fair play and substantial justice inherent in the

Fourteenth Amendment and the Massachusetts Long-Arm Statute.  825 F.3d at 35.

Like the defendant in Baskin-Robbins, Larson is seeking to exercise specific jurisdiction

over Attorney Cohen and the Law Firm for this particular case only, and not general jurisdiction

as the Law Firm claims.  (See, Def. Memo. p. 10)

Larson asserts that her claims against the Law Firm arise out of and relate directly with

the Law Firm's targeted contacts with the BBF.  Massachusetts should have the power to hold

the Law Firm accountable for actions it voluntarily conducted that have a direct impact on a

Massachusetts resident and the mission of a Massachusetts entity.  825 F.3d at 36.  The Law

Firm should be held accountable for its actions in this Commonwealth to the same extent as an

in-state attorney would be held accountable for similar in-state actions.  The Law Firm

purposefully availed itself of the privilege of conducting business in Massachusetts, "thereby

invoking the benefits and protections" of this state's laws "and making the defendant's

involuntary presence before the state's courts foreseeable."  825 F.3d at 35.

The Law Firm's communications with the BBF, including its letter-writing campaign,

and other communications show that its activities on behalf of Dorland were not random,

isolated or fortuitous events but were directly targeted at the BBF and Larson in this

Commonwealth, and they have had a significant impact on scheduled events in the Boston area.

The Law Firm's goal was to prevent the BBF from using Larson's Story in a Boston area event.

The Law Firm was successful but to the detriment of the BBF, Larson and the citizens of

Massachusetts.  The Law Firm deliberately targeted the Massachusetts economy just like the

defendant in <u>Baskin-Robbins</u>, and it should reasonably should have foreseen that, if a controversy developed, it <u>might</u> be haled into a Massachusetts Court.  <u>Baskin-Robbins</u>, 825 F.3d at 40.

Lastly, Larson asserts that the exercise of jurisdiction over the Law Firm is reasonable. <u>Baskin-Robbins</u>, 825 F.3d at 35.  An examination of what the <u>Baskin-Robbins'</u> court dubs the five Gestalt factors, underscores this court's responsibility to exercise jurisdiction over the Law Firm.

Understandably, it is a chore for the Law Firm to have to defend itself in Massachusetts. However, the Firm has not demonstrated how coming to Massachusetts would impose any special need or unusual burden on the Law Firm.  <u>Baskin-Robbins</u>, 825 F.3d at 40.  Secondly, Massachusetts has a manifest interest in protecting its own citizens.  The Law Firm came to this state to make its claim against the BBF and Larson.  The Law Firm could have hired local counsel, but it did not.  Nevertheless, the Law Firm acted as if it was Massachusetts counsel. The third factor, convenience, clearly favors Larson since she and the BBF are located here, as are most of the witnesses that Larson will need to prove her claims against the Law Firm. The fourth factor, the interest of the judicial system in the effective administration of justice, certainly favors Larson because Massachusetts' courts have more experience in interpreting Massachusetts laws than do courts in California, and Larson's claims for tortious interference and her claim under Chapter 93A, arise directly out of the Law Firm's activities in Massachusetts.  Lastly, Massachusetts has a legitimate interest in providing its citizens with a convenient forum for adjudicating disputes. <u>Baskin-Robbins</u>, 825 F.3d at 41.

Accordingly, this Court's exercise of personal jurisdiction over the Law Firm and Attorney Cohen are consistent with due process and the Massachusetts Long Arm Statute.

## The Litigation Privilege Claimed by the Law Firm has Limits

The litigation privilege is a policy oriented privilege, which provides attorneys latitude in their expression and candor during pre-litigation communications that advance their efforts to secure justice for their clients.  The application of the privilege is determined on a case-by-case basis, after a fact specific analysis.  Riverdale Mills Corporation v. Cavatorta North America, Inc., 189 F. Supp.3d. 317, 321 (D.Mass. 2016)  Like any privilege, the litigation privilege has limits.  There are at least two reasons why the litigation privilege does not apply in this Action.

