UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                    Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**PLAINTIFF'S OPPOSITION TO THE MOTION OF DEFENDANT, DAWN DORLAND PERRY FOR LEAVE TO FILE A REPLY BRIEF**

Plaintiff, Sonya Larson ("Larson") opposes Defendant, Dawn Dorland Perry's Motion to File a Reply Brief (Dkt. No. 31) to strike Larson's Affidavit. Defendant, Dawn Dorland Perry is hereinafter referred to as "Dorland."

**A.   Larson wrote a short story that incorporated a letter used as a literary device to introduce characters.**

Dorland donated a kidney and she wrote a short letter to the recipient of her kidney that she posted on a semi-public Facebook page. Larson used the idea of a letter from an organ donor to a recipient as a literary device to introduce characters in her short story known as *The Kindest*. Dorland alleges that the use of a short letter in Larson's much longer story was an infringement of Dorland's copyright.

Larson contends that at best, Dorland has a thin copyright in the letter, if she has any rights at all, and that since Larson did not use substantial portions of the Dorland's letter

verbatim, Larson did not infringe Dorland's copyright.  Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349, 111 S. Ct. 1282, 1289.  Frankly, Larson maintains that she merely used the idea of a letter to an organ donor recipient, a practice that is not even copyright infringement.  However, to the extent that Larson may have used any part of Dorland's letter, the use was fair use under Title 17 U.S.C. § 107.  Many of these issues are fact-specific inquiries for the court to consider, and thus should defeat a Motion to Dismess.

**B.     Three agreements, all of which were referenced in the Complaint, were included in Larson's affidavit.**

There are basically three versions of Larson's short story that have been made available.  Each of the three versions, the Audible version (also published without Larson's permission or authority by Brilliance Audio), the American Short Fiction version, and the Boston Book Festival ("BBF") version.

Audible published a draft version of *The Kindest* that was never meant to be published.  Larson quickly had Audible substitute the draft version for the correct version.  What Larson did not know is that Audible and Brilliance Audio are sister companies both owned by Amazon, and it appears that Audible allowed Brilliance to simultaneously publish the story without Larson's knowledge.  While Audible substituted the correct version of the story for the one that was published by accident, Brilliance may not have done so.

In July 2018, both the BBF and Larson's attorney supplied Dorland's legal counsel with a copy of the story that was to have been published by the BBF.  This is the version of the story on which Larson is basing her claim for declaratory judgment in Count XI of the Complaint.  Dorland is not seeking to dismiss Count XI.

Larson believes but has no way of determining with certainty at this juncture, that it was the Boston Globe or Dorland that found the Brilliance Audio version of the story online and used this version to compare it with Dorland's letter. These are the "facts" that Larson was trying to expound on in order to help Dorland and the Court understand the allegations in the Complaint.

As Larson requested in her opposition (Dkt. No. 29, page 20), if this court finds that Larson's allegations have not been fully and artfully expressed, she is seeking leave to amend her complaint under Fed. R. Civ. P 15(a), "as justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962). (Austin v. Unarco Industries, Inc., 705 F.2d 1, 6-7 ( 1st Cir. 1983) (The Supreme Court has emphasized that the motion to amend ordinarily should not be denied "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.") None of these elements are applicable to the present Action.

Without exception, what Dorland refers to as the "new" documents that are included in Larson's Affidavit are the agreements directly related to the publication of the audio version of *The Kindest* by Audible, the American Short Fiction agreement, and the Boston Book Festival agreement, all three of which have been referenced in Larson's Complaint. Simply, there is no good reason to exclude these agreements that have a direct bearing on Larson's allegations and were referenced in her Complaint.

**C.    Documents central to Plaintiff's claim or referenced in her Complaint can be considered in a motion to dismiss.**

At this very early stage of litigation, it is not entirely clear what Dorland knew and when she knew it. Larson submitted an Affidavit in order to clarify and help guide Dorland and the

court.  Gamboa v. MetroPCS Massachusetts, LLC, 2017 WL 1227916, at *2 (D. Mass. Mar. 31, 2017) In addition to the complaint, a district court considering a Rule 12(b)(6) motion may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (citation omitted).   See also, Jovani Fashion, Ltd. v. Cinderella Divine, Inc., 808 F.Supp.2d 542, 545 (S.D.N.Y. 2011) (courts may also consider "documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit...."

**D.    To the extent known at this time, allegations of Trade and Commerce were sufficiently alleged.**

Larson believes that Dorland is engaged in trade or commerce that is sufficient at this stage of litigation to satisfy Chapter 93A.  Clearly, Larson is a professional writer and a Director at GrubStreet, Inc., a Boston area not-for-profit corporation dedicated to educating and helping creative writers. (Compl. ¶ 2.)  On information and belief, Dorland is alleged to be an aspiring writer who teaches occasional writing workshops.  (Compl. ¶ 4.)  Certainly, the two individuals appear to be professional writers.  Dorland's attorney's Defendants, Cohen Business Law Group, PC and its principal were acting for Dorland and they do engage in trade or commerce.  Larson says in her Opposition that it is premature to dismiss Counts V, VI, and VII of the Complaint, as Dorland may have a much greater participation in trade or commerce than Larson is aware of at this state of litigation.

