UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY,<br><br>COHEN BUSINESS LAW GROUP, PC<br><br>and<br><br>JEFFREY A. COHEN, ESQUIRE<br><br>                    Defendants. | Civil Action No.<br><br>1:19-cv-10203-IT |

**AMENDED COMPLAINT**
**AND DEMAND FOR TRIAL BY JURY**

**Leave to file granted on July 31, 2019**

This is an action for declaratory judgment and damages brought in part under the Copyright Act of the United States as amended, 17 U.S.C. §§ 101 et seq.  Plaintiff is the author of a copyrighted short story called, *The Kindest*.  Defendant, Dawn Dorland Perry accused Plaintiff of copyright infringement for basing her story on a small portion of a letter Dorland-Perry posted on Facebook.  Plaintiff is seeking a declaration that her accused short story does not infringe Dorland Perry's copyright to the Facebook letter, and therefore, that Dorland Perry is not entitled to copyright damages and/or attorney's fees.

Plaintiff is also seeking damages for the intentional interference with two of Plaintiff's advantageous contractual relationships perpetrated by all Defendants, as well as for certain unfair and deceptive acts and practices committed by the Defendant law firm (Cohen Business Law Group, PC) in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, and for defamation of the Plaintiff by one or more of the Defendants.

Jurisdiction is conferred upon this Court under Count VIII pursuant to 28 U.S.C. § 1338(a).  Supplemental jurisdiction is conferred on this Court under the remaining counts pursuant to 28 U.S.C. § 1367(a).  Proper venue exists against the Defendants pursuant to 28 U.S.C. §1400(a), and the Massachusetts Long Arm Statute, M.G.L. c. 223A § 3, for causing tortious injury in this Commonwealth.

<u>Parties</u>

1.      Plaintiff, SONYA LARSON (hereinafter, "Larson"), is an individual who resides at 89 Concord Avenue, Somerville, Middlesex County, Commonwealth of Massachusetts. Larson is a mixed-race Chinese-American woman.

2.      Larson is a professional writer and a Director at GrubStreet, Inc., a Boston area not-for-profit corporation dedicated to educating and helping creative writers.

3.       Defendant, DAWN DORLAND PERRY, also known as Dawn Chryselle Dorland Perry (hereinafter, "Dorland"), is an individual who once lived in or around Boston, Massachusetts, and now resides at 3111 West 69th Street, Los Angeles, California 90043.

4.      Dorland previously took several classes at Grubb Street as a student.

5.      Upon information and belief, Dorland is an aspiring professional writer who teaches and conducts a few writing workshops in California and other places in the United States.

6.      Defendant, COHEN BUSINESS LAW GROUP, P.C. (hereinafter, "Cohen Law"), is a law firm incorporated in the State of California, with a usual place of business at 10990 Wilshire Boulevard, Los Angeles, California 90024.

7.      Cohen Law claims that it has nearly three decades of experience in business, intellectual property and Internet law.

8.      Defendant, JEFFREY A. COHEN, ESQUIRE (hereinafter, "Attorney Cohen"), is an attorney in the Cohen Law firm, and he is the sole officer and director of Cohen Law where he holds the positions of Chief Executive Officer, Chief Financial Officer and Secretary of the firm.  Attorney Cohen maintains an office for the practice of law at Cohen Law located at 10990 Wilshire Boulevard, Los Angeles, California 90024.

<u>Dorland donated one of her kidneys to an unknown recipient and<br>publicized this gesture extensively on social media and elsewhere.</u>

9.      On information and belief, Dorland donated one of her kidneys to an unknown recipient sometime in or around 2015.

10.      In or around July 2015, Dorland wrote a half-page letter ostensibly addressed to the recipient of her kidney, in which Dorland introduces herself, outlines her reasons for donating the kidney, expresses an interest in learning more about her recipient, and possibly meeting that person one day.  The letter is hereinafter referred to as the "2015 Factual Letter."  A copy of the 2015 Factual Letter is attached hereto as "Exhibit A" and is incorporated herein by reference.

11.     Sometime around July 2015, Dorland posted the 2015 Factual Letter on a semi-public group forum on Facebook, which on information and belief, included at the time, approximately 250 to 300 people.  Larson was added to this Facebook group forum without her knowledge or permission.

12.     It appears that one of the purposes of Dorland's Facebook group forum was to give Dorland a platform to share her personal experiences with donating a kidney.

13.     Dorland's 2015 Factual Letter was posted on her Facebook forum without a copyright notation.

14.     The 2015 Factual Letter, dated July 2, 2015, was registered with the United States Copyright Office about three years after it was posted on Facebook, under the title "Dorland kidney chain final recipient letter July 2, 2015."  The 2015 Factual Letter was given copyright registration number TXu 2-101-420, effective June 10, 2018.  A copy of the Copyright Office registration information along with a copy of the deposit material consisting of the 2015 Factual Letter is attached hereto as "Exhibit B" and is incorporated herein by reference.

15.     Since the time that Dorland donated her kidney, she has been very public and outspoken about her kidney donation experience.  Dorland has used social media and other public forums extensively to raise awareness about her own kidney donation and about kidney donations in general.

                Larson and Dorland are nominal acquaintances of each other.

16.     Larson and Dorland have had a nominal relationship with each another in the past.  The relationship consisted mostly of a few dozen work-related emails, scant social media exchanges, and a few in-person pleasantries at various social gatherings when Dorland was living in the Boston area.

17.     Larson saw the 2015 Factual Letter that Dorland posted on Dorland's Facebook group page and she found it interesting.  Larson did not download or print the 2015 Factual Letter but instead recorded a few thoughts and ideas from the letter in her notes for future reference.

