UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                 Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS,
COHEN BUSINESS LAW GROUP, PC, AND JEFFREY A. COHEN,
AND MEMORANDUM IN SUPPORT THEREOF,
SUPERSEDING THE OPPOSITION AT DOCKET NO. 16**

**<u>Plaintiff, Sonya Larson Requests Oral Argument</u>**

Plaintiff hereby submits this opposition to the Motion to Dismiss of Cohen Business Law Group, PC (the "Law Firm") and Jeffrey A. Cohen ("Attorney Cohen"). This Opposition is meant to replace the Opposition previously filed by Plaintiff in this Action at Docket No. 16. Unless otherwise stated, both the Law Firm and Attorney Cohen will be collectively referred to as the "Law Firm." Plaintiff will be referred to as "Larson," and Defendant, Dawn Dorland Perry will be referred to as "Dorland." As grounds for her Opposition, Larson states as follows:

This is an action by a published author (Larson) against an aspiring author (Dorland) and the California law firm and principal attorney of the Law Firm that represented Dorland. The Law Firm has challenged Larson's Amended Complaint on three fronts.

First, the Law Firm claims that there is no actual case or controversy between Larson and the Law Firm under Article III, Section 2, Clause 1 of the Constitution that permits this Court to render declaratory judgment.  Second, the Law Firm disputes that this court has jurisdiction over the California defendants under the Massachusetts Long Arm Stature, M.G.L. c. 223A § 3. Third, the Law Firm claims that it is protected by the "litigation privilege" which protects statements made in communications preliminary to litigation as long as the statements are pertinent to the litigation.

As will be shown, this court has both subject matter jurisdiction over Larson's claim for declaratory judgment as well as personal jurisdiction over the Law Firm and Attorney Cohen for conducting business in Massachusetts, for purposefully causing tortious injury within the Commonwealth, and for violating M.G.L. c. 93A.  In the alternative, the Law Firm's actions are so inextricably intertwined with Dorland's actions that this Court should exercise supplemental jurisdiction over the Law Firm.  Furthermore, Larson will show that the litigation privilege extends only to statements made preliminary to litigation but <u>not</u> to misstatements of fact and law that were made by the Law Firm to mislead and intimidate potential litigants about damages available under the Copyright Act.  Knowingly making a false statement of material fact or law to a third person is a violation of Rule 4.1 of the Massachusetts Rules of Professional Conduct.[1]

## <u>Legal Standard to Survive a Motion to Dismiss</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v Twombly</u>, 550 U.S. 544, 570 (2007)).  In

---

[1] California now has an identical provision.  See Rule 4.1 of the Rules of the State Bar of California, proposed on November 17, 2016, and adopted unanimously, effective November 1, 2018.  The California Rule essentially tracks the language of American Bar Association, Model Rule 4.1.

ruling on a motion to dismiss, a court must accept as true all well-pled facts alleged in the complaint and "in the light most favorable to the nonmovant and draw all reasonable inferences therefrom."  In re: Loestrin 24 Fe Antitrust Litigation, 814 F.3d 538, 549 (1st Cir. 2016) (citations omitted).  "The question confronting a court on a motion to dismiss is whether *all* the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible."  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14–15 (1st Cir. 2011)

In addition to the complaint, a district court considering a Rule 12(b)(6) motion may also consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (citation omitted).  See also, Jovani Fashion, Ltd. v. Cinderella Divine, Inc., 808 F.Supp.2d 542, 545 (S.D.N.Y. 2011) (courts may also consider "documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit...."

## Brief Summary of Facts pertinent to this Motion

Sonya Larson is an aspiring, award-winning professional writer who is very active in the writing community. (See, https://larsonya.com)  Larson is the author of a short story entitled, *The Kindest*, which is at the heart of this Action.[2]  *The Kindest*, hereinafter the "Short Story" or the "Story," has received wide-spread acclaim and was published both as an audio book and an on-line book.  The Story also won a prestigious competition in 2018, organized by the Boston Book Festival, Inc. (the "BBF").  The BBF is a non-profit corporation that promotes reading and

---

[2] A copy of *The Kindest* is attached to the Amended Complaint as "Exhibit F." *The Kindest* was registered with the U.S. Copyright Office before this Action was filed and it was given Registration No. TX-8-678-446, effective December 17, 2018.  A copy of the Certificate of Registration is attached to the Amended Complaint as "Exhibit G."

ideas for writers and bibliophiles. [Am. Compl. ¶ 35]  After the original Complaint in this Action

was filed, Larson learned that her Story was accepted for publication in an anthology of short

stories to be published in the Fall/Winter 2019, by Ohio University Press/Swallow Press.

