UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SONYA LARSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-10203-IT |
| | * | |
| DAWN DORLAND PERRY, COHEN | * | |
| BUSINESS LAW GROUP, PC, and | * | |
| JEFFREY A. COHEN, Esq. | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

March 27, 2020

TALWANI, D.J.

Before the court are Defendants' Motions to Dismiss [#11], [#25]. Defendants Cohen
Business Law Group, PC and Jeffrey A. Cohen seek dismissal of the Amended Complaint [#52]
("Complaint") on the basis that the court does not have personal jurisdiction over them. Further,
these Defendants argue that, even if jurisdiction does exist, Plaintiff's claims against them fail as
a matter of law because Defendants' alleged conduct is shielded by Massachusetts' litigation
privilege. For the reasons set forth below, the court finds that it may exercise personal
jurisdiction over these two Defendants under the undisputed facts that give rise to this action.
The court further finds that the question of whether the litigation privilege bars this action is a
fact-intensive inquiry not suitable for resolution on the pleadings. Accordingly, Defendants
Cohen Business Law Group, PC and Jeffrey A. Cohen's Motion to Dismiss [#11] is DENIED.

Defendant Dawn Dorland Perry's motion seeks dismissal on the grounds that Plaintiff has
not properly pleaded her claim of defamation and that, even if Plaintiff has satisfied her pleading

1

requirements, Plaintiff's action is barred because Defendant Dawn Dorland Perry is a limited

purpose public figure and Plaintiff has not pleaded actual malice. Defendant Dawn Dorland

Perry further seeks dismissal of Plaintiff's intentional interference with contract claims on the

basis that Plaintiff failed to adequately plead that a third party breached a contract with Plaintiff.

The court finds that Plaintiff has properly pleaded her defamation claim and that the question of

whether Plaintiff is a limited purpose public figure is one that cannot be resolved on the

pleadings. However, the court finds that Plaintiff has failed to plead an intentional interference

with contract claim because the pleadings do not support Plaintiff's legal conclusion that third

parties breached their agreements with Plaintiff. Accordingly, Defendant Dawn Dorland Perry's

Motion to Dismiss [#25] is ALLOWED IN PART and DENIED IN PART.[1]

## I.   Factual Allegations Made in the Complaint

In or around 2015, Defendant Dawn Dorland Perry ("Dorland") donated a kidney to an

anonymous recipient. Am. Compl. ¶ 9 [#52]. In July 2015, Dorland wrote a half-page letter to

the anonymous recipient. Id. ¶ 10. This letter is referred to herein as the "Dorland Letter."

In 2015, Plaintiff Sonya Larson ("Larson") started writing a fictional short story called

"The Kindest." Id. ¶¶ 18-19. The story is about a woman living in Boston who receives a kidney

donation from a wealthy woman. Id. The Kindest includes a brief letter. Id. This letter is referred

to herein as the "Larson Letter."

---

[1] Defendant Dawn Dorland Perry has also requested a hearing on her motion. See Def.'s Mot.
Hr'g [#28]. In light of the ongoing public health crisis and the court's determination that it can
properly adjudicate the pending motions without oral argument, this request is denied.

In February 2016, Larson entered into an agreement with Plympton Inc. ("Plympton"). Id. ¶ 27. This agreement gave Plympton the rights to sublicense The Kindest for publication to Audible, a company that publishes audiobooks online. Id. ¶¶ 27-28.

Plympton ultimately did sublicense to Audible. Id. ¶ 28. After The Kindest was accepted for publication, Larson changed the Larson Letter that she incorporated into the story so as to differentiate it from the Dorland Letter. Id. ¶ 29. Plympton paid Larson $125 for publishing the story with Audible. Id. ¶ 30.

In June 2016, Larson read a portion of The Kindest that did not contain the Larson Letter at a book reading. Id. ¶ 21. A mutual acquaintance of Larson and Dorland attended the reading and posted about The Kindest on Facebook. Id. ¶ 22. When Dorland learned that Larson wrote a story about kidney donation, she began accosting Larson with allegations that Larson had misappropriated Dorland's life experiences. Id. ¶¶ 22-23.

