UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>            Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY et al.,<br><br>            Defendants. | Civil Action No.<br><br>1;19-cv-10203-IT |

PLAINTIFF, DEFENDANT IN COUNTERCLAIM, SONYA LARSON'S
MOTION TO DISMISS COUNTERCLAIM
OF DEFENDANT, PLAINTIFF IN COUNTERCLAIM, DAWN DORLAND PERRY

    Plaintiff, Defendant in Counterclaim, Sonya Larson ("Larson") moves this Court to dismiss the Counterclaims of Defendant, Plaintiff in Counterclaim, Dawn Dorland Perry ("Dorland") in their entirety.

**I.      Factual Background.**

    In 2015, Dorland donated one of her kidneys to an anonymous recipient. After her surgery, Dorland wrote a letter to the recipient (the "Dorland Letter"), and posted it on a so-called "private" and "secret" Facebook group. [Countercl. ¶¶ 35 & 44] Dorland has not divulged how many participants were in the group, but Larson believes there were approximately 250-300 members. [Amended Compl. ¶ 11]. Dorland "invited" Larson to become a member of the Facebook Group. [Countercl. ¶¶ 38]

Larson read the letter and took a few notes from it. Larson eventually referred to these notes when writing a fictional short story focusing on the relationship between a kidney donor and her recipient ("The Kindest" or the "Short Story"). [Am. Cmplt. ¶ 17] The Short Story contains five sub-parts. In the second sub-part of the story, the donor character sends a letter to the recipient character. Five versions of Larson's story have been published. [See Exhibits A through E attached to this Memo.] The Short Story was last modified in 2018. [See Exhibit E.]

## II.  Grounds for Dismissal of Counterclaims.

### A.  Count I of Counterclaim – Copyright Infringement

Count I of Dorland's Counterclaim is a claim against Larson for copyright infringement. Dorland claims that each version of the fictional letter Larson used in the various versions of *The Kindest* contain copies of the Dorland Letter, and that all such letters are substantially similar to the Dorland Letter. [Countercl. ¶¶ 175-7]. Dorland asserts that Larson used the Dorland Letter without her permission, which therefore constitutes copyright infringement. [Countercl. ¶ 179]

Although Larson had access to the Dorland Letter, Dorland's claim under Count I must fail for several reasons.

a)  Ideas are not subject to copyright protection. 17 U.S.C. § 102; Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 349–51 (1991). The idea of writing a letter from a kidney donor to a kidney recipient is not protected under copyright law.

b)  Copyright infringement requires a showing of substantial similarity between the original and the accused work. Lotus Development Corp. v. Borland Intern., Inc., 49 F.3d 807, 813 (1st Cir. 1995); Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1002 (2d Cir. 1995). None of the letters that Larson used in any version of *The Kindest* are substantially

similar to the Dorland Letter. Therefore, there is no copyright infringement. <u>On Davis v. The Gap, Inc.</u>, 246 F.3d 152, 173 (2d Cir. 2001), <u>as amended</u> (May 15, 2001) (trivial copying is not an infringement). Courts may evaluate substantial similarity at the motion to dismiss stage. <u>McDonald v. West</u>, 138 F.Supp. 3d 448, 454 (S.D.N.Y. 2015).

      c)     Even if this Court finds that there is some similarity between the Dorland Letter and the Larson Letters, a *de minimus* use of a few words and phrases will not impose legal consequences. <u>Ringgold v. Black Entertainment Television, Inc.</u>, 126 F.3d 70, 75 (2d Cir. 1997).

      d)     Even if this Court finds that Larson's use of a few words or phrases from the Dorland Letter is more than *de minimus*, such use constitutes fair use under Section 107 of the Copyright Act. Not only was Larson's use of a few words and phrases from the Dorland Letter quantitatively and qualitatively insignificant in relation to the Dorland Letter as a whole, Dorland has failed to allege that such use had any effect on the market value for the Dorland Letter, either actual or potential. Therefore, Larson's use is protected under the Fair Use doctrine.

For any and all of the above reasons, this Court must rule as a matter of law that Larson did not infringe the Dorland Letter.

    B.    <u>Dorland has not been damaged.</u>

Even if this Court finds that Larson infringed the Dorland Letter, Dorland's damages are nominal at best. Dorland is seeking actual damages plus Larson's past and future profits from *The Kindest*. [Countercl. ¶182]. Dorland is also seeking attorney's fees under Section 505 of the Act. [Countercl. ¶183].

Arguably, while early versions of *The Kindest* may have contained a few words and phrases similar to those in the Dorland Letter, Larson has since revised *The Kindest* and the final

version of the story contains only one word that is similar, specifically, the word "kindly," which is used in the letter's "sign-off." [Countercl. ¶ 202] All other accused words and phrases from the Dorland Letter have been removed. [See, Exhibit E.]

Up through the time Larson completed the final version of her story for the Boston Book Festival [Exhibit E], she received total revenue of $425 from licensing *The Kindest* [Am. Complt. ¶¶ 30-31]. This sum is the amount received before expenses meaning that Larson likely did not earn any "profits" from her story. Again, assuming Dorland is able to prove that Larson infringed the Dorland Letter, the maximum amount Dorland can recover is $425. Additionally, since the letter in *The Kindest* is only a small fraction of Larson's short story, Dorland is only entitled to a fraction of whatever profits Larson may have earned.

