UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON,<br>    Plaintiff<br><br>v.<br><br>DAWN DORLAND PERRY,<br>COHEN BUSINESS LAW GROUP, PC and<br>JEFFREY A. COHEN, ESQUIRE,<br>    Defendants | )<br>)<br>)<br>)  C.A. No.: 1:19-CV-10203-IT<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS COHEN BUSINESS LAW GROUP, PC AND JEFFREY A. COHEN, ESQ.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Cohen Business Law Group, PC, and Jeffrey A. Cohen, Esq. ("Attorney Cohen") (collectively, the "Firm") move for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), on Counts III, IV, V, and VI of the Plaintiff, Sonya Larson's ("Larson") Amended Complaint.

As grounds, the Firm states that Larson has failed to show in her Complaint that she is entitled to relief on Counts III and IV for Interference with the BBF contract. This Court has already determined that the BBF contract was not breached. Furthermore, Larson's claims against the Firm for violation of M.G.L. c. 93A (Counts V and VI) fail to state a plausible claim, as a matter of law. In order for a non-client to successfully assert a claim against an attorney under G.L. c. 93A, the attorney must have been acting in a business context vis-à-vis the plaintiff. Larson has made no such allegation. The facts as alleged pertain solely to the Firm's assertion of a legal position on behalf of a client, and do not involve a marketplace transaction. As such, Larson's

allegations are insufficient to state a claim for violation of M.G.L. c. 93A.

## I.     FACTUAL BACKGROUND[1]

In 2015, Defendant Dawn Dorland Perry ("Dorland") donated one of her kidneys to an unknown recipient. Amended Complaint, ¶ 8. That July, she wrote a letter addressed to her recipient ("Factual Letter") to introduce herself, explain why she donated her kidney, express an interest in learning more about her recipient, and propose meeting her recipient. *Id.* at ¶ 9. Soon after, Dorland posted the Factual Letter to a private Facebook group, to which she and Larson were both members. *Id.* at ¶¶ 9-10.

### A.     Larson's Short Story

According to the Complaint, Larson saw the Factual Letter on the private Facebook group and was inspired; she recorded her thoughts and ideas from the Factual Letter and some other letters from organ donors. *Id.* at ¶¶ 17, 20. In fact, Larson was beginning to write a Short Story[2] about "an alcoholic, working class Chinese-American woman living in Boston with her husband, who receives a kidney donation from a wealthy white woman." *Id.* at ¶ 17. Notably, the Short Story includes a letter sent by the donor character to her kidney recipient ("Fictional Letter"). *Id.* at ¶ 19. The Short Story revolves around their eventual meeting following the Fictional Letter. *Id.* at ¶ 15.

In December 2015, Audible, Inc. ("Audible") accepted the Short Story for publication as an audio story. *Id.* at ¶ 26. Larson then began changing the content of the Fictional Letter to "avoid

---

[1] The Firm, solely for the purposes of this motion, assumes the truth of the well-pleaded factual allegations in the Complaint. The Firm reserves the right to dispute those factual allegations should this case survive dispositive motions by any party.

[2] The Complaint refers to the short story as "*The Kindest*," the "Short Story," or "The Work". *Id.* at ¶ 14. For purposes of clarity, this motion will refer to Larson's story that she submitted to Audible and ASF as the "Short Story" and the later version she submitted to the BBF as "*The Kindest*."

any resemblance between Larson's Fictional Letter and Dorland's Factual Letter." *Id.* at ¶ 27. Before Larson finished her revisions, however, Audible uploaded an earlier version of the Short Story in downloadable and print-on-demand CD format. *Id.* at ¶ 28. Audible would later publish Larson's revised Short Story. *Id.*

Dorland learned of the Short Story in June of 2016 – one month before Audible published the revised Short Story – after Larson read a preliminary draft at a Boston bookstore. *Id.* at ¶ 21. One of Dorland's friends was in attendance. *Id.* She contacted Dorland afterwards because the plot – anonymous kidney donor contacting their recipient – reminded her of Dorland.[3] *Id.* Dorland contacted Larson about Short Story and, after she read a copy, became upset with Larson because Larson's Fictional Letter resembled her Factual Letter. *Id.* On August 3, 2016, Audible published Larson's revised Short Story. *Id.* at ¶ 28. American Short Fiction ("ASF") also published an earlier version of the Short Story in its August 2017 literary magazine and featured it online in May 2018. *Id.* at ¶ 29. Audible and ASF respectively paid Larson $125 and $300 to publish the Short Story. *Id.* at ¶¶ 28-29.

