UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                    Defendants. | Civil Action No.<br><br>1:19-cv-10203-IT |

**PLAINTIFF'S MEMORANDUM
(1) IN OPPOSITION TO THE MOTION FOR JUDGMENT ON THE PLEADINGS BY COHEN BUSINESS LAW GROUP AND JEFFREY A. COHEN, ESQ., AND
(2) IN SUPPORT OF PLAINTIFF'S MOTION
<u>FOR LEAVE TO AMEND HER COMPLAINT</u>**

Plaintiff, Sonya Larson ("Larson"), submits this Memorandum for two reasons:

(1)     In opposition to the Motion for Judgment on the Pleadings submitted by Cohen Business Law Group, PC and Jeffrey A. Cohen, Esq. (hereinafter, the "Cohen Defendants"); and

(2)  In support of Larson's Motion for Leave to Amend her Complaint in order to comport with this Court's Memorandum and Order of March 27, 2020 (Doc. 59) and to clarify certain allegations regarding the impact that the Cohen Defendants had on trade and commerce.  A copy of the proposed Second Amended Complaint is attached to Larson's Motion as "Exhibit A."

**I.     Introduction**

    **A.  Brief summary of facts:**

This is a lawsuit about the Plaintiff, Sonya Larson's, well-received short story entitled, *The Kindest* (the "Story," "Short Story," or "The Kindest"), and a disgruntled woman

1

who accuses Larson of plagiarism and copyright infringement. In 2015, Defendant, Dawn Dorland Perry ("Dorland"), made a kidney donation, and wrote a letter to the recipient of her kidney donation (the "Dorland Letter"). (Am. Compl. ¶10). She then posted the letter on a private Facebook group containing approximately 250-300 members. (Am. Compl. ¶11). Larson was a member of the Facebook group, and saw the original post containing the Dorland Letter. Larson began writing the Story in 2015, which tells the story of a Chinese woman receiving a kidney donation from a white woman. (Am. Compl. ¶¶ 18-19). Part of the Story features a letter written to the central character. The letter appears halfway through the story, and acts as a literary device to introduce the two women to one another, and establish the foundation for a meeting between them later in the narrative.

*The Kindest* was published several times before this Action was filed. These publications include an audio book published by Audible, Inc. (www.Audible.com) ("Audible") (Am. Compl. ¶¶ 27-8), and in print and online versions published by American Short Fiction ("ASF") (Am. Compl. ¶31). In 2018, the Story won a prestigious competition conducted by the Boston Book Festival (the "BBF"), a Massachusetts based writer's organization that was established to promote literature, celebrate authors and highlight the importance of the literary arts. (See, BBF Articles of Organization, Doc. 84, Exh. C, and Am. Compl. ¶¶ 32-36).

Dorland is accusing Larson of copying Dorland's Facebook letter and using parts of the letter in Larson's Short Story. Larson denies that she copied the letter and is seeking damages from both Dorland and the Cohen Defendants for various harms including interfering with several advantageous business relationships and defamation, as well as Chapter 93A violations against the Cohen Defendants.

More detailed facts and allegations have been thoroughly briefed by the parties and recounted by this court. See, generally, Doc. #59, Doc. 52 (Am. Compl.) and Larson's Motion and Memo to Dismiss Dorland's Counterclaims, Docs. 77 & 78.

### B. Present status of this litigation.

The basis for Larson's present Motion for Leave to Amend her Complaint stems from this Court's Memorandum and Order of March 27, 2020 (Doc. 59), and the Cohen Defendants pending Motion for Judgment on the Pleadings (Doc. 83).

Larson originally filed her Amended Complaint on July 31, 2019 (Doc. 52). All defendants including Dorland and the Cohen Defendants filed Motions to Dismiss this Action [(Doc. 25 (Dorland) and Doc. 11 (Cohen)]. On March 27, 2020, Dorland's Motion was allowed in part and denied in part. The Cohen Defendants' motion was denied in its entirety. A Motion for Reconsideration by the Cohen Defendants was denied on April 13, 2020. (Doc. Entry 67). Dorland answered the Second Amended Complaint and filed Counterclaims against Larson on April 24, 2020. (Doc. 75). On May 15, 2020, Larson filed a Motion to Dismiss the Counterclaims for failure to state claims upon which relief can be granted. (Motion, Doc. 77; Memo, Doc. 78). The Court has taken Larson's pending Motion under advisement.

