# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SONYA LARSON,

      Plaintiff

    v.

DAWN DORLAND PERRY,
COHEN BUSINESS LAW GROUP, PC and
JEFFREY A. COHEN, ESQUIRE,

      Defendants.

  and

 DAWN DORLAND PERRY

      Plaintiff-in-Counterclaim
    v.

SONYA LARSON

      Defendant-in-Counterclaim

C. A. No.:  1:19-CV-10203-IT

## DAWN DORLAND PERRY'S OPPOSITION TO SONYA LARSON'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Defendant and Plaintiff-in-Counterclaim Dawn Dorland Perry ("Ms. Dorland") submits

this opposition to Plaintiff and Defendant-in-Counterclaim Sonya Larson's ("Ms. Larson")

Motion for Leave to File Amended Complaint.[1]  This is Ms. Larson's second motion to amend

her complaint.  Ms. Dorland opposes this motion insofar as it seeks to add new claims against

Ms. Dorland because the proposed amendments are futile in that they seek to add claims which

---

[1] Ms. Larson's Motion for Leave to Amend her Complaint is brought in conjunction with
Defendants Cohen Business Law Group, PC and Jeffrey A. Cohen, Esq.'s (the "Cohen
Defendants") Motion for Judgment on the Pleadings (ECF No. 83), to which Ms. Dorland is not
a party.  Ms. Dorland did not and does not oppose the Cohen Defendants' Motion.

are in both form and substance identical to claims which this Court has already dismissed in

response to Ms. Dorland's Motion to Dismiss, through the Court's March 27, 2020 Order.  See

ECF No. 59.

Specifically, the Court dismissed two counts of intentional interference with contractual

relations, one related to the publisher American Short Fiction, and one related to the Boston

Book Festival.  ECF No. 59.  Ms. Larson's proposed Amended Complaint attempts to resurrect

those claims by repackaging them as "intentional interference with advantageous business

relationships."  However, the claims have not changed, substantively, and pursuant to relevant

law applied to these facts, the claims at issue are one and the same.  Therefore, Ms. Larson's

motion seeks nothing other than for this Court to reverse itself, but without setting forth any

basis – grounded in the alleged facts or the law – to do so.  Ms. Dorland respectfully requests

that the Court reject this attempt and deny Ms. Larson's motion to reassert these previously

dismissed claims.[2]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

## A.   Brief Factual Summary.[3]

This dispute arises from Ms. Larson's impermissible incorporation of Ms. Dorland's

writing in several versions of Ms. Larson's short story now titled *The Kindest*.  Once Ms.

---

[2] Ms. Larson's motion further seeks to "clarify certain allegations regarding the impact that the Cohen Defendants had on trade and commerce," presumably to escape dismissal of her claim against the Cohen Defendants pursuant to M.G.L. c. 93A ("93A").  This aspect of Ms. Larson's motion does not implicate Ms. Dorland, as Ms. Larson voluntarily abandoned her claim pursuant to 93A against Ms. Dorland when she amended her complaint the first time.  However, Ms. Dorland joins in the Cohen Defendants' opposition to this portion of Ms. Larson's motion simply for purposes of the completeness of the record.

[3] In light of the multiple presentations of the facts presented to the Court through several iterations of Ms. Larson's complaint, and now Ms. Dorland's counterclaim, Ms. Dorland will refrain from once again walking through the history of this dispute and limit this factual background to a brief summary.

Dorland discovered Ms. Larson's use of Ms. Dorland's work, she hired legal counsel – the

Cohen Defendants - who sent a cease and desist letter to Ms. Larson, and certain publishers that

either had, or had planned to, publish Ms. Larson's story with Ms. Dorland's letter (or a slightly

altered version of it) included therein.  Ms. Dorland retained the Firm to protect her copyright

interests, which she alleges in her counterclaim that Ms. Larson infringed.  Ms. Larson brought

this action after one publisher elected not to publish her short story, and another removed it from

its website.  However, Ms. Larson's story – including Ms. Dorland's letter - remains in the

public sphere, including but not limited to in the print publication of one of those publishers.

**B.**      **Procedural History.**

On January 30, 2019, Ms. Larson filed her original complaint; it included ten exhibits.

