# Exhibit N

Barker, Epstein & Loscocco
176 Federal Street
Boston, Massachusetts 02110

---

(617) 482-4900
FAX: (617) 426-5251

Andrew D. Epstein
Photolaw@aol.com

September 28, 2018

**U.S. Express Mail**
**Return Receipt Requested**

**PERSONAL AND CONFIDENTIAL**

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
10990 Wilshire Blvd., Suite 1025
Los Angeles, CA 90024

    Re:   **Sonya Larson**
    v.    **Cohen Business Law Group and Jeffrey A. Cohen**
          **Thirty (30) Day Demand Letter Under Mass. Gen. Laws. C. 93A**

Dear Mr. Cohen:

    I represent Sonya Larson as successor counsel to James A. Gregorio of Greensboro, North Carolina. I will be representing Ms. Larson going forward regarding all claims for plagiarism and copyright infringement raised by your client, Dawn Dorland Perry (hereinafter, "Dorland"), and by you (Jeffrey A. Cohen), and Cohen Business Law Group relative to my client's short story, *The Kindest*.

    Ms. Larson contends that you and Cohen Business Law Group ("Cohen Law") violated one or more of my client's rights by defaming her, interfering with an advantageous contractual relationship, and committing unfair and deceptive acts and practices. The facts and circumstances of these claims, which are outlined below, are based on presently available information and belief.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 2.

A somewhat revised version of this letter is being sent simultaneously to Ms. Dorland and is enclosed. Both the letter to Dorland as well as this letter are thirty (30) day demand letters sent pursuant to the Massachusetts Consumer Protection Act, Massachusetts General Laws, Chapter 93A. Under the Act, you and Cohen Law have thirty days from receipt of this letter within which to respond to the allegations and claims for relief that are outlined herein. If you and Cohen Law fail to make a reasonable written response to this letter within thirty (30) days, a Massachusetts court can award treble but no less than double damages against you and Cohen Law, in addition to awarding my client her costs and attorney's fees.

Sonya Larson is a mixed-race Chinese-American professional writer residing in the Boston area. My client works at GrubStreet, Inc., a not-for-profit organization dedicated to educating and helping creative writers. Over the course of her young career, Larson has had several of her works published. See, www.larsonya.com for a list of her publications to date.

Dorland appears to be a minimally published writer who once lived in the Boston area and now lives in Los Angeles. Her writing career seems focused primarily on teaching occasional writing workshops. In 2015, Dorland claims to have donated a kidney to an anonymous recipient. Dorland wrote a letter to her anonymous kidney recipient in which she introduces herself, outlines her reasons for donating a kidney, and expresses an interest in learning more about the recipient and even meeting that person one day. A copy of the letter (the "Factual Letter") is enclosed.

Larson and Dorland appear to have had a nominal relationship with each other, the majority of which took place through a few dozen emails (most of which were in response to mass emails concerning conferences and class logistics), scant social media exchanges, a few exchanged pleasantries, and a large dinner party my client attended about eight years ago when Dorland lived in the Boston area.

Since the time that Dorland donated her kidney in 2015, she has not, by any stretch of the imagination, been subtle about her kidney donation and her advocacy for organ donations in general. Dorland has utilized social media extensively (e.g., Twitter, Facebook and Instagram) to raise awareness about her kidney donation and organ donations in general. In addition, Dorland posted a copy of the Factual Letter to a relatively large Facebook group. The letter may also have been posted elsewhere. The letter on Facebook was posted without a copyright notation.

Ms. Larson was inexplicably and involuntarily added as a member of Dorland's Facebook group, which included approximately 250 to 300 people. It appears that the primary focus of this group was to create a platform for Dorland to share her personal experiences with donating a kidney. Ms. Larson saw the Factual Letter on Facebook after it was posted. Ms. Larson found the letter interesting. She did not copy the Factual Letter but instead recorded a few thoughts and phrases from the letter into her notes for future reference.

