UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SONYA LARSON,<br>           Plaintiff<br><br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>           Defendants | No.: 1:19-cv-10203-IT |

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND**
**TO EXTEND SCHEDULING ORDER DEADLINES**

The Plaintiff, Sonya Larson ("Plaintiff" or "Larson") moves this court for the following relief:

    A.    For a protective order seeking to postpone a deposition of Larson scheduled for February 9, 2021, until after this court rules on Plaintiff's pending Motion to Dismiss Defendant, Dawn Dorland Perry's Counterclaims (Dkt. 75 & 77);

    B.    To extend the current scheduling order deadlines.

As grounds for this motion, Larson states as follows:

    1.    Briefly, this is a dispute over a fictional short story written by Larson entitled "*The Kindest*." Larson's Short Story is about an alcoholic, working class, Chinese-American woman, who receives a kidney donation from a wealthy white woman.  (Amend. Cmpl. ¶ 18)  The Kindest includes a brief letter that is a small part of the story and is used primarily to introduce the kidney donor character, and to set the stage for the eventual meeting of the recipient

character and the donor character. (Amend. Cmpl. ¶ 19) The letter is referred to herein as the "Larson Letter."

2. In 2015, Defendant, Dawn Dorland Perry ("Dorland") donated one of her kidneys to an anonymous recipient. Dorland wrote a letter to her anonymous recipient that she posted on a semi-private Facebook page. (Amend. Cmpl. ¶ 9-11) The letter is referred to as the "Dorland Letter."

3. Dorland was upset when she learned that Larson wrote a story about a kidney donation. Dorland claimed that because she and Larson were "friends," Larson had no right to fabricate a fictional story about a kidney donation without consulting Dorland. (Amend. Cmpl. ¶ 23-4)

4. Even though Larson's Short Story was fiction, Dorland seemed very threatened by Larson's Short Story. (Amend. Cmpl. ¶ 25) Larson repeatedly informed Dorland that the Work was not about Dorland, nor was it about Dorland's personal experience as a kidney donor. (Amend. Cmpl. ¶ 26)

5. Larson's Story received critical acclaim and it won a competition sponsored by the Boston Book Festival ("BBF") for use in its One City/One Story summer festival. (Amend. Cmpl. ¶ 32-5) Dorland accused Larson of plagiarism. (Amend. Cmpl. ¶ 37-41, 45 & 52)

6. Dorland hired Defendants Jeffrey Cohen and the Cohen Business Law Group, PC (the "Cohen Defendants") as legal counsel to contact the BBF on her behalf. The Cohen Defendants wrote to the BBF claiming that Larson infringed the copyright to the Dorland Letter "in whole or in part" and made several demands against the BBF for damages and other relief. (Amend. Cmpl. ¶ 50)

7. Eventually, negotiations between the Parties broke down and the BBF ultimately decided not to use Larson's Story in its One City/One Story program. (Amend. Cmpl. ¶ 57) A more complete summary of the allegations in Larson's Amended Complaint appears in this Court's Memorandum and Order of March 27, 2020 (Dkt. 59).

8. Larson sued Dorland for defamation and the intentional interference with advantageous business relations, and the Cohen Defendants for the intentional interference with advantageous business relations and violations of Mass. General Laws Ch. 93A.

9. Dorland Answered Larson's Amended Complaint and filed Counterclaims against Larson for copyright infringement, declaratory and injunctive relief, and for the intentional infliction of emotional distress. (Dkt. 75)

10. Larson filed a Motion to Dismiss Dorland's Counterclaims alleging that ideas are not protected by copyright, that there is insufficient similarity between the Larson Letter and the Dorland Letter than will support a claim for infringement, that the use of a few words from the Dorland Letter was *de minimus* use and/or fair use. (Dkt. 77)

11. All Parties have served interrogatories on each other and have produced hundreds of pages of documents. Dispute this good effort, there is clearly more discovery to be done in order for all parties to gain a full and fair evaluation of each other's claims, defenses, counterclaims and alleged damages.

12. For reasons that will be explained, Larson was late in responding to Dorland's document requests, and given the circumstances, all Defendants have been gracious and understanding for Larson's delay.

13. On September 12, 2020, Sonya Larson gave birth to her first child. Larson had some medical issues related to her pregnancy and childbirth that required three (3) separate

hospitalizations after she gave birth.  Larson is still being monitored for her condition on a weekly basis.  See Larson Affidavit. This delayed production of documents for about two months.

