UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| DAWN DORLAND PERRY, COHEN BUSINESS LAW GROUP, PC, and JEFFREY A. COHEN, Esq. | * |
| | * |
| Defendants. | * |
| | * Civil Action No. 19-cv-10203-IT |
| DAWN DORLAND PERRY, | * |
| | * |
| Counterclaim-Plaintiff, | * |
| | * |
| v. | * |
| | * |
| SONYA LARSON, | * |
| | * |
| Counterclaim-Defendant. | * |

MEMORANDUM & ORDER

February 2, 2021

TALWANI, D.J.

Pending before the court is Sonya Larson's Motion to Dismiss the Counterclaims [#77] brought by Dawn Dorland Perry. For the reasons that follow, the motion is ALLOWED as to the claim for Intentional Infliction of Emotional Distress and DENIED as to the Copyright claims.

I.     **Facts Alleged in the Counterclaims**[1]

Counterclaim-Plaintiff Dawn Dorland Perry ("Dorland") and Counterclaim-Defendant Sonya Larson are both authors. Countercls. ¶¶ 1–2 [#75]. The two became close friends after they crossed paths at a Boston creative writing center. Id. ¶¶ 8–21. In 2015, Dorland decided to donate one of her kidneys without directing the donation to a particular recipient. Id. ¶¶ 22–24. As a result of her nondirected donation, health professionals were able to create a short "surgical chain" in order to provide a kidney to a recipient that otherwise would have had no other living donor. Id. ¶¶ 24–33.

As Dorland was preparing for the kidney donation surgery, she created a private Facebook Group to share the experience with friends and family. Id. ¶¶ 34–35. Shortly after the donation, Dorland wrote a letter to the final recipient of the surgical chain and posted the letter in the Facebook Group (the "Dorland Letter"). Id. ¶ 49. The Dorland Letter explained, in Dorland's unique and personal style, Dorland's motivations for making the kidney donation. Id. ¶ 50. Larson was a member of the group and saw all the posts and comments contained therein, including the Dorland Letter. Id. ¶¶ 38–39, 47–48, 57.

In 2016, Larson entered into a publication agreement to publish a short story called *the Kindest*. Id. ¶ 117. Larson ultimately published or attempted to publish multiple versions of *the Kindest* in different formats, including as an audiobook published on Audible.com and Brilliance Audio in 2016, id. ¶¶ 117–18; on the website of American Short Fiction ("ASF") no later than 2017, id. ¶¶ 82–86; and with the Boston Book Festival ("BBF") in 2018, id. ¶¶ 137–44. Each

---

[1] The Counterclaims were originally set forth in Dorland's Answer and Counterclaim ("Countercls.") [#75], and restated "without amendment or changes for purposes of completeness of filing" in Dorland's Answer to Second Amended Complaint and Restated Counterclaim [#96].

2

version of *the Kindest* contained a version of a letter (including ones attached to the Counterclaim as Exhibits C and D [#75-3], [#75-4] and identified by Dorland as the "ASF Web Letter" and the "Brilliance Letter") that, to various degrees, has similarities to the Dorland Letter. Id. ¶¶ 90–96, 99–103, 119–21, 123–26, 128.

On June 8, 2018, Larson also registered for copyright protection a version of *the Kindest*, including a "scrubbed" version of the Dorland Letter. Id. ¶¶ 152, 156.

On June 10, 2018, Dorland registered the Dorland Letter with the U.S. Copyright Office. Id. ¶ 54, Exhibit B.

In 2019, Larson published in the anthology "Welcome to the Neighborhood" another version of *the Kindest* with a letter identified by Dorland as the "WTTN Letter." Id. ¶¶ 145–51. The various versions of the letters in *the Kindest* are referred to herein collectively as the "Larson Letters."

## II.  Procedural Background

Larson initiated this action on January 30, 2019, see Complaint [#1], and following various motions and amendments not relevant here, Dorland filed an Answer and Counterclaims Against Larson [#75], alleging Copyright Infringement, for which Dorland seeks damages and attorneys' fees (Count I), declaratory relief (Count II), and injunctive relief (Count III), as well as Intentional Infliction of Emotional Distress (Count IV). Dorland then brought the present Motion to Dismiss the Counterclaims [#77].

## III. Legal Standard

In order for a complaint to survive a motion to dismiss, the well-pleaded facts in the complaint must contain "enough factual detail" to "state a claim to relief that is plausible on its face." Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015); Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007) (dismissing a complaint because plaintiffs did not "nudge[] their claims across the line from conceivable to plausible"). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must first "distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court must then "determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable.'" Garcia-Catalan, 734 F.3d at 103 (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

**IV.   Discussion**

Larson's Motion to Dismiss Dorland's Counterclaims [#77] attacks Dorland's Copyright claims and her Intentional Infliction of Emotional Distress claim. The two issues are addressed in turn.

  A. Copyright Infringement

As to the copyright claim, Larson makes three arguments. First, Larson contends Dorland has failed to plead actual infringement. Second, Larson contends that, even if the Larson Letters infringed the Dorland Letter, any infringement constituted permissible fair use. Third, Larson contends that Dorland's damages are nominal at best and that attorneys' fees are not available to Dorland as a matter of law because Dorland did not register her copyright until after the alleged infringement.

