UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

SONYA LARSON

                    Plaintiff,

v.

DAWN DORLAND PERRY, et al.

                    Defendants.

Civil Action No.

1:19-cv-10203-IT

**ANSWER OF PLAINTIFF, DEFENDANT IN COUNTERCLAIM, SONYA LARSON TO COUNTERCLAIM OF DEFENDANT, PLAINTIFF IN COUNTERCLAIM, DAWN DORLAND PERRY**

Plaintiff, Defendant in Counterclaim, Sonya Larson (hereinafter, "Larson") answers and responds to the Counterclaim of Defendant, Plaintiff in Counterclaim, Dawn Dorland Perry (hereinafter, "Dorland"), numbered paragraph by numbered paragraph, as follows:

Introduction

The Counterclaim contains four introductory paragraphs that identify the parties to the Counterclaim and summarizes some of the allegations therein.   To the extent that Larson is required to respond to these allegations, the allegations are denied in their entirety.

**Parties**

1.      Larson admits that Dorland is a party to this action and that she resides in Los Angeles, California, and that she is sometimes known as Dawn Dorland.  Larson lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

2.      Larson says that she is the Muse Conference Director and Boston Writers of Color Group Manager at Grub Street, and she admits that she resides in Somerville, Massachusetts.

**Jurisdiction and Venue**

3.      Larson admits that this court has jurisdiction over the counterclaims and that venue is proper.  To the extent that she is required to respond to this Paragraph, Larson denies the remaining allegations hereof.

**Factual Allegations**

4.      Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

5.      Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

6.      Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

7.      Larson admits that Dorland resides in Los Angeles, California, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

8.      Larson admits that she worked at Grub Street but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

9.     Larson admits that she is acquainted with Dorland, but she does not know what Dorland means by the phrase "true friendship" and therefore denies the remaining allegations in this Paragraph.

10.     Larson admits that she and Dorland were acquaintances in 2010 and 2011, and that Larson enjoys writing, but denies the remaining allegations of this Paragraph.

11.     Larson admits that she and Dorland were acquaintances and that they attended some of the same events, but denies the remaining allegations of this Paragraph.

Larson denies the allegations of this Paragraph.

12.     Larson denies the allegations of this Paragraph.

13.     Larson denies the allegations of this Paragraph.

14.     Larson denies the allegations of this Paragraph.

15.     The allegations in this paragraph are grammatically confusing.  Larson denies the allegations of this Paragraph.

16.     Larson denies the allegations of this Paragraph.

17.     Larson denies the allegations of this Paragraph.

18.     Larson denies the allegations of this Paragraph.

19.     Larson denies the allegations of this Paragraph.

20.     Larson denies the allegations of this Paragraph.

21.     Larson denies the allegations of this Paragraph.

22.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

23.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

24.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

25.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

26.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

27.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

28.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

29.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

30.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

31.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

32.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

33.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

34.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

35.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

36.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

37.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

38.     Larson does not know when or how she acquired access to Dorland's Facebook Group. Larson denies the allegations of this Paragraph.

39.     Larson admits that she had access to a Facebook Group that appears to have been started by Dorland, but denies the remaining allegations of this Paragraph.

40.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

41.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

42.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

43.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

44.     Larson has no present memory of responding to one of Dorland's posts.

45.     Larson has no present memory of responding to one of Dorland's posts.

46.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

47.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

48.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

49.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

50.     The "Dorland Letter" is a written document that speaks for itself and may not be characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

51.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

52.     Larson denies the allegations of this Paragraph.

53.     The allegations in this Paragraph are misleading and confusing and they appear to require the application of certain facts to the law.  To the extent that Larson is required to answer this Paragraph, she denies same.

54.     Dorland has attached a document to this Counterclaim that appears to be from the U.S. Copyright Office, but Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

55.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

56.     Larson admits that she had access to the Dorland Letter.

57.     Larson admits that she read the Dorland Letter.

58.     The allegations in this Paragraph are grammatically confusing.  To the extent that Larson is required to answer this Paragraph, she denies the allegations.

