# EXHIBIT B

**Elovecky, Suzanne M.**

| | |
|---|---|
| From: | Elovecky, Suzanne M. |
| Sent: | Monday, January 25, 2021 2:47 PM |
| To: | Drew Epstein |
| Cc: | mgreene@boyleshaughnessy.com |
| Subject: | Larson v. Dorland - Follow Up / Continuation of 7.1 Conference |

Dear Drew:

This email is a continuation of the 7.1 conference that we started via telephone on January 15, 2021. I took the time to carefully go through the production to date, so that everything can be addressed at once.

I will first summarize my overarching concerns, most of which I raised on our call:

- In your response to Ms. Dorland's request for production, you asserted that you would not produce electronically stored information in electronic format, because the Federal Rules of Civil Procedure do not require you to do so. However, Rule 34 of the Rules does, in fact, require you to produce electronically stored information in electronic format, and specifically requires you to produce it in the format requested in the request. My request included format requirements. The Rule therefore clearly and explicitly does require electronic production, including metadata.

- As I mentioned on the phone, I am not pressing this issue for the sole reason of being difficult. The paper production you provided has several issues that would not be present if electronically stored information was produced as requested. First, there is a black line across the top of every single page of the production, and on many pages, it completely obscures at least one line of text. You agreed to recopy the complete production, explaining that it was a copying error. However, given the time that it took to compile, copy and send the production the first time, this does not seem feasible. Second, none of the emails produced included their attachments appended to the emails. The attachments would be included if the production were made electronically.

- In several of your objections, you narrowed the scope of relevant documents to documents that relate to the "Amended Complaint," but not the Counterclaim. The Counterclaim is part of this case. While I acknowledge that you filed a motion to dismiss, that motion has not been decided, and you did not seek to stay discovery related to the Counterclaim. Absent an order staying discovery, you are obligated to produce documents relevant to that pleading. In our discussion this morning, you stated that you, as counsel, did not withhold any documents on the basis that they were relevant only to the counterclaim, but that you don't know what your client did during her collection of documents, because she "knows there's a motion pending." Please confirm that your client did not limit her document search and collection to documents relevant to the Amended Complaint, and that she also searched for and collected documents relevant to the Counterclaim. If she did not, please instruct her to do so, consistent with your obligations under the Rules.

- It is perplexing to me that there were no text messages in your production. Text messages are defined as "documents" and "communications" by both the applicable Rules and my document requests. Please confirm that your client searched all text messages, including back ups.

- In response to multiple document requests, you responded that "Plaintiff will produce documents that she has been able to locate." This response does not reflect compliance with the Rule. Ms. Larson is required to produce all documents within her possession, custody and control. She is also obligated to conduct a diligent search. It is your obligation to instruct her accordingly, and to impress upon her the importance of compliance

with these Rules.  I expect that you will confirm in writing, or through an amended response to my request for production, that Ms. Larson conducted a diligent search and produced all documents in her possession, custody and control, as that term is defined by law, for all requests that you agreed to produce documents.  If she did not do so, I expect that the production will be supplemented.

- In response to other documents, following an objection, you stated that you "refer" me to not only Ms. Larson's initial disclosures and interrogatory responses, but also "all documents being produced in response to this document request."  However, in light of the objections preceding this response, I cannot tell if you have limited your production or withheld documents, nor can I tell if Ms. Larson conducted a diligent search and collected all of the documents in her possession, custody and control.  You represented on the phone that you will confirm with her that she did so.  I look forward to that confirmation in writing, and if she did not do so, I expect that the production will be supplemented.

- Your objections that state that "relevant and material" documents in your clients possession will be produced is insufficient; it is not for you (or your client) to determine whether a responsive document is "material".  Please confirm that you did not withhold documents based on a "materiality" determination.

It was clear from our call on Friday that you left the document collection, and the decisions as to what is relevant and what is not, to your client.  During our call, you cited the Covid-19 pandemic as the reason for this.  As you know, I was very accommodating as to deadlines for this production, not only because of Covid-19, but because of both your and your client's additional medical and personal issues.  I served the document requests on July 30, 2020, and yet did not receive your production until January 12, 2021.  Further, the Court has put into place multiple accommodations, beginning in March.  These accommodations do not extend to attorneys' obligations concerning discovery.  There is no justification for you to approach the document production in a hands-off manner.  Your client does not have knowledge of the Rules and what discovery requires.  In order to avoid motion practice on these issues, I do hope you will take this opportunity to ensure that the document collection is thorough and complete.

