# **EXHIBIT D**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON,<br><br>        Plaintiff<br><br>   v.<br><br>DAWN DORLAND PERRY,<br>COHEN BUSINESS LAW GROUP, PC and<br>JEFFREY A. COHEN, ESQUIRE,<br><br>        Defendants.<br><br>AND<br><br>DAWN DORLAND PERRY<br><br>        Plaintiff-in-Counterclaim<br>   v.<br><br>SONYA LARSON<br><br>        Defendant-in-Counterclaim | C. A. No.: 1:19-CV-10203-IT |

**DAWN DORLAND PERRY'S FIRST REQUEST FOR PRODUCTION OF
<u>DOCUMENTS TO SONYA LARSON</u>**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant and Plaintiff-in-Counterclaim Dawn Dorland Perry ("Ms. Dorland") requests that Plaintiff and Defendant-in-Counterclaim Sonya Larson ("Ms. Larson") produce for inspection and copying all documents and things listed below at the offices of Partridge, Snow & Hahn LLP, 30 Federal Street, Boston, Massachusetts 02110, within thirty (30) days of service of these requests.

## **INSTRUCTIONS AND DEFINITIONS**

### **Instructions**

1. Incorporated herein by reference are the definitions contained Rule 26.5 of the Local Rules for the United States District Court for the District of Massachusetts.

2. You are requested to state separately for each of the following numbered requests for production which documents will be produced for inspection and copying.

3. The following instructions and definitions apply to each document request and are incorporated by reference into each request. The document requests must be read in light of these instructions and definitions, and your answers must be responsive to the requests as so defined.

4. You shall produce all documents within your custody, possession or control, including documents in the possession of your attorneys, agents, employees, companies, trusts, representatives, servants, consultants, accountants, partners, trustees, advisors or investigators, regardless of the location of such document.

5. Time Period: if any request contained herein does not contain a date range, the date range shall be January 1, 2010 through the present.

6. All documents should be produced in multi-page tiff format, with corresponding document level text files containing the OCR or extracted text. The filename of both the text and image files should correspond to the Bates number of the document. In addition, a Concordance Delimited File and an Opticon Image Cross Reference File should be provided. The delimiters should be Tilde (~) as the field separator and Caret (^) as the field qualifier.

7. For documents maintained electronically, the following fields should be included, at a minimum: Bates Begin, Bates End; Bates Begin Attach; Bates End Attach;

Custodian/Source; To; From; CC; BCC; Subject/Title; Author; Date Created; Date Last Modified; Date Sent; Time Sent; Original Filename; Original File Path; Hash Value; Link to Text File; Link to Native File.

8. For any electronically stored comment that cannot be interpreted in TIFF format (including, but not limited to, spreadsheets, presentations, databases, logs, video and audio files), you should produce a Bates numbered TIFF placeholder and a native version of that file, with the native version named by its Bates numbers.

9. If you object to any document request, you shall so state, including your basis for the objection, in answer to the specific question you found objectionable.  If only part of any document request is objectionable, you will answer the document request as fully as possible in addition to stating the objection, and its basis, to any remaining part.

10. Rules of Construction:

   a. The singular shall include the plural and the plural shall include the singular;

   b. A masculine, feminine, or neutral pronoun shall be construed to refer to all other gender pronouns;

   c. "And" and "or" shall be construed conjunctively and disjunctively so as to bring within the scope of these document requests any documents that might otherwise be construed to be outside their scope;

   d. "Any" shall be understood to include and encompass one or more and "all";

   e. The present tense shall include the past tense, for example "are" shall include "were"; and

   f. Unless otherwise stated, the relevant time period for these document requests is January 1, 2002, through the date of your response.

11. The term "**correspondence**," as used herein, shall include, but shall not be limited to any letter, telegram, telex, FAX, e-mail, text message, SMS message, instant message, notice,

message, memorandum or other written communication or transcription or notes of a communication.

12. The term **correspondence** shall also include posts, private messages, comments and uploads from **all social media sites** including but not limited to Facebook, Instagram, Twitter and YouTube.

