# Exhibit A

<pre>
</pre>

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>               Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>               Defendants. | Civil Action No.<br><br>1:19-cv-10203-IT |

## AFFIDAVIT OF PLAINTIFF, THIRD-PARTY DEFENDANT, SONYA LARSON IN OPPOSITION TO THE MOTION TO COMPEL OF DEFENDANT, THIRD PARTY PLAINTIFF, DAWN DORLAND PERRY

I, Sonya Larson, Plaintiff, Third-Party Defendant in the above Action, on oath depose and state as follows:

1. I read my lawyer's opposition to Ms. Dorland's Motion to Compel and I believe that the facts stated in the opposition are true to the best of my knowledge.

2. I modified *The Kindest* for the BBF. The BBF version of the Story bears no similarity to Ms. Dorland's 2015 Letter, except perhaps for the sign off in which I use the word, "kindly." This reflects the name of my story. Also, it happens to be the same sign off Dorland uses on occasion in her emails.

3. The sum of $425 is the gross total amount of money that I have received from *The Kindest* to date from all sources including ASF and Audible.com.

4.  On May 17, 2018, I was informed that I won the BBF's One City/One Story competition.

5.  On March 16, 2021, I was contacted by Robert Kolker by email. Kolker was seeking my comments on this pending Action. Kolker claims he was contacted by Ms. Dorland, and that he has had at least two conversations with her to date.

6.  I produced the original draft of *The Kindest*. This version was <u>never shared</u> with anyone. I also produced the five published versions of *The Kindest*, each of which contains different variants of the letter within my Story. In addition, I produced over 60 interim drafts and copies of the Story.

7.  I was somewhat confused about the 92 Requests that Ms. Dorland asked me to produce. Her attorney's explanation in her pending motion was clearer, which is why I produced another 420 text and email messages.

8.  Ms. Dorland has known for many months that Audible.com re-recorded part of my Short Story. I do not believe this information was ever withheld.

9.  In the original draft of my Story that was never shared with anyone until recently, I used the name Dawn as a placeholder name. Dawn eventually became the character "Rose," which happens to be my Mother's name.

10. I believe that I supplied responses to Requests numbers 44 through 50 last summer. Regardless, I had my attorney produce them again. In looking for documents within my writer's group, I used the search terms, Dawn, Dorland, DD, DFD, kidney, letter, The Kindest, BBF, all with the date rage January 1, 2010 to the present.

11. In an email to Bread Loaf Writers' Conference, Dorland said that she contacted various writing communities and made allegations of plagiarism against me. The only relevant documents that I have are those that Dorland produced. If Dorland did not produce these documents and communications, I do not have them.

12. I did not intentionally withhold communications I had with Audible.com as requested in Exhibit P. It was never a secret that Audible.com agreed to re-record a portion of *The Kindest*. Ms. Dorland has known about this since early 2018. I thought I had supplied these communications previously. In any event, these documents have been sent to Dorland again.

13. I was asked by my attorney to turn over everything I had that was not privileged but responsive to Ms. Dorland's requests. I held onto some documents because they were either personal notes to and from my parents or just chit-chatty communications with my friends or colleagues, and some were not particularly gracious. I did not think these were relevant, but to the best of my knowledge most have been produced. I will turn over personal emails if I am required to do so.

14. I do not have great computer technical skills. I had a difficult time editing emails in order to remove obviously superfluous attachments, such as stories that have nothing to do with *The Kindest*.

15. Because of the pandemic, I have not been able to meet with my lawyer in person for over a year. If we had been able to meet, the discovery process might have been more efficient. In any event, I have spent a tremendous amount of time going through emails, text messages and other documents via mail, email, document drops, thumb drives and telephone calls. The amount of time I have spent on this process should be measured in days not in hours.

*[signature]*

Signed under the pains and penalties of perjury this 29th day of March 2021.

SONYA LARSON