UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                     Plaintiff,<br><br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                 Defendants. | **Civil Action No.**<br><br>**1:19-cv-10203-IT** |

### EMERGENCY MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORIES AND TO PRODUCE ALL REQUESTED DOCUMENTS BY PLAINTIFF, DEFENDANT IN COUNTERCLAIM, SONYA LARSON AGAINST DEFENDANT, PLAINTIFF IN COUNTERCLAIM, DAWN DORLAND PERRY

Plaintiff, Defendant in Counterclaim, Sonya Larson ("Larson") moves this court pursuant to Fed R.Civ.P. 26, 33 and 34, to order the Defendant, Plaintiff in Counterclaim, Dawn Dorland Perry ("Dorland") to further answer or respond to the following interrogatories and document requests and that she recover her costs and attorney's fees.  Larson also seeks a reasonable extension of fact discovery so that the Parties' discovery disputes can be resolved, and they can adequately prepare for the depositions of each Party.  This Motion is being filed on an emergency basis pursuant to L.R. 116.3 (e) and (f).

On February 24, 2021, a few weeks after this court issued its opinion on Larson's Rule 12(b)(6) Motion for Failure to State a Claim [Dkt. # 99], Larson propounded her first set of interrogatories to Dorland and made some additional requests for documents.  Dorland's responses to Larson's discovery are woefully inadequate in spite of the fact that Larson gave

Dorland additional time to answer the interrogatories and produce the requested documents. Responses to document requests were transmitted to Larson's counsel at 6:36 PM on Saturday, April 3, 2021, and the interrogatories were answered at 8:01 PM at night.

Dorland's deposition is presently scheduled for April 14, 2021.  Unless Dorland answers the interrogatories fully and expeditiously, Larson will be at a distinct disadvantage in that Larson has now fully produced all documents that she has in her possession or that are available to Dorland.

## I.      Interrogatories.

Larson maintains that the following interrogatories are deficient, dilatory or incomplete and moves this Court to Compel Dorland to fully answer said interrogatories.  A copy of Dorland's answers to Interrogatories is attached as Exhibit A.

Interrogatory # 1.

In Paragraph 1 of Dorland's Counterclaim for copyright infringement, Dorland alleges that she is an author, editor and writing educator.  This interrogatory asks Dorland to substantiate her claims and asks her to identify articles, stories, books, essays and other writings she has written from 2015 to date that have been produced, printed, distributed and/or published by you and/or by third-parties either in print and/or electronically.  Dorland was also asked to identify all articles, stories, books, essays and other writings she has edited from 2015 to date.  Lastly, Dorland was asked to state when and where she has taught writing classes from 2015 to date, and to state how much she was paid and how many students she had.

Dorland's Response: Dorland objects to this question because it is overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, irrelevant to the claims and defenses in this action, vague and ambiguous.  She further objects that while it

appears to be a single interrogatory, it is really three interrogatories.    Accordingly, Dorland says she cannot respond to Interrogatory No. 1.

<u>Argument</u>.  Dorland alleges in a single sentence of her own counterclaim that she is an author, editor and writing educator.  Larson wants to know what she has written that has been printed and published and where and how her writings were published and when, what she has edited and where she has taught and continues to teach.  There is nothing ambiguous about the questions, and Dorland herself made these basic facts relevant and material in her own counterclaim.

It is curious that for an author, a review of the Internet under Dorland's name has turned up no examples of what she has written, except for a reference to a novel she has been working on for quite some time.  [Exhibit B; Epstein Aff. ¶ 1]

Also, L.R. 26.1(c) permits subparts of basic interrogatories that are logical extensions of the basic interrogatory that seek only to obtain specified additional particularized information with respect to the basic interrogatory.  (<u>Myers v. U.S. Paint Co., Div. of Grow Grp.</u>, 116 F.R.D. 165, 165–66 (D. Mass. 1987)) (The judges purposefully provided that subparts are not to be separately counted as long as they are related to the primary question and are logical extensions of the basic interrogatory.)

Dorland has improperly stated that most of Larson's interrogatories exceed the limit of 25 that are allowed.  Dorland has misapplied L.R. 26.1(c) and she should be ordered to fully respond to each question in full.

