# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SONYA LARSON,

             Plaintiff

    v.

DAWN DORLAND PERRY,
COHEN BUSINESS LAW GROUP, PC and
JEFFREY A. COHEN, ESQUIRE,

           Defendants.

           AND

DAWN DORLAND PERRY

           Plaintiff-in-Counterclaim
    v.

SONYA LARSON

           Defendant-in-Counterclaim

C. A. No.: 1:19-CV-10203-IT

## DAWN DORLAND PERRY'S REPLY BRIEF IN SUPPORT OF HER MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY SONYA LARSON

Dawn Dorland Perry ("Ms. Dorland") submits this reply brief in further support of her motion to compel Sonya Larson, the Plaintiff and Defendant-in-Counterclaim in this litigation ("Ms. Larson"), to produce documents responsive to Ms. Dorland's Request for Production of Documents. Despite a conference pursuant to Local Rules 7.1 and 37.1 held amongst counsel on January 15, 2021 and followed up with a detailed email outlining issues with Ms. Larson's production, Ms. Larson refused to engage concerning her production, claiming instead that this litigation – which Ms. Larson herself initiated – is simply not worth enough money to justify her compliance with the Rules.

However, after Ms. Dorland was forced to turn to the Court for relief, and on the eve of Ms. Larson filing her opposition, Ms. Larson produced an additional 420 documents on a thumb drive, which Ms. Dorland received on March 30, 2021, the day after Ms. Larson filed her opposition to the motion to compel.

While Ms. Larson suggests in her opposition that this later production consisted of immaterial documents produced for the sole purpose of placating Ms. Dorland, that is not the case.  The documents produced are relevant and directly on point to Ms. Dorland's claims and defenses.  Indeed, the documents call into question Ms. Larson's claims brought against Ms. Dorland, as follows:



Jan 23, 2016, 10:46 AM

Hey Sari-- if you have a moment, could I talk to you on the phone for like 10 minutes?

I think I'm *DONE* with the kidney story but I feel nervous about sending it out b/c it literally has sentences that I verbatim grabbed from Dawn's letter on FB. I've tried to change it but I can't seem to-- that letter was just too damn good. I'm not sure what to do...feeling morally compromised/like a good artist but a shitty person...

Plus Dawn just sent me a note that said, "Can't wait for the Muse!! Good job! Kisses"

Whitney Scharer
Sari will have good advice! I bet Alexandria will too

Whitney Scharer
That email from dawn trails some strings....

<u>See</u> January 23, 2016 text exchange produced by S. Larson, attached hereto as **<u>Exhibit A</u>**. There can be no question that this document wherein Ms. Larson admits to verbatim copying of Ms. Dorland's letter, should have been produced in the first instance.  <u>Id</u>.  This is but one example of

the hundreds of the relevant, material and responsive documents produced by Ms. Larson only *after* Ms. Dorland brought this matter to the Court's attention. In light of this production, it is clear that Ms. Larson failed to comply with her obligations pursuant to the Rules, and that Ms. Dorland is entitled to sanctions, including attorney's fees, as well as assurances that all responsive documents have been produced.

A. **Ms. Larson's Opposition Underscores Her Lack of Compliance With the Rules**

Inexplicably, Ms. Larson, through her Opposition, appears to claim that the ***number*** of documents produced, by both parties and non-parties, controls her own obligations under the Federal Rules of Civil Procedure. That is not the case. Whether third parties have produced multiple copies of emails is not determinative of Ms. Larson's discovery obligations, nor does it have any bearing on process Ms. Larson undertakes to search, review and produce from what is in her own possession, custody and control. There is no dispute that the BBF and ASF have produced documents in this matter in response to a subpoena. While subpoenas were served to GrubStreet and Middlebury College, documents have yet to be produced due to extensions granted and internal requirements due to educational and employment-related regulations. Further, Ms. Dorland's motion to compel, and her attempts to resolve the discovery disputes through the requisite conferences, do not address issues concerning communications with any of the third parties who had been subpoenaed. In her Motion, Ms. Dorland did outline her incredulity that, based on what she learned from documents that were produced by the BBF, that Ms. Larson's production did not contain communications amongst Ms. Larson and her peer group concerning the BBF's decision to cancel the One City/One Story program in 2018, but it did not seek duplicative productions of documents produced by the BBF. Ms. Larson's

argument that the number of documents (or pages) produced by third parties has any relevance on her own production is a distraction and does not have any bearing on her own production.

Ms. Larson also, incredulously, suggests that she and she alone is the arbiter as to what documents are relevant to her tort claims, and that once she produces the documents she deems helpful to proving her claim for interference, her obligations have been met.  <u>See</u> Opposition at p. 6.  This is not the case.  Ms. Larson's claims for intentional interference with advantageous business relationships, as she concedes, requires that she prove that Ms. Dorland acted with an improper motive or means.  <u>Id</u>.  Documents concerning Ms. Larson's copying of Ms. Dorland's letter, where Ms. Larson admits to doing so (<u>see</u> Ex. A), work to disprove Ms. Larson's claim, as Ms. Dorland's means, motive or purpose in contacting publishers contemplating the publication of her own works under Ms. Larson's name, was not improper.  While it is clear that Ms. Larson ***prefers*** not to produce these documents, as they further show that these claims were likely brought in bad faith as Ms. Larson of course knew that her story contained Ms. Dorland's work, that does not obviate her ***obligation*** to prove them.[1]

It is even more stunning that Ms. Larson argues that "Dorland will probably deny that she intentionally and purposefully interfered [but that it] is a matter for this court to consider at a future time."  Opposition at p. 7.  Whether this matter is ultimately decided by the Court or by a jury, the consideration of the issues is to be made after the parties have the benefit of discovery,

---

[1] Concerning Ms. Larson's defamation claim, she makes no representations concerning her own production, and instead attempts to raise, or at least allude to, undefined issues with Ms. Dorland's production.  Ms. Dorland made her production in June and July of 2020, to which Ms. Larson never responded, reacted or complained.  In February of 2021, Ms. Larson served a second set of requests for production, which were largely duplicative of the first, and which also sought significant documents related to Ms. Dorland's allegations concerning her now-dismissed intentional infliction of emotional distress claim.  Due to the irrelevance and duplication of these requests, coupled with Ms. Dorland's previous complete production, only seven (7) pages were produced in response to this new request.

4

and arguing that discovery is not necessary now because the Court will make decisions later completely misapprehends the litigation process.[2]

Ms. Larson, through counsel, has further disclosed counsel's hands-off approach to the discovery process. In her opposition, Ms. Larson states that "she was not absolutely sure what Dorland was seeking from her when she received the requests from her counsel." Opp., p. 12. This is consistent with Ms. Larson's counsel's prior statements wherein he stated that he did not know what his client did to search for documents, as he simply "sent her the requests," and that he did not know what she did to search for additional documents following the parties' conference because he simply "forwarded your email to her." Counsel has obligations beyond simply forwarding a document and leaving his client to decipher the legal import and the legal obligations.

