UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SONYA LARSON,

Plaintiff

v.

DAWN DORLAND PERRY,
COHEN BUSINESS LAW GROUP, PC and
JEFFREY A. COHEN, ESQUIRE,

Defendants.

AND

DAWN DORLAND PERRY

Plaintiff-in-Counterclaim

v.

SONYA LARSON

Defendant-in-Counterclaim

C. A. No.: 1:19-CV-10203-IT

MOTION FOR LEAVE GRANTED
APRIL 6, 2021

**DAWN DORLAND PERRY'S REPLY BRIEF IN SUPPORT OF HER MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY SONYA LARSON**

Dawn Dorland Perry ("Ms. Dorland") submits this reply brief in further support of her motion to compel Sonya Larson, the Plaintiff and Defendant-in-Counterclaim in this litigation ("Ms. Larson"), to produce documents responsive to Ms. Dorland's Request for Production of Documents. Despite a conference pursuant to Local Rules 7.1 and 37.1 held amongst counsel on January 15, 2021 and followed up with a detailed email outlining issues with Ms. Larson's production, Ms. Larson refused to engage concerning her production, claiming instead that this litigation – which Ms. Larson herself initiated – is simply not worth enough money to justify her compliance with the Rules.

However, after Ms. Dorland was forced to turn to the Court for relief, and on the eve of Ms. Larson filing her opposition, Ms. Larson produced an additional 420 documents on a thumb drive, which Ms. Dorland received on March 30, 2021, the day after Ms. Larson filed her opposition to the motion to compel.

While Ms. Larson suggests in her opposition that this later production consisted of immaterial documents produced for the sole purpose of placating Ms. Dorland, that is not the case. The documents produced are relevant and directly on point to Ms. Dorland's claims and defenses. Indeed, the documents call into question Ms. Larson's claims brought against Ms. Dorland, as follows:

<u>See</u> January 23, 2016 text exchange produced by S. Larson, attached hereto as **<u>Exhibit A</u>**. There can be no question that this document wherein Ms. Larson admits to verbatim copying of Ms. Dorland's letter, should have been produced in the first instance. <u>Id</u>. This is but one example of

the hundreds of the relevant, material and responsive documents produced by Ms. Larson only ***after*** Ms. Dorland brought this matter to the Court's attention. In light of this production, it is clear that Ms. Larson failed to comply with her obligations pursuant to the Rules, and that Ms. Dorland is entitled to sanctions, including attorney's fees, as well as assurances that all responsive documents have been produced.

### A. Ms. Larson's Opposition Underscores Her Lack of Compliance With the Rules

Inexplicably, Ms. Larson, through her Opposition, appears to claim that the ***number*** of documents produced, by both parties and non-parties, controls her own obligations under the Federal Rules of Civil Procedure. That is not the case. Whether third parties have produced multiple copies of emails is not determinative of Ms. Larson's discovery obligations, nor does it have any bearing on process Ms. Larson undertakes to search, review and produce from what is in her own possession, custody and control. There is no dispute that the BBF and ASF have produced documents in this matter in response to a subpoena. While subpoenas were served to GrubStreet and Middlebury College, documents have yet to be produced due to extensions granted and internal requirements due to educational and employment-related regulations. Further, Ms. Dorland's motion to compel, and her attempts to resolve the discovery disputes through the requisite conferences, do not address issues concerning communications with any of the third parties who had been subpoenaed. In her Motion, Ms. Dorland did outline her incredulity that, based on what she learned from documents that were produced by the BBF, that Ms. Larson's production did not contain communications amongst Ms. Larson and her peer group concerning the BBF's decision to cancel the One City/One Story program in 2018, but it did not seek duplicative productions of documents produced by the BBF. Ms. Larson's

argument that the number of documents (or pages) produced by third parties has any relevance on her own production is a distraction and does not have any bearing on her own production.

Ms. Larson also, incredulously, suggests that she and she alone is the arbiter as to what documents are relevant to her tort claims, and that once she produces the documents she deems helpful to proving her claim for interference, her obligations have been met. See Opposition at p. 6. This is not the case. Ms. Larson's claims for intentional interference with advantageous business relationships, as she concedes, requires that she prove that Ms. Dorland acted with an improper motive or means. Id. Documents concerning Ms. Larson's copying of Ms. Dorland's letter, where Ms. Larson admits to doing so (see Ex. A), work to disprove Ms. Larson's claim, as Ms. Dorland's means, motive or purpose in contacting publishers contemplating the publication of her own works under Ms. Larson's name, was not improper. While it is clear that Ms. Larson ***prefers*** not to produce these documents, as they further show that these claims were likely brought in bad faith as Ms. Larson of course knew that her story contained Ms. Dorland's work, that does not obviate her ***obligation*** to prove them.[1]

It is even more stunning that Ms. Larson argues that "Dorland will probably deny that she intentionally and purposefully interfered [but that it] is a matter for this court to consider at a future time." Opposition at p. 7. Whether this matter is ultimately decided by the Court or by a jury, the consideration of the issues is to be made after the parties have the benefit of discovery,

