UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

SONYA LARSON

          Plaintiff,

v.

DAWN DORLAND PERRY, et al.

          Defendants.

Civil Action

No. 1:19-cv-10203-IT

**AFFIDAVIT OF PLAINTIFF, SONYA LARSON**

I, Sonya Larson, on oath depose and state as follows:

1. I work for a creative writing center in Boston known as GrubStreet. A number of my short stories have been published and I am working on a novel. One of my stories entitled, *The Kindest,* is the subject of this Action.

2. I was <u>partly</u> inspired to write *The Kindest* for several reasons, including the real-life donation by Dorland of one of her kidneys to an unknown recipient. My story is a creative work of pure fiction that is not about Dorland. Somehow, Dorland thinks the story is about her or she thinks my story owes its existence to Dorland.

3. I admit that I was invited by Dorland to join her Facebook group and that I saw the 2015 letter and took notes from it for future reference. I <u>never copied</u> Dorland's letter. I did not have a copy of the letter until years later when American Short Fiction ("ASF") sent me a copy that had been given to them by Dorland.

4. My story contains a letter about one-third of the way through *The Kindest*. The letter was written by the "white savior" kidney donor and sent to the kidney recipient. It was used as a literary device to introduce the kidney donor character in my story.

5. There have been five evolving variations of *The Kindest* that have been published. Each of the variants contains about 5,500 words. The letter in the Audible/Brilliance variant is 250 words long, and the letter in the ASF variant is 237 words long, and the variant in the BBF variant is 268 words in length. By contrast, Dorland's 2015 letter contains 381 words. I relied on Micosoft Word for the word count.

6. I wrote the Boston Book Festival ("BBF) version of my Story in 2018. It was written so that the letter within *The Kindest* would have no similarity to Dorland's 2015 letter. This is the final version of the Story that I have written or intend to write. The BBF version was later published in an anthology of short stories entitled Welcome to the Neighborhood published by Ohio University Press in 2019.

7. When Dorland contacted ASF, *The Kindest* had already been published in print by ASF and it appeared as an audio story on Audible.com and Brilliance Audio.

8. I completely rewrote the letter in my story so that there is only <u>one</u> word in the letter included in *The Kindest*, that shares commonality with Dorland's 2015 letter, namely the word "kindly." This word is used in the sign-off of the letter and it mirrors the title of my story.

9. Dorland complained that I delayed producing certain discovery for about six months. During this time, I gave birth to her first child. Both my daughter and I had lingering health issues, requiring two post-partum hospitalizations for me and many follow-up medical appointments for my daughter. I am also told that the wife of my lawyer was hospitalized twice for heart related issues.

10. Contrary to what Dorland claims, I did not complain to ASF or berate anyone about my short story. I was merely inquiring of ASF because the editor of BASS contacted me to say that she had been on the lookout for my story but had not received it.

11. Past recipients of the One City/One Story contest received considerable publicity and media attention. Winning the contest was quite an achievement for me and I was hopeful that it would boost my writing career.

12. The Boston Globe published two newspaper articles alleging that I plagiarized Dorland's 2015 Letter in *The Kindest*. The articles cast me and the BBF in particularly bad light. Because of newspaper deadlines, I was never able to fully express my views on Dorland's claims to the Globe reporter.

13. On March 16, 2021, I was contacted by a *New York Times* reporter named Robert Kolker, asking if I would agree to be interviewed for a feature story he was commissioned to write for the *New York Times Magazine*. Kolker, who is a respected *New York Times* best-selling author told me that Dorland contacted him in January 2021, to ask him to write a story about this ongoing case. Dorland has apparently had <u>at least</u> two phone conversations with Kolker, and has likely provided numerous documents to him.

14. The emails with my parents are somewhat personal and I would prefer to keep them private. None of these emails deal with damages. Of course, I will produce them if requested to do so.

15. In response to my interrogatories, Dorland said she contacted Tin House, the Vermont Studio Center, and the Association of Literary Scholars, Critics and Writers. Dorland has not produced any correspondence with these organizations. Dorland admits in her interrogatory answers that she contacted other organizations about me including the Authors

Guild, PEN America, the Vermont Studio Center, the literary agent Samantha Shea, authors Jennifer Haigh, Steve Almond, Chip Cheek, Michael Collier, Samantha Hunt, Bret Anthony Johnston, Deborah Plummer, Ethan Gilsdorf, Sondra Levenson, Kathy Sherbrooke, Maud Casey, and Andrew Goldstein. She also does not name the individuals she "knew" and contacted at Bread Loaf Writers' Conference, Middlebury College, the University of Maryland, Tin House, the Vermont Studio Center, PEN America, the Authors Guild, GrubStreet, and the Association of Literary Scholars, Critics, and Writers. I was able to find out about these contacts, but I do not know what Dorland said to them or communicated to them.

16.    I know that Dorland sent text messages in 2018 to the author Chip Cheek about me. Dorland has not produced these text messages.

17.    I have received a total of $425 for *The Kindest*.

18.    I found the January 25, 2021 email from Dorland's counsel helpful in clarifying more specifically what documents were being sought.

19.    I provided my lawyer with copies of all documents that I believed were responsive to Dorland's requests. The August 13, 2018 email chain with my writing group about the BBF's decision to cancel the One City/One Story program in 2018 was part of these documents. That certain documents apparently were not in the production initially sent to Dorland is clearly due to some clerical or technical error. I did not nefariously withhold documents at any time.

20.    Dorland claims that I preferred not to produce certain text messages. This is not true. My delay in sending any text messages was due to my confusion about what specific text messages were responsive to Dorland's requests, and more importantly where the bounds of those text conversations lie. Text message conversations do not come in contained forms (as

with emails), but instead are part of a continuous string of conversations. Even with the help of my attorney, I was confused about the limits of production given the amount of time and effort it took to segregate texts that mention the words "Dawn," "Dorland," "kidney" and the like, from clearly chatty and totally irrelevant tests. Again, there was no nefarious withholding of documents at any time.

21. In her Reply Brief, Dorland claims that there is one area where production appears incomplete. Applicants for NEA grants apply via an extensive online portal. There is very little correspondence with the NEA. I submitted the final BBF version of *The Kindest* to the NEA. The letter in this version of the story contains only one word in common with Dorland 2015 letter, the signoff "Kindly." In reviewing Dorland's Reply, I found a few emails with the NEA that I will produce even though they are of little or doubtful relevance.

Signed under the pains and penalties of perjury this 27th day of April 2021.

_Sonya Larson_

## Certificate of Service

I certify that Plaintiff's affidavit was filed with leave of court granted on April 29, 2021, through the court's ECF system, and a copy was sent electronically on the day it was filed to all counsel of record.

/s/ Andrew D. Epstein

April 29, 2021

Andrew D. Epstein