UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SONYA LARSON,

                    Plaintiff

          v.                                                    C. A. No.: 1:19-CV-10203-IT

DAWN DORLAND PERRY,
COHEN BUSINESS LAW GROUP, PC and
JEFFREY A. COHEN, ESQUIRE,

               Defendants.

               AND

DAWN DORLAND PERRY

                    Plaintiff-in-Counterclaim
          v.

SONYA LARSON

                    Defendant-in-Counterclaim

## DAWN DORLAND PERRY'S MEMORANDUM IN SUPPORT OF
## MOTION TO AMEND RESTATED COUNTERCLAIM

          Plaintiff-in-Counterclaim Dawn Dorland Perry, known professional and artistically as

Dawn Dorland ("Ms. Dorland"), respectfully moves this Court to permit Ms. Dorland to amend

her Restated Counterclaims Asserted Against Sonya Larson, filed on September 8, 2020 [Dkt.

No. 96].  Through the course of discovery in this matter, Ms. Dorland has learned that Defendant

Sonya Larson ("Ms. Larson") filed her original Complaint in this matter knowing that she had

plagiarized from Ms. Dorland's prior published material, thereby demonstrating full awareness

that her claims were entirely meritless. Additionally, text messages sent by Ms. Larson

demonstrate that Ms. Larson's objective in bringing this suit was not vindication of her rights or

1

to recover damages to which she believed was rightfully owed, but instead that her objective was to coerce Ms. Dorland to leave Ms. Larson alone and for Ms. Dorland to abandon her valid claims to Ms. Dorland's own intellectual property.

Ms. Larson's improper purpose in commencing the instant litigation, and her attempts to coerce Ms. Dorland into abandoning her rights through imposition of costly litigation, are an abuse of the process which the Court system is intended to accomplish. Accordingly, Ms. Dorland seeks to amend her Counterclaim in this matter to include a claim for Abuse of Process. Her proposed amended Counterclaim is attached hereto as <u>Exhibit A</u>, along with all proposed exhibits thereto.[1] For the Court's reference, a red-lined version of the proposed amended Counterclaim showing the changes made from the Restated Counterclaim is attached hereto as <u>Exhibit B</u>.

## I.      FACTUAL BACKGROUND

This case concerns a copyright dispute between Ms. Larson and Ms. Dorland. As the pleadings reflect, Ms. Larson initiated this lawsuit following Ms. Dorland's exposure of Ms. Larson's use of Ms. Dorland's writings in the short story titled "The Kindest". In Ms. Larson's view, as expressed in the operative complaint, Ms. Dorland's exposure of Ms. Larson's wrongdoing somehow entitles ***Ms. Larson*** to a declaration that she had not copied Ms. Dorland's work, as well as damages for defamation and intentional interference. However, the version of the story that Ms. Larson has submitted to the Court, which is itself infringing, and the manner in which she frames her case, completely ignores prior ***published*** versions of the story, versions that Ms. Dorland reacted to during the relevant time period, which contain much closer copies of Ms. Dorland's work than the current version.

---

[1] The Amended Counterclaim also removes the Counterclaim's original Count IV, which was Ms. Dorland's claim for Intentional Infliction of Emotional Distress, as this was been dismissed by Order of the Court [Dkt. No. 99].

Through her tort claims, Ms. Larson claims damages resulting from Ms. Dorland's communications with publishers and others about Ms. Larson's use of Ms. Dorland's letter, claiming that Ms. Dorland's communications defamed Ms. Larson, and that they allegedly resulted in losses to Ms. Larson's relationships with two entities:  Boston Book Festival ("BBF") and American Short Fiction ("ASF").[2]

Ms. Dorland responded with counterclaims for infringement of her copyright, a request for a declaration concerning her copyright, and for intentional infliction of emotional distress. Following motion practice, this Court dismissed Ms. Dorland's claim for intentional infliction of emotional distress.

