# EXHIBIT KK

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON | Civil Action No. |
| Plaintiff, | |
| v. | 1:19-cv-10203-IT |
| DAWN DORLAND PERRY, et al. | |
| Defendants. | |

## PLAINTIFF, SONYA LARSON'S ANSWERS AND OBJECTIONS TO INTERROGATORIES PROPOUNDED BY DEFENDANT, DAWN DORLAND PERRY

### GENERAL OBJECTIONS

Plaintiff objects to the definitions and instructions contained in Defendant, Dawn Dorland Perry's First Interrogatories to Larson on the grounds that they are overly broad, vague, unduly burdensome and beyond the scope of discovery set forth in the Federal Rules of Civil Procedure and/or give meaning to words different from their ordinary English meaning or definitions set forth in applicable statutes or rules. By submitting answers to interrogatories, Plaintiff does not in any way adopt Defendant's purported definitions of words or phrases contained in this discovery request to the extent they are inconsistent with the ordinary and customary meanings of such words and phrases or the rules governing the permissible scope of discovery. Plaintiff specifically objects to the definition of "Dorland Letter" and Defendant's characterization of said letter.

### INTERROGATORIES

**Interrogatory No. 1: State the name and address of each person who has knowledge about the facts and circumstances described in the Complaint and the Counterclaim filed in this Action.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Furthermore, this interrogatory is objected to the extent that it invades the attorney-client and the attorney work product privileges.  Subject to and without waiver of these objections, Plaintiff states as follows:

In addition to the Plaintiff, Sonya Larson ("Larson"), and the Defendants, Dawn Dorland Perry ("Dorland"), Cohen Business Law Group, PC, and its agents, servants, employees, and present or former attorneys (collectively "Cohen Law") including but not limited to Defendant, Jeffrey A. Cohen (Atty. Cohen"), and Attorney Michael S. Hanna, Larson refers Dorland to Larson's Initial Disclosures that were provided to all counsel by letter dated April 24, 2020, and her answers and responses to all interrogatories she has answered in this Action, and responses to document requests that have been or will be made, all of which are incorporated herein by reference.

**Interrogatory No. 2: Identify all non-privileged communications you have had with any person concerning the Dorland Letter; for each such conversation, identify (a) the date of the conversation, (b) the person with whom you had the conversation, (c) any witnesses to the conversation, and (d) the substance of the conversation, including who said what.**

OBJECTION:  In addition to the General Objections herein, Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Furthermore, Plaintiff objects to this interrogatory to the extent that it invades the attorney-client and the attorney work product privileges.  Subject to and without waiver of these objections, Plaintiff states as follows:

(a)  Summer of 2015;

(b)  Sari Boren;

(c)  Other than Ms. Boren, there were no witnesses;

(d) We discussed the self-referencing tone of the letter.

**Interrogatory No. 3: Concerning the Dorland Letter, please identify: (a) the date that you first read the Dorland Letter; (b) the circumstances in which you first encountered and read the Dorland Letter; and (c) what if anything you did with the Dorland Letter at that time.**

OBJECTION:  Please see the General Objections, which are included herein by reference. Subject to said objections, Plaintiff states as follows:

(a) Summer of 2015

(b) Dorland added me to her Facebook group, and I read the letter sometime after it was

   posted.

(c) I did nothing with the letter.

**Interrogatory No. 4: For each copy of the Dorland Letter that you have or had in your possession, custody and control at any time, please identify (a) when that copy of the Dorland Letter came into your possession, custody and control; (b) from where you obtained that copy of the Dorland Letter, (c) the date, if any, that said copy left your possession, custody and control, and (d) the circumstances upon which said copy left your possession, custody and control.**

OBJECTION:  Please see the General Objections, which are included herein by reference. Subject to said objections, Plaintiff states as follows:

(a) I received a copy of the letter on or about June 8, 2018.

(b) Rebecca Markovits of American Short Fiction sent it to me.

(c) I still have the copy in my possession.

(d) Not applicable; I still have the copy in my possession.

**Interrogatory No. 5: Describe any and all research you conducted in connection with your writing of The Kindest, including but not limited to research related to letters written to and from kidney donation recipients. Include in your response the dates that said research was completed and the resources utilized in your research.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Plaintiff also objects to the word, "research," which is vague and ambiguous.  Subject to and without waiver of these objections, Plaintiff answers this interrogatory as follows:

Some of my "research" was based on my education, general reading of many subjects as well as my life experiences.  As best as I can remember at this time, specific inquiries were conducted on the following topics.