First, the privilege does not confer the right on an attorney to misinform parties with patently false statements of law or material fact.  Such conduct is prohibited under the Massachusetts Rules of Professional Conduct, S.J.C. Rule 3:07, Rule 4.1(a) which forbids attorneys from knowingly making false statements of material fact or law to third persons.

California has recently enacted a similar rule that is based on the American Bar Association's rules of Professional Conduct.  (See, Note 1 infra.)  "[A]n attorney's ethical duty to advance the interest of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct...." Nix v. Whiteside, 475 U.S. 157, 168, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).  Matter of Barrett, 447 Mass. 453, 462 ("engaging in conduct that is dishonest or deceitful, or that adversely reflects on an attorney's fitness to practice, will suffice" to constitute violation of rules of professional conduct).

While the Law Firm may have had the right to communicate with the BBF and even offensively or maliciously accuse Larson of copyright infringement, it did not have the right to make false statements of law with respect to the relief that Dorland was entitled to recover, namely, statutory damages and attorney's fees under the Copyright Act.  The Law Firm exceeded its privilege when it wrote to the BBF stating that Dorland's claim would be for

copyright infringement for which Statutory Damages under 17 U.S.C. § 504(c) could amount to $150,000 plus attorney's fees. Both the Law Firm and Attorney Cohen went beyond the protection of the litigation privilege by blatantly misstating the law and threatening massive statutory damages and quickly escalating attorney's fees to which their client was simply not entitled. [Complaint ¶¶ 45 and 75]. The Law Firm's statements were made solely to scare and intimidate the BBF into capitulating to its demands by dropping *The Kindest* from its One City/One Story event, and to punish Larson.

Second, the litigation privilege does not protect "unnecessary or unreasonable publication to parties outside of the litigation." Riverdale Mills, 189 F. Supp.3d. at 321. Yet, this is exactly what happened in the facts of this Action.

An article about Dorland's claim of plagiarism entitled, "Inspiration or plagiarism? Writing hackles raised in Boston dispute," was published in the *Boston Globe* on July 26, 2018, about three weeks after the Law Firm sent it first cease and desist letter to the BBF. The article is attached to the Complaint as Exhibit F. The article talks about Dorland's claim of plagiarism that has "rattled through Boston's literary scene" and it includes a photograph of Dorland and quotes by both parties. On information and belief, Dorland contacted a *Globe* reporter to initiate this story. Larson Aff. ¶ 3.

This is exactly the kind of communications that have been excluded from the protection of the litigation privilege. Encompass Ins. Co. of MA v. Giampa, 522 F. Supp. 2d 300, 309 (D. Mass. 2007) (Communications made to newspapers and during press conferences have been found almost universally to be excluded from the protection of absolute privilege.)[7]

---

[7] A follow-up article was published in the *Globe* on August 14, 2018, and talks about the cancelation by the BBF of the One City/One Story event and the "plagiarism allegations that dogged Sonya Larson's 'The Kindest.'" The second article is attached to the Complaint as Exhibit G.

Milford Power Ltd. Partnership by Milford Power Assocs. Inc. v. New England Power Co., 918 F. Supp. 471, 486 (D. Mass. 1996) (Communications by a party to the news media regarding a judicial proceeding have been found to be outside this privilege because such communications do not advance the policy upon which the privilege rests.  More specifically, because such communications to the media generally will not "inhibit parties or their attorneys from fully investigating their claims or completely detailing them for the court or other parties" and are not subject to "judicial control", the necessity for the absolute privilege disappears.)

It will be interesting to determine through discovery if the Law Firm was complicit in contacting the *Globe* about these articles because newspaper articles are not protected by the litigation privilege.  Riverdale Mills, 189 F. Supp.3d. at 321.