Larson is arguing that Dorland and her Law Firm (Defendant, Cohen Business Law Group, PC) acted together to press Dorland's claim of copyright infringement to discredit Larson and to stop the further distribution of *The Kindest*.  Although Dorland initially acted alone, she

began to act through "her agents, servants or attorneys" in a business context vis-a-vis Larson. (Compl. ¶ 101). Section 1 of Chapter 93A specifically includes in the definition of "trade" and "commerce," the distribution of any <u>tangible or intangible property</u> directly or indirectly affecting the people of this commonwealth. Dorland's actions and those of her law firm directly impacted both Larson as well as the BBF, which was left with 30,000 copies of *The Kindest* that it could not use at a cost of $10,000. Of course, Larson was left with the loss of the BBF publication and the wide promotion of her story, which severely impacted her career and had an indelible impact on her reputation.

**E.      Whether Larson is a limited purpose public figure or not is a question of fact for this court to determine.**

Whether Larson is deemed a public or private figure is important in order to determine whether Larson can recover for defamation by showing that Dorland was negligent in accusing Larson of plagiarism, which is a lower threshold than showing Dorland was guilty of actual malice. <u>Flotech, Inc. v. E.I. Du Pont de Nemours Co.</u>, 627 F. Supp. 358, 365 (D. Mass. 1985), <u>aff'd sub nom.</u> <u>Flotech, Inc. v. E.I. Du Pont de Nemours & Co.</u>, 814 F.2d 775 (1st Cir. 1987).

Larson wrote a short story and she gave a reading from an early version of the story to a small audience at a local Boston bookstore. Early versions of the story were also given limited publication for a short period of time both online and in print. Larson then submitted the story to a contest conducted by the BBF. The story was to have been used in an event sponsored by the BBF that was to occur in August 2018.

Until Dorland made her claim against Larson of plagiarism, Larson was simply one of countless people who have written short stories and were lucky enough to have one of them published. Larson is also lucky that one of her stories won a competition conducted by the BBF.

There was no event involving the story that thrust Larson into a public controversy simply by having a non-controversial short story published. Several courts have acknowledged that there is no question that an allegation of plagiarism is damaging to a writer. (Roberts v. Columbia Coll. Chicago, 821 F.3d 855, 864 (7th Cir. 2016)) (plagiarism is considered by most writers, teachers, journalists, scholars, and even members of the general public to be the "capital intellectual crime."

    A controversy began when Dorland accused Larson of plagiarism and published this allegation to various writer's groups, publishers and Larson's employer. The controversy became news only when Dorland contacted the *Boston Globe* and publicly accused Larson of plagiarism. Larson was only drawn into the public eye because of Dorland's concerted efforts to *create* a public controversy. In fact, neither the BBF nor Larson nor any other individual ever announced that Larson had won the BBF's competition. Instead, Dorland and only Dorland somehow learned this information, publicized it, and created a public controversy. See, Alharbi v. Beck, 62 F. Supp. 3d 202, 208 (D. Mass. 2014) (There was no question that the Marathon bombings were a controversial event. However, plaintiff did not voluntarily thrust himself into that public issue such that he became a limited purpose public figure merely because he attended and watched the marathon, was injured in the explosion, was questioned by authorities, and his home was searched, and he was the subject of numerous media reports after he was questioned. "The facts alleged in the complaint do not depict a figure thrusting himself into a controversy, or that he voluntarily sought out this press.") Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 14 (1st Cir. 2011) (The status of plaintiff is inescapably fact-specific and does not always lend itself to summary judgment). There was nothing controversial about a story

about an anonymous kidney donor and her recipient.   The controversy developed only as a result of Dorland's accusations, and thus, Larson is not a limited purpose public figure.

**F.      Conclusion.**

For the foregoing reasons, Larson opposes Dorland's Motion for Leave to file a reply brief.

                                                Respectfully submitted,

                                                SONYA LARSON,
                                                By her attorney,

                                                /s *Andrew D. Epstein*

June 3, 2019                            Andrew D. Epstein, Esquire (BBO #155140)
                                                Barker, Epstein & Loscocco
                                                176 Federal Street
                                                Boston, MA 02110
                                                Tel: (617) 482-4900
                                                 Fax: (617) 426-5251
                                                Photolaw@aol.com

<u>Certificate of Service</u>

      I certify that Plaintiff's Assented to Motion to Continue Scheduling Conference was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

                                                */s/ Andrew D. Epstein*

June 3, 2019                            Andrew D. Epstein