### Larson wrote a story about a kidney donor meeting a kidney recipient.

18.     In 2015, Larson began to write a fictional short story about an alcoholic, working class Chinese-American woman living in Boston with her husband, who receives a kidney donation from a wealthy white woman.  The story is divided into four parts.  Each part explores the different stages in the main character's journey.  The story deals with the complexities of indebtedness, addiction, love, shame, and race, and its central aim is to depict a person of color resisting a white savior narrative.

19.     Larson's short story is called, *The Kindest*, and it includes a brief letter in the second part of the story that is sent by the donor character to the kidney recipient character.  The letter (hereinafter, the "Fictional Letter") is a small part of the narrative and it is used primarily to introduce the kidney donor character, and to set the stage for the eventual meeting of the recipient character and the donor character.  Larson's story is hereinafter referred to either as "*The Kindest*," the "Short Story," the "Story" or the "Work."

20.     When Larson was writing *The Kindest*, she researched and viewed dozens of letters from other organ donors that were widely available on the Internet.  She also viewed many websites devoted to advising organ donors and recipients on how to correspond with each another, including bullet points of the kinds of information people share and in what order.  Some of the online letters include points similar to those raised by Dorland in her 2015 Factual Letter.

<u>Dorland heard about Larson's Short Story in 2016 and
she was very upset with Larson and felt threatened by the Short Story.</u>

21.     On June 22, 2016, Larson read a portion of an early draft of *The Kindest* at a Boston bookstore.  She read from the fourth part of the story where the donor and recipient finally meet.  Larson did not read any part of the Fictional Letter that is included in her Short Story.

22.     A mutual acquaintance of both Larson and Dorland attended the bookstore reading and posted the following comment about Larson's Short Story on Dorland's Facebook page:

> Sonya [Larson] read a cool story about giving out a kidney, you
> came to mind, and I wondered if you were the source of the inspiration.

Dorland apparently read the post.

23.     Once Dorland learned that Larson wrote a story about a kidney donation, Dorland began to hound Larson with emails and text messages insinuating that the Short Story in its entirety was based on Dorland's life experiences.

24.     Dorland claimed that because they were "friends," Larson had no right to fabricate a fictional story about a kidney donation without consulting Dorland.

25.     Dorland insisted on an apology and threatened to write about Larson in a memoir or essay.  Even though Larson's Short Story was fiction, Dorland seemed very threatened by Larson's Short Story.

26.     Larson repeatedly informed Dorland that the Work was not about Dorland, nor was it about Dorland's personal experience as a kidney donor.

<u>Larson was scouted by a literary studio that wanted to help
her to publish an audio version of the Story.</u>

27.     After Larson had written a preliminary version of her Story, she was contacted by

a literary studio known as Plympton, Inc. ("Plympton").  Plympton was looking for new stories

and offered to help Larson produce the Story as an audio book.  Larson supplied Plympton with a

draft copy of her Short Story for the sole purpose of helping Plympton arrange to have the Story

published.  Larson and Plympton eventually entered into an agreement, a copy of which is

attached hereto as "Exhibit C," and which is incorporated herein by reference.  In the Agreement,

Larson granted to Plympton the right to sublicense the Work for publication as an audiobook

solely to a company known as www.Audible.com ("Audible").

28.     Plympton was successful in sublicensing *The Kindest* to Audible, and Audible

agreed to publish Larson's Short Story as an audio book.

29.     After Audible accepted *The Kindest* as an audio book, Larson continued to refine,

modify, change and improve on the Work in order to smooth out the language, rhythm and tone

of the Story, a procedure Larson frequently undertakes.  In light of Dorland's reaction to

Larson's reading of the Short Story at the Boston bookstore, and in order to further avoid

resemblance between Larson's Fictional Letter and Dorland's 2015 Factual Letter, Larson also

changed parts of the Fictional Letter that was incorporated in the Story.  Larson sent her

revisions to Audible so that the Story could be recorded.

30.     An early version of the Story was accidentally posted online by Audible on

August 3, 2016, followed by the correct version a short time thereafter.  Larson was paid $125 by

Plympton for arranging for the audio recording of the Work by Audible.  Larson was under the

impression that her Short Story would remain on Audible's site for the duration of her copyright.

The Kindest was also published online and in print form.

31.     In August 2017, about a year after Audible published the Short Story, American Short Fiction ("ASF") agreed to publish a slightly different version of *The Kindest* in its literary magazine.  The Work was also featured by ASF online in May 2018.   Larson was paid $300 by ASF for the right to publish *The Kindest*.  ASF was given the right to publish *The Kindest* for the duration of Larson's copyright including extensions and renewals of the copyright.  A copy of Larson's agreement with ASF is attached hereto as "Exhibit D" and is incorporated herein by reference.

Larson submitted her Short Story to a competition
run by the Boston Book Festival.

32.     In 2018, Larson entered *The Kindest* in a competition run by the Boston Book Festival, Inc. ("BBF"), a not-for-profit organization that promotes reading and ideas for writers and bibliophiles.

33.     The BBF presents year-round events culminating in an annual festival.  As part of its annual festival, which is the organization's premier event, the BBF features a short story that it distributes extensively in the Boston area through an event called, "One City/One Story."

34.      The winner of the competition gets to have the winning story distributed to over 30,000 BBF members, participants in the Festival, local libraries and participating businesses and other sponsors.  The Festival features the winning story for educational and discussion purposes in the hope of incorporating divergent audiences in new conversations about an important topic.

35.     In May 2018, the BBF informed Larson that *The Kindest* was chosen as its One City/One Story winner.  The Short Story was to be the central literary work that would be featured from August through October 2018, as the BBF's annual One City/One Story selection.  The BBF also told Larson that the Work would likely be part of other future events sponsored by the BBF after the Festival ended.