(Larson Affidavit, attached as "Exhibit A," ¶ 1.)

*The Kindest* is a story about a kidney donation.  The kidney was given anonymously by a

wealthy, white, female donor to a poor Chinese-American female recipient.  [Am. Compl. ¶ 18]

Dorland claims to be an anonymous kidney donor, and she authored a letter that she

either sent or intended to send to the recipient of her kidney donation.  Dorland posted the letter

on her Facebook page in 2015.  [Am. Compl. ¶¶ 9-11]  A copy of Dorland's letter, hereinafter

the "Factual Letter" or the "2015 Letter" is attached to the Amended Complaint as Exhibit A.

Larson saw Dorland's letter when it was posted on Facebook and used a letter from a

donor to a recipient in her Short Story as a literary device to help introduce one of her characters.

Larson's letter is not the central focus of her Story.  [Am. Compl. ¶ 19]  A copy of the letter

Larson uses in her Story (the "Fictional Letter") is included in the final version of *The Kindest*,

which is attached to the Amended Complaint as "Exhibit F" at pp. 4-5.  There is not one phrase

or group of words in Larson's Fictional Letter that matches the language used in Dorland's

Factual Letter.

The concept or idea of writing a letter to a kidney recipient is not capable of being

copyrighted.  Johnson v. Gordon, 409 F.3d 12, 19 (1st Cir. 2005) ("copyright law protects

original expressions of ideas but it does not safeguard either the ideas themselves or banal

expressions of them"); Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998) ("A major

limitation on what is protectible under the copyright laws is capsulized in the notion that

copyright protects the original expressions of ideas but not the ideas expressed.")

Larson wrote several versions of *The Kindest* over a period of about one year.  One of the early versions was published online as an audio story. [Am. Compl. ¶ 28]  A later version was published in a literary magazine by American Short Fiction ("ASF").  [Am. Compl. ¶ 31]   In these early versions of *The Kindest*, Larson used some of the same words that Dorland used in her 2015 Letter.  However, Larson's use was fair use under Section 107 of the Copyright Act.  Specifically, Dorland's 2015 Letter was used in an entirely different way than Dorland used her 2015 Letter, transforming Dorland's letter into something new with a different meaning or message and new purpose.  Where something new is added to the original work with a further purpose or a different character, altering the first with new expression, meaning or message, the use is a transformative fair use.  Fitzgerald v. CBS Broad., Inc., 491 F. Supp. 2d 177, 185 (D. Mass. 2007)

Once Dorland learned from a mutual acquaintance that Larson was writing a story about a kidney donation, Dorland began to hound Larson with emails and text messages insinuating that the Short Story in its entirety was based on Dorland's life experiences.  [Am. Compl. ¶ 23]

In 2018, Larson entered *The Kindest* in an annual competition conducted by the Boston Book Festival (the "BBF").  [Am. Compl. ¶ 32].  The BBF features a short story that it distributes extensively in the Boston area through a program called, "One City/One Story."  Over 30,000 copies of the selected story are distributed each year to BBF members, participants in the Festival, local libraries and participating businesses.  [Am. Compl. ¶ 33-34].

In May 2018, Larson was honored that *The Kindest* was chosen by the BBF to be the central literary work that would be featured starting in August 2018, as the BBF's One City/One Story selection.  [Am. Compl. ¶ 35]

Dorland was obviously angry, and she started a campaign to discredit Larson by relentlessly contacting Larson's publishers, her employer and various writing groups, accusing Larson of plagiarism.  [Am. Compl. ¶¶ 37-41].  Dorland's allegations of plagiarism were devastating to Larson.

ASF told Larson that it did not have the financial means nor sufficient staff to deal with Dorland's claims and demands, and ASF, in consultation with Larson, decided to pull *The Kindest* from its website.  [Am. Compl. ¶ 67].  Eventually, Dorland's claim of plagiarism, which is damaging enough on its own especially to a writer, escalated to copyright infringement when Dorland hired Attorney Cohen and the Law Firm to write to the BBF in order to try to prevent the BBF from using *The Kindest* in its One City/One Story program.