In August 2017, American Short Fiction ("ASF") agreed to publish a "slightly different version" of The Kindest in its magazine and online. Id. ¶ 31. ASF paid Larson $300 for the right to publish The Kindest for the duration of Larson's copyright. Id. Around May 2018, shortly after ASF published the online version of The Kindest, Dorland told ASF that Larson's story "plagiarized" the Dorland Letter. Id. ¶ 37.

Also in May 2018, the Boston Book Festival ("BBF") informed Larson that The Kindest won a competition she had entered earlier that year. Id. ¶ 35. As a result, The Kindest would be featured by BBF from August through October 2018. Id. In June 2018, Larson entered an agreement with BBF that granted BBF the right to publish The Kindest online and print and distribute up to 30,000 copies of The Kindest in the Boston area. Id. ¶ 36. Around that same

time, Dorland heard that Larson had won the BBF competition and Dorland also told BBF that

Larson had plagiarized the story. Id. ¶ 38.

In both cases, Dorland called and emailed staff at the ASF and BBF "relentlessly" to tell

them that Dorland had plagiarized the story. Id. ¶ 39. In addition to allegations of plagiarism,

Dorland at various times demanded that ASF and BBF note that Dorland was an author of the

work, that the work be pulled from both ASF and BBF, that ASF publish one of Dorland's works

instead, and that Dorland be paid several thousand dollars. Id. Dorland also contacted and made

similar allegations to the Bread Loaf Writers' Conference, a writer's organization with which

Larson held a fellowship. Id. ¶ 41.

As a result of Dorland's accusations, ASF decided to remove The Kindest from ASF's

website earlier than ASF had envisioned it would and in violation of its agreement with Larson.

Id. ¶ 67. The BBF suggested to Larson that she change the language in the Larson Letter that was

part of The Kindest before publication of the story so as to further distinguish it from the

Dorland Letter. Id. ¶ 42. Larson agreed to modify the Fictional Letter and, after doing so, the

BBF proceeded to print approximately 30,000 copies of the revised version of The Kindest. Id.

¶¶ 43-44. This version of The Kindest was registered with the United States Copyright Office

with an effective date of December 17, 2018. Id. ¶ 44.

After these changes were made, Dorland allegedly continued to contact members of

various writing communities in the United States to make similar complaints that Larson had

plagiarized her. Id. ¶ 45.

The Dorland Letter was registered with the United States Copyright Office with an

effective date of June 10, 2018. Id. ¶ 14. Also around June 2018, Dorland contacted the Boston

Globe "to help her publicize her false claim of plagiarism" and otherwise "disparage Larson's reputation." Id. ¶ 52.

In late June 2018, Dorland hired Defendant Jeffrey Cohen, an attorney, of Cohen Business Law Group, PC to represent her. Id. ¶ 46. (Defendants Jeffrey Cohen and Cohen Business Law Group, PC are collectively referred to as the "Cohen Defendants" unless otherwise appropriate). In early July 2018, the Cohen Defendants were provided a copy of the version of The Kindest that was printed by BBF. Id. ¶ 47. On July 3, 2018, the Cohen Defendants sent a letter to the BBF alleging that The Kindest contained the Dorland Letter "in whole or in part." Id. ¶ 50; Exhibit 8, Cohen Letter [#52-8]. The Cohen Defendants demanded that BBF cease printing, copying, or distributing The Kindest and that unless BBF acknowledged that the Dorland Letter was incorporated into The Kindest, BBF would be liable for copyright infringement, including statutory damages of $150,000. Id.

In July 2018, the Cohen Defendants sent another demand letter to the BBF. This letter sought monetary compensation and full attribution to Dorland for The Kindest. Id. ¶ 55. Days before BBF was supposed to distribute Larson's story, the Cohen Defendants doubled the monetary demand. Id. Also in July 2018, the Boston Globe published an article based on statements made by Dorland accusing Larson of plagiarism. Id. ¶ 53.