Actual damages for copyright infringements are calculated in one of two ways, neither of which provides substantial potential recovery for Dorland even with the most gratuitous calculations. First, damages may be calculated by measuring the difference between the original work's fair market value, and the profits lost as a result of the infringement. Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1170 (1st Cir.1994). Damages may also be calculated by determining the amount a plaintiff would charge as a licensing fee to use the original work. See, Bruce v. Weekly World News, 310 F.3d 25, 28 (1st Cir. 2002). Dorland fails to show whether the Dorland Letter has any intrinsic or marketable value, the actual or potential value of such a letter, or a reasonable fee for a license to use the Dorland Letter. Therefore, Dorland's damages are nominal at best.

Additionally, Dorland is not entitled to attorney's fees as a matter of law because the Dorland Letter did not register her copyright with the Copyright Office before the alleged infringement by Larson. In order to recover attorney's fees, one must register an unpublished

work either before the work is infringed, or within three months of publication. 17 U.S.C. § 412. Here, Dorland did not register the copyright to the Dorland Letter for almost three years after Larson allegedly infringed it. [Countercl. ¶ 54 and Exhibit B to the Countercl.] Therefore, Dorland's request for attorney's fees must fail as a matter of law.

      C.    <u>Count IV - Intentional Infliction of Emotional Distress</u>

Dorland is seeking damages against Larson for intentionally causing her emotional distress. Dorland's claim for emotional distress is based on Dorland's perception that Larson was a friend who betrayed Dorland by writing a story based on Dorland's kidney donation experience, and used a few words and phrases from the Dorland Letter in various versions of *The Kindest*. [Countercl. ¶¶ 197-202]

Even if this Court accepts as true for purposes of this Motion, all allegations made by Dorland, Larson's conduct as alleged does not rise to the level required by Massachusetts law to prove intentional infliction of emotional distress.

In order for Dorland to prove she has an actionable claim, she must establish that (1) Larson intended, knew, or should have known that her conduct would cause emotional distress; (2) the conduct was so "extreme and outrageous" that it was "beyond all possible bounds of decency" and "utterly intolerable in a civilized community;" (3) the conduct actually caused emotional distress; and (4) that the emotional distress was severe to the degree that "no reasonable [person] could be expected to endure it." <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 144-4 (1976). Liability cannot be predicated on "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." <u>Tetrault v. Mahoney, Hawkes & Goldings</u>, 435 Mass. 456, 466 (1977) (internal quotations omitted).

Dorland fails to show how drawing inspiration from a life experience amounts to atrocious and utterly intolerable conduct within a civilized society. Moreover, a mere perceived betrayal of a friendship and hurt feelings does not give rise to an actionable claim for emotional distress.

### D. Counts II and III - Declaratory Judgment and Injunctive Relief.

If this Court rules that Larson did not infringe the Dorland Letter, Larson is willing to stipulate and agree that she will not make any further changes to the letter currently included in the present and "final" version of *The Kindest* [Exhibit E] without first contacting Dorland and her attorney.

Additionally, Larson has no objection to the entry of declaratory judgment holding that Dorland owns the copyright to the Dorland Letter. If the Court rules accordingly, this will render Dorland's requests for injunctive relief and declaratory judgment moot.

## III. Conclusion.

For all of these reasons, Larson moves this court to dismiss Dorland's Counterclaims in their entirety.

                                                Sonya Larson,
                                                By her attorney,

May 15, 2020                              /s/ *Andrew D. Epstein*

                                                Andrew D. Epstein, Esquire
                                                BBO #155140
                                                Barker, Epstein, & Loscocco
                                                176 Federal Street
                                                Boston, MA 02110
                                                (617) 482-4900
                                                FAX: (617) 426-5251
                                                Email: Photolaw@aol.com

<u>Certificate of Service</u>

      I certify that Plaintiff, Defendant in Counterclaim's Motion to Dismiss the Counterclaim of Defendant, Plaintiff in Counterclaim was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

*/s/ Andrew D. Epstein*

May 15, 2020                                                Andrew D. Epstein

Certification of Conference with Counsel Regarding Motion under Local Rule 7.1

      I certify that I conferred by telephone on May 14, 2020, with Suzanne Elovecky counsel for Dawn Dorland Perry in this Action under Local Rule 7.1 regarding Plaintiff, Defendant in Counterclaim's Motion to Dismiss Defendant, Plaintiff in Counterclaim's, Counterclaims in an attempt in good faith to resolve or narrow the issues before the Motion was filed in court.

      I emailed Matthew Greene, attorney for Cohen Business Law Group, PC and Jeffrey A. Cohen asking if he wanted to discuss my motion.  Understandably, since the Counterclaim and my motion do not directly impact Mr. Greene and his clients, he did not get back to me.

                                  */s/ Andrew D. Epstein*
                                    _____
May 15, 2020                                    Andrew D. Epstein