      **B.**     **Larson Submits *The Kindest* to the Boston Book Festival**

Larson eventually submitted *The Kindest* to the Boston Book Festival ("BBF"). In May 2018, the BBF selected *The Kindest* as its central literary work to feature from August to October 2018 as its One City/One Story selection. *Id.* at ¶ 32. Larson entered into a contract with the BBF, granting the BBF a license to publish [*The Kindest*] online in multiple languages, and to print and distribute 30,000 free copies of *The Kindest* throughout the Greater Boston Area." *Id.* at ¶ 66; *see*

---

[3] Dorland's friend posted, "Sonya [Larson] read a cool story about giving out a kidney, you came to mind, and I wondered if you were the source of the inspiration." *Id.* at ¶ 21 (alteration in original).

*Exhibit A*, BBF Contract.[4] Dorland, after learning of the selection, contacted ASF, the BBF, Larson's employer, and other writing organizations to complain that Larson's Work plagiarized the Factual Letter. Amended Complaint at ¶ 53. The BBF expressed concern to Larson that the Fictional Letter resembled the Factual Letter. *Id.* at ¶ 39. Larson then agreed to modify her Fictional Letter in *The Kindest*. *Id.* at ¶ 40. This revision to *The Kindest* was one of many that Larson made for the BBF. *Id.* In fact, Larson also revised the "story's location and certain objects, details, dialogue, gestures, word choices[,] and the ending." *Id*.

On June 10, 2018, Dorland obtained a copyright for the Factual Letter.[5] *Id.* at ¶ 12. That same month, Larson retained Attorney James A. Gregorio to "deal with the hornet's nest that Dorland was stirring up." *Id.* at ¶ 42. Gregorio requested ASF – a non-party – to forward his contact information to Dorland or her attorney to discuss the Work. *Id.*

### C. Involvement of the Firm

On July 3, 2018, the Firm wrote a letter to the BBF stating that Larson's Short Story contained the Factual Letter "in whole or in part." *Id.* at ¶ 43. The Firm's letter states that "any decision by the BBF to publish Larson's Short Story would infringe Dorland's rights" and requests that the BBF cease and desist from further printing, copying, distributing, or undertaking any other activities related to Larson's Short Story. *Exhibit B*, Cease and Desist Letter.[6] If not, the Firm's letter states that the BBF would risk incurring damages under the Copyright Act. Amended

---

[4] Under Fed. R. Civ. P. 10, a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. This Court has already explicitly stated in its March 27, 2020 order that the BBF contract is incorporated into the pleadings.

[5] The Factual Letter's copyright title is "Dorland kidney chain final recipient letter July 2, 2015" and its registration number is TXu 2-101-420. *Id.* at ¶ 14.

[6] Under Fed. R. Civ. P. 10, a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. Given that the plaintiff has explicitly incorporated the Cease and Desist letter in the Complaint and attached it as an exhibit, the Court may consider it when deciding this motion for judgment on the pleadings.

Complaint, ¶ 74. The BBF ultimately rescinded its selection of *The Kindest* as its One City/One Story selection. *Id.* at ¶ 50.

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) provides that any party may move for judgment on the pleadings after the pleadings are closed and within such time as not to delay the trial. The court must accept as true all well-pleaded facts and draw reasonable inferences in favor of the plaintiff. *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). A court will grant a motion for judgment on the pleadings if the plaintiff's well-pleaded facts do not show that the plaintiff is entitled to relief. *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81 (1st Cir. 2008).

## III.   THIS COURT MUST DISMISS LARSON'S CLAIMS OF INTERFERENCE WITH THE BBF CONTRACT (COUNTS III AND IV) BECAUSE THIS COURT HAS ALREADY DECIDED THAT NO BREACH OF CONTRACT OCCURRED.