As a result of numerous Motions and requests for extensions of time, the Parties are still in very early stages of litigation. So far, Larson is the only Party who has conducted any discovery in this action other than initial disclosures. Larson served a request for documents on Dorland on May 7, 2020. Dorland produced some documents on June 19, 2020, and promised to provide additional documents over two weeks ago but as of the date of this Memorandum has not done so. (See Affidavit of Andrew D. Epstein, attached as Exhibit 1).

Larson also served a set of document requests and interrogatories on the Cohen Defendants on June 26, 2020. The Cohen Defendants have about two weeks left to respond to Larson's discovery. (Ex. 1).

On July 1, 2020, the Cohen Defendants filed a Motion for Judgment on the Pleadings. The Motion is based in part, on the ruling made by this Court in its Memorandum and Order of March 27, 2020 (Doc. 59), with respect to Larson's claim for damages for the intentional interference with her contractual relations. Larson believes that she can overcome the court's adverse ruling if she is given leave to amend her complaint. Larson's claims against Dorland

3

and the Cohen Defendants for intentional interference <u>with contract</u> would be substituted with claims for the intentional interference <u>with advantageous business relationships</u>.

Larson also believes she can overcome the Cohen Defendants' present Motion relative to her Chapter 93A claims on the merits. However she is also seeking leave to amend her complaint to clarify and elaborate on the impact that the Cohen Defendants had on trade and commerce.

## II.     Standard for Review

### A. Leave to Amend Complaint must be freely given.

Fed. R. Civ. P. 15(a)(2) provides that leave to amend a complaint should "freely" be given "when justice so requires." In the oft cited case of <u>Foman v. Davis</u>, 371 U.S. 178, 182–83 (1962), the Supreme Court provides that "this mandate is to be heeded." <u>Foman</u> instructs that if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, she ought to be afforded an opportunity to test her claim on the merits. <u>Id</u>. The countervailing considerations for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." <u>Id</u>. Absent proof of these concerns, "the leave sought should, as the rules require, be 'freely given.'" <u>Id</u>. An outright refusal to grant leave without any reason justifying the denial is deemed an abuse of the Court's discretion and "inconsistent with the spirit of the Federal Rules." <u>Id</u>.

In <u>Kim v. Soule</u>, 2014 WL 2117385, at *2 (D. Mass. May 20, 2014), the Court said that a motion to amend should be granted unless it is apparent that it would be futile or reward undue or intended delay. <u>Id</u>. Where leave to amend is sought prior to the completion of discovery and the filing of motions for summary judgment, the standard for futility is whether the complaint as amended would survive a motion to dismiss under Rule 12(b)(6). <u>Id</u>.

In the present case, Larson contends that her proposed Second Amended Complaint was rewritten in direct response to this court's Memorandum and Order of March 27, 2020 (Doc. 59), and the Cohen Defendants' pending motion for Judgment on the Pleadings (Doc. 83). To that

end, Larson seeks to correct or amplify the deficiencies, and be granted an opportunity to cure them by amending the complaint. It is still relatively early in this litigation and the Second Amended Complaint is not being offered for purposes of delay, bad faith or any other dilatory motive, but only to comport with this Court's recent ruling and the Cohen Defendants' Motion.

Specifically, Larson is seeking leave to substitute her original tort claims against Dorland and the Cohen Defendants of intentional interference <u>with contractual relations</u>, with claims for the intentional interference <u>with advantageous business relations</u>. She is also seeking leave to expand on her allegations that the actions of the Cohen Defendants constituted outrageous conduct in trade or commerce in violation of M.G.L. c. 93A. Given the allegations that have been pending for over a year, all of Larson's proposed amendments are relatively minor.

### B. If Larson is permitted to amend her Complaint, the Cohen Defendants' Motion for Judgment on the Pleadings will be moot.