Dkt. 1.  Counsel for the Firm waived service and moved to dismiss Ms. Larson's action on April

1.  ECF Nos. 6-7, 11-12, 19.  Ms. Larson did not serve Ms. Dorland until March 21, 2019, and

Ms. Dorland moved to partially dismiss Ms. Larson's action on April 24, 2019. ECF Nos. 25, 26.

Ms. Dorland's motion was limited to Ms. Larson's Counts for defamation, 93A, and tortious

interference with contracts. Id.  Ms. Dorland did not move to dismiss Ms. Larson's request for a

declaratory judgment that she owns a copyright over *The Kindest* or that she did not infringe Ms.

Dorland's copyright in her letter.

Following a hearing on both Ms. Dorland's and the Cohen Defendants' motions to

dismiss, the Court instructed the parties to confer concerning Ms. Larson's potential amendment

to the complaint.  Following the parties' conference, Ms. Larson moved to amend the complaint;

the proposed first amended complaint (a) dropped the 93A claim against Ms. Dorland; (b)

bolstered the intentional interference claims against all defendants; and (c) bolstered the

defamation claim against Ms. Dorland.  See ECF No. 45.  With the Court's permission and for

cost-saving purposes, Ms. Dorland re-filed her initial motion to dismiss with a brief cover paper

addressing the differences between the original and first amended complaint.  ECF No. 50, 53.

The Cohen Defendants also re-filed their motion to dismiss.  ECF No. 54.  The Court decided the

motions to dismiss on March 27, 2020, denying the Cohen Defendants' motion, and allowing

Ms. Dorland's motion as to the counts for intentional interference with contractual relationships,

and denying Ms. Dorland's motion as to the defamation claim.  ECF No. 59.  Ms. Larson did not

seek reconsideration of that decision.

On April 24, 2020, Ms. Dorland answered what remained of the First Amended

Complaint, and filed counterclaims against Ms. Larson.  ECF No. 75.  Ms. Larson moved to

dismiss the counterclaims on June 19, 2020.  ECF No. 81.

On July 1, 2020, the Cohen Defendants filed a motion for judgment on the pleadings,

seeking dismissal of the intentional interference with contractual relationships claims brought

against them, as well as the 93A claim.  ECF No. 83.  On July 15, 2020, Ms. Larson filed a

document that purported to oppose that motion, and to seek leave to further amend the complaint

to (a) "clarify" certain aspects of her 93A claim against the Cohen Defendants, and (b) to add

claims against all Defendants – including Ms. Dorland – for intentional interference with

advantageous business relationships with the very same entities – and based on the very same

contracts – that were the basis of the previously-dismissed claims.  ECF No. 85; 86.  Through

this opposition, Ms. Dorland opposes this motion.

## II.    ARGUMENT

### A.    Legal Standard.

Notwithstanding the general principle under Rule 15(a) of the Federal Rules of Civil

Procedure concerning leave for a motion to amend being freely given, that Rule does permit a

trial court to deny leave to file an amended complaint which would be subject to immediate

dismissal under Rule 12(b)(6) for failure to state a viable claim for relief.  See Foman v. Davis,

371 U.S. 178, 182 (1962); Hayden v. Grayson, 134 F.3d 449, 455-56 (1998).  In other words,

[t]here is, however, no requirement that amendments should be granted if futile. Standard Fire

Ins. Co. v. Crosby Yacht Yard, Inc., No. CIV.A. 04-12244GAO, 2007 WL 465152, at *1 (D.

Mass. Feb. 8, 2007) citing Demars v. Gen. Dynamics Corp., 779 F.2d 95, 99 (1st Cir.1985)

("While motions to amend are liberally granted, a court has the discretion to deny them if it

believes that, as a matter of law, amendment would be futile.").

      "In assessing futility, the district court must apply the standard which applies to motions

to dismiss under [Rule 12(b)(6)]."  Fernando v. Fed. Ins. Co., No. CV 18-10504-MBB, 2019 WL

2267168, at *4 (D. Mass. May 28, 2019) citing Adorno v. Crowley Towing and Transp. Co., 443

F.3d 122, 126 (1st Cir. 2006).

      Pursuant to this standard, Ms. Larson's motion concerning the proposed new claims to be

brought against Ms. Dorland should be denied.