My client was intrigued by the idea of kidney donations and began to fabricate a fictional short story from the perspective of an alcoholic, working class Chinese-American woman living in Boston with her husband, who receives a kidney donation from a wealthy white woman and then prepares to meet her. The story explores the complexities of indebtedness, addiction, love, shame and race. Its central aim is to depict a person of color resisting a white savior narrative.

Larson's eventual short story included a letter received by the kidney recipient character and sent by the donor character. The letter was a small part of the story and used primarily to introduce the character of the kidney donor, and to set the stage for the eventual meeting of the recipient and donor characters. When Ms. Larson was writing her story, she researched and viewed dozens of other organ donation letters that were widely available online. She also viewed many websites devoted to advising organ donors and recipients on how to correspond with one another, including bullet points of the kinds of things people share with one another and in what order.[1]

Ms. Larson worked on her story for several months and was ultimately scouted by Plympton Literary Studio for a possible audiobook production of this story, among others, via www.Audible.com ("Audible"). Audible accepted Larson's story entitled, *The Kindest*, and prepared to publish it as an audio book. As the story was being recorded in the summer of 2016, my client asked the producer if Audible would re-record the story using different wording in the story's fictional letter to avoid any conceivable resemblance to the Factual Letter. Audible agreed to re-record that section, but accidentally posted the incorrect version on August 3, 2016, in downloadable mp3 format and print-on-demand CD format. They agreed to remove this recording from its site entirely until the correct version was recorded and posted on October 25, 2016. Larson was paid $125 for *The Kindest* from Plympton Literary Studio. She received nothing from Audible.

---

[1] See, for example, http://www.donorrecovery.org/families-of-donors/writing-to-transplant-recipients/.

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 4.

On June 22, 2016, my client did a reading from *The Kindest* at a bookstore in Boston. The reading did not include any portion the letter in her story. Someone who attended the reading posted a comment on Dorland's Facebook page about Ms. Larson's story. Dorland apparently saw the post and noticed it included a kidney donation.[2]

Dorland soon became incensed by the concept of Ms. Larson's story, and she proceeded to hound my client with constant emails and text messages. Dorland insinuated that the story was based on her life experience and that Sonya Larson had no right "as a friend" to fabricate a story about a kidney donation without consulting her. Despite my client's insistence that the story was not about Dorland, and that she and all other writers have the right to write fiction about kidney donations, your client refused to desist. Dorland expressed dismay that my client had not "liked" and commented on her Facebook posts about her kidney donation. Dorland demanded to read the story, insisted on an apology, and threatened to write about Ms. Larson in a memoir or essay. Even though Ms. Larson's short story was fiction, Dorland seemed very threatened by *The Kindest*.

In August 2017, American Short Fiction ("ASF") published *The Kindest* in its literary magazine and featured it online in May 2018. Ms. Larson was paid $300 by ASF.

Meanwhile, the Boston Book Festival, Inc. ("BBF"), a not-for-profit organization that promotes reading and ideas for writers and bibliophiles in and around Boston, sponsors a project called One City/One Story as part of its annual festival for writers and readers. One short story is selected for distribution throughout the Boston area. Copies of the selected story are sent to BBF members, participants in the Festival, local libraries and participating businesses and it is promoted by the Eastern Massachusetts public transportation authority, the MBTA. The Festival features the story for educational and discussion purposes in hopes of incorporating divergent audiences in new conversations about an important topic. Larson's *The Kindest* was chosen in May 2018, to be the short story that it was going to feature as the One City/One Story work at its premier annual event in October 2018.[3]

---

[2] Tom Meek, a mutual Facebook friend of both Dorland and Larson, posted a comment on a Facebook post of Dorland: "Sonya read a cool story about giving out a kidney, you came to mind, and I wondered if you were the source of the inspiration."