14. On January 7, 2021, Larson produced 425 pages of documents.   Counsel for Dorland and Counsel for Larson have discussed possible additional documents that Dorland believes should be produced.  The parties are attempting to work out their discovery differences.

15. Additionally, in November and December 2020, the wife of Plaintiff's counsel was hospitalized on two (2) separate occasions for five nights on each occasion for heart related issues.  Counsel's wife is now stable and seems to be recovering.

16. Because of these respective medical conditions, both Larson and her counsel were delayed in producing various documents that were requested by Dorland.

17. The Parties have not taken depositions of each other's clients, in part because of the medical issues outlined above, and in part because of Plaintiff's pending Motion to Dismiss Dorland's Counterclaims.  Larson believes that until this Court rules on Plaintiff's Motion to Dismiss Dorland's Counterclaims, the scope of depositions of both Larson and Dorland will be far more extensive than may be necessary.

18. For example, Dorland is seeking damages against Larson for intentionally causing her emotional distress.  Plaintiff contends that the conduct alleged by Dorland is not sufficient under Massachusetts law to support a claim for intentional infliction of emotional distress. (Memo, Dkt. No. 77, p. 5)  If this court rules in Plaintiff's favor, then there will be no need to address the issue of emotional distress.  Conversely, if the Court denies Larson's Motion, then the Parties will have to inquire about the cause and effect of Plaintiff's conduct vis-à-vis the issue of emotional distress.

19. Similarly, Larson contends that Dorland's copyright infringement claim must fail because the Larson letter is not substantially similar to the Dorland Letter, and the use of a few words was either *de minimus* and/or fair use. Again, the copyright issue ultimately depends on how this Court rules.

20. At the Rule 7.1 Conference held to discuss asking this court to extend the Scheduling Order deadlines, all Parties agreed that some additional time is needed beyond the current deadline for fact discovery of February 28, 2021.

21. Larson is seeking a protective order under Fed. R. Civ. P. 26 (c) to postpone her deposition scheduled for February 9, 2021, until after this Court rules on her Motion to Dismiss Dorland's Counterclaims. Larson believes she has good cause to seek such an order.

22. In Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc., No. CV 15-14188-MLW, 2016 WL 11004353, at *1–2 (D. Mass. June 15, 2016), the court found that the plaintiff met its burden of demonstrating good cause for a protective order. Southcoast filed a motion to dismiss plaintiff's entire complaint. The court says, "it makes little sense to force either side to go through expensive discovery where all, or part, of the case may be dismissed." The Court held that a stay of discovery is appropriate because plaintiff has shown good cause for a protective order and final resolution of the pending motion to dismiss will define the scope of discovery. (Brexendorf v. Bank of Am., N.A., No. 617CV2065ORL37GJK, 2018 WL 7252955, at *4 (M.D. Fla. Nov. 15, 2018)) (Trial courts have a responsibility to properly manage pretrial discovery in order to avoid a waste of resources. Granting a discovery stay until an impending motion to dismiss is resolved is a proper exercise of that responsibility." [citation omitted].

23. Larson asserts that this Court's ruling on her Motion to Dismiss the Counterclaim will define the scope of her deposition and she is moving for a protective order until sometime after this Court rules on her pending motion.

24. This Court could limit Larson's deposition testimony to the issues in her Amended Complaint and prevent inquiry as to the issues in Dorland's Counterclaim until the Court rules on the pending Motion to Dismiss. If this were to happen, and if Plaintiff's Motion to Dismiss is denied, Larson will be forced to arrange for child care for her infant daughter for two days instead of one. See Larson Affidavit.

25. Larson is also seeking to have all present scheduling orders extended proportionally to this Court's ruling on her pending Motion to Dismiss the Counterclaims.

WHEREFORE, Larson moves this court to issue a protective order postponing her February 9, 2021 deposition, until after this Court rules on Plaintiff's pending Motion to Dismiss Dorland's Counterclaims, and that this court extend all scheduling orders for the immediate future commensurate with said rulings.

>Respectfully submitted,
>Plaintiff,
>Sonya Larson,
>By her attorneys,
>
>*/s/ Andrew D. Epstein*
>Andrew D. Epstein, BBO No.155140
>photolaw@aol.com
>Barker, Epstein, & Loscocco
>176 Federal Street
>Boston, MA 02110
>Direct Line: (617) 272-5700

<u>Certificate of Service</u>

I certify that the within Motion For a Protective Order and to Extend Scheduling Order Deadlines was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

|  |  |
|---|---|
| | */s/ Andrew D. Epstein* |
| January 27, 2021 | Andrew D. Epstein |