  1. *Whether Dorland has Pleaded Copyright Infringement*

Dorland's copyright claim asserts that each version of Larson's short story *the Kindest* contains a version of the Larson Letters that infringe on Dorland's copyright. Countercls.

¶¶ 176–77 [#75]. In order to prove infringement, Dorland must show "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Here, Larson does not dispute Dorland's copyright to the Dorland Letter and thus the question of infringement is reduced to whether Dorland has adequately alleged the second step of the Feist test, "copying of constituent elements of the work that are original." This second prong also contains two steps: "The first step requires a plaintiff to prove that the defendant copied the plaintiff's copyrighted work as a factual matter (either directly or through indirect evidence). In the second step, the plaintiff must prove that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.'" Id. Larson also does not challenge that Dorland has adequately pleaded copying as a factual matter, and instead only argues that the Larson Letters are not substantially similar to the Dorland Letter. Larson Mem. 8 [#78]. Thus, the question presented turns on whether Dorland has adequately pleaded "substantial similarity" between the Dorland Letter and the Larson Letters.

As a preliminary matter, there is some discordance in evaluating questions of "substantial similarity" on a motion to dismiss. This is because "'the determination of the extent of similarity that will constitute a substantial and hence, infringing similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations.'" Skinder-Strauss Assocs. v. Massachusetts Continuing Legal Educ., Inc., 914 F. Supp. 665, 677 (D. Mass. 1995) (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A] at 13–29 (1995)). For this reason, courts have held that questions of whether two works are "substantially similar" present an "extremely close question of fact" that "have

5

traditionally been reserved for the trier of fact." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (internal citations and quotations omitted); Cf. Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 62 (1st Cir. 2000) ("summary judgment for a plaintiff on substantial similarity is unusual").

Though "unusual," courts within and without this Circuit have found that questions of "substantial similarity" need not be presented to the jury when they can be resolved as a matter of law "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Id.; see also T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 112 (1st Cir. 2006) (finding grant of summary judgment appropriate "only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work"). Because Larson's motion is brought as a motion to dismiss, the court will only consider those versions of the documents attached to Dorland's counterclaims. Here, those are the Dorland Letter, Dorland's Exhibit A [#75-1]; the ASF Letter, Dorland's Exhibit C [#75-3]; and the Brilliance Letter, Dorland's Exhibit D [#75-4].

A side-by-side comparison of the original Dorland Letter with the ASF Letter and the Brilliance Letter does not demand the conclusion that no reasonable jury would find "substantial similarity" between the two. The First Circuit has set forth that "two works will be said to be substantially similar if a reasonable, ordinary observer, upon examination of the two works, would 'conclude that the defendant unlawfully appropriated the plaintiff's protectable expression.'" T–Peg, 459 F.3d at 112 (quoting Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005)). The First Circuit has recognized that "the existence of only minor differences may itself

suggest copying, indicating that the infringer attempted to avoid liability by contributing only trivial variations." Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 608 (1st Cir. 1988). But this does not mean that anytime an artist works off of another's creation, the two works are "substantially similar." Instead, an artist can "avoid infringement by intentionally making substantial alterations in the design of a copyrighted work so as to provide a substantially different expression of the idea embodied in the copyrighted work" so long as "the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are (within the context of plaintiff's work) of minimal importance either quantitatively or qualitatively." Concrete Mach., 843 F.2d at 608 (internal citations and quotations omitted).

Here, while there are certain differences between the Dorland Letter and the ASF and Brilliance Letters, there are enough similarities from which a reasonable jury may conclude that the ASF and Brilliance Letters are substantially similar to the Dorland Letter. These include similarities in their protagonists, the protagonists' thoughts and motivations, the structure of the letters, specific terms and phrases contained in the letters, and what the letter-writers are attempting to convey to the letters' recipients. While these similarities do not necessarily demand a finding of substantial similarity, the similarities that exist would form a sufficient basis from which a reasonable jury could draw that inference.[2]

---

[2] Larson contends that any substantial similarity was "de minimis" since "no rational fact finder would mistake Dorland's Letter for Larson's Story." Larson Mem. 11–13 [#78]. But the question is not whether an ordinary observer would mistake the entirety of Larson's story for the Dorland Letter, but whether Larson improperly copied the Dorland Letter in her short story. See TufAmerica, Inc. v. Diamond, 968 F. Supp. 2d 588, 599 (S.D.N.Y. 2013) ("the relevant "question in each case is whether the similarity relates to matter that constitutes a substantial portion of the pre-existing work—not whether such material constitutes a substantial portion of the allegedly infringing work") (cleaned up and citation omitted).