59.     Larson denies the allegations of this Paragraph

60.     Larson denies the allegations of this Paragraph.

61.     Larson denies the allegations of this Paragraph.

62.     Larson admits that Dorland's kidney donation was a tremendous thing but denies the remaining allegations of this Paragraph.

63.     Larson admits that she read from a story she wrote at a Boston area bookstore, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

64.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

65.     Larson was not obligated to share any information with Dorland or anyone else about fiction she was writing.  Larson lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

66.     Larson admits the allegations of this Paragraph.

67.     Larson admits the allegations of this Paragraph.

68.     Larson admits the allegations of this Paragraph.

69.     Larson was not obligated to share any information with Dorland about fiction she was writing, and therefore Larson denies the allegation of this Paragraph.

70.     Larson denies the allegations of this Paragraph.

71.     Larson admits the allegations of this Paragraph.

72.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

73.     Larson denies the allegations of this Paragraph.

74.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

75.     Larson was not obligated to share any information with Dorland.  Larson denies the allegations of this Paragraph.

76.     This Paragraph contains a vague reference to an email chain, which if it exists is a document that speaks for itself and not otherwise.  Larson denies the allegations of this Paragraph.

77.     This Paragraph contains a vague reference to an email chain, which if it exists is a document that speaks for itself and not otherwise.  Larson denies the allegations of this Paragraph.

78.     This Paragraph contains a reference to an email chain, which if it exists is a document that speaks for itself and not otherwise.  Larson denies the allegations of this Paragraph.

79.     This Paragraph contains a reference to an email chain, which if it exists is a document that speaks for itself and not otherwise.  Larson denies the allegations of this Paragraph.

80.     This Paragraph contains a reference to an email chain, which if it exists is a document that speaks for itself and not otherwise.  Larson denies the allegations of this Paragraph.

81.     Larson denies the allegations of this Paragraph.

82.     Larson admits that her story called *The Kindest* was published by ASF, but denies the remaining allegations of this Paragraph.

83.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

84.     Larson's Facebook post is a document that speaks for itself.  Larson denies the allegations of this Paragraph.

85.     Larson believes that an early version of *The Kindest* was available through ASF.  Larson lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

86.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

87.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

88.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

89.     Larson denies the allegations of this Paragraph.

90.     Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

91.     Larson denies the allegations of this Paragraph.

92.     The "ASF Web Letter" is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

93.     The "ASF Web Letter" is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

94.    The "ASF Web Letter" is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

95.    The "ASF Web Letter" is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

96.    The "ASF Web Letter" is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

97.    *The Kindest* is a story that includes a kidney donation and it is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

98.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

99.    *The Kindest* is a story that includes a kidney donation and it is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

100.    Assuming that Dorland erroneously refers to the "ASF" letter as the "ASW" letter, *The Kindest* is a story that includes a kidney donation and it is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

101.    Assuming that Dorland erroneously refers to the "ASF" letter as the "ASW" letter, *The Kindest* is a story that includes a kidney donation and it is a written document that speaks for

itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

102.    Assuming that Dorland erroneously refers to the "ASF" letter as the "ASW" letter, *The Kindest* is a story that includes a kidney donation and it is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

103.    Assuming that Dorland erroneously refers to the "ASF" letter as the "ASW" letter, *The Kindest* is a story that includes a kidney donation and it is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

104.    Larson denies the allegations of this Paragraph.

105.    Larson denies that the letter in *The Kindest* is integral to the Plot, and states that the language of the Amended Complaint is a written document that speaks for itself.  To the extent required, Larson denies the remaining allegations of the Paragraph.

106.    Larson denies the allegations of this Paragraph.

107.    Larson denies the allegations of this Paragraph.

108.    Pleadings in this Action are written documents that speak for themselves and not otherwise.  Larson denies the allegations of this Paragraph.