Here is my list of issues concerning the specific requests:

Request No. 1:  A request for all drafts and versions of the short story "The Kindest" is not overbroad, vague, ambiguous or burdensome.  The Kindest is the centerpiece of your complaint, and is central to the counterclaim.  The fact that there are various versions and drafts is also crucial to this case, and the various versions that were highlighted in both the complaint and the counterclaim show that the letter within The Kindest, which my client claims your client copied from my client's letter, has changed in meaningful ways that impact both parties' claims.  There is no credible argument that all drafts and versions of The Kindest are not relevant to both parties claims, and therefore discoverable.  Further, it has now come to light, through the production made by your client, that the initial version of The Kindest included a near verbatim version of my client's letter, as well as verbatim quotes from my client's facebook page, that the donor character in the story was named "Dawn," and that your client's writing group viewed the story, in that form, a "take-down piece" of my client.  Therefore, I now know that these early drafts of The Kindest are highly relevant to my client's Intentional Infliction of Emotional Distress claim.  Each and every draft must be produced.  On our call this morning, you stated that you do not know if they have been produced, and you do not know if your client maintained prior drafts. However, if you review the emails that you did produce, you will see that your client's writing group referenced review of "several" drafts.  Therefore, there are likely multiple emails sending those drafts to the writing group, at a bare minimum.

Please supplement your production with every draft and version of The Kindest in your client's possession, custody and control.

Request No. 3:  Please confirm that your client's search for documents and communications was broad enough to include documents relevant to the counterclaim in this matter, as well as all facts and allegations in both the amended complaint and the counterclaim.  Please further confirm that no such documents were withheld by you (as you stated on

our call), or your client.  Please also explain your limiting term "material," as it is subjective and raises concerns that your client has made determinations concerning what is "material," which is not appropriate in the discovery context.

Request No. 4:  This request asks for communications with Ms. Dorland, but your response concerns communications about Ms. Dorland.  Please confirm your client has produced all communications between herself and Ms. Dorland, including text messages, social media exchanges, emails, letters, and any other form of written communication, that is relevant to the this matter, as requested in Request No. 4.

Request No. 5:  Please confirm the scope of production pursuant to this request, in light of my overarching comments, above.  If further clarification is needed concerning the term "publication," you can use the definition of "published by a third party publishing or literary entity, regardless of whether said publication was in paper format, electronic format, or audio format."

Request No. 6:  Please confirm the scope of production pursuant to this request, in light of my overarching comments, above.  If further clarification is needed concerning the term "publication," you can use the definition of "published by a third party publishing or literary entity, regardless of whether said publication was in paper format, electronic format, or audio format."

Request No. 7:  Please confirm the scope of production pursuant to this request, in light of my overarching comments, above.  Please confirm that no transmittals of drafts of The Kindest have been withheld or omitted from your production.

Request No. 8:  This objection has no basis in the Rules or the law.  Both you and your client are well aware that your client was a member of the private facebook group, as it is referenced in the complaint filed by you in this matter.  Her "membership" is acknowledged, and is not contingent on her requesting it.  Please confirm that a search was undertaken for documents relevant to this request, and that no documents were withheld.

Request No. 9:  I do not accept the limitation of the scope of this request to the Ms. Dorland's letter, as the request references the Facebook group in its entirety.  The entire group is relevant both to the complaint and the counterclaim.  If you review your client's "first draft" of the Kindest, you will see that she had inserted another direct quote from Ms. Dorland's Facebook group into the letter contained in that draft, further confirming the relevance of her access to the group.  Please confirm that you will produce all documents that are responsive to Request No. 9.  This request, and documents responsive thereto, are highly relevant to Ms. Dorland's counterclaims, and a failure to produce documents to the request as written will require that I move forward with a motion to compel.

Request No. 11:  Please confirm the scope of production pursuant to this request, in light of my overarching comments, above.

Request No. 16:  As discussed above, edits to The Kindest, including but not limited to the letter contained within The Kindest, are central to this dispute.  For example, where are the edits sent to Brilliance/Audible/Plympton in 2016 when Ms. Larson decided that, for "ethical reasons," she needed to change the letter to remove my client's language?  This is just one example of why the edits to the story – which your client is seeking confirmation of her copyright over – are relevant and discoverable.  Further, discussions concerning edits over time, such as those which were produced amongst your client's writing group, are relevant to this matter, as reflected in the limited set of emails produced to date.  Please confirm that all edits, and documents reflecting edits, will be produced.

Request No. 20:  This request seeks all documents concerning the June 22, 2016 reading.  This would include, for example, any invitation from Trident, communications about a selection, emails following the reading, text messages about the reading, discussions amongst Ms. Larson and her writing group or other friends concerning the reading.  Not simply the excerpt that was read.  Please confirm that a complete search and production was made in response to Request No. 20.

Request No. 37: Your response document omits an objection or response to this request, which I'm sure was an oversight.