13. With respect to any document responsive to any of these requests that is withheld from production on the grounds that the document or any of its contents is privileged or otherwise not subject to production, Defendants request that you produce within thirty (30) days of service of these document requests a list:

    a. Identifying each particular document request to which you object and each specific ground upon which such objection is based; and

    b. Specifying each withheld document or thing or portion thereof as follows:

        (i) its date;

        (ii) the general nature of the document or thing (e.g., whether it is a letter, chart, pamphlet, memorandum, etc.);

        (iii) a summary of the contents or the general subject matter of the document or thing;

        (iv) the identity of each other document or other thing transmitted with or attached to that allegedly privileged or discovery-immune document or thing;

        (v) its present location and the identity of its current custodian;

        (vi) the identity of each person who authored, prepared, or signed the document or thing;

        (vii) a list identifying each person, including, but not limited to, addressees and designated copy recipients, to whom either the original or a copy of the document or thing has been disclosed, including the date and means of such disclosure;

   (viii) the nature of the privilege, immunity, or other rule of law relied upon to withhold the information, document, or thing and the facts supporting your asserted reliance; and

   (ix) any purportedly privileged or discovery-immune information or document that contains matter that is not privileged or immune from discovery must be produced with the purportedly privileged or discovery-immune portion excised.

14. **Qualification of Answers.**  If your answer is in any way qualified, please state the exact nature and extent of the qualification.

15. Defendants specifically request that you supplement your responses to these Requests as required under Fed. R. Civ. P. 26(e).

16. **Unavailability of Document:**  To the extent that any documents falling within the requests below have been destroyed, lost, or misplaced, please identify those documents by type, author, date, number of pages and the date and manner in which the document was destroyed, lost, or misplaced.

17. If no documents exist which are responsive to a request, please state that no documents exist.

**Definitions**

Plaintiff expressly incorporates herein the provisions of Fed. R. Civ. P. 26(b)(5) and Local Rules 26.5. In addition, the words and phrases set out below shall have the following meanings:

1. The term, "you", "your", "Plaintiff", "Defendant-in-Counterclaim" or "Ms. Larson" means Sonya Larson, and any and all employees, agents, attorneys, representatives or others working on her behalf.

2. "Ms. Dorland", "Defendant Dorland" or "Plaintiff-in-Counterclaim" shall mean Dawn Dorland Perry and any and all employees, agents, representatives or others working on her behalf.

3. "Complaint" shall mean the Amended Complaint filed in this Action by You.

4. The term "Counterclaim" shall mean the Answer and Counterclaim filed by Ms. Dorland in this Action.

5. "Dorland Letter" shall the mean the letter Ms. Dorland wrote and sent to the final recipient in the kidney donation chain in which Ms. Dorland participated, and subsequently posted on her Facebook Group on or around July 7, 2015.

6. "ASF" shall refer to American Short Fiction, which is a literary magazine based in Austin Texas.

7. "BBF" shall mean the Boston Book Festival, including but not limited to the One City One Story program sponsored by the Boston Book Festival.  See, e.g., https://bostonbookfest.org/one-city-one-story/#1c1s

8. "Brilliance Audio" shall mean Brilliance Audio and Audible Books, both of which are owned or controlled by Amazon.  See, https://www.audible.com.

9. Whenever an individual or entity is referenced, it shall include all agents, employees, attorneys, officers, directors, trustee and other representatives of that individual or entity.

10. "**Amazon**" refers to Amazon, a large multinational conglomerate with its headquarters in Seattle, Washington.  See, https://www.amazon.com.

11. "**Plympton**" refers to a literary studio principally located in New York City.  See, https://www.plympton.com/

12. "**BreadLoaf**" refers to the Bread Loaf Writer's Conference and Bread Loaf Conference which are either part of or affiliated with Middlebury College in Vermont.  See, http://www.middlebury.edu/bread-loaf-conferences.

13. The term "**GrubStreet**" refers to a not-for-profit organization located at 162 Boylston Street, Boston, Massachusetts.  See, https://www.GrubStreet.org.

14. References to the singular include the plural and vice versa, references to the past tense include the present tense and vice versa, disjunctive terms or phrases should be read to include the conjunctive and vice versa, references to "each" or "any" shall include "all" and vice versa, and the word "including" should be construed without limitation, so as not to exclude any document within the scope of or responsive to these requests.