**Interrogatory No. 2**

In this Interrogatory, Larson asks Dorland what she has done with the 2015 Letter since it was posted on her Facebook group.  Larson wants to know if Dorland wrote any articles, stories,

books, essays and other things that include or reference the Dorland Letter in any way, and whether any of said articles, stories, books, essays and other things that she has written were produced, printed, distributed and/or published either by her (self-published) or by third-parties.

Dorland's Response: Dorland objects to this question because it is overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous.  She further objects that while it appears to be a single interrogatory, it is really two interrogatories.   Dorland did say that she sent the letter to administrators at UCLA who were involved in her kidney donation.  However, she refuses to say if she wrote any articles, stories, books, essays and other things related to the letter.

Argument:  The 2015 Dorland Letter is at the heart of Dorland's claims of plagiarism and copyright infringement, and it is critical to know if Dorland has done anything with the letter from the time it was first posted on Facebook other than to pursue claims against Larson.

**Interrogatories No. 3 and 4**

Interrogatory 3 seeks to identify all persons who were members of Dorland's Facebook Group at any time from 2015 to date, stating whether the individuals were friends or family, how and for how long Dorland knew said persons when they were admitted to the Group, and when and how they were invited to join the Group.

Interrogatory 4 seeks the identify all persons who were invited or asked become members of her Facebook Group, but declined to join for any reason.

Dorland's Response: Dorland objected to both interrogatories on the grounds that they were overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous.  She further objects that while each question appears to be a single interrogatory, they are really multiple interrogatories.   Dorland further objects to

producing the names of individuals sought in interrogatory 3, who had "no expectation that they

would be revealed in public litigation."

Argument:  Again, the 2015 Dorland Letter is at the heart of Dorland's claims of plagiarism and

copyright infringement.  Dorland already has admitted that the 2015 Letter "got shared widely

around the UCLA transplant team."  [Exhibit C]  Larson remembers seeing that Dorland's

Facebook group had between 250 to 300 members.  This information was included on Dorland's

own Facebook pages.  [Exhibit D; Larson Aff. ¶ 1]  All information related to the 2015 Letter

could have relevance to Larson's defenses and it should be produced.  If Dorland wants the

identity of these individuals protected, she can ask for a protective order.  Dorland has already

produced Facebook comments containing the names of over 70 individuals who commented on

Dorland's surgery.  [Epstein Aff. ¶ 2]  Dorland did not object when she previously produced

these documents and she should not be able to object now.

## Interrogatories 6 through 10

Paragraphs 9 through 21 of Dorland's counterclaim says that Dorland and Larson were

friendly with each other in 2008 and 2009 but began to develop a "true friendship" in 2010.  [¶ 9]

Dorland alleges that in 2010 and 2011, Dorland and Larson frequently socialized with each other

[¶ 10].  Dorland claims that their friendship played out through significant emails, shared

cocktails, shared meals, invitations to each other's birthday celebrations, gatherings with each

other's spouses and with GrubStreet writing colleagues. [¶ 11]  Dorland further claims that she

and Larson participated in writing workshops and other literary events together [¶ 12];  that

Dorland and Larson were guests at or invited to each other's homes on several occasions [¶ 13];

that they had conversations about their career paths and personal lives  [¶ 14]; that Larson

attended a farewell party when Dorland was moving to Maryland to get a Master's degree [¶ 19];

that the Parties stayed in touch when Dorland was in school full-time [¶ 20]; that Larson "invited' Dorland to Boston to participate in a Grub Street program [¶ 21], which Larson denies happening.   [Larson Aff. ¶ 2]

While Larson admits that she knows Dorland, she denies that there was ever a "true friendship" between them.  The counterclaim contains references to Larson taking advantage of Dorland's friendship when Larson wrote The Kindest [¶¶ 72 & 122 & 130] and alleges that Larson's actions were "cruel" and "hurtful and shocking artistic and personal betrayals." [¶ 167]

<u>Dorland Response</u>:  Dorland's objects to these questions on the grounds that they are overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportionate to the needs of this litigation, irrelevant, vague and ambiguous. She further objects that while the questions appear to be single interrogatories, they are really multiple interrogatories wrapped into one.  Dorland refused to respond to Interrogatories No. 6, 7, 8, 9 and 10.