Counsel also had an obligation to engage in the meet and confer process, which he did not, as reflected in Ms. Dorland's Memorandum in support of her Motion.

Notwithstanding counsel's neglect in these discovery matters, Ms. Larson's apparent "confusion" over terms is unconvincing. Further, the suggestion that Ms. Dorland's motion to compel "more clearly describes" the issues with the initial discovery response is inaccurate, as the motion to compel was, in large part, an adaptation of counsel's January 25, 2021 email, omitting categories of documents related to the intentional infliction of emotional distress, and omitting issues related to the various versions of "The Kindest," which were produced prior to

---

[2] Ms. Larson mischaracterizes the parties' prior discussions concerning depositions. The first deposition notice to be served in this case was Ms. Dorland's deposition notice of Ms. Larson. When Ms. Dorland's review of Ms. Larson's documents evidenced that the production was woefully deficient, Ms. Dorland requested the requisite conference, and later made clear that she would not depose Ms. Larson unless and until the document production was complete. Ms. Dorland, through counsel, never claimed that Ms. Larson's documents were required for Ms. Dorland's deposition, although scheduling became an issue as the calendar proceeded toward the close of discovery. Further, Defendants Jeffrey Cohen and the Cohen Business Law Group were also involved in this discussion, which Ms. Larson fails to include in her opposition. The issue concerning depositions is being addressed separately by the Court in a hearing scheduled for April 5, 2021 at 3:30 p.m.

the motion to compel.  As an example of how Ms. Dorland's requests and follow up

communications were not, in fact, unclear: In her opposition, Ms. Larson claims that she did not

know what was meant by the term "membership" in a Facebook group, because she did not "join

the group as a 'member'."  See Opp. at p. 12.  However, in an email that Ms. Larson sent to Ms.

Dorland in 2016, she clearly stated "my memory is that I did indeed join the FB group."  See

**Exhibit B**, July 12, 2016 email from S. Larson to D. Dorland.  This email was included in Ms.

Larson's first production, and there is no explanation for her to submission to this Court – after

her apparent review and production of that email earlier this year – that she did not "join" the FB

group at issue and therefore was unable to decipher the term "membership."  Of course, had she

been struck by such confusion, her counsel should have been available to assist, which he clearly

was not.[3]

      Ms. Dorland has reviewed the 420 documents recently produced by Ms. Larson, the vast

majority of which are directly relevant to the claims and defenses in this case.  Ms. Dorland has

no way of knowing, either from the production or Ms. Larson's opposition, whether this

represents a complete production, and she understands she may never know.[4]  However, it is

clear from the statements made by Ms. Larson and her counsel that counsel did not oversee the

---

[3] Counsel goes on in the opposition to state that Ms. Larson does not have any documents that "reflect" her membership in the FB group, see Opp. at p. 12.  However, Exhibit A is a document which "reflects Ms. Larson's membership in the Facebook group," as the letter was posted only in the private and secret Facebook group, and the only way Ms. Larson could have seen it was if she was a member in that group.  Other documents produced reflect that she had access to the content shared in the private and secret Facebook group, as a member, including early versions of The Kindest which include additional copied language used by Ms. Dorland in posts she made within her group, in addition to wholesale copying of Ms. Dorland's letter.

[4] There is at least one instance wherein it appears the production remains incomplete: Ms. Larson produced certain text messages with her peer group concerning the award she was granted by the National Endowment for the Arts ("NEA").  In Ms. Larson's interrogatory responses, she claimed that "The Kindest" was "one component" of the $25,000.00 prize she won from the NEA, while her text messages evidence that it was, in fact, awarded solely on The Kindest.  No documents were produced reflecting communications with the NEA, and announcement of the award, the submission of The Kindest to the NEA, or any other information concerning this award based on The Kindest.  All of this information would be relevant to the damages Ms. Dorland is claiming in this matter.  See, e.g., Ex. C. at p. 1 (text messages from S. Larson re: NEA Award); Ex. D (S. Larson responses to Interrogatories, at Interrogatory No. 16).

discovery process, and that both Ms. Larson and counsel are making decisions concerning what should be produced based on unilateral judgment calls concerning this case, which they initiated. A plaintiff is not entitled to determine which documents are "key" to ***proving*** their claims and therefore produce only those documents.  Therefore, Ms. Dorland seeks an order requiring Ms. Larson and her counsel to make a complete and thorough production of all responsive documents in Ms. Larson's possession, custody and control, including but not limited to emails, text messages, Facebook posts, Facebook direct messages, Twitter posts, Twitter Direct Messages, Slack messages, Instagram messages, and any other communication form used by Ms. Larson for the period of 2015 through 2020.

## B.      Ms. Dorland is Entitled to Sanctions Under the Rules.

Pursuant to Fed. R. Civ. P. 37(a), a party may, upon reasonable notice to other parties, move for an order compelling discovery.  See, e.g., Afreedi v. Bennett, 517 F. Supp.2d 521 (D. Mass. 2007).  Fed. R. Civ. P. 37(a)(4)(A) states that when a motion to compel pursuant to Rule 37(a) is allowed, or when responses are made after a motion has been filed, "the court shall, after affording an opportunity to be heard, require the party … whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expense incurred in making the motion, including attorney's fees[.]"  The exceptions to this requirement are (a) if the motion was filed without the movant's first making a good faith effort to obtain the disclosure without court action, (b) that the nondisclosure, response, or objection was substantially justified, or (c) that other circumstances make an award of expenses unjust.

Here, there is no question that the March 30, 2021 production of 420 documents was made after Ms. Dorland's March 15, 2021 motion was filed.  Pursuant to Fed. R. Civ. P.

37(a)(4)(A), this production requires an order of sanctions. None of the exceptions apply to these circumstances. First, Ms. Dorland's counsel sought and held a discovery conference with Ms. Larson's counsel and counsel for the co-defendants on January 15, 2021, and that is not in dispute. <u>See</u> Memo at p. 3. Ms. Dorland's counsel followed up after that conference with a detailed email setting forth issues raised on the call, and, as the parties agreed, outlining request-by-request issues. <u>Id</u>. at p. 3, Ex. B. For weeks, Ms. Dorland pressed for additional documents, and those emails were met with responses such as "the burden to prove my defamation and intentional interference claim is on me." <u>See</u> Memo at p. 1, Ex. A. No meaningful response to the issues raised during the discovery conference was made until Ms. Larson's opposition was filed. Second, in this matter, the withholding of (or refusal to search for) documents was not justified. There is no claim of confidentiality, there is no claim of disability, there is no claim of lack of access. <u>See</u> Opp., generally. In fact, the time that was afforded to Ms. Larson for this production was overly long, and generously so, based on claims of illness and complications from childbirth by both Ms. Larson and her counsel, which Ms. Dorland and her counsel respected. Ms. Dorland further accommodated any difficulties related to the current global pandemic. It simply cannot be the case that the extended production period provided was insufficient for a simple and basic search of records in the possession, custody and control of an individual. This is a single custodian, not a corporation. Finally, there is no circumstance here, in light of all of the factors described herein, that makes an award of sanctions unjust. Ms. Larson brought this litigation, after copying Ms. Dorland's letter and publishing it as her own work.[5] She then delayed in producing documents, or responding in any fashion, for more than