[1] Concerning Ms. Larson's defamation claim, she makes no representations concerning her own production, and instead attempts to raise, or at least allude to, undefined issues with Ms. Dorland's production. Ms. Dorland made her production in June and July of 2020, to which Ms. Larson never responded, reacted or complained. In February of 2021, Ms. Larson served a second set of requests for production, which were largely duplicative of the first, and which also sought significant documents related to Ms. Dorland's allegations concerning her now-dismissed intentional infliction of emotional distress claim. Due to the irrelevance and duplication of these requests, coupled with Ms. Dorland's previous complete production, only seven (7) pages were produced in response to this new request.

and arguing that discovery is not necessary now because the Court will make decisions later completely misapprehends the litigation process.[2]

Ms. Larson, through counsel, has further disclosed counsel's hands-off approach to the discovery process. In her opposition, Ms. Larson states that "she was not absolutely sure what Dorland was seeking from her when she received the requests from her counsel." Opp., p. 12. This is consistent with Ms. Larson's counsel's prior statements wherein he stated that he did not know what his client did to search for documents, as he simply "sent her the requests," and that he did not know what she did to search for additional documents following the parties' conference because he simply "forwarded your email to her." Counsel has obligations beyond simply forwarding a document and leaving his client to decipher the legal import and the legal obligations.

Counsel also had an obligation to engage in the meet and confer process, which he did not, as reflected in Ms. Dorland's Memorandum in support of her Motion.

Notwithstanding counsel's neglect in these discovery matters, Ms. Larson's apparent "confusion" over terms is unconvincing. Further, the suggestion that Ms. Dorland's motion to compel "more clearly describes" the issues with the initial discovery response is inaccurate, as the motion to compel was, in large part, an adaptation of counsel's January 25, 2021 email, omitting categories of documents related to the intentional infliction of emotional distress, and omitting issues related to the various versions of "The Kindest," which were produced prior to

[2] Ms. Larson mischaracterizes the parties' prior discussions concerning depositions. The first deposition notice to be served in this case was Ms. Dorland's deposition notice of Ms. Larson. When Ms. Dorland's review of Ms. Larson's documents evidenced that the production was woefully deficient, Ms. Dorland requested the requisite conference, and later made clear that she would not depose Ms. Larson unless and until the document production was complete. Ms. Dorland, through counsel, never claimed that Ms. Larson's documents were required for Ms. Dorland's deposition, although scheduling became an issue as the calendar proceeded toward the close of discovery. Further, Defendants Jeffrey Cohen and the Cohen Business Law Group were also involved in this discussion, which Ms. Larson fails to include in her opposition. The issue concerning depositions is being addressed separately by the Court in a hearing scheduled for April 5, 2021 at 3:30 p.m.

the motion to compel. As an example of how Ms. Dorland's requests and follow up communications were not, in fact, unclear: In her opposition, Ms. Larson claims that she did not know what was meant by the term "membership" in a Facebook group, because she did not "join the group as a 'member'." See Opp. at p. 12. However, in an email that Ms. Larson sent to Ms. Dorland in 2016, she clearly stated "my memory is that I did indeed join the FB group." See **Exhibit B**, July 12, 2016 email from S. Larson to D. Dorland. This email was included in Ms. Larson's first production, and there is no explanation for her to submission to this Court – after her apparent review and production of that email earlier this year – that she did not "join" the FB group at issue and therefore was unable to decipher the term "membership." Of course, had she been struck by such confusion, her counsel should have been available to assist, which he clearly was not.[3]

Ms. Dorland has reviewed the 420 documents recently produced by Ms. Larson, the vast majority of which are directly relevant to the claims and defenses in this case. Ms. Dorland has no way of knowing, either from the production or Ms. Larson's opposition, whether this represents a complete production, and she understands she may never know.[4] However, it is clear from the statements made by Ms. Larson and her counsel that counsel did not oversee the

[3] Counsel goes on in the opposition to state that Ms. Larson does not have any documents that "reflect" her membership in the FB group, see Opp. at p. 12. However, Exhibit A is a document which "reflects Ms. Larson's membership in the Facebook group," as the letter was posted only in the private and secret Facebook group, and the only way Ms. Larson could have seen it was if she was a member in that group. Other documents produced reflect that she had access to the content shared in the private and secret Facebook group, as a member, including early versions of The Kindest which include additional copied language used by Ms. Dorland in posts she made within her group, in addition to wholesale copying of Ms. Dorland's letter.

[4] There is at least one instance wherein it appears the production remains incomplete: Ms. Larson produced certain text messages with her peer group concerning the award she was granted by the National Endowment for the Arts ("NEA"). In Ms. Larson's interrogatory responses, she claimed that "The Kindest" was "one component" of the $25,000.00 prize she won from the NEA, while her text messages evidence that it was, in fact, awarded solely on The Kindest. No documents were produced reflecting communications with the NEA, and announcement of the award, the submission of The Kindest to the NEA, or any other information concerning this award based on The Kindest. All of this information would be relevant to the damages Ms. Dorland is claiming in this matter. See, e.g., Ex. C. at p. 1 (text messages from S. Larson re: NEA Award); Ex. D (S. Larson responses to Interrogatories, at Interrogatory No. 16).

discovery process, and that both Ms. Larson and counsel are making decisions concerning what should be produced based on unilateral judgment calls concerning this case, which they initiated. A plaintiff is not entitled to determine which documents are "key" to ***proving*** their claims and therefore produce only those documents. Therefore, Ms. Dorland seeks an order requiring Ms. Larson and her counsel to make a complete and thorough production of all responsive documents in Ms. Larson's possession, custody and control, including but not limited to emails, text messages, Facebook posts, Facebook direct messages, Twitter posts, Twitter Direct Messages, Slack messages, Instagram messages, and any other communication form used by Ms. Larson for the period of 2015 through 2020.