As discovery has proceed, Ms. Larson has produced several documents which directly undercut several of her claims. But moreover, such documents undercut any suggestion that Ms. Larson ever believed that her claims had merit, instead showing a desire to utilize the process of litigation to coerce, bully, blackmail, or otherwise scare Ms. Dorland into "going away" and abandoning her intellectual property.  In other words, the objective of Ms. Larson's lawsuit was not to vindicate her rights with respect to her published works or obtain related damages; instead, Ms. Larson knowingly plagiarized work from Ms. Dorland, and hoped to utilize the Court process to prevent Ms. Dorland from telling any professional organizations about Ms. Larson's transgressions.

## II.    STANDARD OF REVIEW

Amendments to a pleading require court approval, but such approval is to be "freely given when justice so requires." O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154

---

[2] As Ms. Dorland intends to prove at the trial of this matter, any losses suffered by Ms. Larson (and Ms. Dorland disputes any losses were, in fact, suffered) were the result of Ms. Larson's illegal misappropriation of Ms. Dorland's work, and not the result of Ms. Dorland's communications with those entities.

(1st Cir. 2004), citing Fed.R.Civ.P. 15(a).  When the date indicated in a scheduling order for amending pleadings has elapsed, such deadline may be modified for "good cause and with the judge's consent." EMC Corp. v. Pure Storage, Inc., 310 F.R.D. 194, 200 (D. Mass. 2015), citing Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir.2013) (quoting Fed. R. Civ. P. 16(b)(4)).  This standard focuses mainly "on the diligence (or lack thereof) of the moving party[.]" Id., citing Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir.2004).  The deadline to amend pleadings in this matter was August 31, 2020.

Whether any delay in a motion to amend is "'sufficiently prejudicial to the opposing party to warrant a denial of leave to amend'" must be answered based on the particular facts of the case. Id., citing Weber v. Sanborn, 526 F.Supp.2d 135, 142 (D.Mass.2007). If a party was unaware of the availability or existence of a claim or defense at the time a pleading was filed, appropriate amendments to pleadings should be permitted. See Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc., No. 17-CV-12239-ADB, 2019 WL 9096049, at *3 (D. Mass. Aug. 21, 2019) ("Defendants were not in possession of the relevant materials as of… the deadline for amendment, because Plaintiffs did not produce documents until [after such deadline]…. Having learned of information supporting a statute of limitations defense following the relevant deadlines, Defendants took the recommended course of conduct and sought to amend their pleading.")

## III.   ARGUMENT

### a.   Ms. Larson Always Knew She Plagiarized Ms. Dorland's Work, But Nevertheless Brought This Lawsuit.

In her original Complaint [Dkt. No. 1], and in her Second Amended Complaint [Dkt. No. 91] Plaintiff stated in the introduction to her Complaint that "Plaintiff is seeking a declaration that her accused short story does not infringe Dorland Perry's copyright to a letter that Dorland

Perry posted on Facebook."  See Second Amended Complaint, Dkt. No. 91, p. 1.  The body of

the Complaint contained several other allegations claiming that Ms. Dorland's accusations of

plagiarism were false, including but not limited to:

- "Larson repeatedly informed Dorland that the Work was not about Dorland, nor was it about Dorland's personal experience as a kidney donor." Id., ¶ 26.

- "Larson also changed parts of the Fictional Letter that was incorporated in the Story." Id., ¶ 29.

- "Dorland's actions in making claims of plagiarism and sending aggressive and coercive correspondence to ASF without just cause were malicious and/or improper in method or means, and calculated to cause damage to Larson." Id., ¶ 66.

- "The actions of Dorland, and her agents servants and attorneys in communicating with the BBF were made to pressure the BBF into acquiescing with Dorland's unfounded claim of plagiarism and copyright infringement and her unwarranted demands for attribution and damages." Id., ¶ 74.