On alcoholism and addictive logic:

- ○ *Neurotic Styles* by David Shapiro, 2013-2015
- ○ *Breaking Addiction: A 7-Step Handbook for Ending Any Addiction* by Lance Dodes,  2013-2015
- ○ Extensive conversations with a close relative who has been a member of Al-Anon for decades.

- On codependency:
  - ○ *Women Who Love Too Much*, by Robin Norwood, 2013-2015
  - ○ *Codependency For Dummies*, by Darlene Lancer, 2013-2015

- On representation of Chinese-American working class people:
  - ○ Numerous articles and essays about the "model minority" myth, and how it obscures the reality of Asian-American poor and working class people, 2013-2017
  - ○ Extensive conversations with my mother, who is Chinese-American and whose parents immigrated from China to the United States.

- On white savior narratives and how they function:

- - "The White-Savior Industrial Complex," by Teju Cole, 2014
  - Numerous essays and entries on Wikipedia on white savior narratives in film, critiques of *The Help*, etc., 2014-2015
- "The Dress" Photograph and related articles by Steven Pinker, 2015
- Numerous essays and articles on the "angry Black woman" stereotype, 2013-2015
- Letters from organ donors, recipients, and family members of donors and recipients in 2015 including for example, the following:
  - https://www.giftofhope.org/
  - https://www.lifelinkfoundation.org/
  - https://www.donors1.org/
  - http://transplantnet.org/
  - https://www.lungtransplantproject.org/
  - https://www.lcnw.org/
  - https://www.kidney.org/

**Interrogatory No. 6:** Identify, either by title or description, all writings authored by Ms. Dorland that you had access to, saw, skimmed, scanned, reviewed, read or studied. For each said writing, please identify the date and manner in which you obtained access to said writing. For purposes of this interrogatory, "writing" shall mean letter (excluding emails or text messages), short story, essay, novel, novella, memoir, poem, or excerpts of any of same.

OBJECTION: Subject to the General Objections, Plaintiff also objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome. Without waiver of these objections, Plaintiff answers this interrogatory as follows:

To the best of my memory at this time, I answer this interrogatory as follows:

- 2007-2017: I read various posts that Dorland made on Facebook, Twitter, and Instagram.

- Dates uncertain: I believe that Dorland submitted writing samples to the Manuscript Mart of GrubStreet's national writing conference, which I technically had access to, but I did not open or view these writing samples.

- Dates uncertain: I believe that Dorland submitted writing samples for various writing classes at GrubStreet, which I technically had access to, but that I did not open or view.

- August 2018: I read a blog post that Dorland once wrote for the GrubStreet blog.

**Interrogatory No. 7 Identify all entities to which you submitted The Kindest for publication, assessment, consideration or evaluation; whether for purposes of publication, entry in a contest, admission into a workshop, academic program, class, seminar or course, or for a scholarship, fellowship, or other recognition of any kind.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome. Plaintiff also objects to the word, "publication," which can have different meanings depending on the context in which the word is used. Subject to and without waiver of these objections, Plaintiff answers this interrogatory as follows:

As best as I can remember, the entities include the following:

*American Short Fiction*

*The Atlantic*

*Boston Review*

*Carve Magazine*

*Colorado Review*

*Electric Literature*

*Glimmer Train*

*Gulf Coast*

*Hunger Mountain*

Boston Book Festival

Mass MOCA

*The Masters Review*

*The Missouri Review*

*Narrative Magazine*

National Endowment for the Arts

*The New Yorker*

*Ploughshares*

Plympton

Ragdale

Rona Jaffe Foundation

The Somerville Arts Council

*Tin House*

*Welcome to the Neighborhood* Anthology

**Interrogatory No. 8: Identify all statements made by Ms. Dorland which you claim were defamatory. For each said statement, identify the date the statement was made and to whom said statement was made, and whether said statement was made in writing or otherwise.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome. Also, discovery is ongoing and there may be other defamatory statements that have yet to be uncovered. Subject to and without waiver of these objections, Plaintiff states as follows:

Larson refers Dorland to Larson's Initial Disclosures that were provided to all counsel by letter dated April 24, 2020, as well as all answers to interrogatories and document requests of all parties, which are incorporated herein by reference.