Under the litigation privilege, Cohen Law and Attorney Cohen could have accused Larson of copyright infringement, and they could have even threatened Larson and the BBF with a lawsuit to enjoin the use of *The Kindest* in the BBF's summer writing program.  As long as there was some modicum of truth to these allegations, Cohen Law and Attorney Cohen could have escaped liability for their accusations.  However, both Cohen Law and Attorney Cohen went beyond the protection of the litigation privilege by blatantly misstating the law and threatening massive statutory damages and quickly escalating attorney's fees to which their client was not entitled. The Law Firm's actions amounted to tortious interference with Larson's contract with the BBF as well as violation of the Massachusetts Consumer Protection Act.

Cohen Law and Attorney Cohen went well beyond puffery and bravado when they misstated the damage provisions of the Copyright Act (Section 504(c)).  Dorland was never entitled to Statutory Damages or attorney's fees under the Copyright Act.  The most Dorland was ever possibly entitled to were her actual damages and any profits Larson earned from an alleged

infringement of Dorland's copyright.  To date, Larson has received a total of $425 in gross

receipts from the exploitation of *The Kindest*.  The amount of "profit" represented in this total

revenue is likely much less than $425. [Complaint, ¶ 9 and 99].

## <u>Conclusion</u>

For the foregoing reasons, Larson requests that the Law Firm's Motion to dismiss be

denied.  However, depending on how this Court rules, Larson requests in the alternative, that she

be granted leave to amend her Complaint to comport with the Court's ruling.

      Respectfully submitted,

SONYA LARSON,
By her attorney,

 /s *Andrew D. Epstein*
_____

April 14, 2019             Andrew D. Epstein, Esquire (BBO #155140)
Barker, Epstein & Loscocco
176 Federal Street
Boston, MA 02110
Tel: (617) 482-4900
Fax: (617) 426-5251
<u>Photolaw@aol.com</u>

## <u>List of Exhibits attached to Plaintiff's Opposition to Motion to Dismiss</u>

**Case**: Larson v. Dorland
Docket No.1:19-cv-10203-IT

Exhibit A:     Certificate of Copyright Registration for <u>The Kindest</u>, Registration Number: TX-8-678-446, effective December 17, 2018.

Exhibit B:     Affidavit of Sonya Larson

Exhibit C:     Dorland's "2015 Letter" or "Factual Letter" registered with the Copyright Office under Registration Number TXu 2-101-420, effective June 10, 2018, under the title, "Dorland Kidney Chain Final Recipient Letter, July 2, 2015."

Exhibit D:     Larson's "Fictional Letter" which is included in the final version of <u>The Kindest.</u>

Exhibit E:     Letter dated July 3, 2018, from Attorney Jeffrey A. Cohen of the Cohen Business Law Group to the Boston Book Festival (BBF).

Exhibit F:     Letter dated July 20, 2018, from Attorney Michael S. Hanna of the Cohen Business Law Group to Attorney James A. Gregorio, Larson's previous legal Counsel.

## <u>List of Exhibits attached to Plaintiff's Complaint</u>

## <u>EXHIBITS</u>

Exhibit  A – "Factual Letter"

Exhibit  B – Copyright Office Registration for Dorland's kidney chain letter

Exhibit  C – Larson's "*The Kindest*," the "Short Story" or the "Work"

Exhibit D – Larson's "Fictional Letter"

Exhibit E – July 17, 2018 Letter from Atty. James A. Gregorio

Exhibit F – July 26. 2018 Boston Globe Article

Exhibit G –  August 14, 2018 Boston Globe Article

Exhibit H – M.G.L. C. 93A Thirty-Day Demand Letter

Exhibit I – Dorland, Attorney Cohen and Cohen Law's response to the 30 Day Demand Letter

Exhbit J –Plaintiff's Attorney's response to 93A claim response letter

Certificate of Service

I certify that Plaintiff's Opposition to the Motion to Dismiss of Defendants, Cohen Business Law Group, PC, and Jeffrey A. Cohen, and Memorandum in support thereof was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.


                                                    */s/ Andrew D. Epstein*

                                                    _____
April 14, 2019                                      Andrew D. Epstein