36.     The BBF and Larson entered into an agreement in June 2018, memorializing the selection of Larson's Work as the One City/One Story winner.  In the agreement, Larson granted to the BBF the right to publish the Short Story online in multiple languages, and to print and distribute up to 30,000 copies of *The Kindest* throughout the Greater Boston Area.  The license to the BBF was to extend for the full term of the copyright.  A copy of Larson's agreement with the BBF is attached hereto as "Exhibit E" and is incorporated herein by reference.

<u>Dorland was incensed that Larson's Story<br>was being published.</u>

37.     In or around May 2018, shortly after ASF published the online version of *The Kindest*, Dorland accused Larson of plagiarism, by telling ASF that Larson's Story "plagiarized" Dorland's 2015 Factual Letter and used it in her Short Story.

38.     Thereafter, starting in or around June 2018, after Dorland apparently heard that the BBF selected Larson's Work as the winner of its One Story/One City competition, Dorland made further accusations of plagiarism by communicating her unfounded claim of plagiarism to the BBF and to members of Larson's writing group.

39.     For weeks, Dorland relentlessly called and emailed ASF staff and board members, and BBF staff multiple times per day with her false and malicious accusations of plagiarism, demanding at different times, a citation for the authorship of Dorland's 2015 Factual Letter, that Larson's Short Story be pulled from ASF and the BBF in its entirety, that ASF publish one of Dorland's essays instead of Larson's Work and/or that she be paid several thousand dollars.

40.     In addition, Dorland apparently complained to GrubStreet, Larson's employer, repeating her baseless claim that Larson's Short Story plagiarized Dorland's 2015 Factual Letter.

41.     Dorland also asserted the utterly false contention to the Bread Loaf Writers' Conference, a prestigious and influential writer's organization ("Bread Loaf"), that Larson's fellowship application contained plagiarism, with an email entitled, "Plagiarism in Tuition Fellow's 2017 Application." Dorland's contention was unfounded since Larson did not include *The Kindest* in her fellowship application to Bread Loaf. With total disregard for the truth, Dorland pressed repeatedly for Bread Loaf to sanction Larson "retroactively." Dorland continued her phone calls, voice messages, and emails to Bread Loaf's staff and even its retired staff for many months. In addition, Dorland told Bread Loaf in June 2018, that she contacted "other writing conferences of similar repute" about Larson's "plagiarism."

<u>Larson tried to appease Dorland by making<br>further changes to the Fictional Letter.</u>

42.     Based in part on Dorland's persistent and continuing accusations of plagiarism and her demands including her demand for monetary damages, the BBF suggested that Larson change some of the language in the Fictional Letter that is part of *The Kindest* in order to avoid any future demands or interference by Dorland with the BBF and its upcoming festival.

43.     Larson had already made a number of unrelated revisions to *The Kindest* for the BBF, including the story's location and certain objects, details, dialogue, gestures, word choices and the ending.  However, in an attempt to appease Dorland and stop her frequent contacts with the BBF and others, Larson agreed to modify the Fictional Letter in *The Kindest*.

44.     After Larson made changes to the Fictional Letter, the BBF proceeded to print approximately 30,000 copies of the revised version of *The Kindest.*  A copy of the Short Story that was printed by the BBF is attached hereto as "Exhibit F" and is incorporated herein by reference.  This version of *The Kindest* was registered with the United States Copyright Office under Registration No. TX-8-678-446, effective December 17, 2018.  A copy of the Certificate of Registration is attached hereto as "Exhibit G" and is incorporated herein by reference.

45.     None of Larson's efforts seemed to satisfy Dorland.  Dorland continued her attacks on Larson by repeatedly contacting members of various writing communities in the United States and reiterating her claim of plagiarism.

46.     In June 2018, Larson hired Attorney James A. Gregorio to deal with the hornet's nest that Dorland was stirring up.  Dorland refused to permit a representative of ASF to share Dorland's communications and demands with Larson or Attorney Gregorio.  Accordingly, Attorney Gregorio requested that ASF forward his contact information to Dorland, and convey that he would be willing to talk with Dorland or her attorney about any concerns she might have regarding the Work.  Gregorio requests were ignored and in or around late June 2018, Dorland hired Cohen Law to represent her.

47.     On or about July 3, 2018, Cohen Law was supplied with a copy of the version of Larson's Story that the BBF had printed.  A comparison of the Fictional Letter in the BBF version of the Story with Dorland's 2015 Factual Letter shows that there is insufficient similarity between the two letters to support a reasonable claim for copyright infringement.

48.     Based on the BBF version of *The Kindest* that was supplied to Cohen Law, a law firm that claims to have extensive experience in handling and litigating intellectual property matters, Cohen Law knew or should have known that Dorland's copyright infringement claim against the BBF was unreasonable, unwarranted, frivolous, futile and/or advanced primarily to harass the BBF into acquiescing to Dorland's demands.

49.     Additionally, Cohen Law knew or should have known that under 17 U.S.C. § 412, statutory damages and attorney's fees under the Copyright Act were available to Dorland only if Dorland's 2015 Factual Letter was registered with the Copyright Office before the claimed infringement by Larson.  Since Dorland's 2015 Factual Letter was registered on June 10, 2018, almost a year after the Short Story was initially published by Audible and ASF, and long after Dorland knew that Larson was using a letter from a kidney donor to a recipient as a literary device in a story about kidney donors, Dorland was never entitled to Statutory Damages or attorney's fees under Sections 504 and 505 of the Copyright Act.

50.     On July 3, 2018, with knowledge that Larson's Short Story was the winner of the BBF short-story competition, Cohen Law sent a letter to the BBF alleging that Larson's Short Story contains Dorland's 2015 Factual Letter "in whole or in part."  Attorney Cohen demanded that the BBF cease and desist from further printing, copying, distributing or undertaking any other activities related to Larson's Short Story.  He stated that unless the BBF acquiesced to Dorland's demand for an acknowledgement that Dorland's 2015 Factual Letter was included in

Larson's Short Story without permission or authority, Dorland's claim would be for copyright infringement for which Statutory Damages under 17 U.S.C. § 504(c) could amount to $150,000.  See copy of the letter from Cohen Law to the BBF dated July 3, 2018, a copy of which is attached as "Exhibit H" and is incorporated herein by reference.