Attorney Cohen's letter to the BBF dated July 3, 2018, demanded that the BBF not use Larson's Story and threatened that if it did, it would be liable under 17 U.S.C. § 504(c), for statutory damages of up $150,000 plus attorney's fees.  [Am. Compl. ¶ 50 and Exhibit H]

Attorney Cohen's letter says the Law Firm is copyright counsel to Dorland.  This is consistent with the Law Firm's letterhead and website, which touts the Firm's areas of expertise in copyright law and litigation.  [https://cohenblg.com]  Despite this claimed expertise, Attorney Cohen said in his letter that if the BBF does not cease and desist from copying, printing and distributing *The Kindest*, his office would be left with no alternative but to seek "the full measure of penalties for statutory copyright infringement under 17 U.S.C. § 504(c), which . . . could be as high as $150,000."   Attorney Cohen knew or should have known that damages for copyright infringement are not available under §504(c) unless the allegedly infringed work is registered before it is infringed or within 90 days after its first publication.  Neither scenario is applicable here.  [Am. Compl. ¶ 50].

While Larson included a kidney donor letter in her Short Story in 2016, Dorland did not register the copyright to her 2015 Letter until June 10, 2018.[3] Section 412 of the Copyright Act does not permit recovery of statutory damages or attorney's fees for works that were registered with the Copyright Office after an alleged infringement. There is absolutely no statutory basis for the Law Firm's demand that Larson pay "penalties for statutory copyright infringement" and reimburse Dorland for her legal fees. However, there is legal basis for Larson to expect reimbursement for her fees from all of the Defendants. Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers (ASCAP), 642 F.3d 87, 90 (1st Cir. 2011) (Section 412 only applies to plaintiffs who assert copyright infringement claims and not to defendants who successfully defend against such claims). If Dorland was ever entitled to damages, she would be limited to actual damages plus any profits earned by Larson from the publication of her Short Story.[4] [See, 17 U.S.C. § 412 and § 504(b).]

Thus, there is no way that Dorland can recover statutory damages or attorney's fees under the Copyright Act. The Law Firm either knew or should have known this. Similarly, Attorney Michael S. Hanna, an attorney in the Law Firm, doubled-down on Cohen's claim for statutory damages and attorney's fees on behalf of Dorland in a letter dated July 20, 2018, sent to the BBF. [Am. Compl. at ¶¶ 55, 79, 92 and Exhibits L and M.]

On information and belief, the BBF rescinded the selection of *The Kindest* as its One City/One Story winner rather than risk a legal challenge to the Story and face possible substantial statutory damages and its own attorney's fees as well as those of Dorland. The Law Firm's

---

[3] See Amended Complaint "Exhibit B," Copyright Registration record for "Dorland kidney chain final recipient letter July 2, 2015" Registration No. TXu 2-101-420, effective June 10, 2018.

[4] Larson earned a total of $425 to date for her Short Story. [Am. Compl. ¶¶ 30 and 31] It hard to imagine that any portion of this sum is profit.

escalating demands, the prospect of huge damages and the possibility of adverse publicity were too much for the small non-profit to risk.  [Am. Compl. ¶¶ 58-59].

Even after the BBF decided not to use Larson's Short Story, Dorland continued with her campaign to discredit Larson by pressing her unfounded allegations of plagiarism and copyright infringement.  [Am. Compl. ¶ 60].  The only thing that appears to have quelled Dorland's disparaging campaign against Larson is this lawsuit.   In fact, neither the Law Firm nor Attorney Cohen have ever notified Larson's counsel that it was terminating its representation of Dorland. As late as October 26, 2018, Attorney Cohen responded to Larson's Chapter 93A demand letter stating that the Law Firm "is counsel for Dawn Dorland."  See, "Exhibit O" to the Amended Complaint.

## Lack of Subject Matter Jurisdiction.

While Larson lost the opportunity to have *The Kindest* used by the BBF as part of its One City/One Story project, she continued to seek publication opportunities for the Story.  After the Complaint in this Action was filed, Larson was notified that *The Kindest* is going to be included in an upcoming anthology of short stories to be published in the Fall 2019.  [Larson Aff. ¶ 1.] Also, since the BBF has already printed 30,000 copies of *The Kindest*, it is possible that the BBF can be persuaded to distribute the Story in the future, either as part of an upcoming One City/One Story project, or as a teaching tool for writers on copyright law.   However, unless and until this Court declares that Larson's Story does not infringe Dorland's copyright in the 2015 Letter, two things seem certain:

1.     The BBF is not going to reproduce, distribute or display *The Kindest*; and

2.     Larson is not 100% certain that Dorland will let Ohio University

       Press/Swallow Press or anyone else publish *The Kindest*.