The BBF ultimately rescinded its selection of The Kindest as the competition winner. Id. ¶ 57. After the BBF rescinded its selection, the Boston Globe published a second story publicizing the cancellation. Id. ¶ 54.

Although BBF had decided to not publish The Kindest, Dorland continued to call and email members of Larson's writing group through September 2018 to communicate that Larson had engaged in plagiarism and "artistic betrayal." Id. ¶ 60.

## II.     Procedural Background

Larson filed her Complaint [#1] in this District on January 30, 2019. The Cohen Defendants filed a Motion to Dismiss [#11] for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6), and Dorland filed a Motion to Dismiss [#25] for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff subsequently filed an Amended Complaint [#52] ("Complaint") with leave of court. The Complaint alleges: Intentional Interference by Dorland with Larson's ASF Contract (Count I) and Larson's BBF Contract (Count II); Intentional Interference with Larson's BBF Contract by Cohen Law (Count III) and by Attorney Cohen (Count IV); Unfair and Deceptive Acts and Practices by Cohen Law in Violation of Mass. Gen. Laws ch. 93A (Count V) and by Attorney Cohen (Count VI); Defamation against Dorland (Count VII); and Declaration of Rights – Declaratory Judgment (Count VIII). Am. Compl. ¶¶61-120 [#52]. Defendants filed Notices [#53], [#54] requesting dismissal of the Complaint on the basis of their arguments raised in their Motions to Dismiss [#11], [#25] the original Complaint [#1]. Plaintiff filed Oppositions [#55], [#56] to the renewed motions.

On February 26, 2020, the court held a hearing concerning the court's subject-matter jurisdiction over the action. Based on the parties' representations, the court found that there was an actual and ongoing controversy as to whether the version of The Kindest printed by BBF infringed on Dorland's copyright and that the controversy was of sufficient immediacy to provide the court jurisdiction to address Count VIII of the Complaint under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a). The court found further that once the court's jurisdiction as to Count VIII is established, subject-matter jurisdiction extends to the remaining

claims since they form part of the same case or controversy. See 28 U.S.C. § 1367. Accordingly, the Cohen Defendants' Motion to Dismiss [#11] was denied in open court to the extent that they sought dismissal for lack of subject-matter jurisdiction. The court now addresses the remaining arguments raised in the Motions to Dismiss [#11], [#25].

### III. Discussion

#### A. The Cohen Defendants' Motion to Dismiss

##### 1. *Personal Jurisdiction*

The Cohen Defendants move to dismiss the Complaint as to the claims against them on the basis that the court does not have personal jurisdiction over them.

Two types of personal jurisdiction are recognized under the federal Constitution: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1780 (2017). Plaintiff does not argue that the court possesses general jurisdiction over the Cohen Defendants. Pl.'s Opp'n 12-15 [#55]. Instead, Larson asks the court to exercise specific personal jurisdiction over the Cohen Defendants. For specific jurisdiction, the court must consider: (1) whether the claims arise out of or are related to the defendant's in-state activities ("relatedness"), (2) whether the defendant has purposefully availed itself of the laws of the forum state ("purposeful availment"), and (3) whether the exercise of jurisdiction is reasonable under the circumstances ("reasonableness"). Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712-13 (1st Cir. 1996).

It is Plaintiff's burden to establish that personal jurisdiction exists over Defendants. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016). At this stage of the litigation, the court proceeds using the prima facie standard. Rodriguez v. Fullerton Tires Corp., 115 F.3d

81, 84 (1st Cir. 1997). To do so, the court does not find facts, but merely determines "whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." Id. The facts proffered cannot merely be "unsupported allegations" but must consist of "evidence of specific facts" that allow a determination that jurisdiction exists. A Corp., 812 F.3d at 58 (internal citations omitted). The court accepts Plaintiff's properly documented allegations as true and construes them in the light most favorable to her. Id.