This Court must dismiss Larson's claims of interference with the BBF Contract because it has already decided that no breach of contract occurred. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Wallace,* 573 F.3d 82, 87–88 (1st Cir. 2009); *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 53 (1st Cir. 2009). In Massachusetts, in order for a plaintiff to have a cause of action for tortious interference of contract, there must be a breach of that contract. *See G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991); *Pure Distributors, Inc. v. Baker*, 285 F.3d 150, 155 (1st Cir. 2002).

### A. This Court must follow its earlier decision and hold that the BBF did not breach its contract.

In this Court's March 27, 2020 Order and Memorandum, the Court held that "to show entitlement to relief, the factual allegations in the pleadings must give rise to the legal conclusion that […] BBF breached [its] contract with Larson." The Court further found that "the BBF contract

[…] only grants rights to BBF to publish and distribute the story, but it does not contain any promise by BBF to actually include The Kindest in its One City/One Story project or to otherwise publish the work." This Court concluded that "because breach of contract is an essential element of Larson's Interference with Contract claim and the only support found in the pleadings to undergird this accusation is the conclusory statement that […] BBF breached [its] agreement," Larson's claims against Dorland for Interference with Contracts must be dismissed.

Larson's Interference with the BBF Contract claims brought against the Firm rely on the same contract at issue in Dorland's Motion to Dismiss. Because this Court has already determined that the BBF did not breach its contract with Larson, this Court must follow its earlier decision and hold the same here. As this is an essential element of Larson's Interference of Contract claims against the Firm, this Court must dismiss Counts III and IV.

### B. Larson's Amended Complaint fails to allege a breach of contract by the BBF.

Even if the Court does not find that it should automatically follow its previous decision, Larson's counts of Interference with her BBF Contract must be dismissed because she has not alleged any breach of contract in her Amended Complaint. Larson only alleges that she "granted the BBF a license to publish *The Kindest* online in multiple languages, and to print and distribute 30,000 free copies of *The Kindest* throughout the Greater Boston area." Amended Complaint, ¶ 66. Larson has not alleged that the BBF had or has an obligation to use its license, or that BBF's non-use of the license broke any agreement. The contract itself, incorporated in the pleadings, does not contain any promise by BBF to actually include *The Kindest* in its One City/One Story project or to otherwise publish the work. *See Exhibit A*.

Larson has failed to allege an essential element of the claim, and as her claim for interference by the Firm with the BBF contract fails as a matter of law. Accordingly, the Firm respectfully requests that Counts III and IV of the Complaint be dismissed with prejudice.

IV. **THIS COURT MUST DISMISS COUNTS V AND VI BECAUSE THE FACTS ALLEGED BY LARSON FAIL TO SUPPORT A CAUSE OF ACTION AGAINST AN ATTORNEY UNDER M.G.L. c. 93A.**

Massachusetts General Laws c. 93A offers a broad remedy to consumers, but the applicability of the statute is nonetheless limited to causes of actions arising in the conduct of trade or commerce. In the Amended Complaint, Larson alleges in a conclusory fashion that the Firm's correspondence with the BBF constituted acts in the conduct of trade or commerce. However, there is no allegation that the Firm was engaged in a business relationship vis-à-vis Larson or the BBF. Massachusetts case law is clear that an attorney taking a position on behalf of his or her client, even if legally incorrect or unfounded, is not activity within trade or commerce so as to warrant relief under c. 93A. Even to the extent that the Amended Complaint can be interpreted to allege that the Firm's correspondence constituted interference with the BBF's engagement in trade or commerce, such allegations are unavailing where the BBF is a nonprofit charitable corporation and was not engaging in trade or commerce in its license and contemplated publication of Larson's short story.

**A. There is no allegation that the Firm was engaged in "trade or commerce" with Larson.**

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Peabody N.E., Inc. v. Town of Marshfield*, 426 Mass. 436, 439 (1998) (quoting ch. 93A, § 2(a)). Generally, "the proper party to assert a [Chapter] 93A claim against an attorney is a client or someone acting on a client's behalf." *Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 462 (1997); *First Enterprises, Ltd. v. Cooper*, 425 Mass. 344, 347–48 (1997); *Baker v.*

*Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 850 (2017). When a non-client asserts a Chapter 93A claim against an attorney, the acts or practices complained of must be perpetrated in a business context for the claim to survive. *See First Enterprises*, 425 Mass. at 347–48; (finding attorney did not engage in trade or commerce where attorney alleged that plaintiff had breached its agreement to pay client); *Arthur D. Little, Inc. v. E. Cambridge Sav. Bank*, 35 Mass. App. Ct. 734, 743 (1994) (dismissing 93A claim against attorney defendant where no commercial relationship ever existed between the parties, their only contact occurred in the context of litigation); *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 38–39 (D. Mass. 2014) (finding no allegation of attorney engaging in trade or commerce vis-à-vis the plaintiff where the attorney sent a notice to vacate to the plaintiff); *Akar v. Fed. Nat. Mortg. Ass'n*, 843 F. Supp. 2d 154, 171 (D. Mass. 2012) (finding trade or commerce element had not been met when the "only contact between the parties was on opposing sides of a dispute involving the foreclosure of [Plaintiff]'s property by [the law firm's client]").

Here, Larson does not allege that she was ever the Firm's client.  Moreover, Larson did not enter into a business relationship with the firm.  At all times, the Firm represented Dorland, whose interests were adversarial to Larson's. As such, in order for her claim to survive a Rule 12 challenge, the Firm must have been engaged in "trade or commerce" with Larson.  However, Larson fails to allege any conduct of the Firm directed toward her that occurred in a business context.  The sole basis for Larson's claims under M.G.L. c. 93A is the Firm's sending of a letter to the BBF, a non-party, containing allegedly false or inaccurate copyright claims. The Firm maintains that its interpretation of copyright law set forth in the letter was correct.  However, for purposes of this motion, the accuracy or validity of those claims is irrelevant to Larson's claim for violation of M.G.L. c. 93A.  *See First Enterprises*, 425 Mass. at 348.   The only interactions alleged

by Larson occurred between the Firm and the BBF in the context of a copyright dispute, in which the Firm communicated its client's position to a third-party. As the Supreme Judicial Court held in *First Enterprises*, however, statements made in the course of litigation (and pre-litigation) to an opposing party do not occur in trade or commerce, and cannot serve as an actionable basis for a 93A claim. Larson's Amended Complaint fails to allege any conduct attributable to the Firm demonstrating that the Firm acted in "trade or commerce" toward her. As a result, Larson fails to state a plausible claim for relief under Chapter 93A, and judgment must enter in favor of the Firm on Counts V and VI.

### B. The Firm's communication with BBF is not actionable under M.G.L. c. 93A.

To the extent that Larson alleges that the Firm's communication with the BBF constituted an injection into trade or commerce by making representations to a third-party, such conduct cannot give rise to a claim under M.G.L. c. 93A where the Court's prior ruling as to the nature and scope of the contract between the BBF and Larson does not implicate trade or commerce. Moreover, the Firm's conduct did not occur in trade or commerce where the BBF is a non-profit charitable entity and its contemplated use of Larson's work stemmed from its charitable purpose.

#### 1. The Court has already ruled that the BBF's contract did not involve trade or commerce.

As detailed above, the Court's March 27, 2020 order determined that Larson's Amended Complaint fails to allege that the BBF breached its contract with Larson. Specifically, the Court noted that the BBF contract "only grants rights to BBF to publish and distribute the story, but it does not contain any promise by BBF to actually include The Kindest in its One City/One Story project or to otherwise publish the work." Based on this ruling, the Court has interpreted the BBF contract to involve only a grant of a license to the BBF, enabling the BBF to use Larson's story solely at its own discretion. The contract imposes no obligation on the BBF to publish or

disseminate Larson's work. Further, the contract states that Larson "declined the BBF's offer to provide financial compensation in exchange for the rights granted by you herein." *See Exhibit A*.

Based on the Court's interpretation, the BBF contract represents one of the few examples where a contract does not implicate trade or commerce. It was not supported by monetary consideration. It imposed no binding obligations on either party. Instead, it simply granted the BBF the option to use Larson's short story in connection with an annual literary charity program. Accordingly, in light of the Court's interpretation of the nature and scope of the BBF contract, the Firm's communication with the BBF cannot be characterized as occurring within trade or commerce.

### 2. The BBF's license and potential publication of Larson's short story was a charitable activity and therefore not within trade or commerce.