Under Federal Rules of Procedure 12(c), the court may grant judgment on the pleadings when the nonmovant can prove no set of facts in support of a claim that would entitle the nonmovant to relief. <u>Rivera-Gomez v. de Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988). This Court has already ruled that Larson does not have viable claims for tortious interference with contracts because she has not shown that ASF and BBF breached their contracts. (Doc. 59, p. 15).

However, the legal standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard for evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6). <u>Kimmel & Silverman, P.C. v. Porro</u>, 969 F. Supp. 2d 46, 49–50 (D. Mass. 2013). If this court grants Larson's Motion to Amend her Complaint, then dismissal is only appropriate if the pleadings, so viewed, fail to support a "plausible entitlement to relief." <u>Id.</u>, citing <u>Rodriguez–Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 95 (1st Cir.2007), and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559, 127 S.Ct. 1955, 1967 (2007).

Based on this Court's ruling on March 27, 2020, the Cohen Defendants' pending Motion for Judgment may have merit. However, if this Court grants Larson leave to amend her

5

complaint to include claims for intentional interference with advantageous business relationships rather than claims for intentional interference with contracts, then the Cohen Defendants' Motion will be moot. Larson submits that her Second Amended Complaint will support a plausible entitlement to relief, and will survive a Motion to Dismiss from both Dorland and the Cohen Defendants.

### III. Argument

#### A. Larson is seeking leave to amend her complaint.

##### 1. Larson is seeking leave to substitute her claim for tortious interference with contract with a claim for tortious interference with advantageous business relations.

In its Memorandum and Order of March 27, 2020, this Court determined that the ASF agreement does not contain a promise by ASF as to the duration of time it was going to publish Larson's Story. Similarly, the Court determined that while Larson won the One City/One Story competition, her agreement with the BBF does not mandate the BBF to publish *The Kindest* or to use it in the One City/One Story project. (Doc. 59, p. 16). Therefore, there was no breach of contract.

The Court further stated that in order for a plaintiff to have a cause of action for tortious interference of contract, there must be a breach of contract, citing Pure Distributors, Inc. v. Baker, 285 F. 3d 150, 155 (1st Cir. 2002). The Court reasoned that since neither ASF nor the BBF was contractually obligated to continue to publish the story or to use it at all, and since breach of contract is an essential element of Larson's intentional interference with contract claim, the court dismissed these claims. (Doc. 59, pp. 16-17).

Now, of course, in their Motion for Judgment on the Pleadings, the Cohen Defendants are seeking the same relief that Dorland received with respect to Larson's claim for interference with

her agreement with the BBF.  Specifically, the Cohen Defendants are seeking this Courts' determination that there was no breach of contract by either ASF or the BBF, and therefore Larson's intentional interference with contract claims must be denied.

Even if the Court similarly denies Larson's intentional interference with contract claims against the Cohen Defendants, Larson still has viable claims against all Defendants for tortious interference with Larson's advantageous business relationships with ASF and the BBF. Therefore, granting leave to amend will not be an exercise in futility.  Cooper v. Charter Commc'ns Entertainments I, LLC, No. CIV. 3:12-10530-MGM, 2015 WL 1943858, at *3 (D. Mass. Apr. 28, 2015) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed.R.Civ.P. 12(b)(6)."). In that context, "[f]utility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir.1996); see also, Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 421 (6th Cir.2000) ("a proposed amendment is futile only if it could not withstand a 12(b)(6) motion to dismiss"). Thus, where the question of futility is raised in opposition to a motion for leave to amend a complaint, the proposed amended complaint must satisfy the Rule 12(b)(6) standard.  Larson maintains that her amended complaint will satisfy Rule 12(b)(6).

### 2.  Granting Larson Leave to Amend Will Not Cause Undue Delay

A motion to amend a complaint under Federal Rule of Civil Procedure 15(a) is evaluated by the Court based on the stage and timing of the litigation. Sandler v. Calcagni, 243 F.R.D. 24, 25 (D. Me. 2007).  See, Steir v. Girl Scouts of the USA, 383 F.3d 7, 11-12 (1st Cir. 2004) (Particularly disfavored are motions to amend whose timing prejudices the opposing party by "requiring a re-opening of discovery with additional costs, a significant postponement of the

trial, and a likely major alteration in trial tactics and strategy....") citing, Acosta–Mestre v. Hilton Int'l of P.R., Inc., 156 F. 3d 49, 52-53 (1st Cir. 1998). Klunder v. Brown Univ., 778 F.3d 24, 34–35 (1st Cir. 2015) (no error in permitting amendment to complaint even though discovery had commenced and some depositions had been taken). As previously stated, it is still relatively early in the discovery process, and Larson is the only party to have even started discovery. Thus, allowing Larson leave to amend her complaint will not prejudice any of the opposing parties or alter any of their defense tactics and strategy.