**B.      Ms. Larson's Proposed Amended Complaint Is Futile Because The Court Has
         Already Dismissed The Claims Ms. Larson Proposes To Add Against Ms. Dorland.**

      On March 27, 2020, this Court dismissed Ms. Larson's claims against Ms. Dorland for

intentional interference with contractual relationships.  See ECF No. 59.  Ms. Larson did not

appeal that decision and did not seek reconsideration.  See, docket, generally.  Through her

present motion, Ms. Larson seeks to resurrect those claims by attaching to them a different title.

See ECF Nos. 85-86.  However, as it clear from Ms. Larson's Motion and Memorandum in

Support, the claims that she now attempts to advance are the same claims that were previously

dismissed.  This motion is therefore barred, and the proposed amendments to the complaint are

futile, as a matter of law.  Ms. Dorland therefore respectfully requests that Ms. Larson's motion be denied.[4]

As Ms. Larson concedes, "Massachusetts courts have not consistently distinguished between" the torts of interference with an advantageous business relationship and the interference with a contractual relationship.  See ECF No. 86 at p. 9.  Ms. Larson then goes on to lay out the elements of the tort of "interference with an advantageous business relationship," and hits a snag at the very first element: "Larson must prove that she had advantageous relationships with ASF and the BBF (e.g., present or prospective contracts)".  Of course, here, Ms. Larson does allege an "advantageous relationship" with both entities – through the contracts that were already reviewed, analyzed and considered by this Court in deciding the motion to dismiss, resulting in the March 27, 2020 order.  See ECF No. 59.  Ms. Larson does not, in this motion to amend, suggest that there was an additional "prospective contract" with either entity.  See, e.g., ECF Nos. 85-86, generally.  She only points to the same exact relationships, defined by the same exact contracts, which have already been decided.[5]

Massachusetts courts have held that where a plaintiff has a contract and fails to point to relationships beyond those contractual relationships that has been interfered with, it has failed to state a claim for intentional interference with advantageous business relationships.  Hamann v.

---

[4] Ms. Dorland does not claim that the motion is untimely, given the tracking order in this matter. Written discovery is ongoing, and depositions have not yet been taken.  Further, the Court has under consideration Ms. Larson's motion to dismiss on Ms. Dorland's counterclaims advanced in this matter.  See ECF Nos. 78, 82.

[5] Inasmuch as Ms. Larson's motion is, in fact, a thinly veiled motion for reconsideration, it fails to meet the standard as such a motion.  As courts have explained, "[a] court appropriately may grant a motion for reconsideration 'where the movant shows a manifest error of law or newly discovered evidence."  See Army v. CitiMortgage, Inc., 140 F.Supp.3d 149, 150-151 (D. Mass. 2015) citing Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81-82 (1st Cir. 2008).  A court may also grant such a motion if a court "has patently misunderstood a party … or has made an error not of reasoning but of apprehension".  Army v. CitiMortgage, Inc., 140 F.Supp.3d at 150-151 citing Ruiz Rivera, 521 F.3d. at 82.  Ms. Larson has not made any of the arguments associated with a motion for reconsideration.  See ECF Nos. 85-86, generally.

Carpenter, 937 F.3d 86, 92–93 (1st Cir. 2019) (upholding the lower court's decision to dismiss the plaintiff's claim of intentional interference with an advantageous business relationship where the plaintiff does not identify a business relationship other than the one described in a contract, which had already been addressed when deciding the intentional interference with contracts claim); see also ADH Collision of Bos., Inc. v. Wynn Resorts, Ltd., 2020 WL 3643509, at *2 (D. Mass. 2020); see also Rapid Pharm. AG v. Kachroo, 180 F. Supp. 3d 96, 104 (D. Mass. 2015) (Gorton, J.) ("[a]lthough plaintiff presents the facts of this cause of action as a second ground for injunctive relief, it does not allege that defendants interfered with business relationships that were likely to yield any economic benefit beyond Rapid AG's existing contracts").

In order for the Court to assess Ms. Larson's relationship with the BBF or ASF, it must review the agreements that Ms. Larson had with those entities.  While the Court has already reviewed those agreements, and determined that no breach had been induced by Ms. Dorland, it is simply futile to bring a claim, albeit with a different name, that asks the Court to review the agreements yet again.  See ECF No. 59.[6]  This is particularly the case where each of the agreements at issue contain a section titled "Entire Agreement," which makes clear that there were no side agreements, or additional promises, made between Ms. Larson and the two entities at issue.  See ECF No. 86-2 (Exhibit 2 to Memorandum) (ASF agreement), at Section VII; ECF No. 86-3 (Exhibit 3 to Memorandum) (BBF Agreement), at Section 10.  Further, Ms. Larson does not ***cite to*** or ***allege*** any subsequent or supplemental agreements in support of her motion to amend.  Instead, she provides an affidavit wherein she outlines her expectations about the "exposure" she may have received as a result of the selection by the BBF of *The Kindest* as the featured short story.  See ECF No. 86-4.