[3] Former winners of the One City/One Story honor have credited the publicity and exposure to numerous professional achievements. Former winners express that "One City/One Story was a total game-changer for my writing career" and "speaking career," and that they have earned literally thousands of dollars for speaking engagements related to the honor. These include engagements in New England, Texas, and Chicago, and at Laboure College, Milton Academy, UMASS-Boston, Swarthmore College, Worcester State, and many more. "It really built up my 'cred' in terms of earning these speaking gigs," says one winner. "I was also interviewed on NPR and by reporters for the *Globe* and *Milton Times* and *Patriot Ledger*. Nice articles that I've used on my website and CV."

Jeffrey A. Cohen, Esquire
Cohen Business Law Group
September 28, 2018
Page 5.

In June 2018, Dorland apparently heard about the choice of *The Kindest* as the BBF selection and she started a multifaceted smear campaign against Sonya Larson by accusing my client of plagiarizing her Factual Letter. Dorland contacted ASF, the BBF, GrubStreet, members of Ms. Larson's writing group, and, inexplicably, the Bread Loaf Writer's Conference, hosted by Middlebury College in Vermont.[4] Dorland did not specify how the language of her Factual Letter was plagiarized in *The Kindest* but simply stated that the relatively short letter in Ms. Larson's story was a "paraphrase" of her considerably longer Factual Letter.

To the Bread Loaf Writers' Conference, Dorland made the additional false claim that Larson applied for and received a prestigious fellowship to the conference using this story, which she misleadingly claimed "plagiarizes my unpublished work." Once again Dorland offered zero evidence to substantiate her claim, but nonetheless asked that something "be done, retroactively, about it." When Bread Loaf declined to engage with her, she threatened the conference by saying that she was "writing an article about plagiarism in the writing community and will list this response on behalf of the Breadloaf Writing Conference." Dorland continued to call and email Bread Loaf staff-- and even the retired Director, Michael Collier-- through late August and September 2018.

Although requested to do so by James Gregorio, my predecessor counsel, Dorland refused to contact him with supporting evidence for her claim of plagiarism so that my client and her attorney could respond. Instead, Dorland emailed and called ASF and BBF multiple times per day, demanding at various times, a citation for the Factual Letter, or that Ms. Larson's story be pulled from ASF and the BBF in its entirety, and/or that ASF publish one of Dorland's essays, purportedly about friendship, ethics and writing.

Neither ASF nor BBF acquiesced to Dorland's demands. Nevertheless, BBF did offer for Ms. Larson to change some of the language in her fictional letter to avoid <u>any</u> possibility of any legal claims against the BBF.[5] My client agreed to the BBF's suggestion, since the fictional letter was only a minor part of the story. Besides, Ms. Larson had already changed many

---

Says another winner, "To be selected for One City One Story is an honor. I got a beautiful email just two weeks ago from someone who had read this story. It's a matter of prestige, it can bring you speaking events, and increase your worth when you sell your first story collection or novel…Your story is published in many different languages, so whole new audiences get to engage."

[4] To date, over a dozen individuals and organizations have been contacted by Dorland, an assault which she continues by Dorland's recent contacts of present and even retired staff of the Bread Loaf Writers Conference. As described by *The New Yorker* magazine, Bread Loaf is known in literary and publishing worlds as "the oldest and most prestigious writers conference in the country."

[5] This was done to placate Dorland and was not an admission of any wrongdoing.

elements of her story for the BBF publication specifically-- including locations in the fictional story, objects, details, several lines of dialogue, gestures, word choices and the ending.

None of Sonya Larson's efforts appeased Dorland. Dorland next contacted the *Boston Globe* to further publicize her claim of plagiarism against Ms. Larson, and then made a professional complaint to GrubStreet, Ms. Larson's employer, repeating her accusation that my client plagiarized her Factual Letter. Dorland also apparently complained, falsely and frivolously, that my client did not speak with Dorland at a GrubStreet event, and that she advised Dorland not to write about certain topics.