2. *Fair Use*

Larson further contends that that even if the Larson Letters are substantially similar to the Dorland Letter, her use of the Dorland Letter constitutes a form of "transformative" fair use. Larson Mem. 14 [#78] (citing 17 U.S.C. § 107). Under the Copyright laws, in considering a fair use defense, the court *must*, at minimum, consider: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. Thus, "[f]air use is a mixed question of law and fact." Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 560 (1985). And unlike the question of substantial similarity—which may be addressed by simply comparing the two works—the facts central to the fair use analysis are matters of context that often are not contained in the four corners of the works or the complaint. Cf. Sony BMG Music Entm't v. Tenenbaum, 672 F.Supp.2d 217, 219 n.2 (D. Mass. 2009) ("defenses such as the fair use doctrine involve a more detailed analysis of the facts at issue and are best resolved by summary judgment or adjudication at trial") (quotation omitted); Browne v. McCain, 612 F.Supp.2d 1125, 1130 (C.D. Cal. 2009) ("in light of a court's narrow inquiry at [the motion to dismiss] stage and limited access to all potentially relevant and material facts needed to undertake the [fair use] analysis, courts rarely analyze fair use on a 12(b)(6) motion"); Katz v. Chevaldina, 900 F.Supp.2d 1314, 1316 (S.D. Fla. 2012) (noting the "general rule that fair use defenses are not ripe for determination before the summary judgment stage"). The same is true here. Considering Larson's fair use defense would require a factual examination of the purpose of Larson's use, the nature of Larson's work, and the effect of Larson's use on the market or

value of Dorland's work. 17 U.S.C. § 107. None of these may be gleaned from the Cross-complaint or the works themselves. Accordingly, the court cannot conclude that Larson's use constituted fair use as a matter of law.

   3. *Damages*

The copyright laws provide that the court may not award statutory damages or attorneys' fees in the case of "any infringement of copyright in an unpublished work commenced before the effective date of its registration." 17 U.S.C. § 412(1). Here, Larson argues that Dorland did not register the copyright to the Dorland Letter until after Larson allegedly infringed it, that Dorland therefore is not entitled to statutory damages or attorneys' fees, and that any damages she suffered are nominal. Larson Mem. 18–20 [#78].

Dorland does not respond to Larson's assertions regarding statutory damages and attorneys' fees. Notably, other courts to address the question generally have held that "infringement 'commences' for the purposes of § 412 when *the first act in a series of acts constituting continuing infringement occurs*." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 700–01 (9th Cir. 2008) (collecting cases) (emphasis added).

Dorland does respond, however, that if she prevails, she may be entitled to at least nominal damages and declaratory and injunctive relief. Dorland Mem. 14–15 [#82]. Dorland is correct. Accordingly, regardless of whether Dorland can obtain statutory damages or attorneys' fees, the Copyright Infringement claims may not be dismissed on the ground that Dorland has not been damaged.

   B. Intentional Infliction of Emotional Distress

Finally, Larson moves to dismiss Dorland's Intentional Infliction of Emotional Distress ("IIED") claim on the basis that it fails to state a claim. Namely, Larson contends that even if the

9

court accepts all the allegations as true, Dorland cannot sustain a claim for IIED as a matter of law. Larson Mem. 20–22 [#78]. Here, the court agrees with Larson.

As the Massachusetts Supreme Judicial Court has stated, "[t]he standard for making a claim of intentional infliction of emotional distress is very high." Polay v. McMahon, 468 Mass. 379, 385 (2014) (citing Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). "Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Id. (quoting Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997)). Instead, IIED may only be found where the conduct "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Roman v. Trustees of Tufts College, 461 Mass. 707, 718 (2012)).

Although an IIED claim turns on issues of fact, "[a] judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." Polay, 468 Mass. at 386 (citing Beecy v. Pucciarelli, 387 Mass. 589, 596 (1982)). In considering the sufficiency of an IIED claim on the pleadings, the court must keep in mind that "the trier of fact 'would be entitled to put as harsh a face on the defendant's actions as the basic facts would reasonably allow.'" Roman, 461 Mass. at 718. But even where Dorland's allegations are considered in this light, the allegations are insufficient to reach the "very high" threshold of "extreme and outrageous" conduct set by the Massachusetts courts. At worst, Larson took advantage of Dorland's trust in order to use Dorland's personal and somewhat intimate story for Larson's own benefit.

Countercls. ¶¶ 197–98 [#75]. In doing so, Larson is further alleged to have lied to Dorland, id. ¶¶ 203–04, ceased communicating with Dorland, id. ¶ 206, and taken steps to "ostracize Ms. Dorland from their mutual acquaintances in the writing community." id. ¶ 207. Though these allegations, if true, may be worthy of contempt (and may give rise to the stated claim of copyright infringement) they do not "go beyond all possible bounds of decency" so as "to be regarded as atrocious, and utterly intolerable in a civilized community." Accordingly, Dorland's IIED claim fails on the pleadings.

## V.     Conclusion

For the aforementioned reasons, Counterclaim-Defendant Larson's Motion to Dismiss the Counterclaims [#77] is ALLOWED as to the claim for Intentional Infliction of Emotional Distress and DENIED as to the Copyright claims.

IT IS SO ORDERED.

Date: February 2, 2021

/s/ Indira Talwani
United States District Judge