109.    Larson admits that Dorland contacted ASF but Larson lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

110.    Larson admits that *The Kindest* was removed from the ASF website but not for the reasons that Dorland alleges in preceding paragraphs, and therefore denies same.

111.   Larson admits that she received $300 from ASF for the print publication of a variant of *The Kindest* and nothing for the online copy.  Larson denies that any part of the payment constituted "profit."

112.   Larson denies the allegations of this Paragraph.

113.   Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

114.   Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

115.   Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

116.   Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

117.   Larson admits that she had an agreement with Plympton, Inc. regarding *The Kindest*, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

118.   Larson denies the allegations in this Paragraph

119.   Larson denies the allegations in this Paragraph.

120.   Dorland's letter is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

121.   Exhibit D is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

122.    Larson denies the allegations of this Paragraph.

123.    Dorland's letter is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

124.    The Brilliance Letter is a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

125.    Dorland's letter is a written document that speaks for itself and may not be as characterized by Dorland.  Larson denies the remaining allegations in this Paragraph.

126.    This paragraph refers to a written document that speaks for itself and may not be as characterized by Dorland.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

127.    Larson denies the allegations of this Paragraph.

128.    Larson denies the allegations of this Paragraph.

129.    Larson denies the allegations of this Paragraph.

130.    Larson denies the allegations of this Paragraph.

131.    Larson denies the allegations of this Paragraph.

132.    Larson denies the allegations of this Paragraph.

133.    Larson denies the allegations of this Paragraph.

134.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

135.    Larson denies the allegations of this Paragraph.

136.    Larson denies the allegations of this Paragraph.

137.    Larson admits that in 2018, she entered a version of *The Kindest* in a contest administered by the Boston Book Festival, Inc.

138.    Larson admits that the version of *The Kindest* that she submitted to the BBF was the winner of the One Story/One City competition, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

139.    Larson admits that Dorland contacted the BBF, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore, denies same.

140.    Larson denies the allegations of this Paragraph.

141.    Larson denies the allegations of this Paragraph.

142.    Larson denies the allegations of this Paragraph.

143.    Larson denies the allegations of this Paragraph.

144.    Larson denies the allegations of this Paragraph.

145.    Larson denies the allegations of this Paragraph.

146.    This allegation is confusing.  Larson admits that Dorland is claiming copyright to her letter, but denies the allegations in this Paragraph.

147.    Larson admits that a version of *The Kindest* was published as part of an anthology of short stories entitled "Welcome to the Neighborhood," but denies the remaining allegations of this Paragraph.

148.    Larson denies the allegations of this Paragraph.

149.    Larson denies the allegations of this Paragraph.

150.    Larson denies the allegations of this Paragraph.

151.    Larson denies the allegations of this Paragraph.

152.    Larson denies the allegations of this Paragraph.

153.    The records of the U.S. Copyright Office are official documents that speak for themselves.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

154.    Larson admits that different versions of *The Kindest* were published at different times, but denies the remaining allegations of this Paragraph.

155.    Larson denies the allegations of this Paragraph.

156.    Larson denies the allegations of this Paragraph.

157.    Larson denies the allegations of this Paragraph.

158.    Larson denies the allegations of this Paragraph.

159.    Larson denies the allegations of this Paragraph.

160.    Larson denies the allegations of this Paragraph.

161.    Larson denies the allegations of this Paragraph.

162.    Larson denies the allegations of this Paragraph.

163.    Based on this Court's Memorandum and Order issued on February 2, 2021, claims of emotional distress are irrelevant to this Action.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

164.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

165.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

166.    Larson lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore, denies same.

167.    Based on this Court's Memorandum and Order issued on February 2, 2021, claims of emotional distress are irrelevant to this Action.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

168.    Based on this Court's Memorandum and Order issued on February 2, 2021, claims of emotional distress are irrelevant to this Action.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

169.    Based on this Court's Memorandum and Order issued on February 2, 2021, claims of emotional distress are irrelevant to this Action.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

170.    Based on this Court's Memorandum and Order issued on February 2, 2021, claims of emotional distress are irrelevant to this Action.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

171.    Larson denies the allegations of this Paragraph.

## COUNT I
## COPYRIGHT INFRINGEMENT

172.    Larson incorporates herein by reference, her answers to each of the allegations set forth in Paragraphs 1 through 171 as if restated and repeated herein in full.