Request No. 43:  Your objection references privilege, and I am quite perplexed as to what privilege could apply to a writing group?  Further, while I have received the email transmittal of an early draft of the Kindest, prior to it having that title, to the writing group, you did not produce any of the writing group's feed back or emails concerning the story.  To be certain, you produced several emails wherein the writing group discussed my client, the dispute between the two, your client's concern that my client would be upset once The Kindest was published, your client and her writing group's mockery of my client's hat, and many other topics – yet very few actually addressed the story.  Please complete the production of documents in response to Request No. 43.

Request Nos. 44-49:  Your response to this request suggests that all relevant emails were produced, but I have serious concerns that they were, in fact, produced, as it is clear from the writing group emails that were produced that they discuss many issues relevant to this dispute, particularly involving Ms. Dorland.  Please provide me further information concerning the search employed for this production, including search terms utilized, and date ranges applied.

Request No. 50:  I have seen no emails responsive to this request, despite your agreement to do so.  We know from the production from the BBF that at least three of your client's friends did, in fact, write to the BBF (Jenn de Leon, Chip Cheek, Alexandria Marzano-Lesnevich), yet I see no discussion about those letters (nor an indication that they were forwarded to your client and/or the writing group), which would be surprising, if true, given the nature of the other communications amongst this group.  Please confirm that a diligent search was conducted and that no documents were withheld; alternatively, if you are unable to do so, please produce the remaining responsive documents.

Request Nos. 58-59.  There are some conspicuous omissions from your production, which casts doubt on the fullness of the production in response to this request.  For example, Ms. Larson listed several friends and fellow writers in her initial disclosures, such as Sari Boren, Lisa Borders, Anya Weber, and several colleagues at Grub Street, and yet there are no documents reflecting correspondence with these individuals.  In one of the email chains that were produced, Ms. Larson stated that she had been working with Sari Boren on the essay she forwarded to the Globe concerning the "white savior narrative," yet no emails were produced reflecting the draft being passed between Ms. Larson and Ms. Boren.

Request No. 68.  Your response to this request states, "Many of the requested documents were produced by Dorland or her legal counsel and will not be duplicated."  This is not consistent with the Rules.  Ms. Larson is obligated to produce documents within her possession, custody and control.  I am not asking for her to produce Ms. Dorland's own production, but rather documents that came into her possession outside the discovery process, as she is obligated to do.

Request No. 82.  The portions of the emails that were redacted are not privileged, as the privileged was destroyed when the emails were forwarded to a third party.  Please produce unredacted versions of the emails, as requested.


Following my review of the production I have identified the following additional issues with the document production:

- Several email threads in your client's production branched into multiple paths, but only one was produced.  An example of this is reflected in the email chain at P204-207; Celeste Ng wrote an email to the group, to which Calvin Hennick responded at 10:56 a.m. stating "Celeste's last sentence is what my understanding of the law is ….." However, we do not have that email from Celeste Ng.  As I said, this is but one example of where an email chain is incomplete, as is the nature of email chains.  Please produce each email – both sent and received – regardless of the resulting duplication.

- Another issue with the email chains is that attachments are referenced in the middle of the chains, but they were not produced.  Each attachment to each email needs to be produced.

4

- The emails with Ms. Larson's writing group do not appear to be complete.  While the group was clearly quite prolific in their emails, they completely dropped off after August 9, 2018.  No emails were produced amongst the writing group following the second Globe article or the cancellation of the One City, One Story program.  If those emails exist, they are responsive to multiple requests.

- Similarly, while an email was produced reflecting your client's submission of The Kindest (prior to being assigned the title) to the writing group, none of the group's feedback was produced.  If there was written feedback, it is responsive, and should be produced.

- While Ms. Larson produced several letters confirming the submission of The Kindest, she did not produce the submissions themselves, or the story.  Those documents are responsive and relevant, and should be produced.

- The production does not include any text messages whatsoever.  Why not?

- The production does not include any Facebook posts, and only one Facebook message. Did you client post about The Kindest on Facebook?  If so, those posts should be produced.

- In the August of 2018 emails between Ms. Larson and Audible, Ms. Larson indicates that she located the "old" version of The Kindest on line in July of 2018, and reached out to her contact at Audible at that time to get it removed.  There were no documents produced concerning the July 2018 discovery or communications.  Are there any documents?

- At P227, in what appears to be a Slack message, Ms. Larson sends a link to the first Globe article.  The screen shot indicates that there were "15 replies" yet those replies are not reflected.  Please produce those replies.

I am hopeful that we can resolve these issues without resorting to motion practice.  As you know, I have noticed your client's deposition for February 9, 2021, and absent an extension to the discovery period, I have very little wiggle room to extend that date.  Therefore, I will need your supplemental production on or before February 5, 2021.