**DOCUMENT REQUESTS**

1. Copies of all drafts and/or versions of "*The Kindest*", regardless of whether or not said draft or version was published, and regardless of whether the story had been assigned the title of "*The Kindest*" at the time of the draft at issue.

2. All documents reflecting your research related to *The Kindest*, including but not limited to articles read, documents reviewed, websites visited, videos watched, or any other research associated with your writing of *The Kindest* in whatever form.

3. All documents reflecting or concerning communications between you and any other person that references or relates to Ms. Dorland.

4. All communications between you and Ms. Dorland, from January 1, 2012 through the present.

5. All communications concerning any publication of *The Kindest*, regardless of format.

6. All documents concerning publication of *The Kindest*, including but not limited to contracts, including but not limited to all drafts, versions and proposals.

7. All communications evidencing transmittal of any draft, version, or iteration of *The Kindest*, whether or not said draft, version or iteration had been assigned the title of "*The Kindest*" at the time of said communication or transmittal, including but not limited to transmittals of *The Kindest* to publishers (including electronic, audio and/or web-based publishers), potential publishers, readers, editors, agents, potential agents, writing group members, mentors, professors, instructors, peers, family members, friends, contests, conferences, or any other entities.

8. Documents reflecting, referencing and/or concerning your membership in the Facebook group referenced in Paragraph 11 of the Complaint.

9. Communications referencing or concerning the Facebook group referred to in Paragraph 11 of the Complaint.

10. Copies of all notes taken by you concerning the Dorland Letter, as referenced in Paragraph 17 of the Complaint.

11. All documents and communications regarding the Dorland Letter.

12. All copies of the Dorland Letter in your possession, custody and control.

13. Documents sufficient to show the date(s) that the Dorland Letter came into your possession, custody and control.

14. Documents sufficient to show your research concerning the concept of a "paired exchange" as that term relates to a kidney donation.

15. Documents sufficient to show when the term "paired exchange" first appeared in The Kindest, regardless of whether the story had been assigned that title at the time.

16. All documents reflecting edits to The Kindest during the period of 2014 through the present.

17. Documents sufficient to show the date when you first conceived of the concept of *The Kindest*.

18. Copies of all sample letters written to or from kidney donation recipients reviewed, researched by you as referenced in Paragraph 20 of the Complaint.

19. All documents referencing or reflecting the source of all sample letters written to or from kidney donation recipients reviewed or researched by you as referenced in Paragraph 20 of the Complaint.

20. All documents concerning the June 22, 2016 reading of *The Kindest* referenced in Paragraph 21 of the Complaint.

21. All "emails and text messages" from Dorland in which she "hound[ed]" you concerning *The Kindest*, as referenced in Paragraph 24 of the Complaint.

22. All documents reflecting Dorland's alleged "insistence" on an apology from you, as referenced in Paragraph 25 of the Complaint.

23. All communications from Plympton concerning Plympton's "scouting" you for new stories, as referenced in Paragraph 27 of the Complaint.

24. A copy of the draft of *The Kindest* as provided to Plympton as referenced in Paragraph 27 of the Complaint.

25. All documents and communications concerning, referencing or reflecting the sublicense between Plympton and Audible as referenced in Paragraph 28 of the Complaint.

26. All documents and communications concerning all versions of *The Kindest* published by Audible.

27. All documents and communications concerning all changes to *The Kindest* by Audible requested by you, as referenced in Paragraph 30 to the Complaint.

28. All communications between you and Audible concerning *The Kindest*, Ms. Dorland, and the Dorland Letter.

29. All communications between you and Audible concerning press coverage of Ms. Dorland's allegation that you copied the Dorland Letter.

30. All communications between you and ASF concerning the publication of *The Kindest* as referenced in Paragraph 31 of the Complaint.

31. All documents related to the publication of *The Kindest* by ASF, including but not limited to any all contracts, including drafts and proposals.

32. All communications between you and ASF concerning *The Kindest*, Ms. Dorland and the Dorland Letter.

33. All communications between you and ASF concerning press coverage of Ms. Dorland's allegation that you copied the Dorland Letter.