<u>Argument</u>:  Dorland made the alleged close friendship between the Parties relevant and material. Larson is simply trying to establish the factual basis for Dorland's allegations that the two were "true" personal friends.  Larson asks if they shared any meals together (breakfast, lunch and/or dinner) or went out for coffee or shared a glass of wine or other cocktails together.  Larson simply wants to know when and how often Dorland claims they talked with each other on the telephone or went for walks together, or did activities with one another outside of a work environment.  Dorland makes these allegations herself and it is time to substantiate her claims, which form the basis for the "cruel" and "hurtful and shocking artistic and personal betrayals" that Dorland accuses Larson of perpetrating.

**Interrogatory No. 15**

Please state in as much detail as possible, in what way or ways you believe the final BBF version of *The Kindest* infringes the Dorland Letter.

Dorland Response:  Dorland objects to this question because it does not seek facts but rather legal opinions and conclusions, is protected by attorney work product and is vague and ambiguous.  She further objects that the total number of interrogatories exceeds the limits of Rule 33. Dorland refuses to respond to Interrogatory 15.

Argument:  In her Counterclaim, Dorland goes on in considerable detail explaining how she believes that the Brilliance, Audible.com and American Short Fiction ("ASF") versions of *The Kindest* plagiarize or infringe her 2015 Letter.  [See ¶¶ 90 to 96, 99 to 104, 115, 119 to 129, 155 to 161 and 176 &177]  Dorland was not at a loss for facts or opinions with respect to earlier versions of *The Kindest*.  She should be able to point to what she believes are the "substantial similarities" between her Letter and in the final Boston Book Festival ("BBF") version of Larson's story.

**Interrogatory No. 16**

In this interrogatory, Dorland was asked to identify from 2018 to date, all newspaper, magazine and/or broadcast news mediums as well as blogs, social media platforms, websites and third party publications of any kind that she contacted about Larson winning the One City/One Story competition sponsored by the BBF, and/or her claim that Larson plagiarized and/or infringed The Dorland Letter.

Dorland's Response: Dorland objects to this question because it is overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague

and ambiguous, and not proportionate to the needs of this litigation. She further objects claiming that the total number of interrogatories exceeds the limits of Rule 33.

Notwithstanding these objections, Dorland admits that she contacted the Boston Globe in June 2018, and a New York Times podcast and a media reporter through a direct message on Twitter.

Argument: What Dorland does not admit is that she recently contacted journalist and New York Times best-selling author, Robert Kolker, in an effort to get him to write a media story about this Action. According to Wikipedia,

> Robert Kolker is an American journalist who worked as a contributing editor at New York Magazine and a former projects and investigations reporter for Bloomberg News and Bloomberg Businessweek. He is the author of *Lost Girls*, a New York Times best-selling true crime book that was named one of Publishers Weekly's Top Ten Books of 2013. In 2020, his book *Hidden Valley Road* was published and was selected for the revival of Oprah's Book Club.

[https://en.wikipedia.org/wiki/Robert_Kolker]

Larson was contacted by Robert Kolker because he was writing a story about this Action. He tells Larson that Dorland contacted him in January 2021, to explain what is going on with this litigation. Kolker was interested in the story and pitched it to the New York Times Magazine. The NY Times has agreed to publish a story about this Action as early as this Spring. Kolker tells Larson that he interviewed Dorland for the story on at least two occasions and that they have exchanged emails. [Larson Aff. ¶ 3]

Dorland has totally failed to divulge any of this information.

**<u>Interrogatory No. 18</u>**

Larson is asking Dorland to identify all individuals or entities (other than ASF and the BBF) that she contacted or attempted to contact with respect to Larson, the One City/One Story

competition, and/or her claim(s) that Larson was a plagiarist and/or committed copyright infringement.

Dorland's Response: Dorland's objects to this question because it is overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous, and not proportionate to the needs of this litigation.  She further objects claiming that the total number of interrogatories exceeds the limits of Rule 33.

Argument:  Notwithstanding these objections, Dorland admits that she contacted a few organizations, but she fails to state that she also contacted the Authors Guild, PEN America, the Vermont Studio Center, the literary agent Samantha Shea, authors Jennifer Haigh, Steve Almond, Chip Cheek, Michael Collier, Samantha Hunt, Bret Anthony Johnston, Deborah Plummer, Ethan Gilsdorf, Sondra Levenson, Kathy Sherbrooke, Maud Casey, and Andrew Goldstein.  She also does not name the individuals she "knew" and contacted at Bread Loaf Writers' Conference, Middlebury College, the University of Maryland, Tin House, the Vermont Studio Center, PEN America, the Authors Guild, GrubStreet, and the Association of Literary Scholars, Critics, and Writers.  Larson was able to find out about these contacts, but she does not necessarily know what Dorland said to them.