---

[5] While Ms. Larson continues to state that she did "not copy" Ms. Dorland's letter, even in her current Opposition, other documents authored by Ms. Larson contradict this statement. For example, Exhibit A to this reply brief is a text message authored by Ms. Larson wherein she clearly states that she was "nervous" about sending the letter to

six (6) months, ultimately making an anemic production that on its face evidenced its lack of completeness.  When pressed, Ms. Larson and her counsel claimed that Ms. Dorland was not entitled to documents concerning Ms. Larson's tort claims, documents which Ms. Dorland now knows will certainly bolster her defenses to Ms. Larson's unfounded claims.  In light of the significant extensions granted in this matter, there is no basis upon which for Ms. Larson or her counsel to claim that the current pandemic has any impact on this discovery process.  Ms. Dorland and Attorney Cohen have complied with their discovery obligations, as have countless other litigants, despite the pandemic.

It bears repeating that the nature of the documents produced on March 30, 2021 is particularly troubling, evidencing the reasonableness of an award of sanctions, including attorney's fees, in this circumstance.  The documents that were withheld are directly on point, and support Ms. Dorland's defenses on all claims brought against her, as well as her own affirmative claims.  Additional exemplars of the relevance of these key documents are attached hereto as **Exhibit C**.

Respectfully Submitted,

DAWN DORLAND PERRY,

By her attorneys,

*/s/ Suzanne Elovecky*

Suzanne Elovecky (BBO # 670047)
PARTRIDGE, SNOW & HAHN LLP
30 Federal Street, 7th Floor
Boston, MA  02110
(617) 292-7900
selovecky@psh.com

Dated:  April __, 2021

---

potential publishers because it "literally has sentences that I verbatim grabbed from Dawn's letter on FB."  See Exhibit A.

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April __, 2021.


*/s/ Suzanne M. Elovecky*
Suzanne M. Elovecky (BBO #670047)

# EXHIBIT A

Jan 23, 2016, 10:48 AM

> Hey Sari-- if you have a moment, could I talk to you on the phone for like 10 minutes?

> I think I'm *DONE* with the kidney story but I feel nervous about sending it out b/c it literally has sentences that I verbatim grabbed from Dawn's letter on FB. I've tried to change it but I can't seem to-- that letter was just too damn good. I'm not sure what to do...feeling morally compromised/like a good artist but a shitty person...

> Plus Dawn just sent me a note that said, "Can't wait for the Muse!! Good job! Kisses"



Whitney Scharer

Sari will have good advice! I bet Alexandria will too

  



Whitney Scharer

That email from dawn trails some strings....

# EXHIBIT B

wrote:

Hey Dawn!

Yes, I'll try not to pressure myself too much. And my memory is that I did indeed join the FB group; either way, I want to emphasize that my story is not about you or your particular gift, but about narrative possibilities I began thinking about in the context of kidney donation. So while your tremendous gift certainly prompted my imagination, I actually see the processing of writing the story as quite separate. Thus why I haven't mentioned the piece to you (or really to anyone outside of my writing group).

And I love the idea that we all deserve such gifts-- it's an idea that seems seldom entertained when people debate which organ recipients may be more "deserving" than others, and for what reasons. My doctor friends tell me, for example, that they won't perform transplant surgery on someone they suspect won't take steadfast care of the new organ. Which makes sense, I suppose, but obviously that calculus has a huge impact on who gets kidneys and who doesn't. It's all so complex and the stakes are so high-- I find it so fascinating!

Cheers,
Sonya

Sonya Larson
Assistant Director, Muse Conference
In office Monday-Friday, 12:00-6:00pm. I check email starting at 1:00pm.



Grub Street
162 Boylston Street, 5th Floor
Boston, MA 02116

grubstreet.org | 617.695.0075
TW: @GrubWriters | FB: GrubStreetWriters

On Mon, Jul 11, 2016 at 7:10 PM, Dawn Dorland <dawndorland@gmail.com> wrote:

Hey, girl! Have an awesome time at VSC! Try not to pressure yourself too much...

& thanks for catching me up on your kidney work. I admit, I was a little surprised to hear you'd been working on something like that since we're friends and you hadn't mentioned it (and you hadn't seemed interested in joining the fb group or interacting with my story too much--maybe I got the wrong idea there?). But of course, it's very flattering for the gesture to already be finding its expression in art. Indeed, many of your same questions are what fuel my own advocacy, which at its center is a sense that we all deserve such gifts.

Kindly,

# EXHIBIT C

To: Celeste Ng

CONGRATULATIONS!!!!! SO EXCITING

It's just so fucking cool. Three Chunks with NEAs!!

and also SO INCREDIBLY AWESOME that you won it for the KIDNEY STORY

FUCK YOU, DFD

I know, RIGHT??? That story has taken SUCH a beating, as you well know, and I'm STILL fighting to get it out there. DFD is going to freak out, but my lawyers have assured me that she can freak out all she wants; there's nothing she can do

YESSSSSSSS

and HAAAAAAAA I'm SO HAPPY FOR YOU

Wait has that story... never been published?

Wasn't it part of ASF?

It was, but after DD came after me, ASF took it off their website, and the audio version was taken down too. DD tried to get me to sign a doc saying I'd never publish it in any iteration ever again— it's like she's so scared of it. The woman is nuts.

EXTRA FUCK HER

she's so awful and I hope she is writhing into pieces under her giant hat

It DID, thankfully, just get published in a small anthology, which I haven't publicized yet. But now that the NEA news is out, I think I will

HA HA. I have no doubt she will writhe. But thankfully, she's given me a very strong education in how to weather storms like this. She's only made me stronger!!

that's exactly right!

she was a trial by fire of writing things you believe in and will defend

nd also a good reminder of WHY you need to write these stories

To: Sari Boren

Jun 16, 2017, 2:19 PM

I have news, my dear-- my kidney story is getting published!

Omg! Where?

American Short Fiction!

Cool!!

I am excited but also worried that DD is going to murder me

Eh. Whatever. Just don't use her note

THANK YOU

To: Celeste Ng

Jun 7, 2018, 5:39 PM

DAWN DORLAND AND HER ONE KIDNEY CAN GO AND FUCK THEMSELVES

Oh goddddddd

Seriously, thank you

I feel in such a panic right now

I just replied and also forwsrdd to matt (I'm in the car to NH)

YOU DID NOTHING WRONG

DAWN CAN GO FUCK HER ONE KIDNEY

Thank you for making me LAUGH!

I need that right now!!

She is fucking threatening w a lawyer as a way to intimidate you

Which is the shittiest power move

Do you think so?? Like does she have any grounds? Gah!