**B. Ms. Dorland is Entitled to Sanctions Under the Rules.**

Pursuant to Fed. R. Civ. P. 37(a), a party may, upon reasonable notice to other parties, move for an order compelling discovery. See, e.g., Afreedi v. Bennett, 517 F. Supp.2d 521 (D. Mass. 2007). Fed. R. Civ. P. 37(a)(4)(A) states that when a motion to compel pursuant to Rule 37(a) is allowed, or when responses are made after a motion has been filed, "the court shall, after affording an opportunity to be heard, require the party … whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expense incurred in making the motion, including attorney's fees[.]" The exceptions to this requirement are (a) if the motion was filed without the movant's first making a good faith effort to obtain the disclosure without court action, (b) that the nondisclosure, response, or objection was substantially justified, or (c) that other circumstances make an award of expenses unjust.

Here, there is no question that the March 30, 2021 production of 420 documents was made after Ms. Dorland's March 15, 2021 motion was filed. Pursuant to Fed. R. Civ. P.

37(a)(4)(A), this production requires an order of sanctions. None of the exceptions apply to these circumstances. First, Ms. Dorland's counsel sought and held a discovery conference with Ms. Larson's counsel and counsel for the co-defendants on January 15, 2021, and that is not in dispute. See Memo at p. 3. Ms. Dorland's counsel followed up after that conference with a detailed email setting forth issues raised on the call, and, as the parties agreed, outlining request-by-request issues. Id. at p. 3, Ex. B. For weeks, Ms. Dorland pressed for additional documents, and those emails were met with responses such as "the burden to prove my defamation and intentional interference claim is on me." See Memo at p. 1, Ex. A. No meaningful response to the issues raised during the discovery conference was made until Ms. Larson's opposition was filed. Second, in this matter, the withholding of (or refusal to search for) documents was not justified. There is no claim of confidentiality, there is no claim of disability, there is no claim of lack of access. See Opp., generally. In fact, the time that was afforded to Ms. Larson for this production was overly long, and generously so, based on claims of illness and complications from childbirth by both Ms. Larson and her counsel, which Ms. Dorland and her counsel respected. Ms. Dorland further accommodated any difficulties related to the current global pandemic. It simply cannot be the case that the extended production period provided was insufficient for a simple and basic search of records in the possession, custody and control of an individual. This is a single custodian, not a corporation. Finally, there is no circumstance here, in light of all of the factors described herein, that makes an award of sanctions unjust. Ms. Larson brought this litigation, after copying Ms. Dorland's letter and publishing it as her own work.[5] She then delayed in producing documents, or responding in any fashion, for more than

---

[5] While Ms. Larson continues to state that she did "not copy" Ms. Dorland's letter, even in her current Opposition, other documents authored by Ms. Larson contradict this statement. For example, Exhibit A to this reply brief is a text message authored by Ms. Larson wherein she clearly states that she was "nervous" about sending the letter to

six (6) months, ultimately making an anemic production that on its face evidenced its lack of completeness. When pressed, Ms. Larson and her counsel claimed that Ms. Dorland was not entitled to documents concerning Ms. Larson's tort claims, documents which Ms. Dorland now knows will certainly bolster her defenses to Ms. Larson's unfounded claims. In light of the significant extensions granted in this matter, there is no basis upon which for Ms. Larson or her counsel to claim that the current pandemic has any impact on this discovery process. Ms. Dorland and Attorney Cohen have complied with their discovery obligations, as have countless other litigants, despite the pandemic.

It bears repeating that the nature of the documents produced on March 30, 2021 is particularly troubling, evidencing the reasonableness of an award of sanctions, including attorney's fees, in this circumstance. The documents that were withheld are directly on point, and support Ms. Dorland's defenses on all claims brought against her, as well as her own affirmative claims. Additional exemplars of the relevance of these key documents are attached hereto as **Exhibit C**.

Respectfully Submitted,

DAWN DORLAND PERRY,

By her attorneys,

*/s/ Suzanne Elovecky*
Suzanne Elovecky (BBO # 670047)
PARTRIDGE, SNOW & HAHN LLP
30 Federal Street, 7th Floor
Boston, MA 02110
(617) 292-7900
selovecky@psh.com

Dated: April 6, 2021

potential publishers because it "literally has sentences that I verbatim grabbed from Dawn's letter on FB." See Exhibit A.

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 6, 2021.

*/s/ Suzanne M. Elovecky*
Suzanne M. Elovecky (BBO #670047)