- "The actions of Dorland, and/or her agent, servants or attorneys in making unsupportable claims, intentionally misrepresenting the facts, and deploying aggressive and coercive correspondence with the BBF without just cause were malicious and/or improper in method or means, and were calculated to cause damage to Larson…." Id., ¶ 75.

- The Complaint also points to alleged "false statements and accusations of plagiarism and copyright infringement" made by Larson. Id., ¶ 113.

The original Complaint, and the Second Amended Complaint, against Ms. Dorland were

both predicated upon the premise that Ms. Dorland had falsely accused Plaintiff of copyright

infringement and plagiarism; in other words, the Complaint is based entirely upon the idea that

Plaintiff's work was entirely original and was not based on plagiarism.  Not only was this demonstrably false, but *Plaintiff knew at all times relevant to this action that this was false*.

Abuse of process occurs when process is used for an ulterior or illegitimate purpose, resulting in damage. <u>Smartling, Inc. v. Skawa Innovation Ltd.</u>, 358 F. Supp. 3d 124, 155 (D. Mass. 2019), <u>citing</u> <u>Psy-Ed Corp. v. Klein</u>, 459 Mass. 697 (2011) (<u>quoting</u> <u>Millennium Equity Holdings, LLC v. Mahlowitz</u>, 456 Mass. 627 (2010).  'Process' refers to the papers issued by a court to bring a party or property within its jurisdiction. <u>Jones v. Brockton Pub. Markets, Inc.</u>, 369 Mass. 387, 389–90 (1975).  "Knowing misrepresentations in the complaint" can support a claim for abuse of process. <u>Datacomm Interface, Inc. v. Computerworld, Inc.</u>, 396 Mass. 760, 775–76 (1986).

Through discovery, and more specifically through examination of documents produced by the Plaintiff in response to requests for production of documents, Ms. Dorland has learned that Plaintiff was always aware, prior to filing her Complaint, that she copied – i.e., "plagiarized" Ms. Dorland's work. Ms. Larson frequently discussed her work with friends and colleagues over text messages. In discussing the "The Kindest," Ms. Larson's story, and Ms. Dorland's letter which forms the basis of this case, Ms. Larson had apparently nearly finished writing "The Kindest," and texted her friends saying: "I think I'm *DONE* with the kidney story but I feel nervous about sending it out b/c ***it literally has sentences that I verbatim grabbed from Dawn's letter on FB.*** I've tried to change it but I can't seem to – that letter was just too damn good." <u>See</u> <u>Exhibit C</u>, January 23, 2016 text messages from Ms. Larson (emphasis added).[3]  Years later, on June 7, 2018, Ms. Larson had apparently convinced herself that because Ms. Dorland published her letter on Facebook, plagiarism was impossible, writing that "I honestly don't even know how

---

[3] Upon information and belief, "FB" is an abbreviation for "Facebook."

they might compare; I'm worried there is similar language in there, but can it even be plagiarism if it was basically from a FB post?" See Exhibit D, June 7, 2018 text messages from Ms. Larson. Later, Ms. Larson wrote that "***I def. remember writing down certain phrases from that letter, because I thought it was so weird, and I wouldn't be surprised if I ended up using some***, or phrases close to them." See Exhibit E, Text Messages from Ms. Larson, Bates No. LarsonP000095 (emphasis added).