In addition, Dorland made the following statements of which I am aware.

- Dorland's repeated statements to the Boston Book Festival that I am a plagiarist;

- Dorland's repeated statements to *American Short Fiction* that I am a plagiarist;

- Dorland's repeated statements to a *Boston Globe* reporter that I am a plagiarist;

- Dorland's repeated statements to one or more employees at GrubStreet that I am a plagiarist;

- Dorland's repeated statements to the Bread Loaf Writers' Conference that I am a plagiarist;

- Dorland's repeated statements to members of my writing group that I am a plagiarist;

- Dorland's repeated statements to the Vermont Studio Center that I am a plagiarist;

- Dorland's repeated statements to literary agent Samantha Shea that I am a plagiarist;

- Dorland's statements to a *Boston Globe* reporter that I received my fellowship to the Bread Loaf Writers' Conference based on "The Kindest";

- Dorland's statements to The Michener Center for Writers that I am a plagiarist;

- Dorland's statements to PEN America that I am a plagiarist;

- Dorland's statements to The Author's Guild that I am a plagiarist;

- Dorland's statements to *Tin House* that I am a plagiarist;

- Dorland's statements to "an acquaintance who directs a prestigious international writing workshop" that I am a plagiarist;

- Dorland's statements to the writers Jennifer Haigh, Steve Almond, Deborah Plummer, Ethan Gilsdorf, Sondra Levenson, Kathy Sherbrooke, Maud Casey, Michael Collier, and Andrew Goldstein that I am a plagiarist;

- Dorland's statements to a *Boston Globe* reporter that I have created a "hostile work environment" at GrubStreet, and that I have committed "legal and artistic intimidation";

- Dorland's statements to a *Boston Globe* reporter that I used "hostile conduct" and "intimidation" with Dorland at the conference I run, to which "other writers might be vulnerable," and that I have committed "community betrayal";

- Dorland's statement to one or more employees at GrubStreet that I "directed" her "not to write about race."

**Interrogatory No. 9: Identify all communications you had with any voice talent employed in connection with The Kindest concerning their performance in connection with that work. For each such communication, identify the date of the communication, the name of the voice talent, and substance of the communication. Specifically, please identify any direction you provided to said voice talent concerning the tone or inflection that you desired to be utilized during the letter portion of The Kindest, or any back story or other information you provided concerning the letter contained within The Kindest.**

OBJECTION:  Plaintiff objects to this interrogatory to the extent it is overbroad and unduly burdensome and seeks information that is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to said objection, Plaintiff states as follows:

I had a series of email communications with Emily Woo Zeller from May 2 to May 13, 2016.  I mentioned to Emily that I made slight improvements to *The Kindest* in order to ease the rhythm and tone of the story.  I mentioned that the characters in my story were ordinary people who spoke colloquially and were vulnerable human beings.  I told her that the main character's voice tended to be casual and even crass when she is uncomfortable, especially with regard to

her alcohol problem, the nature of her car crash, and the kindness of Rose Rothario and Rose's life-saving act.

I said that in general, the tone of the story is one of gathering intensity. What begins as relief and triumph becomes more intimate, knowing, anxious and intense.

Emily said she understood the complexities of the two women, and she thought the story was intense. She also asked me how to pronounce Bao's name and the name Rothario. To the best of my knowledge, I did not give Ms. Zeller any direction concerning the tone or inflection to be used in connection with the letter portion of my short story.

**Interrogatory No. 10: Identify the date that you first conceived of the idea for the short story "The Kindest" and describe the source of that inspiration.**

I had helped to facilitate a panel on race and writing while I was studying for my MFA in January 2015. The panel sparked a very divided reaction from members of the audience. During this panel, it became clear to me that many of the white-identified writers in the room were perceiving different racial dynamics happening than were the self-identified writers of color.

When I heard about and saw "The Dress" photograph in February 2015, which viewers debated was either gold and white, or black and blue, it struck me as a perfect metaphor for what I had witnessed in January 2015 as a graduate student. I wanted to write a story that would function like that photograph and spark divergent reactions from readers.