Dorland hired legal counsel to escalate her claim
from plagiarism to copyright infringement.

51.    Attorney Gregorio responded to Attorney Cohen by letter dated July 17, 2018. Gregorio asked for a copy of Dorland's 2015 Factual Letter and evidence that Larson infringed Dorland's 2015 Factual Letter in *The Kindest*.  A copy of the letter from Attorney James A. Gregorio, dated July 17, 2018, is attached hereto as "Exhibit I" and is incorporated herein by reference.

52.    In order to cause further damage to Larson's reputation in the community, and to further pressure the BBF to drop *The Kindest* from its One City/One Story event, Dorland contacted the *Boston Globe* in or around June 2018, to help her publicize her false claim of plagiarism and more broadly disparage Larson's reputation. The *Globe* subsequently published two articles based on statements made by Dorland accusing Larson of plagiarism.

53.    The first article, "Inspiration or Plagiarism? Writing Hackles Raised in Boston Dispute," was published on July 26, 2018 (hereinafter referred to as the "July 26th Article").  A copy of the July 26th Article is attached as "Exhibit J" and is incorporated herein by reference.

54.    The *Boston Globe* published a second article, "Boston Book Festival Cancels One City One Story Event Amid Plagiarism Flap," on August 14, 2018 (hereinafter referred to as the "August 14th Article").  The August 14th Article is attached as "Exhibit K" and incorporated herein by reference.

55.     In or around July 2018, Dorland and her attorneys escalated Dorland's demands
to the BBF, seeking thousands of dollars in compensation, full attribution to Dorland for
Larson's Short Story, and a link to Dorland's favored kidney donation website, and language
encouraging readers to learn how to donate their kidneys.  In August 2018, Dorland further
intensified her threats against the BBF by doubling her monetary demand mere days before BBF
was set to distribute thousands of copies of Larson's Short Story.

### The BBF rescinded its selection of Larson's Short Story.

56.     Cohen Law and Attorney Cohen made demands against the BBF for Statutory
Damages and legal fees under the Copyright Act in order to pressure the BBF into acquiescing to
Dorland's unfounded claim of copyright infringement, and her unwarranted demand for an
acknowledgment in Larson's Short Story and a link to a kidney donation website.

57.     As a direct and proximate result of these and other baseless actions by Dorland,
acting alone and/or in concert with Attorney Cohen and Cohen Law, the BBF rescinded its
selection of *The Kindest* as the One City/One Story selection.

58.     Upon information and belief, the BBF had already printed 30,000 copies of the
Short Story at a cost of around $10,000, and spent thousands of dollars in attorneys'
fees.  Irrespective of the merits of Dorland's claims, the BBF was concerned that a lawsuit by
Dorland had the potential to financially cripple the BBF by draining its modest resources, risk
sponsorship dollars, and jeopardize its future existence.

59.     The BBF's decision to pull Larson's Short Story had nothing to do with the
purported validity of Dorland's claims of plagiarism or copyright infringement.  The decision
was based on Dorland's persistence, which was aided and abetted by claims of copyright
infringement made by Attorney Cohen and Cohen Law, and warnings of thousands of dollars in

legal fees and substantial Statutory Damages under the Copyright Act, to which Cohen Law and Attorney Cohen knew or should have known that Dorland was not entitled.

60.     Even after the BBF rescinded its decision to use *The Kindest* as its One Story/One City selection, Larson is informed and believes that Dorland continued to call and email members of Larson's writing group through September 2018, accusing them of "complicity" in Larson's alleged plagiarism and "artistic betrayal."  Upon information and belief, Dorland also repeatedly called and emailed current and former staff of Bread Loaf through September 2018, reiterating her utterly false claim that Larson applied for and received a prestigious fellowship with plagiarized material.

## Count I
### (Intentional Interference by Dorland with Larson's ASF Contract)

61.     Plaintiff realleges Paragraphs 1 through 60 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

62.     In May 2017, ASF offered to publish *The Kindest* and Larson accepted the offer and agreed to let ASF publish her Short Story in ASF's literary magazine, and to feature the Work on its website "for the duration of the Author's copyright period including extensions and renewals."  The parties signed a Publishing Agreement a copy of which is attached hereto as Exhibit D.  Larson was paid $300 by ASF.

63.     At all relevant times, Dorland and her agents, servants and/or attorneys knew that Larson's Work was published by ASF.

64.     Sometime after the Work was published, Dorland contacted ASF and accused Larson of "plagiarizing" her 2015 Factual Letter by using it in *The Kindest*.  Dorland complained that Larson's Work was a "paraphrase" of Dorland's 2015 Factual Letter, and that Larson "plagiarized" the 2015 Factual Letter in Larson's Short Story.

65.     Dorland relentlessly called and emailed various ASF employees and board members for weeks, sometimes multiple times per day, asserting her unfounded claim of plagiarism.

66.     Dorland's actions in making claims of plagiarism and sending aggressive and coercive correspondence to ASF without just cause were malicious and calculated to cause damage to Larson.

67.     ASF told Larson that it did not have the financial means nor sufficient staff to deal with Dorland's demands, and as a direct and proximate result of Dorland's demands and actions, ASF, in consultation with Larson, decided to pull *The Kindest* from the ASF website, earlier than it had envisioned it would and in violation of its agreement with Larson.

68.     Larson was damaged in that she lost the benefit of widespread online distribution of her Short Story and the exposure of her work to new audiences.  Additionally, Larson lost a significant professional achievement, which would likely have advanced her career.  All of this has been to Larson's great damage.