These fears are not mere speculation.  For example, even after Larson's legal counsel sent a demand letter to Dorland on September 27, 2018, under M.G.L. c. 93A, a copy of which is attached to the Amended Complaint as Exhibit N, Dorland continued to contact writer's groups and conferences closely associated with Larson.  [Am. Compl. ¶ 60]  The only thing that appears to have stopped Dorland from continuing her campaign against Larson is the filing of this lawsuit.  Without a declaration from this Court that Larson's Short Story does not infringe Dorland's 2015 Letter, Dorland will be free to continue claiming that Larson plagiarized her letter and infringed her copyright.

### Case or Controversy under Article III

In its July 3, 2018 letter, the Law Firm threatened "formal action" to protect Dorland's rights, which would include preventing the intended publication of *The Kindest* and seeking "the full measure of penalties for statutory copyright infringement."  (Exhibit H)  If Larson did not bring the present lawsuit, Dorland's threat of an action for copyright infringement and damages would be hanging over Larson's head until either Dorland sued, or the three-year statute of limitations for copyright infringement expired.

This is the same dilemma that the court encountered in Young Women's Christian Association of U. S., Nat. Board v. HMC Entertainment, Inc., No. 91 CIV. 7943 (KMW), 1992 WL 279361, at *2–3 (S.D.N.Y. Sept. 25, 1992) (hereinafter cited as "YWCA").  In YWCA, the court said that the Declaratory Judgment Act ("DJA") (28 U.S.C. § 2201), brings issues before courts that otherwise might require a delay until the declaratory judgment defendant brings a coercive action.  The fundamental purpose of the DJA is to,

> avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.  Additionally, actions for declaratory judgment should be permitted

'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' (citations omitted)

In light of defendant's statements in YWCA that it intended to "take all necessary legal action" to protect the work it undertook with respect to its contract with plaintiff, the court found that plaintiff provided sufficient evidence of an actual controversy to sustain the action for a declaratory judgment.

Mailer v. Zolotow, 380 F. Supp. 894, 895 (S.D.N.Y. 1974), also provides authority for using declaratory judgments in copyright disputes.

Suits for declaratory judgments are not uncommon in the area of patents and copyrights. If a defendant has threatened plaintiff with suit, a justiciable controversy is ordinarily present. Indeed, a justiciable controversy exists even where there has been no actual threat of suit, so long as defendant has notified plaintiff that defendant claims his copyright has been infringed." (citations omitted).

The Supreme Court confirmed the use of declaratory judgments in patent cases in Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S.Ct. 764 (2007), which involved a dispute between a patent licensee against a licensor. Defendant (licensor) claimed that plaintiff (licensee) owed it royalties under their agreement, for producing a drug that plaintiff was manufacturing under defendant's patent. Although plaintiff believed that no royalties were due because the patent was invalid and unenforceable, plaintiff believed that defendant's letter was a clear threat that if plaintiff did not pay royalties, plaintiff could be liable for treble damages and attorney's fees.

Plaintiff paid the royalties under protest and filed an action for declaratory judgment. The Supreme Court held that plaintiff was not required to break or terminate its license agreement before seeking a declaratory judgment that the underlying patent is invalid, unenforceable or not infringed. Plaintiff's complaint for declaratory judgment satisfied the case

or controversy requirement of Article III and presented a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant relief.  Id. at 136.

Here, Larson alleges that Dorland continued to call and email members of Larson's writing group through September 2018, long after the BBF rescinded its decision to use *The Kindest* as its One Story/One City selection, accusing them of "complicity" and "artistic betrayal."  Larson further alleges that Dorland repeatedly called and emailed current and former staff of Bread Loaf through September 2018, promoting the utterly false claim that Larson applied for and received a prestigious fellowship with plagiarized material.  [Am. Compl. ¶ 60.]