Here, the facts central to the jurisdictional analysis are not in dispute. On July 3, 2018, Cohen Law sent a letter to the BBF alleging that The Kindest contained the Dorland Letter and that "any decision to publish The Kindest would necessarily infringe [Dorland's] rights." Exhibit 8, Cohen Defendants' July 3, 2018 Letter [#52-8]. The letter stated that unless BBF complied with the terms set forth by Cohen, BBF would face "the full measure of penalties for statutory copyright infringement under 17 U.S.C. § 504(c), which . . . could be as high as $150,000 . . . ." Id. at 2. The letter was addressed to the BBF in Cambridge, Massachusetts. Id.

Based on these facts, both the relatedness element and the purposeful availment element of the minimal contacts analysis are satisfied.

Relatedness is shown where there is a "sufficient causal nexus between [the defendant's contacts] with [the forum] and [plaintiff's] causes of action." Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 7 (1st Cir. 2002). Importantly, a defendant "need not be physically present in the forum state to cause injury . . . in the forum state." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005). There is no real dispute that the July 3, 2018 letter is related to Larson's cause of action. Indeed, the sending of the letter directly gave rise to the two causes of action: Larson contends that the letter knowingly misrepresented the facts and law to BBF in a manner that was intended to interfere with Larson's agreement with BBF, Am. Compl.

8

¶¶ 78, 84-86, 93, 101 [#52], and Larson further contends that the act of sending the letter, given that it allegedly contained misrepresentations of fact and law, was unfair or deceptive trade or commerce under Mass. Gen. Laws ch. 93A. Id. ¶¶ 96, 104.

Similarly, the undisputed facts demonstrate that the Cohen Defendants purposefully availed themselves of this forum. Purposeful availment is shown where a defendant "deliberately targets a behavior toward the society or economy of a particular forum." Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011). At bottom, the analysis is meant to ensure that defendants' contacts with the forum "proximately result from actions by the defendant himself," Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008), and not from "random, fortuitous, or attenuated contacts." Carreras, 660 F.3d at 555. Here, it is not disputed that the Cohen Defendants purposefully directed a letter to a Massachusetts business, BBF, for the purpose of affecting BBF's business decisions. By doing so, the Cohen defendants could or should have "reasonably anticipate[d] being haled into court []here." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).[2]

This leaves the court to assess the reasonableness of its exercise of personal jurisdiction over the Cohen Defendants. "The hallmark of reasonableness in the context of personal jurisdiction is 'fair play and substantial justice.'" Foster-Miller, Inc. v. Babcock & Wilcox

---

[2] The arguments presented by the Cohen Defendants to rebut their purposeful availment of this forum are unpersuasive. Defendants argue that in their communications with Plaintiff included the disclaimer that "the only appropriate jurisdiction applicable to the dispute between our clients as to your client's infringement of her copyright is California, with the appropriate venue being Los Angeles" and a warning to Larson "that if Larson files suit in Massachusetts, it will swiftly move to dismiss the suit for lack of Jurisdiction." Defs.' Mem. 13 [#12]. The court is aware of no basis in law for Cohen Defendants' argument that it can unilaterally disclaim a forum's jurisdiction while still engaging in activity in the forum and the Cohen Defendants do not provide one.

Canada, 46 F.3d 138, 150 (1st Cir. 1995) (citing International Shoe Co. v. State of Washington,

326 U.S. 310, 320 (1945)). Per the First Circuit, the court is to generally consider:

> (1) the defendant's burden of appearing in the forum state, (2) the forum state's
> interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining
> convenient and effective relief, (4) the judicial system's interest in obtaining the
> most effective resolution of the controversy, and (5) the common interests of all
> sovereigns in promoting substantive social policies.

A Corp., 812 F.3d at 61 (internal citation omitted). However, the reasonableness analysis will

"typically play a larger role in cases—unlike this one—where the minimum contacts question is

very close." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 69 (1st Cir.

2014).

Here, the court finds that the reasonableness factors do not, together, weigh either

strongly for or against assessing personal jurisdiction over the Cohen Defendants. There is

certainly a burden placed on these California Defendants for appearing in a Massachusetts court.