Moreover, the Firm's communication with the BBF did not occur in trade or commerce where the BBF's intended publication and distribution of Larson's work was in furtherance of its charitable purpose. As stated in its Articles of Organization, the BBF is an independent, non-profit charitable corporation that promotes and disseminates literary works for free. *See Exhibit C*, Boston Book Festival, Inc.'s Articles of Organization.[7] While an entity's "status as a 'charitable' corporation is not, in and of itself, dispositive of whether c. 93A applies," courts look to several factors to determine whether the challenged conduct arose in a "business context," including "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties.... Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons ... and whether the participant

---

[7] When considering a motion for judgment on the pleadings, the Court may "supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 183 (1st Cir. 2006). The Firm hereby requests that the Court take judicial notice of the BBF's Articles of Organization, pursuant to Fed. R. Evid. 201.

played an active part in the transaction." *Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 23-24 (1997), quoting *Begelfer v. Najarian*, 381 Mass. 177, 190-191 (1980). Courts have declined to apply Chapter 93A to situations in which a nonprofit organization has not sought to profit from the transaction at issue. *See All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 271 (1993) (statute not applicable where hospital did not seek to profit from contract with food service company and providing food services was incidental to hospital's primary activity); *Hubert v. Melrose–Wakefield Hosp. Ass'n*, 40 Mass. App. Ct. 172, (1996) (hospital not subject to G.L. c. 93A because it was not acting in business context to generate profit through its efforts to relocate building in order to expand onto building's prior location).

In this case, the BBF sought a license to publish and disseminate Larson's short story for free, in accordance with its charitable purpose of "further[ing] the cause of literature, encourag[ing] writing, celebrat[ing] authors and the free expression of ideas, and highlight[ing] the importance of the literary arts." *See* Ex. A. As a charitable corporation, the BBF did not seek to profit from its license to publish and distribute Larson's work, in the manner that a for-profit publishing corporation would. Rather, the BBF sought to distribute Larson's work to an audience that shared its mission and core values. Further, the BBF's license to publish and distribute Larson's work contained no monetary terms, and Larson received no compensation from the BBF in exchange for the license. Given the BBF's charitable purpose and the nature of the subject transaction, the BBF's contemplated publication and use of Larson's short story did not occur in a business context, and by sending the Letter to the BBF, the Firm did not interfere with trade or commerce. As such, the Firm's letter to the BBF does not give rise to an actionable claim for violation of M.G.L. c. 93A. The Court should therefore enter judgment on Counts V and VI in favor of the Firm.

## V. CONCLUSION

For the reasons set forth above, Cohen Business Law Group, P.C. and Jeffrey A. Cohen, Esq. respectfully request that this Court enter judgment on the pleadings and DISMISS Counts III, IV, V, and IV in the Amended Complaint.

## REQUEST FOR ORAL ARGUMENT

In accordance with Local Rule 7.1(d), counsel for the Defendants, Cohen Business Law Group, P.C. and Jeffrey A. Cohen, Esquire, hereby requests a hearing for oral argument in connection with this motion.

DATED: July 1, 2020

THE DEFENDANTS,
COHEN BUSINESS LAW GROUP, PC,
AND JEFFREY A. COHEN, ESQUIRE,
BY THEIR ATTORNEYS,

*/s/ Matthew H. Greene*

Mark W. Shaughnessy, Esq. (BBO# 567839)
mshaughnessy@boyleshaughnessy.com
Matthew H. Greene, Esq. (BBO# 673947)
mgreene@boyleshaughnessy.com
Boyle | Shaughnessy Law, P.C.
695 Atlantic Avenue, 11th Floor
Boston, MA  02111
Phone: (617) 451-2000
Fax: (617) 451-5775

## L.R. 7.1(a)(2) CERTIFICATION

I, Matthew H. Greene, certify that I conferred with Plaintiff's counsel pursuant to Local Rule 7.1(a)(2), and have attempted in good faith to resolve or narrow the issue.

DATED: July 1, 2020

*/s/ Matthew H. Greene*

**Counsel for Defendants, Cohen Business Law**

## **CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 1st day of July, 2020.

              */s/ Matthew H. Greene, Esq. (BBO# 673947)*
              **Counsel for Defendants, Cohen Business Law Group, PC and Jeffrey A. Cohen, Esquire**