### 3. Granting the Plaintiff Leave to Amend Will Not Significantly Alter the Nature of Proceedings.

If granting leave to amend a complaint significantly alters the nature of proceedings, then the Court may deny leave. Villanueva v. U.S., 662 F.3d 124, 127 (1st Cir. 2011). In Villanueva, both the district court and the Court of Appeals found that "amendment of the complaint would be tantamount to restarting the proceedings, complete with new defendants, and an entirely new cause of action." Id.

With respect to Larson's claims, all Parties have been aware that Larson is seeking damages for the intentional interference with her valuable professional relationships from the outset. The preamble to Larson's original complaint (Doc. 1) as well as her Amended Complaint (Doc. # 52) says as follows: "Plaintiff is also seeking damages for the intentional interference with two of Plaintiff's advantageous relationships perpetrated by all Defendants. . . ." Therefore, even if Counts I through IV of the Amended Complaint did not address the harm Larson suffered from the correct legal perspective (interference with advantageous business relations rather than interference with contract), all parties have been on notice that Larson was seeking relief from Defendants for their tortious interference with her advantageous business relationships. Thus, Larson's amended complaint will not substantially alter the course of this Action, because the

proposed amendment does not advance an entirely new theory of the recovery. Contrast Tiernan v. Blyth, Eastman, Dillon & Co., 719 F.2d 1, 2 (1st Cir. 1983), where plaintiff's motion to amend came a month after the date the court had originally targeted to begin trial, and only one and one-half months before the actual start of trial. In Tiernan, the Court held that granting leave to amend would have "invariably delayed the resolution of the case." Id., at 3.

Here, granting leave to amend will not delay the resolution of this Action because the parties are still in the early stages of discovery, and the issue addressed by an amendment to the complaint does not give way to entirely new and unexpected legal issues.

Tort claims for intentional interference with contractual relations and intentional interference with advantageous business relationships are very closely related. Comeau v. Town of Webster, Mass., 881 F. Supp. 2d 177, 189–90 (D. Mass. 2012). In fact, "under Massachusetts law, the tort of interference with an advantageous business relationship apparently includes within its ambit the tort of wrongful interference with an existing contract, and Massachusetts courts "have not consistently distinguished between the two torts." Hamann v. Carpenter, 937 F.3d 86, 92–93 (1st Cir. 2019), citing, United Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990)). The existence of a binding contract mandating ASF to continue to publish *The Kindest*, and mandating the BBF to use Larson's Story in the One City/One Story project seems to be the missing component of a claim for intentional interference with contractual relations. However, this does not negate a related claim by Larson for intentional interference with advantageous business relationships.

To establish a successful claim for intentional interference with advantageous business relations, Larson must prove that (1) she had advantageous relationships with ASF and the BBF (e.g., present or prospective contracts); (2) Dorland and Cohen Defendants had knowledge of the

9

relationships, (3) Dorland's and/or the Cohen Defendants' interference with the relationships, in addition to being intentional, was improper in motive or means; and (4) Larson lost advantages were a direct result of the Cohen Defendants' actions.  United Truck Leasing Corp., 406 Mass. at 816-7; Am. Private Line Services, Inc., v. Easter Microwave, Inc., 980 F.2d at 36 (1st Cir. 1992); Blackstone v. Cashman, 448 Mass. 255, 260 (2007); (To recover for interference with advantageous business relations, the plaintiff need not prove a binding contract, but she must show a probable future business relationship from which there is a reasonable expectancy of financial benefit.  [citations omitted]).