---

[6] During the parties' 7.1 conference preceding Ms. Larson's filing of her Motion to Amend, counsel for all Defendants set forth this argument – via both email and telephone – for counsel for Ms. Larson.  Plaintiff's counsel was undeterred.

Through Ms. Larson's affidavit, however, the potential exposure she identifies (through inadmissible hearsay) would not have flowed from the BBF, but rather from other entities such as new "connections" and "conversations" with "new reading audiences", potential new "event invitations", interviews with "radio, print and online media outlets", increased traffic to her own website, connections that led to book deals, and connections that led to the sale of film rights. Id. None of these speculative and – essentially undefined – "advantages" are identified as flowing from the BBF, nor were they promised by the BBF as a contractual term. Id. Instead, Ms. Larson identifies multiple other entities, such as the Boston Public Library, the MBTA, more than 40 bookstores, literary centers, WBUR, the Boston Globe, the Somerville Times, and other entities that would potentially have reached out to her because they had been interested in her because of the BBF's "exposure." Id. Where there was no promise or expectation that the BBF would provide these supposed "benefits" to Ms. Larson, however, they cannot form the basis of a claim for intentional interference with Ms. Larson's advantageous business relationship **with the BBF**. See, e.g., Laser Labs, Inc. v. ETL Testing Labs., Inc., 29 F. Supp. 2d 21, 23–24 (D. Mass. 1998) ("plaintiff's definition of 'advantageous relations' for these purposes is too expansive. It appears that the plaintiff's theory is that the existence of a potential market for a … product is sufficient to create a prospective advantageous relationship … Massachusetts does not interpret this tort to reach so far. The plaintiff has not identified any case in which a court applying Massachusetts law has allowed a claim for intentional interference with advantageous business relations where the business relationship said to have been interfered with was as inchoate as alleged here.")

Further, Ms. Larson does not allege or claim that Ms. Dorland intentionally interfered with any advantageous business relationships with these several entities that may have provided

8

Ms. Larson with this additional "exposure".  Of course, such a claim would be grounded in

nothing but speculation, rumor and hyperbole, as Ms. Larson's affidavit is based not on

agreements with any of these entities – nor with her agreement with the BBF – but instead with

her discussions with past winners of the One City / One Story contest.  Id.[7]  Those prior winners

may have garnered the interest of the several entities that provided this coveted "exposure"

through the nature of their work, rather than the mere fact of having won a contest, or they may

have had negotiated additional terms in their agreements with the BBF – one cannot know – but

for these parties and these facts, it is known what the contours of the "advantageous business

relationship" was between Ms. Larson and the BBF, as it was set forth in the agreement between

those parties, which is included as Exhibit 3 to the proposed Second Amended Complaint.

### III.    CONCLUSION

WHEREFORE, and for the reasons set forth above, Ms. Dorland respectfully requests

that the Court deny Plaintiff's Motion for Leave to File a Second Amended Complaint which

adds new claims against Ms. Dorland for Intentional Interference with Advantageous Business

Relationships.

---

[7] Notably, Ms. Larson does not make similar allegations via affidavit concerning any benefits –
in addition to her written agreement – that she anticipated flowing from the ASF agreement.  Id.

Respectfully submitted,

DAWN DORLAND PERRY,

By her attorneys,


*/s/ Suzanne Elovecky*
Suzanne Elovecky, Esq. (BBO # 670047)
PARTRIDGE SNOW & HAHN LLP
30 Federal Street, 7th Floor
Boston, MA  02110
(617) 292-7900
selovecky@psh.com

Date:  July 29, 2020


## CERTIFICATE OF SERVICE

I, Suzanne Elovecky, hereby certify that on July 29, 2020 the foregoing document was served electronically on all counsel of record via the Court's ECF filing system.


*/s/ Suzanne Elovecky*
Suzanne Elovecky

3879815.1/30402-2

10