Then, on July 3, 2018, obviously realizing that plagiarism is not actionable, you and Cohen Law ratcheted things up to copyright infringement by sending a letter to the Boston Book Festival stating that *The Kindest* contains Dorland's Factual Letter "in whole or in part." You further stated that even without having the benefit of reviewing any revisions that may have been made to *The Kindest*, "to determine whether any infringement remains," you boldly claimed that any decision by the BBF to publish the story would infringe Dorland's rights. You then demanded that the BBF cease and desist from further printing, copying, distributing or undertaking other activities related to *The Kindest*.

You also said that if the BBF did not supply you with a copy of the revised story within ten days, you would act to prevent the publication of Ms. Larson's story, and seek damages under 17 U.S.C. § 504(c), for up to $150,000 in statutory damages.

According to the Copyright Office records, Dorland's Factual Letter was registered as unpublished text entitled "Dorland kidney chain final recipient letter July 2, 2015," effective June 10, 2018, under registration number TXu 002101420. As will be shown, the June 10, 2018 date is significant.

Next, on July 20, 2018, Michael S. Hanna of Cohen Law wrote to Attorney Gregorio expressing a willingness to settle Dorland's claims without a full recovery of damages to which Dorland claims to be entitled. There appears to have been some discussions with Attorney Gregorio and with Paul Sennott, BBF's lawyer, of settling Dorland's claims for $5,000 plus attribution and/or a referral link to a kidney donor site. The discussions did not lead to a resolution of Dorland's claims for monetary compensation, attribution or the payment of her legal fees.

Dorland continued her attack on Ms. Larson by contacting the press where she masterminded a smear campaign against my client by publicly accusing Ms. Larson of plagiarism.[6] This occurred even before the BBF announced that Ms. Larson's story was chosen as the One City/One Story selection. During those initial settlement negotiations, when it became clear that the *Boston Globe* would run the article that Dorland prompted, Mr. Hanna told James Gregorio, Larson's attorney, that if Ms. Larson gave Dorland everything she wants, Dorland would give her "full effort to try to kill the [Globe's] story." After the article came out, Dorland emailed members of Ms. Larson's writing group, accusing them of "complicity" in "artistic betrayal." She continued to contact them through September 2018.

I am told that on August 10, 2018, just as the *Boston Globe* was about to print its second newspaper article about Dorland's plagiarism claims, Hanna called Attorney Sennott and increased his settlement demand to $10,000. At this time, Hanna likely knew that the BBF would be publishing a revised version of *The Kindest*, which the BBF had previously supplied to him, that was rewritten to fully remove any possible offending portions. Accordingly, Hanna knew or should have known that Dorland did not have a cause of action against Larson because her letter was not registered at the appropriate time. The increased demand to $10,000 was apparently the straw that broke BBF's back.

As a direct and proximate result of this and other actions by Dorland, you and Cohen Law, the BBF rescinded its selection of *The Kindest* for fear of being sued by your client.[7] The BBF had already printed 30,000 of *The Kindest* at a reported cost of $13,000, and it was concerned that continuing legal fees, already in the thousands of dollars, would strain its modest budget and jeopardize its existence. The BBF decision had nothing to do with any concern of actual plagiarism or copyright infringement. The decision was based entirely on Dorland's persistence which was aided and abetted by claims of copyright infringement and threats of tens of thousands of dollars in legal fees and damages by you and your office.

Not satisfied with the extensive damage already brought to bear on Ms. Larson, Attorney Hanna again wrote to Attorney Gregorio on September 6, 2018, claiming Ms. Larson continues to infringe Dorland's rights by reproducing the Factual Letter, preparing a derivative copy of the letter, and distributing copies of the letter to ASF, Audible.com, BrillianceAudio.com, and the BBF. Hanna is again seeking damages and attorney's fees for "a full litany of claims" he asserts will be filed against Ms. Larson in Federal Court in Los Angeles.