173.    Larson denies the allegations of this Paragraph.

174.    This paragraph contains allegations of law or mixed allegations of fact and law to which no answer is required.  To the extent that an answer is required, Larson denies the allegations of this Paragraph.

175.   Larson denies the allegations of this Paragraph.

176.   Larson denies the allegations of this Paragraph.

177.   Larson denies the allegations of this Paragraph.

178.   The records of the U.S. Copyright Office are official documents that speak for themselves.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

179.   Larson denies the allegations of this Paragraph.

180.   Larson denies the allegations of this Paragraph.

181.   Larson denies the allegations of this Paragraph.

182.   Larson denies the allegations of this Paragraph.

183.   Larson says that Dorland is not entitled to recover attorney's fees under Section 505 of the Copyright Act.  Larson denies the allegations of this Paragraph.


## COUNT II
## DECLARATORY JUDGMENT

184.   Larson incorporates herein by reference, her answers to each of the allegations set forth in Paragraphs 1 through 183 as if restated and repeated herein in full.

185.   Larson denies the allegations of this Paragraph.

186.   The records of the U.S. Copyright Office are official documents that speak for themselves.  To the extent that Larson needs to answer the allegations in this Paragraph, she denies them.

187.   Larson denies the allegations of this Paragraph.

188.   Larson denies the allegations of this Paragraph.

189.   Larson denies the allegations of this Paragraph.

190.    The declarations sought by Dorland in this paragraph contain allegations of law or mixed allegations of fact and law to which no answer is required.  To the extent that an answer is required, Larson denies the allegations of this Paragraph and further says that Dorland is not entitled to the declarations she is seeking from this Court.

## COUNT III
## INJUNCTIVE RELIEF PURSUANT TO 17 U.S.C. § 502

191.    Larson incorporates herein by reference, her answers to each of the allegations set forth in Paragraphs 1 through 190 as if restated and repeated herein in full.

192.    Larson denies the allegations of this Paragraph.

193.    Larson denies the allegations of this Paragraph.

194.    Larson denies the allegations of this Paragraph.

195.    Larson denies that Dorland is entitled to injunctive relief from this Court, and she further denies the remaining allegations of this Paragraph.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

196-212.    Based on this Court's Memorandum and Order issued on February 2, 2021, Dorland's claim for the intentional infliction of emotional distress has been dismissed and is irrelevant to this Action.  To the extent that Larson needs to answer the allegations in Paragraphs 196 through 212, she denies them.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Counterclaims asserted by Dorland fail to state claims upon which relief can be granted against Larson and should be dismissed.

### SECOND DEFENSE

The Dorland Letter is not original, and the Counterclaims should be dismissed in their entirety.

### THIRD DEFENSE

The Dorland Letter is not copyrightable subject matter, and the Counterclaims should be dismissed in their entirety.

### FOURTH DEFENSE

Larson did not infringe the Dorland Letter, and the Counterclaims should be dismissed in their entirety.

### FIFTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in any version of *The Kindest* is not copyright infringement but it is fair use.

### SIXTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in the American Short Fiction ("ASF") version of *The Kindest* is not copyright infringement but it is fair use.

## SEVENTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in the Audible.com

("Audible") version of *The Kindest* is not copyright infringement but it is fair use.

## EIGHTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged in the Brilliance Audio

("Brilliance") version of *The Kindest* is not copyright infringement but it is fair use.

## NINTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged in the Boston Book Festival,

Inc. ("BBF") version of *The Kindest* is not copyright infringement but it is fair use.

## TENTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged in the "Welcome to the

Neighborhood" version of *The Kindest* is not copyright infringement but it is fair use.

## ELEVENTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in any version of *The Kindest*

is not copyright infringement but it is a transformative fair use.

## TWELFTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in the ASF version of *The*

*Kindest* is not copyright infringement but it is a transformative fair use.

## THIRTEENTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in the Audible version of *The Kindest* is not copyright infringement but it is a transformative fair use.

## FOURTEENTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in the Brilliance version of *The Kindest* is not copyright infringement but it is a transformative fair use.

## FIFTEENTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in the BBF version of *The Kindest* is not copyright infringement but it is a transformative fair use.

## SIXTEENTH DEFENSE

Larson's use of any portion of the Dorland letter as alleged, in the "Welcome to the Neighborhood" version of *The Kindest* is not copyright infringement but it is a transformative fair use.

## SEVENTEENTH DEFENSE

Larson did not use any portion of the Dorland letter as alleged in any version of *The Kindest* for commercial purposes, and therefore, the use of any part of the Dorland Letter as alleged is not copyright infringement but it is fair use.

## EIGHTEENTH DEFENSE

Larson did not use any portion of the Dorland letter as alleged in the ASF version of *The Kindest* for commercial purposes, and therefore, the use of any part of the Dorland Letter as alleged is not copyright infringement but it is fair use.

## NINETEENTH DEFENSE

Larson did not use any portion of the Dorland letter as alleged in the Audible version of *The Kindest* for commercial purposes, and therefore, the use of any part of the Dorland Letter as alleged is not copyright infringement but it is fair use.

## TWENTIETH DEFENSE

Larson did not use any portion of the Dorland letter as alleged in the Brilliance version of *The Kindest* for commercial purposes, and therefore, the use of any part of the Dorland Letter as alleged is not copyright infringement but it is fair use.

## TWENTY-FIRST DEFENSE

Larson did not use any portion of the Dorland letter as alleged in the BBF version of *The Kindest* for commercial purposes, and therefore, the use of any part of the Dorland Letter as alleged is not copyright infringement but it is fair use.

## TWENTY-SECOND DEFENSE

Larson did not use any portion of the Dorland letter as alleged in the Welcome to the Neighborhood version of *The Kindest* for commercial purposes, and therefore, the use of any part of the Dorland Letter as alleged is not copyright infringement but it is fair use.

## TWENTY-THIRD DEFENSE

*The Kindest* including the letter used by Larson in her story is a creative work of fiction, while the Dorland Letter is factual.  Therefore, any use of the Dorland Letter by Larson as alleged is fair use.

## TWENTY-FOURTH DEFENSE

*The Kindest* including the letter used by Larson in the ASF version of her story is a creative work of fiction, while the Dorland Letter is factual.  Therefore, any use of the Dorland Letter by Larson in the ASF version as alleged is fair use.

## TWENTY-FIFTH DEFENSE

*The Kindest* including the letter used by Larson in the Audible version of her story is a creative work of fiction, while the Dorland Letter is factual.  Therefore, any use of the Dorland Letter by Larson as alleged in the Audible version is fair use.

## TWENTY-SIXTH DEFENSE

*The Kindest* including the letter used by Larson in the Brilliance version of her story is a creative work of fiction, while the Dorland Letter is factual.  Therefore, any use of the Dorland Letter by Larson as alleged in the Audible version is fair use.

## TWENTY-SEVENTH DEFENSE

*The Kindest* including the letter used by Larson in the BBF version of her story is a creative work of fiction, while the Dorland Letter is factual.  Therefore, any use of the Dorland Letter by Larson as alleged in the BBF version is fair use.

## TWENTY-EIGHTH DEFENSE

*The Kindest* including the letter used by Larson in the Welcome to the Neighborhood version of her story is a creative work of fiction, while the Dorland Letter is factual.  Therefore, any use of the Dorland Letter by Larson as alleged in the Welcome to the Neighborhood version is fair use.