34. All communications between you and ASF regarding the BBF.

35. All communications between ASF and BBF.

36. All communications between you and ASF concerning ASF's decision to remove *The Kindest* from ASF's website.

37. All documents and communications regarding or concerning your submission of *The Kindest* to BBF as referenced in Paragraph 32 of the Complaint.

38. All documents and communications concerning the BBF and *The Kindest*.

39. All documents and communications concerning *The Kindest* and One City/One Story, as referenced in Paragraph 35 of the Complaint, including but not limited to the version of *The Kindest* submitted to One City/One Story and/or BBF.

40. All communications with the BBF concerning similarities between the Dorland Letter and the letter contained in *The Kindest*.

41. All communications with the BBF concerning changes to *The Kindest*.

42. All communications with the BBF concerning Ms. Dorland and the Dorland Letter.

43. All communications between you and your writing group, as referenced in Paragraph 38 of the Complaint, concerning *The Kindest*, regardless of whether or not the story had been assigned that title at the time of the communication.

44. All communications between you and your writing group, as referenced in Paragraph 38 of the Complaint, concerning Ms. Dorland and/or the Dorland Letter.

45. All communications between you and your writing group, as referenced in Paragraph 38 of the Complaint, concerning the BBF, including but not limited to the One City One Story contest, as relates to *The Kindest*, the Dorland Letter, or Ms. Dorland.

46. All communications between members of your writing group and the BBF concerning *The Kindest*, Ms. Dorland or the Dorland Letter, to the extent you were copied and/or have a copy in your possession, custody or control.

47. All communications between members of your writing group and any other entity concerning Ms. Dorland, *The Kindest* or the Dorland Letter, to the extent you were copied and/or have a copy in your possession, custody or control.

48. All communications between you and your writing group, as referenced in Paragraph 38 of the Complaint, concerning the Dorland Letter.

49. All communications between you and your writing group, as referenced in Paragraph 38 of the Complaint, concerning kidney donations.

50. All communications between your friends and the BBF, as referenced in P's Initial Disc. 131, to the extent you were copied and/or have a copy in your possession, custody or control.

51. All documents referencing or reflecting demands or claims for legal fees made by the BBF upon you related to *The Kindest*, Ms. Dorland and/or the Dorland Letter.

52. All communications between you and your writing group, as referenced in Paragraph 38 of the Complaint, concerning Ms. Dorland's allegations of plagiarism (also referenced in Paragraph 38 of the Complaint).

53. All communications between you and your writing group, as referenced in Paragraph 38 of the Complaint, concerning articles published in the Boston Globe concerning *The Kindest* and/or Ms. Dorland and you.

54. All documents and/or communications between you and the BBF (including but not limited to the One City/One Story Board) concerning Ms. Dorland and/or the Dorland Letter and/or Ms. Dorland's plagiarism and/or copyright infringement violation allegations.

55. All documents and/or communications between you and ASF concerning Ms. Dorland.

56. All communications between you and ASF concerning the Dorland Letter.

57. All communications between you and ASF concerning Ms. Dorland's plagiarism and/or copyright infringement violation allegations against you.

58. All communications between you and any other person concerning Ms. Dorland's allegation that you copied and/or plagiarized the Dorland Letter.

59. All communications between you and any other person concerning Ms. Dorland's allegation that you infringed her copyright in the Dorland Letter.

60. All documents and/or communications between yourself and GrubStreet concerning Ms. Dorland.

61. All communications between you and GrubStreet concerning the Dorland Letter.

62. All communications between you and GrubStreet concerning Ms. Dorland's plagiarism and/or copyright infringement violation allegations.

63. All documents and/or communications between yourself and Bread Loaf Writers' Conference and/or representatives of Middlebury College concerning Ms. Dorland.

64. All communications between yourself and Bread Loaf Writers' Conference and/or representatives of Middlebury College concerning *The Kindest*.

65. All communications between yourself and Bread Loaf Writers' Conference and/or representatives of Middlebury College concerning the Dorland Letter.

66. All communications between yourself and Bread Loaf Writers' Conference and/or representatives of Middlebury College concerning Ms. Dorland's plagiarism and/or copyright infringement violation allegations against you.