**Interrogatory No. 21**

Larson asked Dorland to describe any personal information and/or personal details about Larson's life, Larson's past and/or career paths and aspirations that Larson divulged to her in any of her conversations with her from 2010 to 2018.

Dorland's Response: Dorland objects to this question because it is overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague

and ambiguous, and not proportionate to the needs of this litigation.  She further objects claiming that the total number of interrogatories exceeds the limits of Rule 33.

Argument:  In Paragraph 14 of her Counterclaim, Dorland says the Parties' "conversations included their career paths and personal lives."  Dorland makes this an issue, which Larson disputes.  Nevertheless, this information is important for credibility purposes.

**Interrogatory No. 23**

In this Interrogatory, Larson has asked Dorland to explain and itemize the damages she is claiming with respect to each version of *The Kindest*.

Dorland's Response: Dorland objects to this question because it is overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous, and not proportionate to the needs of this litigation.  She further objects claiming that the total number of interrogatories exceeds the limits of Rule 33.

Argument:  When Dorland answered this interrogatory, Larson already had produced 1,000's of pages of documents and she believes that her document production is complete.  Larson has stated on numerous occasions that she received $300 from ASF and $125 from Audible.com.  Dorland says she will supplement response at an appropriate time.

Surely, Dorland can compute her damages from the information she already has.  It is also very important to find out if Dorland believes she is entitled to Statutory Damages and attorney fees under the Copyright Act.  Larson believes that Dorland is not entitled to enhanced damages because the copyright to the Dorland Letter was not registered with the Copyright Office until long after Larson is alleged to have copied and used any portion of the letter.  [See 17 U.S.C. § 412]

**Interrogatory No. 24**

In this Interrogatory, Larson is seeking information as to how Dorland believes that Larson profited from *The Kindest.*  Larson references Paragraph 143 of her Counterclaim, which states that Larson "profited from selection of *The Kindest* by the BBF as a featured short story for 2018."

Dorland's Response: Dorland objects to this question because it is overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous, and not proportionate to the needs of this litigation.  She further objects claiming attorney-client privilege and that the total number of interrogatories exceeds the limits of Rule 33.  Dorland refused to respond to this interrogatory.

Argument:  Larson has produced mounds of documents to date and she believes her production is complete.  Surely, Dorland can state how she believes that Larson profited from the selection of *The Kindest* by the BBF as a featured short story for 2018, and even if Larson's production is not complete (which it is), Dorland can still state how Larson profited from *The Kindest*'s selection by the BBF from the information she currently has.

**II.     Document Requests:**

A copy of Dorland's responses to Larson's document requests is attached as Exhibit E.

**Requests 1 and 2.**     In these Requests, Larson is first seeking copies of all articles, stories, books, essays and other writings that Dorland has written from 2015 to date that have been produced, printed, distributed and/or published either in print and/or electronically, second, copies of all articles, essays and other writings that Dorland has written from 2015 to date that reference the 2015 Dorland Letter.

<u>Dorland's Response</u>: Dorland objects to these questions on the ground that they are overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous, and not proportionate to the needs of this litigation.  She further claims that these requests are designed or intended to annoy, embarrass and oppress Dorland.  Dorland furthered threatens to seek a protective order if Larson persists in her efforts to obtain documents consistent with these requests.  Dorland refused to produce any documents.

<u>Argument</u>:  Larson has a right to know what Dorland has written and what she has done with her 2015 Letter other than to make claims against Larson for plagiarism and copyright infringement. Larson produced a copy of every version of *The Kindest* that she has written including over 60 copies of the Story.  If Dorland's request of Larson for copies of her Story are not oppressive, then this request is not oppressive either.  After all, Dorland claims that she is an author.  This claim as well as the 2015 Dorland letter are at the heart of this Action and all requested documents should be produced.

**Request 6.**      Excluding ASF and the BBF, Larson is seeking documents or other communications that were sent or received from individuals or entities that she contacted or attempted to contact with respect to Larson, the One City/One Story competition, and/or her claim(s) that Larson was a plagiarist and/or committed copyright infringement.