And one that only a seriously pathetic human being would do

IF you used exact words from her letter she might have something to complain about but I don't think it's plagiarism

Even in that case you should have to pull the piece

DO NOT PULL THE PIECE

At most in that case you could rewrite those FEW lines

There is no right to say people can't write about you and the idiotic shit you do

Okay, okay— I'm so worried! I honestly don't even know how they might compare; I'm worried there is similar language in there, but can it even be plagiarism if it was basically from a FB post? Gah!

To: Celeste Ng

I don't think I have legal issues either, and SERIOUSLY!! FUCK HER! I think that if she ACTUALLY wanted to sue me, she would have contacted me already, right?

Got it. And can you plagiarize from a FB post?? This is something I don't know

You can only plagiarize if you took her intellectual property and pass it off as yours. And in fiction there's a pretty wide leeway

I don't have your story in front of me but it didn't look to me like you took words directly from her letters.

Can I please call her and just yell FUUUUUUUUUCK YOU

I don't think I did either, but I'm worried that I accidentally did. This is what Whitney was in a panic about do — when you research for fiction, no one ever tells you to like "cite" your details! Gah!

But whatever. I have never said "fuck you" to anyone but that would feel amazing right now

Again, make her do the work. She needs to cite which lines she thinks are "hers" and show you her "originals."

Do NOT add an acknowledgement to this story or I swear to god...

Wait you have never said fuck you to anyone?!

Yes yes yes— I am all game for this, and hope to be soothed by this lawyer.

Never! It's a tragedy!

Ugh I just read dawn's note that Calvin sent and I barfed in my mouth a little

THIS IS YOUR TIME SONYA

IT WILL NEVER BE SO RICHLY DESERVED

I know, right?? She is so...HERSELF

I'm going to write it in my journal!! FUCK YOU, DAWN DORLAND!!! FUCK YOU!!

Also I just remembered her motherfucking pitbull milking story and I just want to smack her in her smug self-satisfied face

To: Whitney Scharer                                                                           ⓘ

Do you know what letter Dawn is referring to?

In a panic I researched all the big plagiarism scandals this afternoon, and they're literally all from nonfiction books

Yes— it was a letter she wrote to her own kidney recipient and posted on FB

Oh totally—did you see the Jill Bialosky one? Not so good. Literally lifting paragraphs from wikipedia!

No, don't know that one! Looking up now, obsessively

Tap to Load Preview

nytimes.com ›

I def. remember writing down certain phrases from that letter, because I thought it was so weird, and I wouldn't be surprised if I ended up using some, or phrases close to them. That's the shitty part. The problem is I don't know what they are— I don't have a copy of the letter, and I don't remember

and you can't find the letter?

I feel like a COMPLETE idiot, but also super defensive, because Jesus, it's fiction, and people pull language from real life all the time!

No, but I will look again!

If you remember basically when it was from I could scour facebook

Oh my god— could you??

Don't feel like an idiot. I think even if you use phrases from it you'd be ok

Were you in that FB group?

I think so?

# EXHIBIT D

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                    Defendants. | Civil Action No.<br><br>1:19-cv-10203-IT |

**PLAINTIFF, SONYA LARSON'S ANSWERS AND OBJECTIONS TO INTERROGATORIES PROPOUNDED BY DEFENDANT, DAWN DORLAND PERRY**

GENERAL OBJECTIONS

Plaintiff objects to the definitions and instructions contained in Defendant, Dawn Dorland Perry's First Interrogatories to Larson on the grounds that they are overly broad, vague, unduly burdensome and beyond the scope of discovery set forth in the Federal Rules of Civil Procedure and/or give meaning to words different from their ordinary English meaning or definitions set forth in applicable statutes or rules. By submitting answers to interrogatories, Plaintiff does not in any way adopt Defendant's purported definitions of words or phrases contained in this discovery request to the extent they are inconsistent with the ordinary and customary meanings of such words and phrases or the rules governing the permissible scope of discovery. Plaintiff specifically objects to the definition of "Dorland Letter" and Defendant's characterization of said letter.

INTERROGATORIES

**Interrogatory No. 1: State the name and address of each person who has knowledge about the facts and circumstances described in the Complaint and the Counterclaim filed in this Action.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Furthermore, this interrogatory is objected to the extent that it invades the attorney-client and the attorney work product privileges.  Subject to and without waiver of these objections, Plaintiff states as follows:

In addition to the Plaintiff, Sonya Larson ("Larson"), and the Defendants, Dawn Dorland Perry ("Dorland"), Cohen Business Law Group, PC, and its agents, servants, employees, and present or former attorneys (collectively "Cohen Law") including but not limited to Defendant, Jeffrey A. Cohen (Atty. Cohen"), and Attorney Michael S. Hanna, Larson refers Dorland to Larson's Initial Disclosures that were provided to all counsel by letter dated April 24, 2020, and her answers and responses to all interrogatories she has answered in this Action, and responses to document requests that have been or will be made, all of which are incorporated herein by reference.

**Interrogatory No. 2: Identify all non-privileged communications you have had with any person concerning the Dorland Letter; for each such conversation, identify (a) the date of the conversation, (b) the person with whom you had the conversation, (c) any witnesses to the conversation, and (d) the substance of the conversation, including who said what.**

OBJECTION:  In addition to the General Objections herein, Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Furthermore, Plaintiff objects to this interrogatory to the extent that it invades the attorney-client and the attorney work product privileges.  Subject to and without waiver of these objections, Plaintiff states as follows:

(a)  Summer of 2015;

(b)  Sari Boren;

(c)  Other than Ms. Boren, there were no witnesses;

(d) We discussed the self-referencing tone of the letter.

**Interrogatory No. 3: Concerning the Dorland Letter, please identify: (a) the date that you first read the Dorland Letter; (b) the circumstances in which you first encountered and read the Dorland Letter; and (c) what if anything you did with the Dorland Letter at that time.**

OBJECTION: Please see the General Objections, which are included herein by reference. Subject to said objections, Plaintiff states as follows:

(a) Summer of 2015

(b) Dorland added me to her Facebook group, and I read the letter sometime after it was

posted.

(c) I did nothing with the letter.

**Interrogatory No. 4: For each copy of the Dorland Letter that you have or had in your possession, custody and control at any time, please identify (a) when that copy of the Dorland Letter came into your possession, custody and control; (b) from where you obtained that copy of the Dorland Letter, (c) the date, if any, that said copy left your possession, custody and control, and (d) the circumstances upon which said copy left your possession, custody and control.**

OBJECTION: Please see the General Objections, which are included herein by reference. Subject to said objections, Plaintiff states as follows:

(a) I received a copy of the letter on or about June 8, 2018.

(b) Rebecca Markovits of American Short Fiction sent it to me.

(c) I still have the copy in my possession.

(d) Not applicable; I still have the copy in my possession.

**Interrogatory No. 5: Describe any and all research you conducted in connection with your writing of The Kindest, including but not limited to research related to letters written to and from kidney donation recipients. Include in your response the dates that said research was completed and the resources utilized in your research.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Plaintiff also objects to the word, "research," which is vague and ambiguous.  Subject to and without waiver of these objections, Plaintiff answers this interrogatory as follows:

Some of my "research" was based on my education, general reading of many subjects as well as my life experiences.  As best as I can remember at this time, specific inquiries were conducted on the following topics.