Ms. Larson continued with her speculation that no citation to stolen language was necessary; when asked if she took any words directly from Ms. Dorland's letter, Ms. Larson stated "I'm worried that I accidentally did…when you research for fiction, no one ever tells you to like 'cite' your details!" and wondering "[a]nd can you even plagiarize from a FB post?? This is something I don't know."  See Exhibit F, Text Messages from Ms. Larson, Bates No. LarsonP3000091.  When writing fiction, Ms. Larson expressed that "[w]e're always dropping in real-life language, snippets, etc.!!" See Exhibit G, Text Messages from Ms. Larson, Bates No. LarsonP3000151.  At least one of Ms. Larson's friends advised Ms. Larson to omit the Dorland Letter, and when Ms. Larson wrote that with "The Kindest" approaching publication, "I am excited but also worried that DD [Dawn Dorland] is going to murder me," to which Ms. Larson's friend suggested "Just don't use her note." See Exhibit H, Text Messages from Ms. Larson, Bates No. LarsonP3000029. Ms. Larson's own friend suggested not copying Ms. Dorland's "note," but as has been made plain throughout the history of this case, Ms. Larson declined the opportunity to *not* plagiarize.[4]

In early text messages, Ms. Larson admitted to outright copying, but denied that such copying could be "plagiarism." Later, Ms. Larson stated that she did not think attribution was

---

[4] This text exchange also demonstrates that not only Ms. Larson, but also her social circle, understood that the letter contained within "The Kindest" was, in fact, Ms. Dorland's letter.

necessary when lifting "snippets," and that there is no need to "cite you details."  During her

deposition, Ms. Larson crafted a particular definition of plagiarism, stating that her

"understanding is that, when fiction writers describe plagiarism, they are describing the act of

one writer's creative work portraying another writer's creative work as their own." See Exhibit I,

Deposition of Sonya Larson, Day 2, 320:1 – 320:7. This is an unreasonable definition of

plagiarism, especially for someone who holds themselves out as a professional writer and writing

instructor, and does not in any respect comport with any *actual* definition of "plagiarism."  See

"plagiarism," Oxford Reference,

https://www.oxfordreference.com/view/10.1093/oi/authority.20110803100329803, accessed

1/12/2022 ("The practice of taking someone else's work or ideas and passing them off as one's

own"); "Plagiarism," Dictionary.com, https://www.dictionary.com/browse/plagiarism, accessed

1/10/2022 ("an act or instance of using or closely imitating the language and thoughts of another

author without authorization and the representation of that author's work as one's own, as by not

crediting the original author"); "Plagiarize," Intransitive verb, Meriam Webster Dictionary

Online, https://www.merriam-webster.com/dictionary/plagiarize, accessed 1/12/2022 ("to

commit literary theft").  By her own text message statements, "plagiarism" is exactly what Ms.

Larson did, even if she has deliberately hand-crafted an alternative definition during her

deposition in an attempt to justify her own unreasonable filing of a Complaint.[5]

    As stated *supra*, the Complaint broadly alleges that Ms. Dorland's accusations of

plagiarism were false, but Ms. Larson's text messages admit to verbatim copying of Ms.

Dorland's letter, and to using phrases taken directly from Ms. Dorland's letter. Thus every

---

[5] Ms. Larson's own personal definition of the term "plagiarism" inserts the term "creative work," which conveniently permits Ms. Larson to make the unilateral determination of whether Ms. Dorland's letter was a "creative work".  Of course, there is no separate definition of plagiarism for fiction writers, as set forth above.

allegation in the Complaint which accuses Ms. Dorland of defamation and/or interference for
publicizing Ms. Larson's plagiarism were knowingly and deliberately false.[6]

Perhaps even more concerning, however, is Ms. Larson's crafting of the Complaint in
such a manner to strategically prevent Ms. Dorland from selecting her trusted counsel.[7] By
including Mr. Cohen as a co-defendant, he was unable to represent Ms. Dorland, despite that the
claims against Mr. Cohen cannot be supported by evidence produced in this case. While the
Court has found that the claims against Mr. Cohen have been adequately pled for the purposes of
surviving a Motion to Dismiss, Ms. Larson cannot actually prove her claims at trial against Mr.
Cohen. Indeed, although Ms. Larson's claims are supposedly based on allegedly inappropriate
correspondence sent by Mr. Cohen, Ms. Larson has known since before the outset of this case
that Mr. Cohen wrote a demand letter to the Boston Book Festival ("BBF") (never to Ms.
Larson), prior to the BBF's publication of "The Kindest," citing to a copyright statute which was
applicable specifically because the BBF had not yet published. Ms. Larson attempts to frame Mr.
Cohen's letter as being ill-timed and mistaken based on the relative timing of the letter versus the
BBF, but as evidence will show once this matter reaches trial, Ms. Larson's claims against Mr.
Cohen (while perhaps adequately pled to survive a motion to dismiss) could never survive the
reality of actual evidence, and instead exclusively served to separate Ms. Dorland from her
chosen lawyer.