**Interrogatory No. 11: Identify all changes that you made to the letter contained in The Kindest following the first draft, and for each change, identify (a) the date of the change, and (b) the reason for the change.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome. Subject to and without waiver of these objections, and to the best of Plaintiff's present memory, Plaintiff states as follows:

- November 2015: I changed the letter-writer's name, to a derivative of my mother's name.

- July 2016: I made changes of language to emphasize Rose's affection for platitudes, and to introduce the word "foreign."

- August 2016: I made changes of language to avoid similarities between the letter in my story and what I remembered of Dorland's letter.

- June 2018: I made changes of language to dispel all comparisons between the letter in my story and what I remembered of Dorland's letter. This change was made to placate Dorland so she and her lawyers would stop their relentless threats, accusations, intimidation, unwarranted legal claims, phone calls and emails to the Boston Book Festival so that The Kindest would be published and disseminated by the BBF.

**Interrogatory No. 12: Identify all elements of The Kindest, the characters contained within The Kindest, or any promotional materials related to The Kindest, that were inspired by or copied from Ms. Dorland, Ms. Dorland's living kidney donation, or which were inspired by or copied from Ms. Dorland's Facebook group or materials posted therein. For each such element, identify whether said element was "inspired by" or copied.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

I did not copy Dorland's letter.

- I was inspired by the occasion of Dorland's giving her kidney to a stranger.  Such an occasion dovetails nicely with the classic literary narrative construction of a "stranger comes to town," in which a stranger or a new situation enters a protagonist's world and their/its presence disrupts the norms of that world.

- I was inspired by the self-referencing tone and syntax of Dorland's letter.  That quality set it apart from similar letters I read in my research.

**Interrogatory No. 13: Identify all public appearances you have made from January 1, 2017 to the present, including but not limited to readings, interviews, speaking engagements, lectures, events, symposiums, and conferences. For each such appearance, please state the date, the name of the event, the sponsor of the event, the context in which you appeared, the role you played at the event, whether you spoke at the event, and if you so, the content of your speech.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff

states as follows:

Monday, August 24th, 2020

7:00pm @ Cambridge Public Library

What Makes a Good Writing Group? The Chunky Monkeys Share Tips & Advice

With Alex Marzano-Lesnevich, Celeste Ng, Christopher Castellani, Jennifer De Leon, Adam

Stumacher, Whitney Scharer, Calvin Hennick, Grace Talusan, Chip Cheek, and Becky Tuch

Members of my writers' group and I discussed advice for forming and maintaining a successful

writer's group.


Friday, July 17th, 2020

3:00pm @ Warren Wilson MFA Alumni Conference

The Art of Urgency: Pursuing Craft in a More Conscious Moment

With Tariq Luthun, Nathan McClain, and Adrienne Perry

On writing and race, Covid-19, and urgent issues of our current moment


Wednesday, June 17th, 2020

7:00pm @ Porter Square Books in Cambridge, MA

With Dolores Johnson

Discussion of Johnson's memoir, *Say I'm Dead: A Family Memoir of Race, Secrets, and Love*

Friday, May 22nd, 2020

7:00pm @ Porter Square Books in Cambridge, MA

Welcome to the Neighborhood: An Anthology Reading

With Robert Pinsky, Jennifer De Leon, Gail Mazur, Sarah Green, Lloyd Schwartz, Katherine Hollander, Aaron Devine, Lynne Viti, Christine Fort, and David Blair

Reading from "The Kindest"

Thursday, February 20th, 2020

6:00pm @ Suffolk University Poetry Center in Boston, MA

Salamander Issue #49 Release Party

With Moira Linehan and David Moloney

Reading from "The Kindest"

Thursday, January 16th, 2020

7:00pm @ Belmont Books in Belmont, MA

Writer's Craft: Writing Groups

With Jennifer De Leon, Calvin Hennick, Celeste Ng, Whitney Scharer, Adam Stumacher, and Grace Talusan

Discussion of what makes a good writing group

Wednesday, January 15th, 2020

7:00pm @ Harvard Bookstore in Cambridge, MA

In conversation with Liz Moore

Discussion of Moore's novel, *Long Bright River*


Friday, October 25th, 2019

7:00pm @ Belmont Books in Belmont, MA

Writer's Craft: Exploring Climate Fiction

With Julie Carrick Dalton and Tim Weed

Discussion of climate change fiction


Monday, April 15th, 2019

6:30pm @ The New Hampshire Institute of Art in Manchester, NH

Visiting Writer Series

Reading from "Gabe Dove"


April 5-7th, 2019

The Muse and the Marketplace 2018

Various welcoming remarks, announcements, introduction and Q&A with keynote speaker Luis

Alberto Urrea


Tuesday, November 13th, 2018

8:00pm @ The Oberon in Cambridge, MA

For Resistance Mic!