**Count II**
(Intentional Interference by Dorland with Larson's BBF Contract)

69.     Plaintiff realleges Paragraphs 1 through 60 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

70.     In June 2018, after the BBF selected Larson's Short Story as its 2018 One City/One Story winner, the BBF and Larson entered into an agreement for consideration memorializing the selection of Larson's Work.  In the agreement, Larson granted the BBF a license for the full term of the copyright, to publish the Short Story online in any language, and to print and distribute up to 30,000 copies of *The Kindest*.   A copy of the Agreement with the BBF is attached hereto as Exhibit E.

71.     In or around May or June 2018, Dorland and her agents, servants and/or attorneys found out that Larson's Work was selected as the winner of the BBF short-story competition and that it was going to be featured in the One City/One Story event.

72.     Starting in June 2018, Dorland and her agents, servants and attorneys contacted the BBF and frequently made unsupportable claims against the BBF for possible copyright infringement, as well as claims for Statutory Damages and attorney fees under the Copyright Act.  Dorland and her agents, servants and/or attorneys intentionally utilized aggressive and coercive language and made demands in correspondence with the BBF in order to cause damage to Larson and to coerce the BBF either to attribute *The Kindest* to Dorland, or ultimately pull *The Kindest* from BBF's One City/One Story project.

73.     At the time, Dorland and/or Cohen Law knew or should have known that the letter in the BBF version of *The Kindest* that the BBF was about to distribute bears virtually no similarity to Dorland's 2015 Factual Letter, and thus Dorland had no legal basis for continuing her crusade against the BBF either to attribute *The Kindest* to Dorland, ultimately pull *The Kindest* from BBF's One City/One Story project, or for damages.  Nonetheless, Dorland and Cohen Law continued to threaten the BBF, grossly misrepresent facts, and make unwarranted

demands. Fearing that a lawsuit would cripple its modest resources, and as a direct result of Dorland's escalating and baseless threats, the BBF decided to rescind its use of Larson's Story.

74. The actions of Dorland, and her agents servants and attorneys in communicating with the BBF were made to pressure the BBF into acquiescing with Dorland's unfounded claim of plagiarism and copyright infringement and her unwarranted demands for attribution and damages.

75. The actions of Dorland, and/or her agents, servants or attorneys in making unsupportable claims for copyright infringement and damages, intentionally misrepresenting the facts, and deploying aggressive and coercive correspondence with the BBF without just cause were malicious and were calculated to cause damage to Larson, and directly resulted in the decision by the BBF to pull *The Kindest* from its One City/One Story project in breach of its agreement with Larson.

76. As a direct and proximate result of this and other intentional actions by Dorland, and/or her agents, servants or attorneys, the BBF rescinded its selection of *The Kindest* to Larson's great damage. Larson was further damaged in that she was publicly humiliated when the BBF rescinded her Short Story as the 2018 One City/One Story selection, and she has had to explain this event to her friends, family, employer, and colleagues. In addition, Larson has lost the publicity and exposure that would have resulted from widespread distribution of the Work in multiple languages before whole new audiences. The loss of this significant professional achievement was substantial in that it would likely have resulted in numerous speaking engagements and print, television and radio interviews, as previous One City/One Story winners received, all to Larson's great damage.

**Count III**
(Interference by Cohen Law with Larson's BBF Contract)

77.      Plaintiff realleges Paragraphs 1 through 60 and 70 through 76 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

78.      One of Cohen Law's reasons for making erroneous claims against the BBF for potential copyright infringement, Statutory Damages and attorney's fees was to conspire with Dorland to pressure the BBF into succumbing to Dorland's unwarranted claims for copyright infringement, and her unjustified demand for monetary damages and attribution in Larson's Short Story.

79.      Dorland's actions and those of Cohen Law acting on her behalf in making unsupportable claims for significant damages for copyright infringement, misrepresenting the facts, and deploying overly aggressive and coercive correspondence with the BBF were calculated to pressure the BBF into withdrawing *The Kindest* from its One City/One Story project and securing other unwarranted concessions.  As a direct result of Cohen Law's escalating, baseless and intentional threats and demands, and fearing that a lawsuit would cripple its modest resources, the BBF decided to rescind use of Larson's Story.  The decision of the BBF to pull *The Kindest* was made to mollify BBF's sponsors and to avoid additional legal fees.  It was not a concession of wrongdoing by the BBF or Larson.

80.      As a direct and proximate result of the actions by Cohen Law, the BBF breached its agreement with Larson and rescinded its selection of *The Kindest* as its One City/One Story selection.  Larson was greatly damaged in that she has had to endure the public humiliation resulting from the BBF's decision to rescind the Short Story as its One City/One Story selection, has had to explain the events to her friends, family, employer, and colleagues.  Additionally, Larson has lost the publicity and exposure that the widespread distribution of the Work to over

30,000 new readers would have created.  Furthermore, Larson lost a significant professional achievement that likely would have resulted in receiving numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

**Count IV**
(Interference by Attorney Cohen with Larson's BBF Contract)

81.    Plaintiff realleges Paragraphs 1 through 60 and 70 through 80 of the Complaint as if said allegations have been restated and realleged herein, in their entirety.

82.    Starting in or around June 2018, Attorney Cohen began to represent Dorland with respect to her alleged plagiarism and copyright infringement claims against Larson, and her claims for copyright infringement and damages against the BBF.

83.    In May 2018, the BBF informed Larson that it had selected her Short Story as its 2018 One City/One Story winner.  In June 2018, the BBF and Larson entered into an agreement, memorializing the selection of Larson's Work.  In the agreement, Larson granted the BBF a license to publish the Short Story online, and to print and distribute 30,000 free copies of *The Kindest* throughout the Greater Boston Area.  A copy of the BBF agreement with Larson is attached as Exhibit E.