Under the reasoning in Medimmune, the only viable remedy available to Larson is a claim for declaratory judgment.  Otherwise, Larson would have had to wait until Dorland decided to sue for copyright infringement, if she was ever going to do this, or wait out the statute of limitations.  With the prospect of a copyright infringement action hanging over her head, Larson could not wait for Dorland to act.  Instead, Larson had to act because she wanted her Short Story to be published.  Nothing else was going to effectively stop Dorland and/or her attorneys from continuing to accuse Larson of copyright infringement.

Given Dorland's past behavior, the controversy between the parties is of sufficient immediacy to warrant declaratory judgment.  Declaratory judgment will finalize the controversy and bring Larson relief from uncertainty.  In fact, Larson's count for declaratory judgment is the only claim that Dorland is not seeking to dismiss.  Federal courts are the only forums that have the constitutional power to render declaratory judgments involving copyright issues.  Therefore, this Action presents a case or controversy within the meaning of Article III of the Constitution.  Furthermore, a declaration that Larson did not infringe Dorland's 2015 Letter is necessary to

resolve whether or not the Law Firm and/or Attorney Cohen violated any of Larson's rights through their actions.

## Subject Matter Jurisdiction

The Law Firm says that if Larson's suit belongs anywhere, it is in state court and not in federal court because Larson's tortious interference and Chapter 93A claims against the Law Firm are not really copyright related.  The Law Firm is missing the point of jurisdiction over federal claims.  Federal courts have exclusive jurisdiction over matters involving copyrights.  28 U.S.C. § 1338(a).  "[A]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ..., or asserts a claim requiring construction of the Act, ..., or, at the very least . . . presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.  Gener-Villar v. Adcom Grp., Inc., 417 F.3d 201, 203–04 (1st Cir. 2005)

Larson's Amended Complaint against the Law Firm clearly involves the question of whether the Law Firm was truthful in making material statements of fact or law to the BBF about potential copyright damages available to Dorland.  Larson alleges that the Law Firm, "experts" in copyright law and litigation, were not truthful when it said that statutory damages and attorney's fees were available to Dorland.  This involves an interpretation of Copyright Law, which is squarely within the province of federal courts.  Issues of copyright, including infringement and damages, arise under the Copyright Act and must be resolved in federal court.  Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir.2003).

## Personal Jurisdiction over the Law Firm and Attorney Cohen

The Massachusetts Long Arm Statute, M.G.L. c. 223A §3 provides that "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of

action in law or equity arising from the person's (a) transacting any business in this

commonwealth. . . or (c) causing tortious injury by an act or omission in this commonwealth."

Although Dorland lived and worked in Massachusetts at one time, she now appears to be

a resident of California.  (Am. Compl. ¶ 3).  The Law Firm and Attorney Cohen also appear to

conduct business primarily in California.  (See, https://www.cohenblg.com)  On the other hand,

Larson lives and works in Massachusetts and she has had minimal contacts with the State of

California consisting of a few personal visits, one writer's conference and correspondence with a

literary scout who has only recently moved to San Francisco.  (Larson Aff. ¶ 2)

Dorland contacted numerous people and entities in Massachusetts, Vermont, Texas,

Maryland, California and elsewhere, accusing Larson of plagiarism.  While the allegations were

false and the contacts were hurtful, the last straw came when Dorland, Attorney Cohen and the

Law Firm accused Larson of copyright infringement, and demanded that the BBF stop

reproducing and distributing Larson's Short Story.

## There are Many Massachusetts Contacts Involved in this Dispute.

As its name implies, the BBF is a Boston based non-profit corporation firmly entrenched

in the Boston area.  (See, https://bostonbookfest.org).  Attorney Cohen and the Law Firm wrote

a series of demand letters and made demanding telephone calls to the BBF that directly impacted

Larson, a Massachusetts' resident, directly interfered with a contract that the BBF and Larson

negotiated for the publication and distribution of Larson's Short Story in the Boston area, and led

to the cancellation of the One City/One Story Project that impacted tens of thousands of residents

in Massachusetts.  These are significant contacts by the Law Firm with Massachusetts parties

involving a Massachusetts contract that was to be performed entirely in the Commonwealth.  The

resulting controversy involving the conduct of Attorney Cohen and the Law Firm are certainly

sufficient to satisfy the due process provisions of the Fourteenth Amendment.  International Shoe

Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

The recent case of Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d

28 (1st Cir. 2016) is highly instructive.  In Baskin-Robbins the court had to determine if an out-

of-state defendant had sufficient contacts with Massachusetts for the court to exercise personal

jurisdiction.  Baskin-Robbins looked to see if the defendant's contacts with Massachusetts were

sufficient so as to not offend the notions of fair play and substantial justice inherent in the

Fourteenth Amendment and the Massachusetts Long-Arm Statute.  Id. at 35.  Massachusetts

courts have interpreted the "transacting any business" clause of M.G.L. c. 223A § 3(a )

"broadly," Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994) "to the limits" permitted by the

United States Constitution.  Id. at 771.