The court must take this burden seriously. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d

201, 210 (1st Cir. 1994) ("The burden associated with forcing a California resident to appear in a

Massachusetts court is onerous" and is "entitled to substantial weight in calibrating the

jurisdictional scales"). However, the remaining four reasonableness factors all weigh towards the

court's exercise of jurisdiction. First, "[t]he forum state has a demonstrable interest in exercising

jurisdiction over one who causes tortious injury within its borders." Ticketmaster-New York, 26

F.3d at 211. Second, there is as much of a burden to Plaintiff litigating this matter in California,

if not more, as there is to Defendants litigating it here. Furthermore, all or most of the relevant

witnesses and records are located in Massachusetts. Third, the court finds that the interests of the

juridical system do not tip the scales one way or the other. Fourth, the court finds that

Massachusetts has a policy interest in being able to provide Larson, a resident of the

commonwealth, "a convenient forum for . . . to redress injuries inflicted by out-of-forum actors."

Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995).

Weighing the multiple considerations together, the court finds that Plaintiff has

succeeded in showing that Defendants' purposeful contacts with Massachusetts gave rise to her

cause of action here. While the court takes seriously the burden imposed on the Cohen

Defendants for being haled into a Massachusetts court, the exercise of personal jurisdiction over

these Defendants under these facts does not offend considerations of fair play and substantial

justice, and accordingly the exercise of personal jurisdiction is appropriate. International Shoe,

326 U.S. at 320.[3]

### 2. Failure to State a Claim due to the "Litigation Privilege"

The Cohen Defendants further argue that Plaintiff has failed to state a claim for which

relief can be granted because the Cohen Defendants are shielded by a "litigation privilege."

Defs.' Mem. 15 [#12]. In Massachusetts, "an attorney's statements are absolutely privileged

---

[3] In recent cases, the First Circuit has remarked that the Massachusetts long-arm statute "may impose limits on the exercise of personal jurisdiction more restrictive than those required by the Constitution." A Corp., 812 F.3d at 59 (reviewing cases) (internal citation omitted). Here the Massachusetts long-arm statute is satisfied where the complaint alleges that Plaintiff "caus[ed] tortious injury by an act or omission in this commonwealth" by mailing a demand letter into the Commonwealth where that demand letter is alleged to misrepresent the applicable law so as to cause tortious injury. Mass. Gen. Laws ch. 223A, § 3(c). Courts have held that out-of-state defendants who knowingly send false representations into Massachusetts with the intent that they be relied on to the detriment of a Massachusetts resident are subject to personal jurisdiction under § 3(c). See Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972) ("Where a defendant knowingly sends into a state a false statement, intending that it should be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within the state"); see also The Scuderi Group, LLC v. LGD Tech., LLC, 575 F.Supp. 2d 312, 320 (D. Mass. 2008); Burtner v. Burnham, 13 Mass. App. Ct. 158, 163-64 (1982).

'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.'" Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir.1984) (quoting Sriberg v. Raymond, 370 Mass. 105, 109 (1976)). Where the communication is to a prospective defendant, the proceeding to which it relates must be "contemplated in good faith and . . . under serious consideration." Sriberg, 370 Mass. at 109.

The litigation privilege does not give a lawyer the freedom to act with impunity. As Judge Stearns recently wrote: "The law draws a distinction between holding a speaker liable for the content of her speech, on the one hand, and using that speech as evidence of her misconduct, on the other. The litigation privilege applies in the former context, but not the latter." 58 Swansea Mall Drive, LLC v. Gator Swansea Prop., LLC, No. CV 15-13538-RGS, 2016 WL 5946872, at *1 (D. Mass. Oct. 12, 2016) (citing Capital Allocation Partners v. Michaud, 2012 WL 1948596, at *2 (Mass. App. Ct. May 31, 2012)). The contours of the demarcation between privileged conduct and unprotected conduct "is determined on a case-by-case basis, after a fact-specific analysis." Fisher v. Lint, 69 Mass. App. Ct. 360, 365–66 (2007).