### 4. Larson had advantageous relationships with ASF and the BBF.

Larson clearly had written contracts with both ASF and with BBF.  See Exhibits 2 and 3. Under the ASF contract. Larson was paid $300 for a license to publish *The Kindest*.  Under the explicit terms of the BBF agreement, Larson was to forgo "financial compensation" in exchange for the intangible but significant career benefit and notoriety of participating in the One City/One Story project, as well as having tens of thousands of copies of her Story distributed in print and electronic form.  (See, Larson Aff., attached as Ex. 4). The existence of these contracts remains undisputed. Additionally, both agreements had consideration of legal value that benefitted all parties.  This undermines the Cohen Defendant's erroneous argument that Larson's license was "charitable" simply because there was no monetary exchange between Larson and the BBF. (Doc. 84, p. 11).

### 5. Dorland knew of Larson's relationship with both ASF, and Dorland and the Cohen Defendants knew of Larson's relationship with the BBF.

Dorland knew about Larson's relationship with ASF when she emailed ASF on June 5, 2018, and said, "I believe that the letter in Sonya's story plagiarizes the letter I

10

wrote…" Dorland voluntarily suggested that ASF pull *The Kindest*, acknowledge the Dorland Letter, and let her write an article for ASF about ethical issues germane to all writers. Additionally, Dorland closed her email stating that she was "in the process of securing legal counsel." (See, Exhibit 5, email chain by and between Dorland and ASF.) Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 38, 815 N.E.2d 241, 245 (2004) ("The elements of a case of tortious interference with an advantageous business relationship are by now firmly established. The plaintiff has the burden of demonstrating that a business relationship from which the plaintiff might benefit existed; the defendant knew of the relationship; the defendant intentionally interfered with the relationship for an improper purpose or by improper means; and the plaintiff was damaged by that interference."). With regard to the BBF, both Dorland and the Cohen Defendants knew of Larson's relationship with the BBF when they sent the July 3, 2018 Demand Letter (Ex. 6). The Defendants' knowledge of Larson's relationships with both ASF and the BBF remain undisputed.

### 6. Whether Dorland's and/or the Cohen Defendants' interference with the relationships, in addition to being intentional, was improper in motive or means is an issue to be addressed at a later point in proceedings.

Currently, there may well be a dispute as to whether the improper motive or means requirement of the intentional interference with advantageous business relationships is satisfied. However, whether or not Dorland's actions and the Cohen Defendants' respective actions vis-a-vis Larson's relationships with ASF and the BBF were improper is a matter for this court to consider at a future time. (United Truck Leasing Corp., 406 Mass. at 817) (evidence of improper motives or the use of improper means in relation to either the existing contract or the prospective one may present a jury question).

11

### 7. Larson's lost advantages with the ASF and BBF contracts were a direct result of the Defendants' actions

While ASF did not have a contractual obligation to keep *The Kindest* on its website, it is abundantly clear that Dorland's actions led to ASF's decision to withdraw *The Kindest* from distribution, thus ending Larson's beneficial contractual relationship with ASF. (See, Exhibit 7, email chain by and between Dorland and ASF, including the June 25, 2018 email, from Rebecca Markovits of ASF to Dorland: "I'm am writing to let you know that "The Kindest" is now no longer up on our website.  I hope this helps you find some resolution and closure to your natural concerns.").

Similar to the ASF contract, the BBF did not have a contractual obligation to use Larson's Story and distribute the 30,000 printed copies of Larson's work it had already printed. However, Dorland's and the Cohen Defendant's claims of plagiarism and copyright infringement stopped the BBF in its tracks.  If it were not for intervention by Dorland and the Cohen Defendants, Larson's story would have been distributed extensively as part of the One City/One Story project.  (Ex. 4, Larson Aff.).

On June 18, 2018, Norah Piehl, Deputy Director of the BBF, emailed Dorland and stated,

> After speaking with our legal counsel and with Sonya, and in order to alleviate your concerns, we requested that Sonya completely redraft the portion of her story in question, and she has now done so.  Our lawyer has reviewed the rewritten text and we plan to move forward with publication of this revised version, with a note in the acknowledgments that it varies from the original story published in American Short Fiction.  The story will be distributed in mid-August.

(See, Exhibit 8 attached hereto.)