---

[6] Graham Ambrose, "Inspiration or plagiarism? Writing hackles raised in Boston dispute." *Boston Globe*, July 26, 2018. https://tinyurl.com/ybo3xbl5; Graham Ambrose, "Boston Book Festival cancels One City One Story event amid plagiarism flap." *Boston Globe*, August 14, 2018. https://tinyurl.com/yb6vqgnq.

[7] Emails from Deborah Porter state that the BBF did not want to get sued because the financial risk and burden would cripple the organization.

In its latest letter, Cohen Law is seeking a judgment for $180,000, which it proposes will be held in escrow to ensure that Ms. Larson will never violate Dorland's rights in the Factual Letter. Hanna is also demanding that Ms. Larson pay Dorland's legal expenses that now amount to $15,000. Hanna's allegations and demands are absurd and completely without merit. It must be noted that *The Kindest* is not presently available in any form from ASF, Audible.com, BrillianceAudio.com or the BBF.

Certainly, Ms. Larson was inspired by Dorland's kidney donation, and she admits that she initially used a few words and phrases that appear in Dorland's Factual Letter in preliminary drafts of her story. However, Ms. Larson's actions do not amount to copyright infringement under any interpretation of the law. There is no one who would ever consider the final version of *The Kindest* that was to be distributed by the BBF to be similar in any respect to Dorland's Factual Letter other than as an idea or a *scene-à-faire*. Dorland is not the only person who has written to their organ recipient and she is still free to write either a fictional or factual account of her kidney donation experience.

I am enclosing for your reference, a copy of the final version of *The Kindest* that was to be distributed by the BBF as the One City/One Story. This is the same version that was previously supplied to Attorney Hanna.

Cohen Law's website says that the firm has extensive experience in handling and litigating intellectual property matters. Accordingly, when you sent a letter to the BBF on July 3, 2018, you knew or should have known that damages under Section 504(c) of the Copyright Act are available only if the provisions of Section 412 of the Copyright Act are satisfied. If any version of *The Kindest* infringed Dorland's rights in the Factual Letter, which we vociferously deny, the registration of the Factual Letter effective June 10, 2018, does not satisfy Section 412, because any perceived infringement of Dorland's Factual Letter occurred years earlier.

The only conceivable reason for including erroneous and unavailable claims for statutory damages and attorney's fees was to pressure the BBF into complying with your unfounded claim of copyright infringement. Agreeing with a client to pursue legally baseless claims merits a cause of action for our client. See Rickley v. Goodfriend, 212 Cal. App. 4th 1136, 1153, 151 Cal. Rptr. 3d 683, 699 (2013) ("A license to practice law does not shield an attorney from liability when he or she engages in conduct that would be actionable if committed by a layperson. An attorney who commits such conduct may be liable under a conspiracy theory when the attorney agrees with his or her client to commit wrongful acts.")

Furthermore, your latest claim that a lawsuit will be brought in Federal Court in Los Angeles is flagrantly unfounded. Simply put, California does not have jurisdiction over my client. Dole Food Co. v. Watts, 303 F.3d 1104, 1110–11 (9th Cir. 2002). Ms. Larson does not have continuous and systematic contacts with California and all relevant acts, and most potential witnesses are located in Massachusetts. If you bring any action against Sonya Larson in California, we will seek an immediate dismissal for lack of jurisdiction. We will also seek attorney's fees and costs, which under the circumstances, we are confident that any court will be eager to award.

We believe that your actions and those of Cohen Law far exceed the bounds of zealous representation of a client. Although we dispute every notion of copyright infringement by Ms. Larson, Dorland would, at a maximum, be entitled only to her actual damages and any profits that Ms. Larson earned from any infringement of the Factual Letter.