## TWENTY-NINTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in *The Kindest* had no effect on the potential market for or value of the Dorland Letter, and therefore such use was fair use.

## THIRTIETH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the ASF version of *The Kindest* had no effect on the potential market for or value of the Dorland Letter, and therefore such use was fair use.

## THIRTY-FIRST DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Audible version of *The Kindest* had no effect on the potential market for or value of the Dorland Letter, and therefore such use was fair use.

## THIRTY-SECOND DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Brilliance version of *The Kindest* had no effect on the potential market for or value of the Dorland Letter, and therefore such use was fair use.

## THIRTY-THIRD DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the BBF version of *The Kindest* had no effect on the potential market for or value of the Dorland Letter, and therefore such use was fair use.

## THIRTY-FOURTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Welcome to the Neighborhood version of *The Kindest* had no effect on the potential market for or value of the Dorland Letter, and therefore such use was fair use.

## THIRTY-FIFTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in any version of *The Kindest* was de minimis, and therefore such use was fair use.

## THIRTY-SIXTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the ASF version of *The Kindest* was de minimis, and therefore such use was fair use.

## THIRTY-SEVENTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Audible version of *The Kindest* was de minimis, and therefore such use was fair use.

## THIRTY-EIGHTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Brilliance version of *The Kindest* was de minimis, and therefore such use was fair use.

## THIRTY-NINTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the BBF version of *The Kindest* was de minimis, and therefore such use was fair use.

## FORTIETH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Welcome to the Neighborhood version of *The Kindest* was de minimis, and therefore such use was fair use.

## FORTY-FIRST DEFENSE

The Dorland Letter is a factual letter that was posted on a semi-public Facebook page with hundreds of members without a copyright notice, and therefore, the use of a few words from the Dorland letter by Larson in any version of *The Kindest* as alleged is fair use.

## FORTY-SECOND DEFENSE

The Dorland Letter is a factual letter that was posted on a semi-public Facebook page with hundreds of members without a copyright notice, and therefore, the use of a few words from the Dorland letter by Larson in the ASF version of *The Kindest* as alleged is fair use.

## FORTY-THIRD DEFENSE

The Dorland Letter is a factual letter that was posted on a semi-public Facebook page with hundreds of members without a copyright notice, and therefore, the use of a few words from the Dorland letter by Larson in the Audible version of *The Kindest* as alleged is fair use.

## FORTY-FOURTH DEFENSE

The Dorland Letter is a factual letter that was posted on a semi-public Facebook page with hundreds of members without a copyright notice, and therefore, the use of a few words from the Dorland letter by Larson in the Brilliance version of *The Kindest* as alleged is fair use.

## FORTY-FIFTH DEFENSE

The Dorland Letter is a factual letter that was posted on a semi-public Facebook page with hundreds of members without a copyright notice, and therefore, the use of a few words from the Dorland letter by Larson in the BBF version of *The Kindest* as alleged is fair use.

### FORTY-SIXTH DEFENSE

The Dorland Letter is a factual letter that was posted on a semi-public Facebook page with hundreds of members without a copyright notice, and therefore, the use of a few words from the Dorland letter by Larson in the Welcome to the Neighborhood version of *The Kindest* as alleged is fair use.

### FORTY-SEVENTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in any versions of *The Kindest* imbued the Dorland Letter with a character, different from that for which it was created, and therefore such use was fair use.

### FORTY-EIGHTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the ASF version of *The Kindest* imbued the Dorland Letter with a character, different from that for which it was created, and therefore such use was fair use.

### FORTY-NINTH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Audible version of *The Kindest* imbued the Dorland Letter with a character, different from that for which it was created, and therefore such use was fair use.

### FIFTIETH DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Brilliance version of *The Kindest* imbued the Dorland Letter with a character, different from that for which it was created, and therefore such use was fair use.