67. Your submission to Bread Loaf Writer's Conference and/or Middlebury College, including all writing samples provided to those entities in 2016, 2017 or 2018, including but not limited to as support for any application for a tuition scholarship.

68. All documents and communications evidencing Ms. Dorland's contacts with "various writing communities in the United States" concerning her claims of plagiarism, as referenced in Paragraph 45 of the Complaint.

69. All communications between you and the Boston Globe, or any representative of the Boston Globe, concerning Ms. Dorland, *The Kindest* and/or the Dorland Letter.

70. All communications between you and any other person concerning the Boston Globe article titled "Inspiration or plagiarism? Writing hackles raised in Boston dispute" published on July 26, 2018.

71. All communications between you and any other person concerning the Boston Globe article titled "Boston Book Festival cancels One City One Story event amid plagiarism flap" published on August 13, 2018.

72. All documents and communications concerning all payments and/or receipts received by you related to *The Kindest* and/or the Dorland Letter, including but not limited to royalties, license fees, contract payments, speaker fees, booking fees, reimbursements, sublicensing fees, and any other income of any kind related to *The Kindest* and/or the Dorland Letter.

73. All documents evidencing Ms. Dorland's permission and / or authorization for the inclusion of the Dorland Letter within *The Kindest*.

74. All documents and correspondence evidencing that Ms. Dorland's claim of plagiarism was "false," as referenced in Paragraph 52 of the Complaint. ***Any documents produced in response to this request must be clearly marked as being responsive to this request.***

75. All documents and communications concerning the BBF's rescission of its selection of *The Kindest* as the One City / One Story selection.

76. All communications and/or documents concerning any damages suffered by the BBF as a result of the rescission of the BBF's selection of *The Kindest* as its 2018 One City / One Story selection, as referenced in Paragraph 59 of the Complaint.

77. All documents and communications supporting your claim that "[t]he BBF's decision to pull Larson's short story had nothing to do with the [] validity of Dorland's claim of plagiarism or copyright infringement" as contained in Paragraph 59 of the Complaint.

78. All documents and/or communications referencing "white saviors" or "white savior narratives" as a "tone" you identified in the Dorland Letter," as referenced in the document labeled "P's Initial Disc 88".

79. All documents and communications reflecting essays, stories or any other writings authored by Ms. Dorland read and/or reviewed by you, including but not limited to copies of said writings.

80. All drafts of the story authored by you currently titled "At the Bottom of New Lake", regardless of whether or not it had been assigned said title at the time of the drafts.

81. All attachments referenced in the documents produced as your Initial Disclosures, and which were not produced.

82. A complete copy of the document reflected at P's Initial Disc. 132, without redactions. If said document is claimed as privileged, then a privilege log consistent with the Instructions contained herein.

83. All documents and communications concerning or referencing the Escrow Agreement produced at Ps Initial Disc 149, et seq.

84. All correspondence between you and the U.S. Copyright Office concerning all versions of *The Kindest*.

85. All documents evidencing any and all copyrights you own concerning all versions of *The Kindest*.

86. All documents provided to any expert in this matter.

87. All documents concerning reports Ms. Larson has received from experts, consultants, or other professionals, concerning any of the allegations, claims, or defenses at issue in this action.

88. All documents you intend to rely upon at the trial of this matter.

89. All documents received pursuant to subpoenas issued to third parties in connection with this matter.

90. The curriculum vitae of each expert whom you expect to call at trial in this case.

91. Any and all documents relied upon by any expert whom you intend to call at trial in this case.

92. Any and all statements of persons having any knowledge relevant to this action by whatever means preserved or recorded.

          Respectfully,

          DAWN DORLAND PERRY,

          By her attorneys,

          */s/ Suzanne Elovecky*
          Suzanne Elovecky, Esq. (BBO # 670047)
          PARTRIDGE, SNOW & HAHN LLP
          30 Federal Street, 7th Floor
          Boston, MA  02110
          (617) 292-7900
          selovecky@psh.com

Dated:  July 3, 2020

**CERTIFICATE OF SERVICE**

I, Suzanne Elovecky, hereby certify that on July 30, 2020, I served a copy of the foregoing by email on all parties of record.

          /s/ Suzanne Elovecky
          Suzanne Elovecky