<u>Dorland's Response</u>: Dorland objects to these questions on the ground that they are overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not proportionate to the needs of this litigation or protected by the attorney-client privilege.  She further claims that some of these documents were produced after this litigation was commenced.

<u>Argument</u>:  Larson is not seeking documents protected by the attorney-client privilege. However, if Dorland sent or received correspondence related to Larson or any of the claims against her at any time even after this litigation was commenced, Larson has a right to see these documents.

We know that Dorland contacted Robert Kolker who is now writing a magazine article for the NY Times about this case.  See argument for compelling an answer to Interrogatory No. 16.  These and all other documents should be produced.

In addition, in a just produced August 16, 2018 email to the Dear Sugar podcast at the New York Times, Dorland's opening line is, "I'm a writer who wrote you a letter last year about an artistic betrayal." Dorland has not produced this letter either that she herself references, and it should be produced.  Dorland has totally failed to divulge any of this information, and has refused to share her correspondence with Kolker, despite the fact that such correspondence is relevant to this Request.

Furthermore, in Dorland's response to interrogatories, she states that she contacted Tin House, the Vermont Studio Center, and the Association of Literary Scholars, Critics, and Writers. Dorland has not produced any correspondence with these organizations. Larson also knows that Dorland sent an email in 2018 to the author Christopher Castellani about her complaints against Larson. Dorland has not produced this email and it must be produced. Larson also knows that Dorland sent text messages in 2018 to the author Chip Cheek about her complaints against Larson. Dorland has not produced these text messages and they must be produced.

**Request 10.**    This request is seeking documents that relate to Dorland's claim for damages in this Action.

<u>Dorland's Response</u>: Dorland objects to this request because the documents are protected by the attorney-client privilege.  She says she will supplement this response prior to trial.

<u>Argument</u>:  Unless extended by this Court, fact discovery ends on April 14, 2021.  Now is the time for Dorland to produce whatever documents she currently has.  She can supplement this response in the future if necessary.

**Request 13.**   This request is seeking email correspondence that the Parties exchanged relating to shared cocktails, meals, invitations to each other's birthday celebrations, gatherings with each other's spouses and GrubStreet writing colleagues.

<u>Dorland's Response</u>: Dorland's objects to these questions on the ground that they are overly, broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and irrelevant.

<u>Argument</u>:  Allegations related to the social interaction between the Parties are still part of Dorland's Counterclaim and should be produced.  The counterclaim contains references to Larson taking advantage of Dorland's friendship when Larson wrote The Kindest [¶¶ 72 & 122 & 130] and alleges that Larson's actions were "cruel" and "hurtful and shocking artistic and personal betrayals." [¶ 167]  These documents are relevant and material.

WHEREFORE, Larson moves this court to order Dorland to further answer or respond to the enumerated interrogatories and document requests, extend fact discovery for a reasonable amount of time, and that Larson recover her costs and attorney's fees.

Sonya Larson,
By her attorney,

April 5, 2021

/s/ *Andrew D. Epstein*

_____
Andrew D. Epstein, Esquire
BBO #155140
Barker, Epstein, & Loscocco
176 Federal Street
Boston, MA 02110
Direct Line: (617) 273-5700
FAX: (617) 426-5251
Email: Photolaw@aol.com

**<u>Certificate of Service</u>**

I certify that Plaintiff/Defendant in Counterclaim's Emergency Motion to Compel against Dawn Dorland Perry, Defendant, Third Party Plaintiff was sent via email to all counsel of record as follows:

Suzanne M. Elovecky and                    Matthew H. Greene
<u>selovecky@psh.com</u>                          mgreene@boyleshaughnessy.com


                                            */s/ Andrew D. Epstein*
                                            _____
April 5, 2021                               Andrew D. Epstein




**<u>Compliance with Local Rules 116.3 (e) and (f)</u>**

I certify that I sent a copy of Plaintiff/Defendant in Counterclaim's Emergency Motion to Compel against Dawn Dorland Perry, Defendant, Third Party Plaintiff via email in advance of the status conference with the Court scheduled today, April 5, 2021 at 3:30 PM.   The Parties did confer with each other by telephone on April 5, 2021, but were unable to narrow the issues.




                                            */s/ Andrew D. Epstein*
                                            _____
April 5, 2021                               Andrew D. Epstein