On alcoholism and addictive logic:

- ○ *Neurotic Styles* by David Shapiro, 2013-2015

- ○ *Breaking Addiction: A 7-Step Handbook for Ending Any Addiction* by Lance Dodes,  2013-2015

- ○ Extensive conversations with a close relative who has been a member of Al-Anon for decades.

- On codependency:

  - ○ *Women Who Love Too Much*, by Robin Norwood, 2013-2015

  - ○ *Codependency For Dummies*, by Darlene Lancer, 2013-2015

- On representation of Chinese-American working class people:

  - ○ Numerous articles and essays about the "model minority" myth, and how it obscures the reality of Asian-American poor and working class people, 2013-2017

  - ○ Extensive conversations with my mother, who is Chinese-American and whose parents immigrated from China to the United States.

- On white savior narratives and how they function:

- "The White-Savior Industrial Complex," by Teju Cole, 2014

- Numerous essays and entries on Wikipedia on white savior narratives in film, critiques of *The Help*, etc., 2014-2015

- "The Dress" Photograph and related articles by Steven Pinker, 2015

- Numerous essays and articles on the "angry Black woman" stereotype, 2013-2015

- Letters from organ donors, recipients, and family members of donors and recipients in 2015 including for example, the following:

  - https://www.giftofhope.org/

  - https://www.lifelinkfoundation.org/

  - https://www.donors1.org/

  - http://transplantnet.org/

  - https://www.lungtransplantproject.org/

  - https://www.lcnw.org/

  - https://www.kidney.org/

**Interrogatory No. 6:** Identify, either by title or description, all writings authored by Ms. Dorland that you had access to, saw, skimmed, scanned, reviewed, read or studied. For each said writing, please identify the date and manner in which you obtained access to said writing. For purposes of this interrogatory, "writing" shall mean letter (excluding emails or text messages), short story, essay, novel, novella, memoir, poem, or excerpts of any of same.

OBJECTION: Subject to the General Objections, Plaintiff also objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome. Without waiver of these objections, Plaintiff answers this interrogatory as follows:

   To the best of my memory at this time, I answer this interrogatory as follows:

- 2007-2017: I read various posts that Dorland made on Facebook, Twitter, and Instagram.

- Dates uncertain: I believe that Dorland submitted writing samples to the Manuscript Mart of GrubStreet's national writing conference, which I technically had access to, but I did not open or view these writing samples.

- Dates uncertain: I believe that Dorland submitted writing samples for various writing classes at GrubStreet, which I technically had access to, but that I did not open or view.

- August 2018: I read a blog post that Dorland once wrote for the GrubStreet blog.

**Interrogatory No. 7 Identify all entities to which you submitted The Kindest for publication, assessment, consideration or evaluation; whether for purposes of publication, entry in a contest, admission into a workshop, academic program, class, seminar or course, or for a scholarship, fellowship, or other recognition of any kind.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Plaintiff also objects to the word, "publication," which can have different meanings depending on the context in which the word is used.  Subject to and without waiver of these objections, Plaintiff answers this interrogatory as follows:

As best as I can remember, the entities include the following:

*American Short Fiction*

*The Atlantic*

*Boston Review*

*Carve Magazine*

*Colorado Review*

*Electric Literature*

*Glimmer Train*

*Gulf Coast*

*Hunger Mountain*

Boston Book Festival

Mass MOCA

*The Masters Review*

*The Missouri Review*

*Narrative Magazine*

National Endowment for the Arts

*The New Yorker*

*Ploughshares*

Plympton

Ragdale

Rona Jaffe Foundation

The Somerville Arts Council

*Tin House*

*Welcome to the Neighborhood* Anthology


**Interrogatory No. 8: Identify all statements made by Ms. Dorland which you claim were defamatory.  For each said statement, identify the date the statement was made and to whom said statement was made, and whether said statement was made in writing or otherwise.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

vague, ambiguous and burdensome.  Also, discovery is ongoing and there may be other

defamatory statements that have yet to be uncovered.  Subject to and without waiver of these

objections, Plaintiff states as follows:

Larson refers Dorland to Larson's Initial Disclosures that were provided to all counsel by letter dated April 24, 2020, as well as all answers to interrogatories and document requests of all parties, which are incorporated herein by reference.

In addition, Dorland made the following statements of which I am aware.

- Dorland's repeated statements to the Boston Book Festival that I am a plagiarist;

- Dorland's repeated statements to *American Short Fiction* that I am a plagiarist;

- Dorland's repeated statements to a *Boston Globe* reporter that I am a plagiarist;

- Dorland's repeated statements to one or more employees at GrubStreet that I am a plagiarist;

- Dorland's repeated statements to the Bread Loaf Writers' Conference that I am a plagiarist;

- Dorland's repeated statements to members of my writing group that I am a plagiarist;

- Dorland's repeated statements to the Vermont Studio Center that I am a plagiarist;

- Dorland's repeated statements to literary agent Samantha Shea that I am a plagiarist;

- Dorland's statements to a *Boston Globe* reporter that I received my fellowship to the Bread Loaf Writers' Conference based on "The Kindest";

- Dorland's statements to The Michener Center for Writers that I am a plagiarist;

- Dorland's statements to PEN America that I am a plagiarist;

- Dorland's statements to The Author's Guild that I am a plagiarist;

- Dorland's statements to *Tin House* that I am a plagiarist;

- Dorland's statements to "an acquaintance who directs a prestigious international writing workshop" that I am a plagiarist;

- Dorland's statements to the writers Jennifer Haigh, Steve Almond, Deborah Plummer, Ethan Gilsdorf, Sondra Levenson, Kathy Sherbrooke, Maud Casey, Michael Collier, and Andrew Goldstein that I am a plagiarist;

- Dorland's statements to a *Boston Globe* reporter that I have created a "hostile work environment" at GrubStreet, and that I have committed "legal and artistic intimidation";

- Dorland's statements to a *Boston Globe* reporter that I used "hostile conduct" and "intimidation" with Dorland at the conference I run, to which "other writers might be vulnerable," and that I have committed "community betrayal";

- Dorland's statement to one or more employees at GrubStreet that I "directed" her "not to write about race."

**Interrogatory No. 9: Identify all communications you had with any voice talent employed in connection with The Kindest concerning their performance in connection with that work. For each such communication, identify the date of the communication, the name of the voice talent, and substance of the communication. Specifically, please identify any direction you provided to said voice talent concerning the tone or inflection that you desired to be utilized during the letter portion of The Kindest, or any back story or other information you provided concerning the letter contained within The Kindest.**

OBJECTION:  Plaintiff objects to this interrogatory to the extent it is overbroad and unduly burdensome and seeks information that is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to said objection, Plaintiff states as follows:

I had a series of email communications with Emily Woo Zeller from May 2 to May 13, 2016.  I mentioned to Emily that I made slight improvements to *The Kindest* in order to ease the rhythm and tone of the story.  I mentioned that the characters in my story were ordinary people who spoke colloquially and were vulnerable human beings.  I told her that the main character's voice tended to be casual and even crass when she is uncomfortable, especially with regard to

her alcohol problem, the nature of her car crash, and the kindness of Rose Rothario and Rose's life-saving act.