---

[6] Ms. Larson is represented by counsel in this matter, and therefore, to the extent that Ms. Larson's beliefs
concerning the definition of the word "plagiarism" were misplaced, it was incumbent on her counsel, pursuant to
Rule 11 of the Federal Rules of Civil Procedure and otherwise, to confirm that the allegations contained in the
Complaint were made in good faith, which includes a basis on the genuine, rather than fabricated, meaning of
defined terms.

[7] Although Mr. Cohen is a California-based attorney, Ms. Dorland presumes that he would have sought admission
*pro hac vice* in order to continue to represent her as effectively as he has in the past, even if that required retention
of local counsel.

Such extensive misrepresentations throughout the Complaint support a cause of action by Ms. Dorland for abuse of process.  But beyond simply including knowingly false allegations in the Complaint, the Plaintiff initiated the instant case not to vindicate her rights (because, as established above, Ms. Larson knew or should have known that her rights had not been infringed) nor to recover damages, but instead to coerce, scare, or blackmail Ms. Dorland into dropping her otherwise meritorious claim over her own work.

b.  **Ms. Larson Hoped This Lawsuit Would Silence Ms. Dorland, Preventing Her From Pursuing Her Intellectual Property Rights.**

As referenced above, Ms. Larson never believed that her claims in this action were valid, nor that she was truly entitled to the relief sought – she knew from the outset that she had copied Ms. Dorland's work. But she had an ulterior motive in filing the Complaint *other* than to prevail on genuine claims brought in a Court of law.

Abuse of process can be "described as usually involving a form of coercion to obtain collateral advantage not properly involved in the proceeding itself, similar to extortion." <u>Adams v. Whitman</u>, 62 Mass. App. Ct. 850, 850 (2005). While bad intentions alone are not enough to impose liability, "the case is otherwise where there is a 'form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, ***such as the surrender of property***. <u>Powers v. Leno</u>, 24 Mass. App. Ct. 381, 383–84 (1987) (emphasis added) (noting that in the Restatement (Second) of Torts, the "usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him ... to take some ... action").

"To constitute a cause of action for this tort it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." <u>Gabriel v. Borowy</u>, 324 Mass. at

236–37 (1949).  Although not an express element of the tort of abuse of process, "filing a groundless claim… is relevant, because it may tend to show that the process was used for an ulterior purpose." Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011).  Such ulterior motive may also "be shown by showing a direct demand for collateral advantage; or it may be inferred from what is said or done about the process." Ladd v. Polidoro, 424 Mass. 196, 198 (1997), citing W.L. Prosser & W.P. Keeton, Torts § 121, at 899 (5th ed. 1984).

Through documents obtained during discovery, Ms. Larson made her true objectives in filing suit plainly clear. Her goal: to make Ms. Dorland "go away," and abandon any claims to her rightfully-copyrighted material.  Ms. Larson described her motivations via text message, stating that "[b]asically I want it in writing that she will never ever contact me again. I want her fully out of my life forever…I think if we make it clear that we WILL sue for defamation, that ought to keep her in check." See Exhibit J, Text Messages from Ms. Larson, Bates No. LarsonP3000066. Indeed, when asked "is the goal to get Dawn to go away forever, or for compensatory damages," Ms. Larson responded, "All the things!" noting that "everyone is saying this is an excellent case. Esp. if pro bono."[8]  See Exhibit K, Text Messages from Ms. Larson, Bates No. LarsonP3000060. She expressed that "I am actually EAGER to pay someone to pound her into the ground," and "I'm glad you share in my DD [Dawn Dorland] Smithereens Desire."  See Exhibit L, Text Messages from Ms. Larson, Bates No. LarsonP3000093. And she