Reading from "The Kindest"


Monday, October 22nd, 2018

7:00pm @ the Concord Festival of Authors in Concord, MA

With Dariel Suarez

Discussion of the craft of short fiction


Saturday, October 6th, 2018

7:00pm @ Warren Wilson College in Asheville, NC

With Michael Collier, Dana Levin, and Gabrielle Bates

House Party Reading Series from Bull City Press

Reading from "The Kindest"


Thursday, September 13th, 2018

7:00pm @ The Cambridge Boat House in Cambridge, MA

With fellow readers whose names I cannot remember at this time

The Unauthorized Eleanor Wilner Reading Series

Reading from "The Kindest"


Saturday, September 1st, 2018

7:00pm @ The Amory Center for the Arts in Somerville, MA

With Marguerite Guzmán Bouvard and Michael Keith

The Dire Reading Series

Reading from "Gabe Dove"


Wednesday, August 8th, 2018

7:00pm @ Belmont Books in Belmont, MA

With Becky Tuch

Discussion of submitting your work to literary magazines


April 6-8th, 2018

The Muse and the Marketplace 2018

Various welcoming remarks, announcements, introduction and Q&A with keynote speaker Min

Jin Lee


Wednesday, February 7th, 2018

8:00pm @ The Oberon in Cambridge, MA

For Resistance Mic! with Obehi Janice, Richard Hoffman, Sebastian Johnson, Dom Jones, and

The Kuumba Singers

Reading from "Gabe Dove"


Friday, January 12th, 2018

4:00pm @ Warren Wilson College in Asheville, NC

With Carlos Andrés Gómez, Kristen Hewitt, and Meghan Williams

Reading from "The Kindest"

Wednesday, November 15th, 2017

7:00pm @ Brookline Booksmith in Brookline, MA

In conversation with Celeste Ng

Discussion of Ng's novel, *Everything I Never Told You*


Thursday, October 26th, 2017

7:00pm @ Belmont Books in Belmont, MA

With Laura van den Berg and Heidi Pitlor

Discussion of *Best American Short Stories 2017*, Reading from "Gabe Dove"


Thursday, October 12th, 2017

7:00pm @ The Kickstand Cafe in Arlington, MA

With Kelly J. Ford and Joanna Rakoff

Arlington Author Series

Reading from "Gabe Dove"


Thursday, May 25th, 2017

7:00pm @ The Middle East Restaurant & Nightclub in Cambridge, MA

With Tom Perrotta

Reading from "Gabe Dove"


May 5-7th, 2017

The Muse and the Marketplace 2017

"Beyond Almond Eyes and Chocolate Skin: Indicating Racial and Ethnic Identity," with Cynthia Gunadi

"Do I Need to Explain That? On Cultural & Linguistic Translation," with Jennifer De Leon and Celeste Ng

"Agents and Editors of Color Roundtable," with Mira Jacob, Alexander Chee, Regina Brooks, Kaitlyn Greenidge, Celeste Ng, Eki Ikkanda, and Jennifer De Leon

Various elements of writing and race, and navigating the publishing world as a writer of color


Wednesday, March 1st, 2017

7:00pm @ The Cambridge Boat House in Cambridge, MA

With E.J. Graff, Jackie Malone, and Stan Yarbro

The Unauthorized Eleanor Wilner Reading Series

Reading from "The Kindest"


Monday, January 2nd, 2017

7:00pm @ Porter Square Books in Somerville, MA

With Joan Wickersham

Reading from "Gabe Dove"


**Interrogatory No. 14: Identify any invitations you received to appear at any public event, including but not limited to the types of events listed in Interrogatory No. 13, which you did not accept, from January 1, 2017. For each said event, state the date of the event, the name of the event, the individual who invited you, the sponsor of the event, the role for which you were invited to play, and the reason that you declined.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

- Association of Writers and Writer's Programs (AWP) 2017: February 8-11th, invited as a panelist on various nascent topic ideas. Declined due to scheduling conflict.