84.    On July 3, 2018, with knowledge that Larson's Short Story was the winner of the 2018 BBF short-story competition, Attorney Cohen sent a letter to the BBF alleging that *The Kindest* infringed the copyright to Dorland's 2015 Factual Letter.  Attorney Cohen demanded that the BBF cease and desist from printing, copying and distributing Larson's Short Story, or risk incurring up to $150,000 in Statutory Damages under the Copyright Act.

85.    At the time that the July 3, 2018 letter was written, Attorney Cohen knew or should have known that under 17 U.S.C. § 412, Statutory Damages and attorney's fees were not

available to Dorland under the Copyright Act, because Dorland's 2015 Factual Letter was registered with the Copyright Office after the alleged infringement was made by Larson.

86.     One of Attorney Cohen's reasons for making erroneous claims for Statutory Damages and attorney's fees against the BBF was to pressure the BBF into submitting to Dorland's unfounded claim of copyright infringement, and her unwarranted demand for damages and attribution in Larson's Short Story.

87.     Attorney Cohen's actions in making unsupportable claims, misrepresenting the facts, and deploying aggressive and coercive correspondence with the BBF were intentional and were calculated to cause damage to Larson.

88.     Larson contends that the wholly unsupported claims for Statutory Damages and attorney's fees proffered by Attorney Cohen for any perceived copyright infringement under the facts presented, directly resulted in the decision by the BBF to breach its agreement with Larson and to pull *The Kindest* from the One City/One Story event.

89.     As a direct and proximate result of this and other actions by Attorney Cohen, and his agents, servants or employees, the BBF rescinded its selection of *The Kindest* and Larson was greatly damaged.  Larson was further damaged in that she has had to endure the public humiliation resulting from the BBF's decision to rescind the Short Story as its One City/One Story selection, and has had to explain this event to her friends, family, employer, and colleagues.  Additionally, Larson has lost the publicity and exposure that the widespread distribution of the Work to over 30,000 new readers would have created.  Moreover, Larson lost a significant professional achievement that likely would have resulted in receiving numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

**Count V**
(Commission by Cohen Law of
Unfair and Deceptive Acts and Practices in violation of M.G.L. c. 93A.)

90.     Plaintiff realleges Paragraphs 1 through 60 and 70 through 80 of the complaint as

if said allegations have been restated and realleged herein, in their entirety.

91.     On July 3, 2018, Cohen Law sent a letter to the BBF on behalf of Dorland making

claims of copyright infringement against the BBF, and demanding unwarranted Statutory

Damages and attorney's fees under the Copyright Act.

92.     Cohen Law made further unwarranted demands to the BBF and its agents,

servants and attorneys in July and August 2018, as well as written demands to Larson's attorney,

James A. Gregorio by letters dated July 20, 2018 and September 6, 2018, demanding without

justification damages, attorney's fees and that Larson cease and desist from using a letter from a

kidney donor to her recipient in *The Kindest*.  Copies of Cohen Law's letters of July 20, 2018

and September 6, 2018, are attached hereto as "Exhibit L" and "Exhibit M" respectively, and are

incorporated herein by reference.

93.     The claims made by Cohen Law for potential copyright infringement violations

and the demand for substantial damages were made with knowledge that they lacked any

verification or legal justification and were unreasonable, unwarranted, frivolous, futile and/or

advanced primarily to coerce the BBF into acquiescing to Dorland's demands, and attempting to

extract unwarranted damages, attorney's fees and other relief from Larson.

94.     As a result of Cohen Law's actions, the BBF cancelled *The Kindest* as the winner

of its One City/One Story event.

95.     Pursuant to Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A, a thirty-day demand letter was sent to Cohen Law.  A copy of said letter is attached as "Exhibit N" and is incorporated herein by reference.  Cohen Law responded to said letter within thirty days, however its response was inadequate under the law.  A copy of said letter is attached as "Exhibit O" and Larson's attorney's letter in response is attached as "Exhibit P."  All of said letters are incorporated herein by reference.

96.     The totality of circumstances including Cohen Law's communications with the BBF, its agents, servants and attorneys, and its various letters to the BBF and Larson's attorney starting on or about July 3, 2018, and continuing thereafter, contain wholly insupportable legal claims and demands, and are evidence of outrageous conduct in trade or commerce within Massachusetts, which constitutes a violation of Massachusetts General Laws, chapter 93A.

97.     As a result of the conduct of Cohen Law, in making false statements and accusations of plagiarism and copyright infringement and threatening substantial damages from Larson and the BBF, the BBF canceled the selection of *The Kindest* from the One City/One Story event.  The BBF's cancelation has greatly injured Larson's reputation and her reputation as a writer within and among writer's groups, her friends, colleagues and others.  In addition, Larson has had to endure the public humiliation resulting from the BBF's decision to rescind the honor, has had to explain the events to her friends, family, employer, and colleagues.  Further, Larson has lost the publicity and exposure that the widespread distribution of the Work before whole new audiences would have created and has lost numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

**Count VI**
(Commission by Attorney Cohen of
Unfair and Deceptive Acts and Practices in violation of M.G.L. c. 93A.)

98.     Plaintiff realleges Paragraphs 1 through 60 and 70 through 97 of the complaint as if said allegations have been restated and realleged herein, in their entirety.

99.     On July 3, 2018, Attorney Cohen sent a letter to the BBF on behalf of Dorland making claims of copyright infringement against the BBF, and demanding unwarranted Statutory Damages and attorney's fees under the Copyright Act.

100.    Attorney Cohen, and his agents, servants or employees made further unwarranted demands to the BBF and its agents, servants and attorneys in July and August 2018, as well as written demands to Larson's attorney, James A. Gregorio by letters dated July 20, 2018 and September 6, 2018, demanding without justification damages, attorney's fees and that Larson cease and desist from using a letter from a kidney donor to her recipient in *The Kindest*.  Copies of letters dated July 20, 2018 and September 6, 2018, which were written on behalf of Attorney Cohen are attached hereto as "Exhibit L" and "Exhibit M" respectively, and are incorporated herein by reference.