Like the defendant in Baskin-Robbins, Larson is seeking to exercise specific jurisdiction

over Attorney Cohen and the Law Firm for this particular case only, and not general jurisdiction

as the Law Firm claims.  (See, Def. Memo. p. 10)

Larson asserts that her claims against the Law Firm arise out of and relate directly to the

Law Firm's targeted contacts with the BBF.  Massachusetts should have the power to hold the

Law Firm accountable for actions it voluntarily conducted that have a direct impact on a

Massachusetts resident and the mission of a Massachusetts corporation.  Baskin-Robbins, 825

F.3d at 36.  The Law Firm should be held accountable for its actions in this Commonwealth to

the same extent as a Massachusetts attorney would be held accountable for similar in-state

actions.  The Law Firm purposefully availed itself of the privilege of conducting business in

Massachusetts, "thereby invoking the benefits and protections" of this state's laws "and making

the defendant's involuntary presence before the state's courts foreseeable."  Id. at 35.

The Law Firm's communications with the BBF, including its letter-writing campaign, emails and telephone calls show that its activities on behalf of Dorland were not random, isolated or fortuitous events but were directly targeted at the BBF and Larson in this Commonwealth, and they have had a significant impact on scheduled events in the Boston area.  The Law Firm's goal was to prevent the BBF from using Larson's Story in a Boston area event.  The Law Firm was successful but to the detriment of the BBF, Larson and the citizens of Massachusetts.  The Law Firm deliberately targeted the Massachusetts economy just like the defendant in Baskin-Robbins, and it should reasonably should have foreseen that, if a controversy developed, it might be haled into a Massachusetts Court.  Baskin-Robbins, 825 F.3d at 40.

Larson further asserts that the exercise of jurisdiction over the Law Firm is reasonable. Baskin-Robbins, 825 F.3d at 35.  An examination of what the Baskin-Robbins' court dubs the five Gestalt Factors, underscores this court's responsibility to exercise jurisdiction over the Law Firm.

Understandably, it is a chore for the Law Firm to have to defend itself in Massachusetts. However, the Firm has not demonstrated how coming to Massachusetts would impose any special need or unusual burden on the Law Firm.  Baskin-Robbins, 825 F.3d at 40.  Secondly, Massachusetts has a manifest interest in protecting its own citizens.  The Law Firm came to this state to make its claim against the BBF and Larson.  The Law Firm could have hired local counsel, but it did not.  The Law Firm acted as if it was located in Massachusetts and it pursued a protracted letter writing and telephone campaign aimed at getting the BBF to cancel its use of Larson's Short Story.  The third factor, convenience, clearly favors Larson since she and the BBF are located here, as are most of the witnesses that Larson will need to prove her claims against the Law Firm.  The fourth factor, the interest of the judicial system in the effective

administration of justice, certainly favors Larson because Massachusetts' courts have more

experience in interpreting Massachusetts laws than do courts in California, and Larson's claims

for tortious interference and her claim under Chapter 93A, arise directly out of the Law Firm's

activities in Massachusetts.  Lastly, Massachusetts has a legitimate interest in providing its

citizens with a convenient forum for adjudicating disputes. Id. at 41.

      In Tuteur v. Crosley-Corcoran, 961 F. Supp. 2d 333 (D.Mass. 2013), Judge Stearns found

personal jurisdiction against an Illinois defendant who sent a cease and demand letter and

followed it up with a take-down letter under the Digital Millennium Copyright Act ("DMCA")

demanding removal of protected content from the Massachusetts plaintiff's website.  While the

cease and desist letter was insufficient by itself, to confer jurisdiction over the Illinois defendant,

defendant's invocation of the DMCA provided the additional purposeful act that allowed the

court to exercise jurisdiction over the defendant. Id. at 338-9.