Here, Plaintiff does not attempt to hold the Cohen Defendants liable for the contents of the letter, but plausibly alleges that the Cohen Defendants used the letter as a means to effectuate unlawful ends, specifically to interfere with the BBF contract and extract unlawful concessions from both the BBF and Plaintiff. Thus, Plaintiff has stated a claim for which she can be granted relief. See 58 Swansea Mall Drive, No. CV 15-13538-RGS, 2016 WL 5946872, at *2 ("Where a party uses legal mechanisms, such as letters from counsel, to terminate a contract in bad faith or to extract concessions from a plaintiff in arguable violation of Chapter 93A, the litigation privilege does not shield it from liability").

The Cohen Defendants argue that their communications with BBF fall within the bounds of this privilege because "the Firm's statements were made in furtherance of protecting its client's intellectual property rights" and "its communications were limited to the potential publisher and the author's attorneys." Defs.' Mem. 17 [#12]. This defense, and the further requirement that the letter relate to proceedings "contemplated in good faith" and "under serious consideration" are questions of fact that cannot be resolved at this stage.

Accordingly, the Cohen Defendants' motion to dismiss on the basis of the litigation privilege is denied.

    B.  <u>Dorland's Motion to Dismiss</u>

        *1.  Failure to State a Claim of Defamation*

Defendant Dorland moves for dismissal of the Defamation count on two grounds. First, Defendant Dorland argues that Larson's Complaint fails to provide sufficient notice of the basis of her Defamation claim. Second, Defendant Dorland argues that Larson is a limited-purpose public figure and because Larson fails to allege actual malice, the Complaint fails as a matter of law. Both arguments are without merit.

First, Larson's Complaint has provided Defendant Dorland sufficient details of the basis of her defamation allegation. Larson alleges that, in May and June 2018, Dorland told both the ASF and the BBF that Larson plagiarized Dorland's work. Am. Compl. ¶¶ 37-38 [#52]. Larson further alleges that Dorland made these same allegations to Larson's employer and to a writer's organization to which Larson had applied for a fellowship. Id. ¶¶ 40-41. These factual allegations are specific enough to provide Dorland "a meaningful opportunity to mount a defense." Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc., No. 11–40126–FDS, 2011 WL

2681195, at *2 (D. Mass. July 6, 2011) (quoting <u>Diaz–Rivera v. Rivera–Rodriguez</u>, 377 F.3d 119, 123 (1st Cir.2004)).[4]

Equally unavailing is Defendant's argument that the defamation claim should be dismissed because Plaintiff is a limited-purpose public figure and Plaintiff has failed to plead that Dorland made allegedly defamatory statements with actual malice. "To determine whether a defamation plaintiff is a limited-purpose public figure, the First Circuit employs a two-pronged test: the defendants must prove (1) that a public controversy existed prior to the alleged defamation, and (2) that 'the plaintiff has attempted to influence the resolution of that controversy.' <u>Alharbi v. Theblaze, Inc.</u>, 199 F. Supp. 3d 334, 355 (D. Mass. 2016) (citing <u>Lluberes v. Uncommon Prods., LLC</u>, 663 F.3d 6, 13-14 (1st Cir. 2011)). Although the question of whether Larson was a limited-purpose public figure is ultimately a question of law, <u>Pendleton v. City of Haverhill</u>, 156 F.3d 57, 68 (1st Cir. 1998), the inquiry is "inescapably fact-specific." <u>Mandel v. Bos. Phoenix, Inc.</u>, 456 F.3d 198, 204 (1st Cir. 2006). Indeed, it is so fact-specific that it "does not always lend itself to *summary judgment*." <u>Lluberes</u>, 663 F.3d at 14 (emphasis added). Here, the pleadings do not require the court to conclude that Larson voluntarily injected herself into a public controversy. Accordingly, dismissal is not appropriate on the basis that the Complaint failed to plead actual malice.