In response to the BBF's insistence that Larson's story be published, the Cohen Defendants sent their first "demand letter" to the BBF on July 3, 2018.  [Ex.X] Unfortunately for Larson, the BBF eventually decided to forgo its use of *The Kindest*.   By email of August 13,

2018, Deborah Z. Porter, Founder and Executive Director of the BBF notified Larson that the BBF decided to cancel One City One Story. In her email, Porter explains that the threats and demands from Dorland and the Cohen Defendants, including the demand letter from July 3, 2018, caused the BBF to reconsider its position on publishing *The Kindest*. On August 13, 2018, Porter wrote to Larson.

> I am sorry to say that Norah and I have made the decision to cancel One City One Story this year.
>
> After thinking we had a path towards a solid agreement with Dawn Dorland and feeling that we were out of danger from being sued, her lawyer was back in touch late last week with new demands. There is seemingly no end to this and we can not afford to spend any more time or resources at this moment or risk law suits in the future that could affect not only us, but our sponsor for One City One Story.
>
> Sadly for us, we have already printed 30,000 copies of your story using the acknowledgement Dawn and her lawyer had approved (but now want to change.) That represents a total loss in printing costs for us. This is obviously not the outcome that we prefer, but we feel we have no other choice at this point."

See, Exhibit 9 attached hereto.

### 8. Larson's Motion to Amend will allow her to test her claims on their merits and should be allowed.

In order to resolve the differences between the torts of interference with contracts and interference with advantageous business relations, and to resolve any alleged shortcomings in the complaint regarding her Ch. 93A claims, Larson is seeking leave to amend her complaint against both Dorland and the Cohen Defendants. (See, Note 5 to its Memorandum and Order (Doc. 59) ("a claim for intentional interference with an advantageous business relationship does not require Plaintiff to prove a breach of contract, but only, inter alia, interference with a 'business relationship or contemplated contract of economic benefit.'" ) [citations omitted]. Such relief will moot the Cohen Defendants' Motion for Judgment on the Pleadings at this point and give Larson the opportunity to test her claims on the merits. Foman v. Davis, 371 U.S. at 182-3.

13

## B. The actions of the Cohen Defendants had a significant impact on trade and commerce under M.G.L. Ch. 93A.

### 1. As a professional writer, Larson made a business decision to enter her Story in the BBF One City/One Story contest.

Larson is a professional writer and a full-time employee of Grub Street, Inc., a Boston area not-for-profit business dedicated to educating and helping creative writers. (See, Am. Compl. ¶ 2, https://grubstreet.org, and Ex. 4, Larson Aff.).

Larson entered her Short Story in the BBF's One City/One Story contest with the hope she might win. Larson knew that if she won, she would greatly enhance her career, because, like in previous years, the Story would be widely disseminated to more than 30,000 people, businesses and institutions all over the state. Furthermore, like in years past, her Short Story and the fact she won the competition would be picked up by the press, publishers, writers, her employer and colleagues, and she would make numerous appearances at events around Boston. In short, the potential career and economic benefits to Larson for winning the competition were enormous. (See, Ex. 4, Larson Aff).

After Larson won the contest, she and the BBF entered into a contract in which Larson licensed the BBF to use and publish *The Kindest*. Under the contract heading of "Consideration," Larson agreed to let the BBF use her Story and to forgo "financial compensation" in exchange for the significant career boost that winning the competition would likely give her. (Ex. 3 (BBF Agreement), and Ex, 4, Larson Aff.).

The Cohen Defendants argue that Larson's claims must fail because her interaction with the BBF was not related to trade, commerce or business. The Cohen Defendants also claim that they are not liable to Larson because there was not an attorney-client relationship between them. As will be shown, these arguments fail under Ch. 93A because (1) Larson's contract with the

14

BBF constitutes a business relationship that has a direct impact on trade or commerce; and (2) attorneys can be held liable for actions that impact non-clients.

### 2. Larson's interaction with the BBF constitutes trade or commerce under Ch. 93A.

Larson has accused the Cohen Defendants of unfair and deceptive acts and practices in violation of M.G.L. c. 93A. The Cohen Defendants argue that Larson's 93A claims must be dismissed because the acts or practices complained of were not perpetrated in a business context. (Doc. 84, p. 8.).