It is a mystery exactly how Dorland was damaged. Ms. Larson simply took a factual letter written by a kidney donor that was posted on a group Facebook page without a copyright notation, used it as inspiration for a fictional letter, and used that fictional letter as a small set-up for a fictional encounter between a Chinese-American kidney recipient and a white donor. That Ms. Larson may have initially used a few words and phrases in her fictional story that are included in the Factual Letter will not support an award of anything other than nominal damages at best.

Furthermore, my client's gross receipts from *The Kindest* amounted to $425. Since the word count for the letter which is part of the story is less than 5% of the total word count of the story, Dorland's profit damages might amount to $21.25 (5% of $425 = $21.25). Damages at this level do not warrant your intentional interference with my client's relationship with the BBF, which resulted in the loss of the prestige and notoriety she would have received if her story was distributed by the Boston Book Festival. Additionally, it absolutely does not merit the contact with Bread Loaf, Larson's writing group, GrubStreet, or the more than a dozen other people and organizations that Dorland contacted.

We contend that your inflated claims for damages and attorney's fees, and your failure to articulate reasonable demands on behalf of Dorland in light of the limited damages available for any perceived copyright infringement under the facts presented, resulted in the BBF withdrawing its use of *The Kindest* from the One City/One Story project.

The BBF clearly stated that it only pulled Ms. Larson's story because the BBF did not want to get sued. The BBF has limited financial resources and it did not want to incur legal expenses in fighting Dorland's claims. Your actions and that of Cohen Law in making unsupportable claims, misrepresenting the facts, and deploying overly aggressive and coercive correspondence with the BBF was calculated to cause damage to my client. Furthermore, these actions contributed directly in the decision by the BBF to pull *The Kindest* from the One City/One Story project. The combination of your letters and your exaggerated and unsupported monetary demands surpasses the bounds of zealous advocacy, and amount to an interference with Larson's advantageous contractual relationships with the BBF for which Sonya Larson is entitled to substantial damages for the irreparable injuries to her reputation and her career.

The totality of circumstances including the combination of Dorland's unrelenting, multifaceted campaign to damage and defame Sonya Larson's reputation and career, your letter and the letters and demands of Michael Hanna of Cohen Law consisting of wholly insupportable claims and demands that further Dorland's defamatory behavior, are evidence of outrageous conduct that constitutes a violation of Massachusetts General Laws, chapter 93A. See Kattar v. Demoulas, 433 Mass. 1, 12–13 (2000) (Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975). The relief available under c. 93A is "sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action." Id. at 704. It "mak[es] conduct unlawful which was not unlawful under the common law or any prior statute." Commonwealth v. DeCotis, 366 Mass. 234, 244 n. 8 (1974). Thus, a cause of action under c. 93A is "not dependent on traditional tort or contract law concepts for its definition." Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 626 (1978). See Nei v. Burley, 388 Mass. 307, 313 (1983) ("[A]nalogies between common law claims for breach of contract, fraud, or deceit and claims under c. 93A are inappropriate because c. 93A dispenses with the need to prove many of the essential elements of those common law claims").

Under Massachusetts Law, you have thirty (30) days from receipt of this letter to answer the allegations herein and provide a reasonable explanation for your actions or make a reasonable settlement offer, failing which, my client can file an action in court in which she will be seeking up to three times her damages plus attorney's fees. Cassano v. Gogos, 20 Mass. App. Ct. 348, 350-53 (1985); Kohl v. Silver Lake Motors, Inc., 369 Mass. 795, 802-03 (1976); (Defendants who make a timely and reasonable offer of settlement limit the scope of possible damages). Failure to provide a reasonable settlement offer may allow the plaintiff to receive treble damages. Loddie v. Anton's Cleaners, 1993 Mass. App. Div. 29 (defendant's offer of only $100 for mink coat valued at $4,000 was made in bad faith, therefore damages were trebled).

I urge you to respond to this letter within thirty days of receipt.

Very truly yours,

Andrew D. Epstein

ADE/d

cc: James A. Gregorio, Esquire