## FIFTY-FIRST DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the BBF version of *The Kindest* imbued the Dorland Letter with a character, different from that for which it was created, and therefore such use was fair use.

## FIFTY-SECOND DEFENSE

Larson's use of a few words or phrases from the Dorland Letter in the Welcome to the Neighborhood version of *The Kindest* imbued the Dorland Letter with a character, different from that for which it was created, and therefore such use was fair use.

## FIFTY-THIRD DEFENSE

Larson used a few words or phrases from the Dorland Letter in one or more versions of *The Kindest* for an entirely different purpose than that for which Dorland wrote the Letter, and therefore such use was fair use.

## FIFTY-FOURTH DEFENSE

Larson used a few words or phrases from the Dorland Letter in the ASF versions of *The Kindest* for an entirely different purpose than that for which Dorland wrote the Letter, and therefore such use was fair use.

## FIFTY-FIFTH DEFENSE

Larson used a few words or phrases from the Dorland Letter in the Audible versions of *The Kindest* for an entirely different purpose than that for which Dorland wrote the Letter, and therefore such use was fair use.

**FIFTY-SIXTH DEFENSE**

Larson used a few words or phrases from the Dorland Letter in the Brilliance versions of *The Kindest* for an entirely different purpose than that for which Dorland wrote the Letter, and therefore such use was fair use.

**FIFTY-SEVENTH DEFENSE**

Larson used a few words or phrases from the Dorland Letter in the BBF versions of *The Kindest* for an entirely different purpose than that for which Dorland wrote the Letter, and therefore such use was fair use.

**FIFTY-EIGHTH DEFENSE**

Larson used a few words or phrases from the Dorland Letter in the Welcome to the Neighborhood versions of *The Kindest* for an entirely different purpose than that for which Dorland wrote the Letter, and therefore such use was fair use.

**FIFTY-NINTH DEFENSE**

None of the letters used in any versions of *The Kindest* are substantially similar to the Dorland Letter, and therefore, Larson did not infringe upon the Dorland Letter.

**SIXTIETH DEFENSE**

The letter used in the ASF version of *The Kindest* is not substantially similar to the Dorland Letter, and therefore, Larson did not infringe upon the Dorland Letter.

**SIXTY-FIRST DEFENSE**

The letter used in the Audible version of *The Kindest* is not substantially similar to the Dorland Letter, and therefore, Larson did not infringe upon the Dorland Letter.

## SIXTY-SECOND DEFENSE

The letter used in the Brilliance version of *The Kindest* is not substantially similar to the Dorland Letter, and therefore, Larson did not infringe upon the Dorland Letter.

## SIXTY-THIRD DEFENSE

The letter used in the BBF version of *The Kindest* is not substantially similar to the Dorland Letter, and therefore, Larson did not infringe upon the Dorland Letter.

## SIXTY-FOURTH DEFENSE

The letter used in the Welcome to the Neighborhood version of *The Kindest* is not substantially similar to the Dorland Letter, and therefore, Larson did not infringe upon the Dorland Letter.

## SIXTY-FIFTH DEFENSE

None of the versions of *The Kindest* are substantially similar to the Dorland Letter.

## SIXTY-SIXTH DEFENSE

The ASF version of *The Kindest* is not substantially similar to the Dorland Letter.

## SIXTY-SEVENTH DEFENSE

The Audible version of *The Kindest* is not substantially similar to the Dorland Letter.

## SIXTY-EIGHTH DEFENSE

The Brilliance version of *The Kindest* is not substantially similar to the Dorland Letter.

## SIXTY-NINTH DEFENSE

The BBF version of *The Kindest* is not substantially similar to the Dorland Letter.

## SEVENTIETH DEFENSE

The Welcome to the Neighborhood version of *The Kindest* is not substantially similar to the Dorland Letter.

## SEVENTIETH-FIRST DEFENSE

If Larson used any portion of the Dorland letter in any version of *The Kindest* as alleged, such use was insubstantial and therefore not copyright infringement.