I said that in general, the tone of the story is one of gathering intensity. What begins as relief and triumph becomes more intimate, knowing, anxious and intense.

Emily said she understood the complexities of the two women, and she thought the story was intense.  She also asked me how to pronounce Bao's name and the name Rothario.  To the best of my knowledge, I did not give Ms. Zeller any direction concerning the tone or inflection to be used in connection with the letter portion of my short story.

**Interrogatory No. 10: Identify the date that you first conceived of the idea for the short story "The Kindest" and describe the source of that inspiration.**

I had helped to facilitate a panel on race and writing while I was studying for my MFA in January 2015.  The panel sparked a very divided reaction from members of the audience. During this panel, it became clear to me that many of the white-identified writers in the room were perceiving different racial dynamics happening than were the self-identified writers of color.

When I heard about and saw "The Dress" photograph in February 2015, which viewers debated was either gold and white, or black and blue, it struck me as a perfect metaphor for what I had witnessed in January 2015 as a graduate student.  I wanted to write a story that would function like that photograph and spark divergent reactions from readers.

**Interrogatory No. 11: Identify all changes that you made to the letter contained in The Kindest following the first draft, and for each change, identify (a) the date of the change, and (b) the reason for the change.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, and to the best of Plaintiff's present memory, Plaintiff states as follows:

- November 2015: I changed the letter-writer's name, to a derivative of my mother's name.

- July 2016: I made changes of language to emphasize Rose's affection for platitudes, and to introduce the word "foreign."

- August 2016: I made changes of language to avoid similarities between the letter in my story and what I remembered of Dorland's letter.

- June 2018: I made changes of language to dispel all comparisons between the letter in my story and what I remembered of Dorland's letter. This change was made to placate Dorland so she and her lawyers would stop their relentless threats, accusations, intimidation, unwarranted legal claims, phone calls and emails to the Boston Book Festival so that The Kindest would be published and disseminated by the BBF.

**Interrogatory No. 12: Identify all elements of The Kindest, the characters contained within The Kindest, or any promotional materials related to The Kindest, that were inspired by or copied from Ms. Dorland, Ms. Dorland's living kidney donation, or which were inspired by or copied from Ms. Dorland's Facebook group or materials posted therein. For each such element, identify whether said element was "inspired by" or copied.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

I did not copy Dorland's letter.

- I was inspired by the occasion of Dorland's giving her kidney to a stranger.  Such an occasion dovetails nicely with the classic literary narrative construction of a "stranger comes to town," in which a stranger or a new situation enters a protagonist's world and their/its presence disrupts the norms of that world.

- I was inspired by the self-referencing tone and syntax of Dorland's letter.  That quality set it apart from similar letters I read in my research.

**Interrogatory No. 13: Identify all public appearances you have made from January 1, 2017 to the present, including but not limited to readings, interviews, speaking engagements, lectures, events, symposiums, and conferences. For each such appearance, please state the date, the name of the event, the sponsor of the event, the context in which you appeared, the role you played at the event, whether you spoke at the event, and if you so, the content of your speech.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

Monday, August 24th, 2020

7:00pm @ Cambridge Public Library

What Makes a Good Writing Group? The Chunky Monkeys Share Tips & Advice

With Alex Marzano-Lesnevich, Celeste Ng, Christopher Castellani, Jennifer De Leon, Adam Stumacher, Whitney Scharer, Calvin Hennick, Grace Talusan, Chip Cheek, and Becky Tuch

Members of my writers' group and I discussed advice for forming and maintaining a successful writer's group.


Friday, July 17th, 2020

3:00pm @ Warren Wilson MFA Alumni Conference

The Art of Urgency: Pursuing Craft in a More Conscious Moment

With Tariq Luthun, Nathan McClain, and Adrienne Perry

On writing and race, Covid-19, and urgent issues of our current moment


Wednesday, June 17th, 2020

7:00pm @ Porter Square Books in Cambridge, MA

With Dolores Johnson

Discussion of Johnson's memoir, *Say I'm Dead: A Family Memoir of Race, Secrets, and Love*

Friday, May 22nd, 2020

7:00pm @ Porter Square Books in Cambridge, MA

Welcome to the Neighborhood: An Anthology Reading

With Robert Pinsky, Jennifer De Leon, Gail Mazur, Sarah Green, Lloyd Schwartz, Katherine

Hollander, Aaron Devine, Lynne Viti, Christine Fort, and David Blair

Reading from "The Kindest"

Thursday, February 20th, 2020

6:00pm @ Suffolk University Poetry Center in Boston, MA

Salamander Issue #49 Release Party

With Moira Linehan and David Moloney

Reading from "The Kindest"

Thursday, January 16th, 2020

7:00pm @ Belmont Books in Belmont, MA

Writer's Craft: Writing Groups

With Jennifer De Leon, Calvin Hennick, Celeste Ng, Whitney Scharer, Adam Stumacher, and

Grace Talusan

Discussion of what makes a good writing group

Wednesday, January 15th, 2020

7:00pm @ Harvard Bookstore in Cambridge, MA

In conversation with Liz Moore

Discussion of Moore's novel, *Long Bright River*


Friday, October 25th, 2019

7:00pm @ Belmont Books in Belmont, MA

Writer's Craft: Exploring Climate Fiction

With Julie Carrick Dalton and Tim Weed

Discussion of climate change fiction


Monday, April 15th, 2019

6:30pm @ The New Hampshire Institute of Art in Manchester, NH

Visiting Writer Series

Reading from "Gabe Dove"


April 5-7th, 2019

The Muse and the Marketplace 2018

Various welcoming remarks, announcements, introduction and Q&A with keynote speaker Luis Alberto Urrea


Tuesday, November 13th, 2018

8:00pm @ The Oberon in Cambridge, MA

For Resistance Mic!