---

[8] Ms. Dorland and her counsel fully appreciate the substantial value provided by attorneys who volunteer their time and expertise to provide pro bono legal representation to those in need, and indeed Attorney Elovecky provides pro bono services herself to clients in need. Nevertheless, Ms. Larson's desire to pursue this case *only* with the help of a pro bono lawyer suggests that she avoided the need to engage in the typical cost-benefit/risk-reward analysis that one would expect prior to filing suit. Instead, as reflected in correspondence drafted by Ms. Larson, produced in the discovery of this matter, that pro bono representation resulted in Ms. Larson's perception that she had no risk to herself in pursuing this litigation, and that alone made it worthwhile to her as a tool to silence Ms. Dorland.

seemed to hope that "Dawn is going to HURT." <u>See</u> <u>Exhibit M</u>, Text Messages from Ms. Larson, Bates No. LarsonP3002001.[9]

Ms. Larson was not seeking compensation for genuine losses – indeed, how could she have sought such compensation when she knew she had committed plagiarism by her own words? Instead, her objective was to silence Ms. Dorland. Ms. Dorland's assertion of her intellectual property rights was a thorn in the side of Ms. Larson during a time when Ms. Larson was seeking to capitalize on publication of "The Kindest."  If Ms. Larson could force Ms. Dorland to never again reveal Ms. Larson's plagiarism, litigation would have been worth it.

Indeed, Ms. Larson at least partially succeeded in this objective. In the winter of 2019, Ms. Larson published "The Kindest" in a new anthology titled "Welcome to the Neighborhood," and upon information and belief, part of Ms. Larson's goal in filing the instant suit was to prevent Ms. Dorland from asserting her rights against "Welcome to the Neighborhood" and its publisher, the Swallow Press. Ms. Dorland ultimately did not reach out to them, specifically out of concern of the risk of having an additional claim for intentional interference with contractual relations against which Ms. Dorland would have to defend. In this respect, Ms. Larson's gambit succeeded, at least in part.

But such coercion is not the purpose of the civil litigation system.  <u>See</u> <u>Ladd</u>, 424 Mass. at 198 (1997).  As Ms. Larson was never seeking to vindicate her rights, but instead to obtain a collateral advantage through abuse of the court system, Ms. Dorland's claim for abuse of process is well-supported, and will undoubtedly be further supported as these facts are further borne out by live testimony at trial.

---

[9] In this production, messages with a blue background are sent by Ms. Larson, and messages with a grey or white background are sent by the person(s) with whom she is communicating.

c.  **This Amendment Should Be Allowed, As It Is Not Futile, Is Based On Recently-Discovered Documents, Is Brought In Good Faith, And Could Not Have Been Included In The Original Counterclaim.**

"The limited reasons for denying a pre-judgment motion to amend include undue delay, bad faith, futility and the absence of due diligence on the movant's part." Libby v. Park, Marion & Vernon Streets Operating Co., LLC, 278 F. Supp. 3d 501, 504 (D. Mass. 2017), citing Torres–Àlamo v. Puerto Rico, 502 F.3d 20, 25 (1st Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)).