- AWP 2018: March 7-10th, invited as a panelist on various nascent topic ideas. Declined due to scheduling conflict.

- AWP 2019: March 27-29th, invited as a panelist on various nascent topic ideas. Declined due to scheduling conflict.

- AWP 2020: March 4-7th, invited as a panelist on various nascent topic ideas. Declined due to scheduling conflict.

**Interrogatory No. 15: Identify any public appearances you were scheduled to make which were canceled for any reason from January 1, 2017 to the present, including but not limited to the types of events listed in Interrogatory No. 13. For each said event state the date of the event, the name of the event, the individual who invited you, the sponsor of the event, the role for which you were invited to play, and the reason given for the cancelation.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Moreover, Plaintiff objects to the use of the phrase "public appearances" which is vague. Also, Plaintiff has not included "appearances" including such things as **readings, interviews, speaking engagements, lectures, events, symposiums, conferences,** radio and television shows and other "appearances" she was likely to have or events she was likely to appear at, if her Short Story was used by the BBF as the centerpiece of the One City/One Story project.  Subject to and without waiver of these objections, Plaintiff states as follows:

April 3-5, 2020

The Muse and the Marketplace 2020

Various welcoming remarks, announcements, introduction and Q&A with keynote speaker Viet Nguyen.

I am the Director of this conference, and canceled it due to the Covid-19 pandemic.

**Interrogatory No. 16: Identify any and all writings authored by you that have been published, featured, highlighted, honored, commended, or granted an award from January 1, 2017 to the present. For each such writing, state (a) the title, working title or description of the publication, (b) the date of the publication or other recognition, (c) the type of recognition, (d) whether or not said publication or recognition was accompanied with any compensation, and (e) if so, the amount of compensation.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome. Subject to and without waiver of these objections, Plaintiff states as follows:

- "Code W," novel excerpt, *Ploughshares*, July 2020, paid $450
- "The Kindest," *American Short Fiction*, Summer 2017, paid $300
    - One component of application package for a National Endowment for the Arts Creative Writing Fellowship, 2020; paid $25,000
    - Anthologized in *Welcome to the Neighborhood: An Anthology of American Coexistence*, The Ohio State University Press, December 2019; no compensation
    - One component of application package for a Larry Levis Prize for a short story collection manuscript, 2019; no compensation
    - Special Mention for the Pushcart Prize 2019 XLIII, November 2018; no compensation

- o  Selected as the Boston Book Festival's 2018 One City One Story program selection, October 2018; no compensation

- o  One component of application package for a Ragdale Fellowship, 2018; no compensation (did not attend)

- o  Pushcart Prize nomination, February 2018; no compensation

- o  One component of application package for a Somerville Arts Council Fellowship, 2020; paid $1,800

- o  Recorded as audiobook by Plympton (2016); paid $125

- "The Empty Hour, *The Harvard Advocate*, Spring 2019; no compensation

- "At the Bottom of New Lake," *Warmer*, Climate Fiction Amazon Original Stories Collection, with Jane Smiley, Lauren Groff, Jess Walter, Edan Lepucki, Skip Horack, October 2018; paid $4,000

- "The Horror and Joy of No One to Blame," *Literary Matters*, July 2018; no compensation

- "The Request," *Solstice: A Magazine of Diverse Voices*, July 2018; no compensation

- "The Peak," *Solstice: A Magazine of Diverse Voices*, July 2018; no compensation

- "AA," *Solstice: A Magazine of Diverse Voices*, July 2018; no compensation

- "Catch and Release: Strategies of Overt and Covert Narratorial Control," *The Writer's Chronicle*, March/April 2018

- "Q County Colored Penitentiary," *Memorious*, Fall 2017

  - o  Anthologized in *Pangyrus: The Resistance Issue*, November 2018

- "Gabe Dove," *Salamander*, Winter 2017; paid $250

  - o  Appointment for the New York Public Library's Subway Library, February 2018, paid $50

○ Anthologized in *The Best American Short Stories 2017*, October 2017; no
compensation