101.    The claims made by Attorney Cohen and his agents, servants and employees for potential copyright infringement violations and the demand for substantial damages were made with knowledge that they lacked any verification or legal justification and were unreasonable, unwarranted, frivolous, futile and/or advanced primarily to coerce the BBF into acquiescing to Dorland's demands, and attempting to extract unwarranted damages, attorney's fees and other relief from Larson.

102.    As a result of Attorney Cohen's actions, the BBF cancelled *The Kindest* as the winner of its One City/One Story event.

103.     Pursuant to Massachusetts Consumer Protection Act, Mass. General Laws, chapter 93A, a thirty-day demand letter was sent to Attorney Cohen.  A copy of said letter is attached as "Exhibit N" and is incorporated herein by reference.  Attorney Cohen responded to said letter within thirty days, however his response was inadequate under the law.  A copy of said letter is attached as "Exhibit O" and Larson's attorney's letter in response is attached as "Exhibit P."  All of said letters are incorporated herein by reference.

104.     The totality of circumstances including the communications of Attorney Cohen and his those of his agents, servants and employees with the BBF, its agents, servants and attorneys, and his various letters to the BBF and Larson's attorney starting on or about July 3, 2018, and continuing thereafter, contain wholly insupportable legal claims and demands, and are evidence of outrageous conduct in trade or commerce within Massachusetts, which constitutes a violation of Massachusetts General Laws, chapter 93A.

105.     As a result of the conduct of Attorney Cohen, in making false statements and accusations of plagiarism and copyright infringement and threatening substantial damages from Larson and the BBF, the BBF canceled the selection of *The Kindest* from the One City/One Story event.  The BBF's cancelation has greatly injured Larson's reputation and her reputation as a writer within and among writer's groups, her friends, colleagues and others.  In addition, Larson has had to endure the public humiliation resulting from the BBF's decision to rescind the honor, has had to explain the events to her friends, family, employer, and colleagues.  Further, Larson has lost the publicity and exposure that the widespread distribution of the Work before whole new audiences would have created and has lost numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

106.    The claims made by Attorney Cohen about potential copyright infringement

liability and the demand for substantial damages and attorney's fees were made with knowledge

that they were false, and lacked any verification or legal justification, and were unreasonable,

unwarranted, frivolous, futile and/or advanced primarily to harass the BBF into acquiescing to

Dorland's demands.

107.    As a result of these actions, the BBF cancelled *The Kindest* as the winner of its

One City/One Story event.

108.    Pursuant to Massachusetts Consumer Protection Act, Mass. General Laws,

chapter 93A, a thirty-day demand letter was sent to Attorney Cohen (A copy of said letter is

attached as "Exhibit H" and is incorporated herein by reference).  Attorney Cohen responded to

said letter within thirty days, however his response was inadequate under the law.  (A copy of

said letter is attached as "Exhibit Q" and is incorporated herein by reference).

109.    The totality of circumstances including Attorney Cohen's various letters to the

BBF and Larson's attorney starting on or about July 3, 2018, and continuing thereafter, contain

wholly insupportable legal claims and demands, and are evidence of outrageous conduct in trade

or commerce in Massachusetts, which constitutes a violation of Massachusetts General Laws,

chapter 93A.

110.    As a result of the conduct of Attorney Cohen, in making false statements and

accusations of copyright infringement and demanding substantial damages, the BBF canceled the

selection of *The Kindest* from the One City/One Story event, and has greatly injured Larson's

reputation and her reputation as a writer within and among writer's groups, friends, colleagues

and others.  In addition, Larson has had to endure the public humiliation resulting from the

BBF's decision to rescind the honor, has had to explain the events to her friends, family,

employer, and colleagues. Further, Larson has lost the publicity and exposure that the widespread distribution of the Work before whole new audiences would have created and has lost **numerous** speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

## Count VII
### (Defamation Claim against Dorland)

111.    Plaintiff realleges Paragraphs 1 through 89 of the complaint as if said allegations have been restated and realleged in their entirety.

112.    In or around 2018, Dorland started a campaign against Larson, orally and in writing, accusing Larson of plagiarizing her 2015 Factual Letter by including it in whole or in part in *The Kindest*.  Dorland contacted ASF, the BBF, GrubStreet, Bread Loaf, the *Boston Globe*, Larson's writer's group, and in Dorland's own words, "other writing conferences of similar repute," spreading false and malicious claims of plagiarism against Larson.

113.    Dorland's statements were false and had no validity in fact or in law, and they were made in large part to discredit Larson, to force ASF to remove Larson's Short Story from its website, to pressure the BBF to cancel *The Kindest* as the winner of the BBF's One City/One Story competition, and to discredit and disparage Larson in front of her friends, acquaintances, colleagues, relatives, employers and other professionals in the writing community throughout the United States.

114.    The nature of the statements damaged Larson's reputation in the Boston writing community at the time they were made, because they portrayed Larson as a plagiarist and a copyright infringer, caused two organizations to discontinue involvement with Larson and

distance themselves from her work, caused harm to Larson's reputation within the writing community in Boston and beyond, and damaged and discredited her career as a writer.

115.    Dorland was at fault for claiming that the Fictional Letter in Larson's Short Story infringed on Dorland's 2015 Factual Letter either because the 2015 Factual Letter is not sufficiently original to be accorded copyright protection, or that Larson's use of the 2015 Factual Letter was *de minimus* or permitted under the fair use doctrine.