      In Tuteur like in the action before the court, the defendant's acts were intentional,

uniquely and expressly aimed at Massachusetts and caused harm, the brunt of which was

suffered – and which the defendant knew was likely to be suffered in the forum state.  Tuteur,

961 F. Supp. 2d at 338.  Thus, the "effects test" derived from Calder v Jones, 465 U.S. 783, 788,

104 Sup.Ct. 1482 (1984) was sufficient to satisfy the minimum contacts between the defendant,

the forum and the litigation.

      With respect to this Action, the Law Firm repeatedly accused Larson of copyright

infringement and made knowing misrepresentations of the damages available to Dorland under

the Copyright Act by writing directly to the BBF to "prevent the intended publication" of

Larson's Short Story (Exhibit H to the Am. Compl.)[5]  The Law Firm's actions were intentional, expressly aimed at this Commonwealth and caused harm, the brunt of which was suffered by Larson and the BBF in Massachusetts.  The Law Firm's actions also satisfy the Massachusetts long-arm statute including "relatedness, purposeful availment (sometime called 'minimum contacts') and reasonableness."  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995), cited in Rosenthal v. MPC Computers, LLC, 493 F.Supp. 2d 182, 194-98 (D. Mass. 2007)

The Law Firm has satisfied all three of these components.  First, the Law Firm's actions directly arise out of, or relate to its activities in Massachusetts. Second, the Law Firm's in-state contacts demonstrate a purposeful availment of the privilege of conducting legal services in this Commonwealth, thereby invoking the benefits and protections of Massachusetts laws and making the Law Firm's involuntary presence before this state's courts foreseeable.  Third, the exercise of jurisdiction is reasonable in light of the intended goal of preventing the use of *The Kindest* by the BBF and the fact that the Law Firm's goal on behalf of Dorland was attained.

Accordingly, this Court's exercise of personal jurisdiction over the Law Firm and Attorney Cohen are consistent with due process and proper under the Massachusetts Long Arm Statute.

## The Litigation Privilege Claimed by the Law Firm has Limits

The litigation privilege is a policy-oriented privilege, which provides attorneys latitude in their expression and candor during pre-litigation communications that advance their efforts to secure justice for their clients.  The application of the privilege is determined on a case-by-case

---

[5] The Law Firm's demands in letters sent by Attorney Cohen (Exhibit H) and Attorney Michael S. Hanna of the Law Firm (Exhibits L and M) and other correspondence were ultimately successful in forcing the BBF to rescind the selection of *The Kindest* as its 2018 One City/One Story contest winner.  (See, Amended Complaint ¶¶ 56-59.)

basis, after a fact specific analysis.  <u>Riverdale Mills Corporation v. Cavatorta North America,</u> <u>Inc.</u>, 189 F. Supp.3d. 317, 321 (D.Mass. 2016)  Like any privilege, the litigation privilege has limits.  There are at least two reasons why the litigation privilege does not apply in this Action.

First, the privilege does not confer the right on an attorney to misinform parties with patently false statements of law or material fact.  Such conduct is prohibited under the Massachusetts Rules of Professional Conduct, S.J.C. Rule 3:07, Rule 4.1(a) which forbids attorneys from knowingly making false statements of <u>material fact or law</u> to third persons.

California has recently enacted a similar rule that is based on the American Bar Association's rules of Professional Conduct.  (<u>See</u>, Note 1 *infra*.)  "[A]n attorney's ethical duty to advance the interest of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct...." <u>Nix v. Whiteside</u>, 475 U.S. 157, 168, 106 S.Ct. 988 (1986). <u>Matter of Barrett</u>, 447 Mass. 453, 462 ("engaging in conduct that is dishonest or deceitful, or that adversely reflects on an attorney's fitness to practice, will suffice" to constitute violation of rules of professional conduct).

While the Law Firm may have had the right to communicate with the BBF and even accuse Larson of copyright infringement, it did not have the right to make false statements of law with respect to relief that Dorland claimed she was entitled to recover, namely, statutory damages and attorney's fees under the Copyright Act.   The Law Firm exceeded its privilege when it wrote to the BBF stating that Dorland's claim would be for copyright infringement for which Statutory Damages under 17 U.S.C. § 504(c) could amount to $150,000 plus attorney's fees (Exhibit H).  Both the Law Firm and Attorney Cohen went beyond the protection of the litigation privilege by blatantly misstating the law and threatening massive statutory damages and quickly escalating attorney's fees to which their client was simply not entitled.  [Am. Compl.