---

[4] Defendant Dorland argues for a heightened pleading standard for defamation cases, requiring that Plaintiff provide "the specific words that were used." Def.'s Mem. 14 [#26]. In so doing, Defendant misapprehends a remark made by the First Circuit in <u>Phantom Touring, Inc. v. Affiliated Publications</u>, 953 F.2d 724, 728 (1st Cir. 1992). <u>See</u> <u>Bishop v. Costa</u>, 495 F. Supp. 2d 139, 140 (D. Me. 2007) (rejecting the argument that <u>Phantom Touring</u> creates a heightened pleading standard for defamation and collecting cases from the courts of appeal for the proposition that defamation need only satisfy the notice pleading standards of Fed. R. Civ. P. 8).

2.   *Failure to State a Claim of Intentional Interference with Larson's ASF and BBF Contracts*

Finally, Defendant Dorland moves for dismissal of Larson's Intentional Interference with Contract claims against her because the Complaint "wholly fails to allege that either ASF or the BBF broke a contract with Ms. Larson." Def.'s Mem. 19 [#26].

In Massachusetts, to prove intentional interference with contractual relations, a Plaintiff must prove that: "(1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). Accordingly, to show entitlement to relief, the factual allegations in the pleadings must give rise to the legal conclusion that ASF and BBF breached their contract with Larson. See also Pure Distributors, Inc. v. Baker, 285 F.3d 150, 155 (1st Cir. 2002) ("In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a *breach* of that contract") (citing Fury Imports, Inc. v. Shakespeare Co., 625 F.2d 585, 588 (5th Cir.1980)).[5]

Here, the complaint alleges in pertinent part: First, that as a result of Dorland's communications with ASF, ASF "decided to pull The Kindest from the ASF website, earlier than it had envisioned it would and in violation of its agreement with Larson." Am. Compl. ¶ 67

---

[5] In contrast, a claim for intentional interference with an advantageous business relationship does not require Plaintiff to prove a breach of contract, but only, inter alia, interference with a "business relationship or contemplated contract of economic benefit." Am. Private Line Servs., Inc. v. E. Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992) (citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990)).

[#52]. Second, the Complaint alleges that, as a result of Defendant Dorland's communications with BBF, BBF decided to "pull The Kindest from its One City/One Story project in breach of its agreement with Larson." Id. ¶ 75. On a motion to dismiss, the court would generally only assess whether these allegations were plausible and whether they supported the legal conclusions underlying the claims. However, it is appropriate for courts to look outside the four corners of a complaint where the record includes "documents the authenticity of which are not disputed by the parties" or documents "central to plaintiffs' claims" and "sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Here, the ASF and BBF contracts were referenced throughout the Complaint and Larson introduced the documents into the record as exhibits to the Complaint. Accordingly, the court incorporates these records into the pleadings.

Here, the legal conclusions drawn in the Complaint (i.e., breach of contract on the part of ASF and BBF) do not comport with the actual terms of the agreement. With regard to ASF, the agreement, which contains an integration clause, provides a grant of rights to ASF to publish The Kindest, including publishing the story on its website. See Exhibit D, ASF Publishing Agreement 2 [#52-4]. However, the agreement contains no promise by ASF as to the duration of any such publication, or indeed any promise to publish The Kindest at all. Id. Similarly, the BBF contract, which also contains an integration clause, also only grants rights to BBF to publish and distribute the story, but it does not contain any promise by BBF to actually include The Kindest in its One City/One Story project or to otherwise publish the work. See Exhibit E, BBF Agreement 2 [#52-5]. Since breach of contract is an essential element of Larson's Intentional Interference with Contract claims and the only support found in the pleadings to undergird this accusation are

conclusory statements that ASF and BBF breached their agreements, Defendant Dorland's motion to dismiss these two claims is allowed.

IV.     **<u>Conclusion</u>**

For the aforementioned reasons, the Cohen Defendants' <u>Motion to Dismiss</u> [#11] is DENIED and Defendant Dorland's <u>Motion to Dismiss</u> [#25] is ALLOWED IN PART as to counts I and II, but otherwise DENIED. Defendant Dorland's <u>Motion for Hearing</u> [#28] is DENIED.

IT IS SO ORDERED.

Date: March 27, 2020                         <u>/s/ Indira Talwani</u>
                                             United States District Judge