Writing is Larson's profession and business. Submitting to the BBF what Larson believed was a contest winner was part of her plan to enhance her writing career. From years of experience in the publishing industry, from attending past Boston Book Festivals, and from her desire to become a successful professional writer, she knew that winning the contest was for more than prestige; it was for the enhancement of her business.[1] Quite simply, winning the BBF contest was a dream come true for Larson, who is still in the early stages of her career. Suffering through the trauma of having her dream shattered has been devastating. (Ex. 4, Larson Aff.).

### 3. Attorneys can be liable to non-clients under Ch. 93A.

An attorney may be liable to a non-client under chapter 93A in certain circumstances. See, Kirkland Constr. Co. v. James, 39 Mass.App.Ct. 559, 564 (1995). A law firm may be subject to chapter 93A liability if it "joins its client in marketplace communications to the adversary and if those communications knowingly or carelessly turn out to be false, misleading, and harmful. (Coggins v. Mooney, 1998 WL 156998, at *5 (Mass.Super. Apr. 3, 1998). This is

---

[1] Publishing is big business. In recent years, the U.S. publishing industry has generated $27.78 billion in net revenue, representing 2.71 billion in units (volume). The U.S. is home to by far the largest publishing industry, followed by China and Germany. Jul 4, 2017 https://www.google.com/search?client=firefox-b-1-d&q=how+big+is+the+publishing+business+in+the+united+states

what happened here.  The Cohen Defendants' activities crossed the boundary "from traditional representation into active participation in trade and commerce."  Id.

The Cohen Defendants injected themselves into "trade or commerce" by making false, unreasonable and unwarranted demands against the BBF under the Copyright Act for Statutory Damages and attorney's fees with knowledge that they lacked legal justification.  The claims were advanced primarily to coerce the BBF into acquiescing to Dorland's demands, all of which ultimately led to the BBF cancelling *The Kindest* as the winner of the One City/One Story contest.  Kirkland Constr. Co. v. James, 39 Mass.App.Ct. 559 (1995).  The decision by the BBF to pull *The Kindest* from the Festival was devastating to Larson, damaging to the mission of the BBF, and disappointing to the thousands of participants in the Festival.  (Ex. 4, Larson Aff.).

"Trade" and "commerce" under c. 93A includes the "distribution of any services and any property, tangible or intangible . . . and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth." (Mass. Gen. Laws c. 93A, § 1(b)) Mass. Gen. Laws c. 93A, § 1(b).[2]  As the winner of the contest and as a professional writer, Larson had a business relationship with the BBF.  The Cohen Defendants thrust themselves into their business relationship which ultimately interfered with trade and commerce relative to the distribution of tangible and intangible property directly or indirectly affecting the people of Massachusetts.

Moreover, the fact that the BBF was organizing and promoting the Boston Book Festival as part of its charitable mission is irrelevant to Larson's c. 93A claim.  BBF is not a party to this lawsuit.  What is relevant is that the Book Festival was an event that directly affected trade and

---

[2] Mass. Gen. Laws c. 93A, § 1(b) defines "trade" and "commerce" as including "the advertising, the offering for sale, rent or lease, the sale, rent, lease or **distribution of any** services and any **property, tangible or intangible**, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, **and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth**. [emphasis supplied]

16

commerce within the Commonwealth, and the unfair, deceptive and unwarranted demands made by the Cohen Defendants against the BBF, directly impacted Larson and the people of this State.

The trade or commerce that the Cohen Defendants implicated directly impacted both Larson and the BBF. This is the business relationship with which the Cohen Defendants have interfered. The actions of the Cohen Defendants' themselves in making erroneous and misleading claims under the Copyright Act served to "inject" them into trade or commerce for purposes of the statute. First Enterprises, Ltd. v. Cooper, 425 Mass. 344, 347 (1997) (defendant's actions interfered with trade or commerce); Nova Assignments, Inc. v. Kunian, 77 Mass. App. Ct. 34, 38 (2010) (In certain circumstances, a lawyer may owe a duty of care to a nonclient for the knowing or negligent provision of false information.).