## SEVENTIETH-SECOND DEFENSE

If Larson used any portion of the Dorland letter in the ASF version of *The Kindest* as alleged, such use was insubstantial and therefore not copyright infringement.

## SEVENTIETH-THIRD DEFENSE

If Larson used any portion of the Dorland letter in the Audible version of *The Kindest* as alleged, such use was insubstantial and therefore not copyright infringement.

## SEVENTIETH-FOURTH DEFENSE

If Larson used any portion of the Dorland letter in the Brilliance version of *The Kindest* as alleged, such use was insubstantial and therefore not copyright infringement.

## SEVENTIETH-FIFTH DEFENSE

If Larson used any portion of the Dorland letter in the BBF version of *The Kindest* as alleged, such use was insubstantial and therefore not copyright infringement.

## SEVENTIETH-SIXTH DEFENSE

If Larson used any portion of the Dorland letter in the Welcome to the Neighborhood version of *The Kindest* as alleged, such use was insubstantial and therefore not copyright infringement.

## SEVENTIETH-SEVENTH DEFENSE

The Dorland Letter has no potential market value, and therefore, Dorland has not been damaged.

## SEVENTIETH-EIGHTH DEFENSE

Dorland is not entitled to statutory damages under the Copyright Act.

## SEVENTIETH-NINTH DEFENSE

Dorland is not entitled to attorney's fees and costs under the Copyright Act.

## EIGHTIETH DEFENSE

Dorland's Counterclaim is barred in whole or in part by the doctrine of unclean hands because, among other things, Dorland used, published and distributed the Dorland Letter without a copyright notice on a semi-public Facebook page having hundreds of members.

## EIGHTY-FIRST DEFENSE

Dorland's Counterclaim is barred in whole or in part, by the doctrines of estoppel by reason of the publication of the Dorland Letter without a copyright notice on a semi-public Facebook page with hundreds of members.

## EIGHTY-SECOND DEFENSE

Dorland posted the Dorland Letter on a semi-public Facebook Group site with hundreds of members without inserting a copyright notice.  Most if not all of the members of the Facebook Group were invited to participate in the Facebook Group by Dorland.  Some of the members were published authors and/or aspiring writers.  Dorland assumed the risk that her letter would serve as inspiration by one or more of the authors or writers for a fictional story that included references to a kidney donation.

## EIGHTY-THIRD DEFENSE

Larson did not owe any duty of care or fidelity to Dorland.

## EIGHTY-FOURTH DEFENSE

The Kindest is not a factual story about a kidney donation but it is a fictional story about race, shame, grandiosity and addiction, and the counterclaims should be dismissed.

## EIGHTY-FIFTH DEFENSE

Neither Dorland nor her legal counsel acted in good faith with the Boston Book Festival, Inc. and the counterclaims should be dismissed.


Larson reserves the right to amend her Answer to the Counterclaim and assert additional Affirmative Defenses if such additional defenses may later become apparent.

WHEREFORE, Larson requests judgment dismissing Dorland's Counterclaims in their entirety with prejudice and granting Larson her costs and attorney's fees plus interest together with such other and further relief as to this Court shall appear just and proper.


**PLAINTIFF DEMANDS TRIAL BY JURY  ON ALL ISSUES TRIABLE BY A JURY**


Sonya Larson,
By her attorney,

February 18, 2021                     /s/ *Andrew D. Epstein*

_____
Andrew D. Epstein, Esquire
BBO #155140
Barker, Epstein, & Loscocco
176 Federal Street
Boston, MA 02110
Direct Line: (617) 273-5700
FAX: (617) 426-5251
Email: Photolaw@aol.com

**Certificate of Service**

I certify that Plaintiff/Defendant in Counterclaim's Answer to Defendant/Plaintiff in Counterclaim's Counterclaim was filed through the Court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.


*/s/ Andrew D. Epstein*

February 18, 2021                              Andrew D. Epstein