Reading from "The Kindest"


Monday, October 22nd, 2018

7:00pm @ the Concord Festival of Authors in Concord, MA

With Dariel Suarez

Discussion of the craft of short fiction


Saturday, October 6th, 2018

7:00pm @ Warren Wilson College in Asheville, NC

With Michael Collier, Dana Levin, and Gabrielle Bates

House Party Reading Series from Bull City Press

Reading from "The Kindest"


Thursday, September 13th, 2018

7:00pm @ The Cambridge Boat House in Cambridge, MA

With fellow readers whose names I cannot remember at this time

The Unauthorized Eleanor Wilner Reading Series

Reading from "The Kindest"


Saturday, September 1st, 2018

7:00pm @ The Amory Center for the Arts in Somerville, MA

With Marguerite Guzmán Bouvard and Michael Keith

The Dire Reading Series

Reading from "Gabe Dove"


Wednesday, August 8th, 2018

7:00pm @ Belmont Books in Belmont, MA

With Becky Tuch

Discussion of submitting your work to literary magazines


April 6-8th, 2018

The Muse and the Marketplace 2018

Various welcoming remarks, announcements, introduction and Q&A with keynote speaker Min

Jin Lee


Wednesday, February 7th, 2018

8:00pm @ The Oberon in Cambridge, MA

For Resistance Mic! with Obehi Janice, Richard Hoffman, Sebastian Johnson, Dom Jones, and

The Kuumba Singers

Reading from "Gabe Dove"


Friday, January 12th, 2018

4:00pm @ Warren Wilson College in Asheville, NC

With Carlos Andrés Gómez, Kristen Hewitt, and Meghan Williams

Reading from "The Kindest"

Wednesday, November 15th, 2017

7:00pm @ Brookline Booksmith in Brookline, MA

In conversation with Celeste Ng

Discussion of Ng's novel, *Everything I Never Told You*


Thursday, October 26th, 2017

7:00pm @ Belmont Books in Belmont, MA

With Laura van den Berg and Heidi Pitlor

Discussion of *Best American Short Stories 2017*, Reading from "Gabe Dove"


Thursday, October 12th, 2017

7:00pm @ The Kickstand Cafe in Arlington, MA

With Kelly J. Ford and Joanna Rakoff

Arlington Author Series

Reading from "Gabe Dove"


Thursday, May 25th, 2017

7:00pm @ The Middle East Restaurant & Nightclub in Cambridge, MA

With Tom Perrotta

Reading from "Gabe Dove"


May 5-7th, 2017

The Muse and the Marketplace 2017

"Beyond Almond Eyes and Chocolate Skin: Indicating Racial and Ethnic Identity," with Cynthia Gunadi

"Do I Need to Explain That? On Cultural & Linguistic Translation," with Jennifer De Leon and Celeste Ng

"Agents and Editors of Color Roundtable," with Mira Jacob, Alexander Chee, Regina Brooks, Kaitlyn Greenidge, Celeste Ng, Eki Ikkanda, and Jennifer De Leon

Various elements of writing and race, and navigating the publishing world as a writer of color


Wednesday, March 1st, 2017

7:00pm @ The Cambridge Boat House in Cambridge, MA

With E.J. Graff, Jackie Malone, and Stan Yarbro

The Unauthorized Eleanor Wilner Reading Series

Reading from "The Kindest"


Monday, January 2nd, 2017

7:00pm @ Porter Square Books in Somerville, MA

With Joan Wickersham

Reading from "Gabe Dove"


**Interrogatory No. 14: Identify any invitations you received to appear at any public event, including but not limited to the types of events listed in Interrogatory No. 13, which you did not accept, from January 1, 2017. For each said event, state the date of the event, the name of the event, the individual who invited you, the sponsor of the event, the role for which you were invited to play, and the reason that you declined.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff

states as follows:

- Association of Writers and Writer's Programs (AWP) 2017: February 8-11th, invited as a

  panelist on various nascent topic ideas. Declined due to scheduling conflict.

- AWP 2018: March 7-10th, invited as a panelist on various nascent topic ideas. Declined

  due to scheduling conflict.

- AWP 2019: March 27-29th, invited as a panelist on various nascent topic ideas. Declined

  due to scheduling conflict.

- AWP 2020: March 4-7th, invited as a panelist on various nascent topic ideas. Declined

  due to scheduling conflict.


**Interrogatory No. 15: Identify any public appearances you were scheduled to make which
were canceled for any reason from January 1, 2017 to the present, including but not limited
to the types of events listed in Interrogatory No. 13. For each said event state the date of the
event, the name of the event, the individual who invited you, the sponsor of the event, the
role for which you were invited to play, and the reason given for the cancelation.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

vague, ambiguous and burdensome.  Moreover, Plaintiff objects to the use of the phrase "public

appearances" which is vague. Also, Plaintiff has not included "appearances" including such

things as **readings, interviews, speaking engagements, lectures, events, symposiums,**

**conferences,** radio and television shows and other "appearances" she was likely to have or

events she was likely to appear at, if her Short Story was used by the BBF as the centerpiece of

the One City/One Story project.  Subject to and without waiver of these objections, Plaintiff

states as follows:

April 3-5, 2020

The Muse and the Marketplace 2020

Various welcoming remarks, announcements, introduction and Q&A with keynote speaker Viet Nguyen.

I am the Director of this conference, and canceled it due to the Covid-19 pandemic.


**Interrogatory No. 16: Identify any and all writings authored by you that have been published, featured, highlighted, honored, commended, or granted an award from January 1, 2017 to the present. For each such writing, state (a) the title, working title or description of the publication, (b) the date of the publication or other recognition, (c) the type of recognition, (d) whether or not said publication or recognition was accompanied with any compensation, and (e) if so, the amount of compensation.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

- "Code W," novel excerpt, *Ploughshares*, July 2020, paid $450

- "The Kindest," *American Short Fiction*, Summer 2017, paid $300

    - One component of application package for a National Endowment for the Arts Creative Writing Fellowship, 2020; paid $25,000

    - Anthologized in *Welcome to the Neighborhood: An Anthology of American Coexistence*, The Ohio State University Press, December 2019; no compensation

    - One component of application package for a Larry Levis Prize for a short story collection manuscript, 2019; no compensation

    - Special Mention for the Pushcart Prize 2019 XLIII, November 2018; no compensation

- Selected as the Boston Book Festival's 2018 One City One Story program selection, October 2018; no compensation

- One component of application package for a Ragdale Fellowship, 2018; no compensation (did not attend)

- Pushcart Prize nomination, February 2018; no compensation

- One component of application package for a Somerville Arts Council Fellowship, 2020; paid $1,800

- Recorded as audiobook by Plympton (2016); paid $125

- "The Empty Hour, *The Harvard Advocate*, Spring 2019; no compensation

- "At the Bottom of New Lake," *Warmer*, Climate Fiction Amazon Original Stories Collection, with Jane Smiley, Lauren Groff, Jess Walter, Edan Lepucki, Skip Horack, October 2018; paid $4,000

- "The Horror and Joy of No One to Blame," *Literary Matters*, July 2018; no compensation

- "The Request," *Solstice: A Magazine of Diverse Voices*, July 2018; no compensation

- "The Peak," *Solstice: A Magazine of Diverse Voices*, July 2018; no compensation

- "AA," *Solstice: A Magazine of Diverse Voices*, July 2018; no compensation

- "Catch and Release: Strategies of Overt and Covert Narratorial Control," *The Writer's Chronicle*, March/April 2018

- "Q County Colored Penitentiary," *Memorious*, Fall 2017
  - Anthologized in *Pangyrus: The Resistance Issue*, November 2018

- "Gabe Dove," *Salamander*, Winter 2017; paid $250
  - Appointment for the New York Public Library's Subway Library, February 2018, paid $50

    ○   Anthologized in *The Best American Short Stories 2017*, October 2017; no
compensation