As set forth above, the Plaintiff produced documents on March 30, 2021 in this matter following the filing of a Motion to Compel by Ms. Dorland. Until Ms. Dorland and her counsel had the opportunity to review the same, they were unaware of the existence of this claim – it was not until a review of Plaintiff's text messages plainly stating that she knew she had committed plagiarism, and moreover expressing her goals in initiating this suit, that the need for this claim, and indeed the existence of this claim, became clear.  Through Ms. Larson's deposition, which was not concluded until September 28, 2021, Ms. Larson confirmed what Ms. Dorland had long suspected and which is supported by the text messages: that (a) Ms. Larson copied Ms. Dorland's letter, and (b) Ms. Larson holds an unreasonable view concerning the definition of plagiarism not based on any dictionary or definition that exists outside of Ms. Larson's own mind.  Accordingly, this claim could not have been included in Ms. Dorland's original counterclaim, and Ms. Dorland has therefore not been dilatory in seeking to amend her counterclaim. See The Hilsinger Co. v. Kleen Concepts, LLC, 164 F. Supp. 3d 195, 199 (D. Mass. 2016) (holding that where the deadline for amendments has not elapsed, and where any delay cannot be shown to cause harm to the opposing party, a motion to amend should be allowed).

Damages in a dispute regarding copyright infringement are hard to calculate, but in at least one instance, Ms. Larson received money directly as a result of her publication of "The Kindest." Ms. Larson obtained a fellowship grant from the NEA, the National Endowment for the Arts, which required submissions of writing examples in order to be awarded the grant.  In her initial disclosures, Ms. Larson stated that the grant award was based on "The Kindest" as well as other works, but during her deposition, Ms. Larson was asked "But 'The Kindest' was the only writing example you provided, correct?" to which Ms. Larson responded, "That's correct."  See Exhibit I, Deposition of Ms. Larson, Day 2, 444:3 – 446:6.  This grant was for $25,000. Id. This is money which Ms. Larson could not have earned but for her illegal utilization of Ms. Dorland's letter, and had Ms. Dorland fully asserted her intellectual property rights, it would have cost Ms. Larson that sum.

Ms. Dorland brings this Motion in good faith, and there will be no prejudice to Ms. Larson should this claim be added. The nature of this claim means that any information about this issue is entirely in the possession of Ms. Larson, and indeed no additional discovery beyond that already produced in this matter is necessary for Ms. Dorland to support her claim. See The Hilsinger Co., 164 F. Supp. 3d at 201 (D. Mass. 2016) (there do not appear to be any facts in the record that clearly demonstrate [movant's] alleged bad faith. Moreover, it appears that [the opposing party] will suffer minimal, if any, prejudice as a result of the Court granting the motion to amend.")

In particular, in Ms. Dorland's Requests for Production to Ms. Larson, Request No. 3 reads "All documents reflecting or concerning communications between you and any other person that references or relates to Ms. Dorland." Request No. 9 reads "Communications referencing or concerning the Facebook group referred to in Paragraph  11 of the Complaint."

Request No. 11 reads "All documents and communications regarding the Dorland letter."
Request No. 44 reads "All communications between you and your writing group, as referenced
in Paragraph 38 of the Complaint, concerning Ms. Dorland and/or the Dorland Letter." And
Request No. 58 reads "All communications between you and any other person concerning Ms.
Dorland's allegation that you copied and/or plagiarized the Dorland Letter."  Among these
requests, Ms. Dorland expects that any responsive documents have already been produced, as
Ms. Larson did not indicate that she withheld any responsive documents in her written responses.
***Ms. Dorland suggests that so long as Ms. Larson and her counsel certify that all documents
responsive to these requests have already been produced, no additional discovery on this
matter is required***.  As a result, there will be no need for extensions of any deadlines nor delay
of any trial dates associated with adding this claim.