**Interrogatory No. 17: Describe in detail all reputational damages you allege to have
suffered as a result of the allegations set forth in the Complaint.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly

vague, ambiguous and burdensome.  In particular, Plaintiff objects to the word, "reputational"

which is vague and ambiguous.  Subject to and without waiver of these objections, Plaintiff

states as follows:

- Damage among untold number of readers of *The Boston Globe*, constituting potentially
  thousands of people

- Damage among the staff of *The Boston Globe*

- Damage among the staff of the Vermont Studio Center

- Damage among the staff of The Michener Center for Writers

- Damage among the staff  PEN America

- Damage among the staff The Author's Guild

- Damage among the staff *Tin House*

- Damage with literary agent Samantha Shea, who was actively interested in representing
  me until Dorland's campaign

**Interrogatory No. 18: Describe in detail all lost productivity damages you allege to have
suffered as a result of the allegations set forth in the Complaint, including but not limited
to the "four anthologies", the "canceled and delayed manuscript consultations with
writers", the purpose of the canceled "schedule trip to Montreal from July 19-23" and the
associated lost income, all of which is referenced in your initial disclosures as "lost
productivity" damages.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

- I was frequently interrupted at my job by Dorland's relentless harassment, especially as Ms. Dorland and Cohen continued to make threats against me and the Boston Book Festival, to which both my lawyer and the BBF's lawyers had to respond.  I missed countless meetings, an important site visit to GrubStreet's new prospective location, and had to delay several projects.  By the end of August 2018, I was four weeks behind schedule in planning the Muse and the Marketplace conference, of which I am the Director.

- I was forced to take several days off of work in June, July, August, and September 2018, in order to find legal counsel, attend legal meetings, respond to *The Boston Globe's* inquiries, respond to updates from the BBF about Dorland and the Cohen Defendants' escalating demands, and to respond to updates from ASF, the Bread Loaf Writers' Conference, and my writing group about Dorland's behavior.

- I had to cancel a manuscript consultation with writer Maggie O'Brien in July of 2018, due to being overwhelmed with the workload of dealing with Dorland and the Cohen Defendants. This resulted in the loss of hundreds of dollars, and the opportunity for further consulting work with O'Brien.

- I had to deliver a manuscript consultation with writer Oren Bendavid-Val at a severely delayed time, and had to cancel two consultation appointments with him, due to urgent legal responses suddenly needed on that day, plus comments to *The Boston Globe*.  This was in July and August 2018.

- I had to cancel a scheduled trip to Montreal from July 19-23, 2018, due to an urgent and overwhelming need to respond to the latest threatening letter from Dorland and her lawyers.  The purpose of this trip was to visit my now-husband's family. We lost money from various travel-related bookings."

- I missed a community book club discussion of Lisa Halliday's novel, *Asymmetry*, which I was scheduled to facilitate, on June 24, 2018. This was also due to an overwhelming need to respond to Dorland's latest threats.

- Prior to June 7, 2018, I had been writing at the Vermont Studio Center on a four-week fellowship, and making strong daily progress on my next work of fiction. After June 7th, when I first heard of Dorland's campaign against me, my writing virtually stopped.

- Virtually all I could write about after June 7, 2018 was my distress in dealing with Dorland, and the distress of being the object of someone's obsessive anger.

**Interrogatory No. 19: Describe in detail all emotional distress damages you allege to have suffered as a result of the allegations set forth in the Complaint, including but not limited to physical manifestations of said emotional distress, monetary damages, and any other damages you are claiming in this litigation related to any alleged emotional distress.**

OBJECTION: Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly vague, ambiguous and burdensome.  Subject to and without waiver of these objections, Plaintiff states as follows:

In addition to damages I incurred that are mentioned in other discovery, I answer as follows.

- I felt that I was being stalked by Dorland, especially when the BBF and ASF told me that she was calling and emailing their staff and board multiple times per day, and making legal threats to them. I felt even more stalked when I learned that Dorland was

continuously contacting my employer (GrubStreet), *The Boston Globe*, the Bread Loaf
Writers' Conference, and members of my writing group.

- I sought out the process for obtaining a restraining order on July 3rd, after learning that
  Ms. Dorland had contacted my workplace. I felt that she was obsessed with me, as she
  seemed to be spending many hours a day trying to interfere with my employment, my
  publication opportunities, my reputation in the literary world, and reputation in Boston.