116.    Dorland's false statements and accusations of plagiarism and copyright infringement have resulted in ASF removing *The Kindest* from publication, and the BBF canceling the Work's inclusion in its One City/One Story event, and has otherwise greatly injured Larson's personal reputation and her reputation as a writer among writer's groups, friends, colleagues, and others.  In addition, Larson has had to endure and will have to continue to endure the public humiliation which has accompanied the BBF rescinding the honor of the selection of *The Kindest*, has had to explain this event and will have to continue to explain this event to her friends, family, future employers, and colleagues, and has lost the publicity and exposure that would have been created through the widespread distribution of the Work before whole new audiences.  Further, as an award-winning author Larson would have garnered a significant professional achievement, and likely would have received numerous speaking engagements and print, television and radio interviews as previous winners of the One City/One Story competition had received, all to her great damage.

### Count VIII
#### (Declaration of Rights - Declaratory Judgment)

117.    Larson repeats and realleges paragraphs 1 through 116 of this Complaint, as if each paragraph was restated herein.

118.    Larson is the author of *The Kindest* and she is the owner of all rights to the Short Story including the copyright thereto.

119.    *The Kindest* contains a brief Fictional Letter written by a kidney donor to her kidney recipient.

120.    Larson is seeking judgment from this court declaring her rights as follows:

    a.    Larson is the author of *The Kindest*;

    b.    Larson owns the copyright to *The Kindest*;

    c.    *The Kindest* is a fictional story that includes the Fictional Letter;

    d.    The Fictional Letter in *The Kindest* does not infringe on Dorland's 2015 Factual Letter.

    e.    Larson has not infringed on the copyright to Dorland's 2015 Factual Letter nor on any other rights Dorland may have under the U.S. Copyright Act;

    f.    Dorland is not entitled to actual or profit damages under the U.S. Copyright Act, 17 U.S.C. § 504(b); and


    g.    Dorland is not entitled to statutory damages under the U.S. Copyright Act, 17 U.S.C. § 504(c), or attorney's fees under the U.S. Copyright Act 17 U.S.C. § 505;

WHEREFORE, Plaintiff, SONYA LARSON, demands judgment against Defendants, DAWN DORLAND PERRY, COHEN BUSINESS LAW GROUP, P.C., and JEFFREY A. COHEN, as follows:

a)      That under Count I, Defendant Dorland be required to pay Plaintiff damages for her intentional interference with Larson's contractual business relationship with ASF in an amount to be determined by the court.

b)      That under Count II, Defendant Dorland be required to pay Plaintiff damages for her intentional interference with Larson's contractual business relationship with the BBF in an amount to be determined by the court.

c)      That under Count III, Defendant Cohen Law be required to pay Plaintiff damages for its intentional interference with Larson's contractual business relationship with the BBF in an amount to be determined by the court.

d)      That under Count IV, Defendant Attorney Cohen be required to pay Plaintiff damages for his intentional interference with Larson's contractual business relationship with the BBF in an amount to be determined by the court

e)      That under Count V, Defendant Cohen Law be required to pay Plaintiff damages for the commission of unfair and deceptive acts and practices in an amount to be determined by the court, and that said damages be trebled but no less than doubled and that Larson be awarded her costs and attorney's fees.

f)      That under Count VI, Defendants Attorney Cohen be required to pay Plaintiff damages for the commission of unfair and deceptive acts and practices in an amount to be determined by the court, and that said damages be trebled but no less than doubled and that Larson be awarded her costs and attorney's fees.

g)      That under Count VII, Defendant Dorland be required to pay Larson damages for defaming Larson in an amount to be determined by the court.

h)       That under Count VIII, the court declare that the Plaintiff is the owner of all rights to *The Kindest*, that the Short Story does not infringe on Defendant Dorland's 2015 Factual Letter, that Dorland is not entitled to damages, attorney's fees or costs, and that Larson be awarded her damages, costs and attorney's fees.

i)       That Plaintiff have such other and further relief, including interests and her costs as is deemed to be just and proper by the court.

## **<u>PLAINTIFF CLAIMS TRIAL BY JURY</u>**

SONYA LARSON,
By her attorney,


/s *Andrew D. Epstein*
_____
Andrew D. Epstein, Esquire (BBO #155140)
Barker, Epstein & Loscocco
176 Federal Street
Boston, MA 02110
Tel: (617) 482-4900
Fax: (617) 426-5251
Photolaw@aol.com

## List of Exhibits

**Case**: Larson v. Dorland et al.
Docket No.1:19-cv-10203-IT

## EXHIBITS

Exhibit A – Dorland's 2015 Factual Letter

Exhibit B – Copyright registration information for Dorland's 2015 Factual Letter

Exhibit C – Agreement by and between Larson and Plympton, Inc.

Exhibit D – Agreement by and between Larson and ASF

Exhibit E – Agreement by and between Larson and the BBF

Exhibit F – Copy of *The Kindest*

Exhibit G – Certificate of Copyright Registration for *The Kindest*

Exhibit H – Letter from Attorney Cohen of Cohen Law to the BBF dated July 3, 2018

Exhibit I – Letter from Attorney Gregorio to Attorney Cohen of Cohen Law dated July 17, 2018

Exhibit J – July 26, 2018, *Boston Globe* article

Exhibit K – August 14, 2018, *Boston Globe* article

Exhibit L – Letter from Cohen Law to Attorney Gregorio dated July 20, 2018

Exhibit M – Letter from Cohen Law to Attorney Gregorio dated September 6, 2018

Exhibit N – Larson's M.G.L. Chapter 93A thirty-day demand letter

Exhibit O – Response of Dorland, Cohen Law, Attorney Cohen to Larson's Chapter 93A letter

Exhibit P – Plaintiff's attorney's response to Defendants Chapter 93A letter.

## **Certificate of Service**

      I certify that the Amended Complaint was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.


*/s/ Andrew D. Epstein*

July 31, 2019                                      Andrew D. Epstein