¶¶ 49-50 and 72-75 and Exhibits L and M].  The Law Firm's statements were made solely to scare and intimidate the BBF into capitulating to its demands by dropping *The Kindest* from its One City/One Story event, and thereby punish Larson.

Second, the litigation privilege does not protect "unnecessary or unreasonable publication to parties outside of the litigation." Riverdale Mills, 189 F. Supp.3d. at 321.  Yet, this is exactly what happened in the facts of this Action.  An article about Dorland's claim of plagiarism entitled, "Inspiration or plagiarism? Writing hackles raised in Boston dispute," was published in the *Boston Globe* on July 26, 2018, about three weeks after the Law Firm sent it first cease and desist letter to the BBF.  The article is attached to the Amended Complaint as Exhibit J.  The article talks about Dorland's claim of plagiarism that has "rattled through Boston's literary scene" and it includes a photograph of Dorland and quotes by both parties.  On information and belief, Dorland contacted a *Globe* reporter to initiate this story.  Larson Aff. ¶ 3.

This is exactly the kind of communications that have been excluded from the protection of the litigation privilege.  Encompass Ins. Co. of MA v. Giampa, 522 F. Supp. 2d 300, 309 (D. Mass. 2007) (Communications made to newspapers and during press conferences have been found almost universally to be excluded from the protection of absolute privilege.)[6] Milford Power Ltd. Partnership by Milford Power Assocs. Inc. v. New England Power Co., 918 F. Supp. 471, 486 (D. Mass. 1996) (Communications by a party to the news media regarding a judicial proceeding have been found to be outside this privilege because such communications do not advance the policy upon which the privilege rests.  More specifically, because such communications to the media generally will not "inhibit parties or their attorneys from fully

---

[6] A follow-up article was published in the *Globe* on August 14, 2018, and talks about the cancelation by the BBF of the One City/One Story event and the "plagiarism allegations that dogged Sonya Larson's 'The Kindest.'"  The second article is attached to the Complaint as Exhibit K.

investigating their claims or completely detailing them for the court or other parties" and are not subject to "judicial control," the necessity for the absolute privilege disappears.)

It will be interesting to determine through discovery if the Law Firm was complicit in contacting the *Globe* about these articles because newspaper articles are clearly not protected by the litigation privilege.  <u>Riverdale Mills</u>, 189 F. Supp.3d. at 321.

Under the litigation privilege, Cohen Law and Attorney Cohen could have accused Larson of copyright infringement as long as there was some modicum of truth to these allegations.  However, both Cohen Law and Attorney Cohen went beyond the protection of the litigation privilege by blatantly misstating the law and threatening massive statutory damages and quickly escalating attorney's fees to which their client was not entitled under the Copyright Act.  The Law Firm's actions amounted to tortious interference with Larson's contract with the BBF as well as violation of the Massachusetts Consumer Protection Act.

Cohen Law and Attorney Cohen went well beyond puffery and bravado when they misstated the damage provisions of the Copyright Act (Section 504(c)).  Dorland was never entitled to Statutory Damages or attorney's fees under the Copyright Act.  The most Dorland was ever possibly entitled to were her actual damages and any profits Larson earned from an alleged infringement of Dorland's copyright.  To date, Larson has received a total of $425 in gross receipts from the exploitation of *The Kindest*.  The amount of "profit" represented in this total revenue is likely much less than this nominal sum. [Am. Compl., ¶ 30-31].

## <u>Conclusion</u>

For the foregoing reasons, Larson requests that the Law Firm's Motion to dismiss be denied, and that she be awarded her costs and attorney's fees in defense of the frivolous motion filed by the Law Firm and Attorney Cohen in this Action.

Respectfully submitted,

SONYA LARSON,
By her attorney,

/s *Andrew D. Epstein*
_____

August 22, 2019                Andrew D. Epstein, Esquire (BBO #155140)
Barker, Epstein & Loscocco
176 Federal Street
Boston, MA 02110
Tel: (617) 482-4900
Fax: (617) 426-5251
Photolaw@aol.com

<u>Certificate of Service</u>

I certify that Plaintiff's Opposition to the Motion to Dismiss of Defendants, Cohen
Business Law Group, PC, and Jeffrey A. Cohen, and Memorandum in support thereof was filed
through the court's ECF system and a copy was sent electronically on the day it was filed to all
counsel of record.

*/s/ Andrew D. Epstein*
_____

August 22, 2019                Andrew D. Epstein