The July 3, 2018 letter sent to the BBF by Defendant Jeffrey A. Cohen (Ex. 6) contains demands in **bold** letters that the BBF cease and desist from printing, copying, distributing or performing other activities related to *The Kindest* until Dorland's claims are resolved. If the Cohen Defendants' demand for an advance copy of Larson's Story was not met, the BBF was told that they would prevent the publication of the Work and seek statutory damages as high as $150,000 under 17 U.S.C. § 504(c).

The copyright to Dorland's letter was not registered with the Copyright Office for almost three years after it was published. (Ex. 10). Therefore, under Section 412 of the Copyright Act, Dorland was never entitled to statutory damages or attorney's fees. The Cohen Defendants claim they were experts in "intellectual property" and they knew or should have known this fairly basic tenet of copyright law. [Cohen Business Law Group's specialties include Copyright Litigation and Intellectual Property Law. (See firm website at https://cohenblg.com/index.html)]

Larson's previous counsel, James A. Gregorio emailed Attorney Cohen on July 17, 2018, in response to Cohen's demand letter to the BBF of July 3, 2020. Attorney Gregorio "unequivocally" denied all of Cohen's allegations. (Ex. 11). Gregorio then said, "Regrettably, your client [Dorland] made no effort whatsoever to engage directly with Ms. Larson regarding this matter." Currently, there is no reason to believe that Attorney Gregorio's statements were untrue. Therefore, when the Cohen Defendants wrote directly to the BBF demanding a cessation of printing, copying, and distribution, they were thrusting themselves into trade and commerce. Specifically, the trade and commerce included the distribution of property, tangible or intangible, which either directly or indirectly affected the people of the Commonwealth of Massachusetts.

## IV.     Conclusion

Larson respectfully requests that this Court grant her leave to amend her complaint by adding claims for the intentional interference with the two business relationships she had with ASF and the BBF that were advantageous to her employment, her career and her profession. Larson also requests leave so she can clarify the impact that the Cohen Defendants had on trade, commerce and business, which directly implicates violations of M.G.L. C. 93A. All of the proposed amendments are advanced in good faith and will further Larson's pursuit of justice, and both will render moot the Cohen Defendants' pending Motion for Judgment on the Pleadings.

|  |  |
|---|---|
|  | SONYA LARSON,<br>By her attorney, |
|  | /s *Andrew D. Epstein* |
| July 15, 2020 | _____<br>Andrew D. Epstein, Esquire (BBO #155140)<br>Barker, Epstein & Loscocco<br>176 Federal Street<br>Boston, MA 02110<br>Tel: (617) 482-4900<br>Fax: (617) 426-5251<br>Photolaw@aol.com |

**Certificate of Service**

      I certify that Plaintiff's Memorandum (1) In Opposition To the Motion for Judgment on the Pleadings By Cohen Business Law Group and Jeffrey A. Cohen, Esq., and (2) In Support Of Plaintiff's Motion For Leave To Amend Her Complaint was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

|  |  |
|---|---|
|  | */s/ Andrew D. Epstein* |
|  | _____ |
| July 15, 2020 | Andrew D. Epstein |

# List of Exhibits to Plaintiff's

# (1) Opposition to Cohen Defendants' Motion for Judgment on the Pleadings and

# (2) Plaintiff's Motion for Leave to Amend

1. Affidavit of Andrew D. Epstein, Esq.
2. American Short Fiction (ASF) agreement with Plaintiff, Sonya Larson
3. Boston Book Festival (BBF) letter agreement with Larson
4. Affidavit of Plaintiff, Sonya Larson
5. Email chain letters between ASF and Defendant, Dawn Dorland Perry ("Dorland")
6. July 3, 2018 demand letter to the BBF from Cohen Business Law Group, PC
7. Email chain letters between ASF and Defendant, Dawn Dorland Perry ("Dorland")
8. June 18, 2018 email letter from BBF to Dorland
9. August 13, 2018 email letter from BBF to Dorland
10. Copyright Office registration information for registration of July 2, 2015 Dorland Letter on June 10, 2018
11. Letter from James Gregorio, Esq. to Cohen Business Law Group