**Interrogatory No. 17: Describe in detail all reputational damages you allege to have
suffered as a result of the allegations set forth in the Complaint.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

vague, ambiguous and burdensome.  In particular, Plaintiff objects to the word, "reputational"

which is vague and ambiguous.  Subject to and without waiver of these objections, Plaintiff

states as follows:

- Damage among untold number of readers of *The Boston Globe*, constituting potentially
  thousands of people

- Damage among the staff of *The Boston Globe*

- Damage among the staff of the Vermont Studio Center

- Damage among the staff of The Michener Center for Writers

- Damage among the staff  PEN America

- Damage among the staff The Author's Guild

- Damage among the staff *Tin House*

- Damage with literary agent Samantha Shea, who was actively interested in representing
  me until Dorland's campaign

**Interrogatory No. 18: Describe in detail all lost productivity damages you allege to have
suffered as a result of the allegations set forth in the Complaint, including but not limited
to the "four anthologies", the "canceled and delayed manuscript consultations with
writers", the purpose of the canceled "schedule trip to Montreal from July 19-23" and the
associated lost income, all of which is referenced in your initial disclosures as "lost
productivity" damages.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

- I was frequently interrupted at my job by Dorland's relentless harassment, especially as Ms. Dorland and Cohen continued to make threats against me and the Boston Book Festival, to which both my lawyer and the BBF's lawyers had to respond.  I missed countless meetings, an important site visit to GrubStreet's new prospective location, and had to delay several projects.  By the end of August 2018, I was four weeks behind schedule in planning the Muse and the Marketplace conference, of which I am the Director.

- I was forced to take several days off of work in June, July, August, and September 2018, in order to find legal counsel, attend legal meetings, respond to *The Boston Globe's* inquiries, respond to updates from the BBF about Dorland and the Cohen Defendants' escalating demands, and to respond to updates from ASF, the Bread Loaf Writers' Conference, and my writing group about Dorland's behavior.

- I had to cancel a manuscript consultation with writer Maggie O'Brien in July of 2018, due to being overwhelmed with the workload of dealing with Dorland and the Cohen Defendants. This resulted in the loss of hundreds of dollars, and the opportunity for further consulting work with O'Brien.

- I had to deliver a manuscript consultation with writer Oren Bendavid-Val at a severely delayed time, and had to cancel two consultation appointments with him, due to urgent legal responses suddenly needed on that day, plus comments to *The Boston Globe.*  This was in July and August 2018.

- I had to cancel a scheduled trip to Montreal from July 19-23, 2018, due to an urgent and overwhelming need to respond to the latest threatening letter from Dorland and her lawyers.  The purpose of this trip was to visit my now-husband's family. We lost money from various travel-related bookings."

- I missed a community book club discussion of Lisa Halliday's novel, *Asymmetry*, which I was scheduled to facilitate, on June 24, 2018. This was also due to an overwhelming need to respond to Dorland's latest threats.

- Prior to June 7, 2018, I had been writing at the Vermont Studio Center on a four-week fellowship, and making strong daily progress on my next work of fiction. After June 7th, when I first heard of Dorland's campaign against me, my writing virtually stopped.

- Virtually all I could write about after June 7, 2018 was my distress in dealing with Dorland, and the distress of being the object of someone's obsessive anger.


**Interrogatory No. 19: Describe in detail all emotional distress damages you allege to have suffered as a result of the allegations set forth in the Complaint, including but not limited to physical manifestations of said emotional distress, monetary damages, and any other damages you are claiming in this litigation related to any alleged emotional distress.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

In addition to damages I incurred that are mentioned in other discovery, I answer as follows:

- I felt that I was being stalked by Dorland, especially when the BBF and ASF told me that she was calling and emailing their staff and board multiple times per day, and making legal threats to them. I felt even more stalked when I learned that Dorland was

continuously contacting my employer (GrubStreet), *The Boston Globe*, the Bread Loaf Writers' Conference, and members of my writing group.

- I sought out the process for obtaining a restraining order on July 3rd, after learning that Ms. Dorland had contacted my workplace. I felt that she was obsessed with me, as she seemed to be spending many hours a day trying to interfere with my employment, my publication opportunities, my reputation in the literary world, and reputation in Boston.

- I suffered from extreme anxiety as a result of Dorland's relentless harassment.
  - I had difficulty eating and keeping food down. I lost weight—between 5-10 pounds.
  - I had tremendous difficulty sleeping, and took sleeping pills nights every night for two weeks in June 2018, in order to fall asleep and stay asleep.
  - I sought constant advice and assurance from family and friends via a dramatic increase in phone calls and get-togethers.
  - I began weekly therapy sessions on June 27, 2018, and continued to attend therapy through November 19, 2018.
  - I brought my partner and now husband with me to therapy due to the stress and distraction that Dorland's harassment was causing in our relationship.
  - After weeks of getting little sleep, there was a time in July and August of 2018, when I developed paranoid thoughts that Dorland was somehow reading my emails or listening to my phone calls.

- I suffered extreme distress when the BBF canceled the publication of "The Kindest" for One City One Story.  I felt it was tremendously unjust that Dorland and her lawyers had manipulated facts, and had bullied the BBF so egregiously that this small non-profit

budget gave up their fight out of fear of being sued by Dorland and the Cohen

Defendants, at great cost to both the BBF and to me.

- I suffered extreme distress when *The Boston Globe* published two articles about me due

  to Dorland's constant efforts and manipulation of facts, which portrayed me as a

  plagiarist. I was terrified that my reputation and career as a writer would be damaged

  forever.

I am not yet able to compute my financial injuries as discovery is still ongoing. In

addition, I am still trying to monetize my damages relating to my lost opportunities when the

BBF's One City/One Story project was canceled and the ramifications of said cancelation, as

well as the emotional distress I suffered as a result of the actions of Dorland and the Cohen

Defendants. Damages for emotional distress, loss of weight and difficulty in sleeping will be

determined by a jury at trial. I will attempt to find and produce my therapy bills and medical

expenses if all Defendants in this Action sign appropriate confidentiality agreements.

Furthermore, I will be seeking attorney's fees that cannot be determined until the conclusion of

this Action, at which time appropriate records will be produced.

Signed under the pains and penalties of perjury this 25th day of November 2020.


_____

Sonya Larson


As to Objections:

/s *Andrew D. Epstein*
_____

Andrew D. Epstein

## **Certificate of Service**

I certify that Plaintiff's Objections and Answers to Defendant, Dawn Dorland Perry's Interrogatories were sent on the date indicated below by U.S. Mail, postage prepaid, addressed as follows:

Suzanne M. Elovecky, Esq. and          Matthew H. Greene, Esq.
Partridge Snow & Hahn                   Boyle Shaughnessy Law, PC
30 Federal Street                       695 Atlantic Avenue
Boston, MA  02110                       Boston,  MA 02111

A copy of said objections and answers was also sent to each attorney by email addressed to selovecky@psh.com and mgreene@boyleshaughnessy.com.


                                        */s/ Andrew D. Epstein*
                                        _____
November 25, 2020                       Andrew D. Epstein