Furthermore, as made clear by Ms. Larson's own words, this proposed amendment is not
futile.  Futility is evaluated against a relatively low bar: an "amendment is not deemed futile as
long as the proposed amended complaint sets forth a general scenario which, if proven, would
entitle the plaintiff to relief against the defendant on some cognizable theory." Hatch v. Dep't for
Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001).  More specifically, this states that
so long as summary judgment briefings have not been filed, "a proposed amendment is futile
only if it could not withstand a 12(b)(6) motion to dismiss." Id., citing Rose v. Hartford
Underwriters Ins. Co., 203 F.3d 417, 421 (6th Cir.2000).  The evidence already proffered in
connection with this Motion to Amend is sufficient to withstand a Motion to Dismiss: Ms.
Dorland has established that Ms. Larson utilized process to bring Ms. Dorland into Court, that
Ms. Larson knew her Complaint was baseless and was designed to utilize the process of bringing
Ms. Dorland into Court for improper purpose, and that Ms. Dorland has been damaged as a result

of Ms. Larson's actions.  Ms. Dorland's damages resulting from Ms. Larson's abuse of this

process include, without limitation, years of litigation, the stress and financial burden associated

with such litigation, costs of litigation, and the inability to pursue her own rights without the risk

of further claims being brought against her. Indeed, the emotional and mental toll this litigation

has taken, and continues to take, on Ms. Dorland is substantial.  See Millennium Equity

Holdings, LLC v. Mahlowitz, 456 Mass. 627, 648 (2010) (finding that there is no requirement of

a showing of physical harm for damages resulting from abuse of process in connection with

claims for emotional distress damages, and awarding damages for emotional distress associated

with abuse of process).

By satisfying, through evidence, all elements of the claim at issue, Ms. Dorland's new

claim for abuse of process successfully states a claim, and therefore is not subject to a Rule

12(b)(6) motion. See The Hilsinger Co., 164 F. Supp. 3d at 201 (D. Mass. 2016) (holding that

when an amended complaint states a claim upon which relief may be granted, that amended

complaint is not futile); Millennium Equity Holdings, 456 Mass. at 636 (2010) (the three

elements of the cause of action for "abuse of process" are 1) that "process" was used; 2) for an

ulterior or illegitimate purpose; 3) resulting in damage).

Lastly, and most importantly Ms. Larson has had every opportunity between the filing of

the original complaint and the present date, to dismiss her tort claims against Ms. Dorland,

particularly upon reviewing the admissions produced in discovery, as set forth above.  In fact,

during discussions amongst counsel, Ms. Larson's counsel had shared that Ms. Larson has come

to see this litigation as a mistake, following "self-reflection and the discovery process."  Of

course, the only "discovery" that made clear Ms. Larson's true intentions in filing this lawsuit

was the discovery provided by Ms. Larson – both documents and deposition testimony – which

Ms. Larson was surely aware of prior to filing the complaint in this matter.  Where Ms. Larson has doggedly pursued her claims, even in the face of damning admissions, Ms. Dorland is now forced to bring this Motion to Amend.

## IV.   CONCLUSION

Ms. Larson brought a lawsuit designed to intimidate, blackmail, and scare Ms. Dorland into abandoning her intellectual property rights. This suit was not based on any belief in the rightness of Ms. Larson's position – indeed, she knowingly plagiarized a letter written by Ms. Dorland, resisted changing any word of the letter because it was "too good," and then brought suit to deliberately lie about and conceal said plagiarism. Such behavior should not be permitted.

Ms. Dorland was forced to retain counsel to defend against baseless claims brought by Ms. Larson, and should be permitted to recover damages accordingly.

Therefore, Ms. Dorland respectfully requests leave to amend her counterclaim to add a claim for abuse of process against Ms. Larson. The proposed amended counterclaim is attached hereto as Exhibit A.

Respectfully Submitted,

DAWN DORLAND PERRY,

By her attorneys,

*/s/ Suzanne Elovecky*

Suzanne Elovecky (BBO # 670047)
PARTRIDGE, SNOW & HAHN LLP
30 Federal Street, 7th Floor
Boston, MA  02110
(617) 292-7900
selovecky@psh.com

Dated:  January 20, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 20, 2022.


*/s/ Suzanne M. Elovecky*
Suzanne M. Elovecky (BBO #670047)


4168417.3/30402-2