- I suffered from extreme anxiety as a result of Dorland's relentless harassment.
    - I had difficulty eating and keeping food down. I lost weight—between 5-10
      pounds.
    - I had tremendous difficulty sleeping, and took sleeping pills nights every night for
      two weeks in June 2018, in order to fall asleep and stay asleep.
    - I sought constant advice and assurance from family and friends via a dramatic
      increase in phone calls and get-togethers.
    - I began weekly therapy sessions on June 27, 2018, and continued to attend
      therapy through November 19, 2018.
    - I brought my partner and now husband with me to therapy due to the stress and
      distraction that Dorland's harassment was causing in our relationship.
    - After weeks of getting little sleep, there was a time in July and August of 2018,
      when I developed paranoid thoughts that Dorland was somehow reading my
      emails or listening to my phone calls.

- I suffered extreme distress when the BBF canceled the publication of "The Kindest" for
  One City One Story.  I felt it was tremendously unjust that Dorland and her lawyers had
  manipulated facts, and had bullied the BBF so egregiously that this small non-profit

budget gave up their fight out of fear of being sued by Dorland and the Cohen
Defendants, at great cost to both the BBF and to me.

- I suffered extreme distress when *The Boston Globe* published two articles about me due
to Dorland's constant efforts and manipulation of facts, which portrayed me as a
plagiarist.  I was terrified that my reputation and career as a writer would be damaged
forever.

I am not yet able to compute my financial injuries as discovery is still ongoing.  In
addition, I am still trying to monetize my damages relating to my lost opportunities when the
BBF's One City/One Story project was canceled and the ramifications of said cancelation, as
well as the emotional distress I suffered as a result of the actions of Dorland and the Cohen
Defendants.  Damages for emotional distress, loss of weight and difficulty in sleeping will be
determined by a jury at trial.  I will attempt to find and produce my therapy bills and medical
expenses if all Defendants in this Action sign appropriate confidentiality agreements.
Furthermore, I will be seeking attorney's fees that cannot be determined until the conclusion of
this Action, at which time appropriate records will be produced.

Signed under the pains and penalties of perjury this 25th day of November 2020.


_____

Sonya Larson



As to Objections:

/s Andrew D. Epstein
_____
Andrew D. Epstein

## Certificate of Service

I certify that Plaintiff's Objections and Answers to Defendant, Dawn Dorland Perry's Interrogatories were sent on the date indicated below by U.S. Mail, postage prepaid, addressed as follows:

Suzanne M. Elovecky, Esq. and          Matthew H. Greene, Esq.
Partridge Snow & Hahn                  Boyle Shaughnessy Law, PC
30 Federal Street                      695 Atlantic Avenue
Boston, MA  02110                      Boston,  MA 02111

A copy of said objections and answers was also sent to each attorney by email addressed to selovecky@psh.com and mgreene@boyleshaughnessy.com.


                                       /s/ Andrew D. Epstein

November 25, 2020                      _____
                                       Andrew D. Epstein

budget gave up their fight out of fear of being sued by Dorland and the Cohen Defendants, at great cost to both the BBF and to me.

- I suffered extreme distress when *The Boston Globe* published two articles about me due to Dorland's constant efforts and manipulation of facts, which portrayed me as a plagiarist. I was terrified that my reputation and career as a writer would be damaged forever.

I am not yet able to compute my financial injuries as discovery is still ongoing. In addition, I am still trying to monetize my damages relating to my lost opportunities when the BBF's One City/One Story project was canceled and the ramifications of said cancelation, as well as the emotional distress I suffered as a result of the actions of Dorland and the Cohen Defendants. Damages for emotional distress, loss of weight and difficulty in sleeping will be determined by a jury at trial. I will attempt to find and produce my therapy bills and medical expenses if all Defendants in this Action sign an appropriate and mutually acceptable confidentiality agreement. Furthermore, I will be seeking attorney's fees that cannot be determined until the conclusion of this Action, at which time appropriate records will be produced.

Signed under the pains and penalties of perjury this 25 day of November 2020.


_____
Sonya Larson


As to Objections:


_____
Andrew D. Epstein, Esq.