UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>               Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>               Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**SONYA LARSON'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, Plaintiff, Third-Party Defendant, Sonya Larson ("Larson") submits this Statement of Undisputed Material Facts.

1. Larson has written and had published 23 short stories and essays to date, including *Gabe Dov* that was published in 2007 by Best American Short Stories, and The Kindest, which is the subject of this Action. She is also working on her first novel. [Larson Aff. ¶ 1, attached to her Memorandum as Exhibit 1.]

2. Larson wrote a fictional short story called "*The Kindest*," which is about the meeting between a poor alcoholic Chinese-American woman (Chuntao) who receives a kidney anonymously from an affluent white kidney donor (Rose). The story was written in five different variations, each of which contains a brief letter about one-third of the way into the tale,

1

through which Larson introduces her kidney donor character to her recipient character. [Larson Aff. ¶ 2]

3. Dorland is a living kidney donor who donated one of her kidneys on June 24, 2015, to a then unknown recipient. The surgery took place at the UCLA Medical Center near where Dorland lives. [Countercl. ¶ 23]

4. Around the time of her surgery, Dorland started a Facebook group where she could post information about kidney donations and get support from various members of her group. [Countercl. ¶ 34]

5. Dorland referred to her Facebook group as "private/closed." [Exhibit 2]

6. Larson was <u>involuntarily</u> added to the Facebook group by Dorland. [Larson Aff. ¶ 3]

7. Dorland and Larson met through GrubStreet, a Boston-based writing center where Larson worked for 16 years. [Larson Aff. ¶ 4; 2nd Am. Compl. ¶16 (Dkt. 91); Countercl. ¶¶ 8-16 (Dkt. 96)].

8. Dorland's kidney was given to an unknown person who was not known to Dorland at the time. [Countercl. ¶ 24]

9. After Dorland's surgery, Dorland learned that her kidney was given to a California Rabbi. The Rabbi's wife (Debbie Striks) wanted to donate one of her own kidneys to her husband, but she was not a compatible donor. [Countercl. ¶ 24]

10. The Rabbi's wife, later determined to be a woman named Debbie Striks, also became a living kidney donor, and she donated one of her kidneys to an unknown recipient. [Exhibit 3] The unknown recipient was later determined to be a woman in Oregon. [Countercl. ¶ 24-5]

11. This series of events, known as a kidney chain, included four people, four surgeries and two kidneys.

12. Dorland decided she wanted to contact the Oregon woman who was the final recipient in the kidney chain she started. She wrote a short letter in July 2015, and gave it to a nurse at the UCLA Medical Center with the understanding that it would be sent to the coordinator at the hospital where the Oregon woman received Debbie Striks' kidney. [Countercl. ¶ 49]

13. On July 7, 2015, Dorland posted the letter to her Facebook group after it was "shared widely around the UCLA Transplant Team." [Exhibit 4 and Countercl. ¶ 55] Dorland's Facebook letter is hereinafter referred to as the "Dorland Letter."

14. Dorland's Facebook readers were encouraged "to share my public kidney post." [Exhibit 5]

15. Dorland read the online version of Larson's story known as *The Kindest* for the first time in early June 2018. Dorland read the version of the story that was published by American Short Fiction ("ASF").

16. Shortly after Dorland read Larson's story, Dorland emailed ASF and accused Larson of plagiarism for allegedly using portions of the Dorland Letter in her story. [Exhibit 6]

17. Dorland asked ASF to withdraw *The Kindest* from publication. Dorland also claimed she had "ethical issues" with Larson. [Exhibit 6]

18. The Dorland Letter contains approximately 381 words. [See Exhibits 4 and 7.] Each of the five variations of *The Kindest* contains approximately 5,500 words. [Larson Aff. ¶ 5]

19. Larson admits she saw the Dorland Letter [Countercl. ¶ 56-7], and that it and Dorland's kidney donation were part of the inspiration for *The Kindest*. [Larson Aff. ¶ 6]

20. When Larson was writing *The Kindest*, she found numerous sample letters online from organ donors to organ recipients, which she used for reference. The sample letters contain information similar to that used by Dorland in her letter. [Larson Aff. ¶ 7 and sample letters at Exhibit 8.]

21. Larson has written five slightly different variations of *The Kindest*, each of which reflects Larson's writing process in which she regularly edits her stories to improve the language, tone, and flow of the prose. Each variation includes a short letter about one-third of the way into the story in which the wealthy white kidney donor character, Rose, is introduced to the poor, alcoholic Chinese-American kidney recipient and protagonist, Chuntao. [Larson Aff. ¶ 8]

22. The different variations of *The Kindest* include the following: (Larson Aff. ¶ 9)

(1) Brilliance Audio – This was an early draft of *The Kindest* that was sent to a literary agency known as Plympton, Inc., for the limited purpose of seeing if Plympton could sublicense the audiobook rights to Audible.com. (See, Exhibit 9, Section 2.) Plympton was successful in sublicensing the audio rights to Audible.com.

By mistake, and without Larson's knowledge or permission, Audible.com recorded and released this early draft as an audio story in August 2016. As soon as Larson discovered the mistake, she demanded that the story be re-recorded, which it was. Audible promptly removed the draft version and released the re-recorded version as an audiobook in October 2016. Larson did not know until two years later that marketing giant AMAZON, which owns both Audible.com and Brilliance Audio, had also released the draft version via Brilliance Audio as a print-on-demand CD. [See, https://www.audible.com/ep/brilliance ] Brilliance never had permission to release any recording of Larson's story. Dorland purchased one of these audio recordings in 2018, after the present dispute started. [A copy of the letter portion of the Brilliance Audio version, apparently transcribed by the Boston Globe, is attached as Appendix I.] [Dorland asked for, but the Globe refused to share its transcript with Dorland. See Exhibit 10, email between the Globe and Dorland.]

(2) Audible.com – The re-recorded Audible.com version of *The Kindest* was published as an audiobook in October 2016. Larson was paid $125 for the audio rights. [A copy of the transcribed Audible.com version is attached as Appendix II.]

4

(3) <u>American Short Fiction, Inc.</u> ("ASF") – The ASF version was published in print in August 2017 and online in May 2018. ASF paid Larson $300 for a license to use her story. [<u>See</u>, Exhibit 11] [A copy of the ASF version is attached as <u>Appendix III</u>.]

(4) <u>Boston Book Festival ("BBF") – Competition Version</u>. In February 2018, Larson entered a slightly revised version of *The Kindest* in a competition sponsored by the Boston Book Festival ("BBF"). The competition was called One City/One Story ("1C/1S"). The text of the letter in the story from Rose to Chuntao is the same as the letter in the ASF version, however the rest of the story contains numerous revisions. [A copy of the BBF version is attached as <u>Appendix IV</u>.]

(5) <u>Final Version</u>. Larson wrote the final version of *The Kindest* in June 2018, at the suggestion of the BBF. This version was written after Dorland contacted the BBF and alleged that *The Kindest* plagiarized the Dorland Letter. The BBF never published this version, but in December 2019, it was included in a book of short stories called, *Welcome to the Neighborhood*, published by Ohio Univ. Press. [A copy of the final version is attached as <u>Appendix V</u>.]

23. Dorland says that she first became aware that *The Kindest* was published in 2016, but she did not read the story until the weekend of June 2-3, 2018. [Countercl. ¶ 87]

24. When Dorland read the story, she claims she saw "similarities" between the Dorland Letter and the letter in the ASF version of *The Kindest*. Rather than confronting Larson with her concerns, Dorland chose to go directly to ASF and accuse Larson of plagiarism. [Exhibit 12; BATES Dorland 00122-3]

25. On Monday, June 4, 2018, Dorland sent an email to the "Editors" of ASF demanding that Larson's story be pulled from publication, that Dorland be given an acknowledgement for her text in Larson's story, and that ASF consider allowing Dorland to write "an article for ASF raising ethical issues germane to all writers." [Exhibit 12; BATES Dorland 00122-3]

26. Dorland was seeking to have ASF pull *The Kindest* from publication. Dorland also wanted recognition for her kidney donation, attribution to the Dorland Letter, and she wanted to write an article for ASF addressing her so-called, "ethical issues."

5

      ("Remedies I would find acceptable range from ASF's pulling the story to the author making an acknowledgement of my text.  I would also, or in addition, consider writing an article for ASF raising ethical issues germane to all writers. . . . ")

[Exhibit 12: specifically BATES: Dorland 00123]

    27.    The day after Rebecca Markovits, Co-Editor of ASF, received Dorland's email, Dorland responded that she wanted ASF to "pull" the story while ASF was seeking legal advice, and that she too was "in the process of securing legal counsel." [Exhibit 12: specifically BATES: Dorland 00121-2.]

    28.    Sometime after Ms. Markovits of ASF told Larson of Dorland's allegations, Larson hired Atty. James Gregorio.  Atty. Gregorio conveyed to Dorland via Markovits that he was "happy" to talk with Dorland or her attorney.  Dorland pointedly refused to give Ms. Markovits permission to share with Larson or her attorney the emails Dorland sent to ASF. [Exhibit 12: specifically BATES: Dorland00120-21.]

    29.    Neither Dorland nor her attorney ever reached out to Larson or her attorney about Dorland's plagiarism claims made to ASF.  [Larson Aff. ¶ 10]

    30.    On June 14, 2018, Ms. Markovits emailed Dorland and said that both lawyers that ASF consulted thought Larson had a fair use defense.  Markovits also said she discussed with Larson that "she might rewrite the lines in question and replace those lines in our published version of the story."  Markovits asserted that while this matter seemed to be perhaps "a personal betrayal within your friendship," it was "not a matter of publishing ethics."  [Exhibit 12: specifically BATES: Dorland00119-20.]   ASF told Dorland that ASF was a "tiny operation with a tinier budget," and she encouraged Dorland to address her complaint directly with Larson. [Exhibit 12: specifically BATES; Dorland 00119.]

6

31. As a result of Dorland's intention to pursue her legal remedies, ASF decided to pull *The Kindest* from online publication. [Exhibit 12: <u>specifically</u> BATES: Dorland00118.] [Larson Aff. ¶ 11]

32  Larson was proud of having her story published by ASF and, as a writer, she lost a valuable benefit when *The Kindest* was pulled. [Larson Aff. ¶ 12] The benefits were both in readership and intangible as Dorland herself acknowledges. [Exhibit 13]

33. In early June 2018, while Dorland was still pressuring ASF to give in to her demands, Dorland apparently noticed on Larson's website that she had won the BBF competition that year. Dorland correctly guessed that Larson won the 1C/1S contest for her short story, *The Kindest*. [Dorland's Statement of Undisputed Material Facts #20]

34. On June 7, 2018, Dorland telephoned the BBF and left a message about her plagiarism allegations and followed up the call with a copy of the same letter she sent to ASF two days earlier. Dorland continued to make relentless calls and emails to the BBF. [See Exhibit 14] In one of her emails Dorland says, "[r]eproducing "The Kindest," which contains portions of another author's work [Dorland's] could have serious legal and ethical consequences." [Exhibit 15]

35. As the 1C/1S winner, Larson was due to receive widespread attention for her story throughout Eastern Massachusetts, and she would likely have had numerous press interviews, and would have garnered immeasurable goodwill. [Larson Aff. ¶ 13]

36. As the winner of the competition, Larson gave the BBF a license to publish her story during the full term of her copyright. [<u>See</u> Agreement with BBF at Exhibit 16.]

37. On June 7, 2018, Dorland sent an email the prestigious Bread Loaf Writer's Conference at Middlebury College, accusing the author of *The Kindest* (whom she later named) of using plagiarized material for a fellowship application.

38. The email sent by Dorland started with the subject line, "Possible Plagiarism in Tuition Fellow's 2017 Application." [Exhibit 17]

39. Dorland explicitly names *The Kindest* in the email. [See selected emails at Exhibit 18.]

40. Larson did not apply for a fellowship at Bread Loaf using *The Kindest*. She received her fellowship using other short stories she had written. [2nd Am. Compl. ¶ 41] [Larson Aff.¶¶ 14-16]

41. Dorland also contacted dozens of other programs and individuals in the writing community, asking first if *The Kindest* was part of Larson's application and then identifying Larson by name, as well as alleging that Larson was a plagiarist. [See, Larson Aff. ¶ 16, identifying over 30 people and writing programs contacted by Dorland.]

42. Shortly after Dorland contacted the BBF, the BBF asked Larson to modify the letter in her story so that it would not resemble the Dorland Letter. Larson complied within days, and on June 13th, sent a revision to the BBF. [Exhibit 19] This revised story became the final version of *The Kindest* [See Appendix V]. The BBF was satisfied that the revised letter was not at all similar to the Dorland Letter. [Larson Aff. ¶ 17]

43. On June 18, 2018, Dorland acknowledged <u>at least</u> twice in emails, one sent to Rebecca Ostriker, Arts Editor of the Boston Globe, and the other to Norah Piehl of the BBF that after Larson modified the letter in the final version of her story, Dorland's copyright claim was "neutralized." [Exhibit 20; BATES: BBF01182, emphasis supplied]

44.     On June 19, 2018, the BBF asked Dorland to "propose some text for a brief . . . gracious acknowledgment" which could be published with *The Kindest* that she would find satisfactory to address her ethical issues.  Dorland suggested the following:

> This story appears in an altered form from its first publication in *American Short Fiction*. A section of the story was substantially revised because it bore a clear resemblance to the unpublished work and service of the writer Dawn Dorland, a living kidney donor.  The Boston Book Festival, 1C1S, and the author Sonya Larson express their sincere regrets.

[Exhibit 21]

45.     While Norah Piehl of the BBF agreed to consider Dorland's request to provide information about kidney donations on its 1C/1S web page [Exhibit 22 – <u>see</u> mid-page BATES: BBF 01162], "the entire 1C1S selection committee" was "unanimous" that the BBF had fulfilled its "obligations both legally and ethically and that the original wording of the credit line is sufficient for our purposes."  [Exhibit 22; BATES: BBF01161]

46.     On July 2, 2018, Dorland wrote to Eve Bridburg, Exec. Director of GrubStreet Larson's employer), to try to persuade Larson to formally apologize to Dorland.  Dorland also said she would be "comfortable" if Larson was suspended from GrubStreet "with or without pay."  [Exhibit 23; BATES: DORLAND000344]

47.     On July 3, 2018, the Cohen Defendants sent a letter to the BBF, accusing Larson of copyright infringement, and demanding that the BBF stop any further "printing, copying, distribution or other activities related to 'The Kindest' until this matter has been resolved."  The Cohen Defendants further said that if the BBF did not comply with its demands, they would seek "the full measure of penalties for statutory copyright infringement under 17 U.S.C. § 504(c), which . . . could be as high as $150,000."  [Exhibit 24]

9

48.     Dorland did not register the copyright to the Dorland Letter until almost three years after it was first posted on Facebook in 2015, and long after Larson allegedly plagiarizing it.  [Exhibit 7]

49.     Shortly after the July 3, 2018 letter was received by the BBF, the Cohen Defendants were sent a copy of Larson's revised version of *The Kindest* by Paul Sennott, the BBF's attorney.  [Exhibit 25; Gregorio Aff. ¶ 8]

50.     Dorland admitted that litigation alone would not fully resolve the dispute she had with Larson.  In her deposition, Dorland said that "[t]here are aspects of my dispute with Ms. Larson, with Sonya, that are outside of the jurisdiction of the court."  When asked what concerns were not going to be resolved, she answered, "the ethical aspects of this situation I find myself in with Sonya."  [Exhibit 26 -  Dorland Dep. p. 60, lines 4-22.]

51.     Sometime in mid-June 2018, Dorland contacted the *Boston Globe* to urge the paper to write an article about her allegations of plagiarism against the BBF and Larson.  On June 20, Graham Ambrose, a reporter from the Globe, contacted Larson for her comments.  [Exhibit 27]

52.     On July 20, 2018, Attorney Michael Hanna, an attorney in the Cohen Defendants law firm, sent a letter to James Gregorio, Larson's attorney.  Atty. Hanna requested that Atty. Gregorio "please contact this office to discuss this matter further, as time is of the essence for all involved.  Otherwise, please stop interfering with our efforts to prevent the further violation of our client's rights**.**"  [Exhibit 28 & Gregorio Aff. ¶ 7]

53.     On July 23, 2018, Atty. Gregorio telephoned Atty. Hanna, now his main contact with the Cohen Defendants, to convey Ms. Larson's general willingness to cooperate with settlement negotiations between Dorland and the BBF.  Atty. Hanna also indicated that Dorland

10

was still taking issue with the revised letter in the final version of Larson's story, although he could not be specific about her concerns.  Atty. Gregorio asked Atty. Hanna to send the language Dorland still had a problem with, though Hanna never did.  [Gregorio Aff. ¶¶ 7 & 9]

54. Dorland also had an issue with the changes Larson made to the letter in the final version of her story, but she refused to identify the language, citing the cost of her attorney's time.  [Exhibit 29; Dorland dep p. 2-213]

55. On July 24, 2018, Atty. Gregorio called Atty. Hanna.  Hanna said that Dorland would no longer be satisfied with the acknowledgement that she herself suggested in writing.  [Exhibit 21]  Dorland now wanted an acknowledgement of her contribution to Larson's story, her name cited, language about how to learn more about donating a kidney, a kidney donation website address, and $5,000.  Gregorio told Hanna that there was no point in discussing settlement if there was going to be a negative article in the Globe instigated by Dorland.  Atty. Gregorio recalls Hanna saying; "If we get everything we want, we will give our full effort to kill the story."  [Gregorio Aff.¶ 11]

56. On July 26, 2018, the Globe published an article entitled, "*Inspiration or Plagiarism? Writing Hackles Raised in Boston Dispute*." [Exhibit 30]  The article implicated the BBF and Larson in Dorland's plagiarism/copyright infringement claims and her ethical issues.

57. On August 1, 2018, Atty. Hanna called Atty. Gregorio to ask if Larson and the BBF still wanted to settle.  Atty. Gregorio asked Hanna if he had seen the Globe article.  Hanna said yes.  Gregorio then asked what Dorland wanted.  Hanna replied, the exact same thing as before: $5,000, attribution, and a link to a kidney donation website.  Gregorio said this was unreasonable given the circumstances, but that Larson might consider a mutual release of all claims.  The conversation between attorneys ended.  [Gregorio Aff. ¶ 13]

11

58.     On Monday, August 6, 2018, the BBF had 30,000 copies of *The Kindest* printed along with this acknowledgement:

> "The Kindest" originally appeared, in slightly different form, in American Short Fiction, Summer 2017.  To learn more about the national organ shortage, or to help a friend, family member, or stranger in need, visit www.kidneyregistry,org.  [Exhibit 31]

59.     On Friday, August 10, 2018, in a telephone conversation between Atty. Gregorio and Atty. Hanna, Hanna increased Dorland's demand to $10,000, a $1,500 donation to the National Kidney Registry, full name attribution, and a link to a kidney website.  [Gregorio Aff. ¶ 14]

60.     On August 13, 2018, BBF Exec. Director Porter notified Larson that it decided to cancel the 1C/1S event for 2018.  The BBF said it thought Dorland's claims were "baseless," but it could not take Dorland's relentless pressure and legal threats. Porter sent this email to Larson.

> After thinking we had a path towards a solid agreement with Dawn Dorland and feeling that we were out of danger from being sued, her lawyer was back in touch late last week with new demands. There is seemingly no end to this, and we cannot afford to spend any more time or resources at this moment or risk law suits in the future that could affect not only us, but our sponsor for One City One Story. ¶ Sadly for us, we have already printed 30,000 copies of your story using the acknowledgement Dawn and her lawyer had approved (but now want to change.)" [Exhibit 32]

61.     On August 14, 2018, the Boston Globe published another article entitled, *Boston Book Festival Cancels One City One Story Event Amid Plagiarism Flap*. [Exhibit 33]  The Globe article also included side-by-side comparisons of what Larson claims is the "unauthorized" Brilliance Audio version of the story that Dorland was able to purchase [Appendix I] and the letter in the ASF version of *The Kindest* [Appendix III].  The Brilliance Audio version was published without any of the added context, such as the daisy-shaped note paper inscribed with a blue gel pen that arrived while Chuntao was home alone, and the racial dynamics inherent in *The Kindest*.

12

62. The Globe published the Brilliance Audio version of *The Kindest*, and not the final version of the story that the BBF was going to use in the 1C/1S event.

63. After the BBF canceled the 1C/1S event, Atty. Hanna sent yet another letter to Atty. Gregorio on Sept. 6, 2018, demanding that Larson enter into a "stipulated judgment" for $180,000, which would be held in escrow to ensure Larson will not violate the terms of a written settlement agreement that the parties would have to craft; that Larson agree not to violate the copyright to the Dorland Letter, including an agreement not to write anything derivative thereof; and pay actual legal expenses of $15,000. [Exhibit 34] [Gregorio Aff. ¶ 15]

64. On December 26, 2018, Dorland emailed Larson's present counsel and asked if he would accept service on behalf of Larson for a lawsuit that Dorland was planning to initiate presumably in California. Dorland gave Attorney Epstein five days to respond. Epstein immediately notified the Cohen Defendants. [Exhibit 35] This present action was filed on January 30, 2019.

65. In 2021, Dorland contacted Robert Kolker, a New York Times and Oprah Book Club best-selling author about this dispute. Dorland was successful in persuading Kolker to write an article. The article ran in the Sunday, <u>New York Times Magazine</u> on October 10, 2021, entitled, "Who is the Bad Art Friend?" [Exhibit 36]

66. The article went viral with thousands of people taking sides, some with Dorland and others with Larson.

67. As a result of the pressure that the media attention to the "Bad Art Friend" article inflicted on GrubStreet, Larson was fired from her job, a job that she loved. [Larson Aff. ¶ 19]

68. In her letter to Bread Loaf, Dorland did <u>not</u> say that <u>in her opinion</u>, *The Kindest* plagiarizes her work, but instead used the word "plagiarizes" as a statement of fact. [Exhibit 17]

69. The words "might have" clearly refer to the submission of *The Kindest* to Bread Loaf and not to Dorland's claim that Larson plagiarized Dorland. When Dorland contacted Bread Loaf and the others with her plagiarism accusations, she was merely guessing, without giving any evidence of plagiarism except her own assessment and conclusion. [Exhibit 17]

70. Dorland admits that no one contacted her to use the Dorland Letter. [See, Exhibit 39] In Dorland's own words;

> Q. Did anyone ever contact you at any time from the time it [the Dorland Letter] was first posted on July 7, 2015? Did anyone ever contact you for permission to use the July 2, 2015 letter or any parts of the letter at any time? A. No, not that I recall. That would have been nice." Dorland deposition, pp. 161-2, lines 20-23 / 1-3.

71. Larson used small portions of the Dorland Letter to tell a totally fictitious story. It is essential to Larson's story that the kidney recipient, Chuntao is Chinese-American (as is Larson), and that her wealthy donor, Rose is white, since the racial dynamics that play out between the characters are central to *The Kindest*. [Larson Aff. ¶ 6]

72. The Dorland Letter constitutes less than 7% of Larson' story at a maximum (5,500 words in *The Kindest* versus 381 words in the Dorland Letter).

73. In the seven (7) years since the Dorland Letter was first posted on Facebook or in over three (3) years since this action was filed, there is no evidence that Dorland ever tried to sell or use her letter other than to try to communicate with the Oregon woman, and to attack Larson.

74. A side-by-side comparison between the Dorland Letter and the letter in the final version of *The Kindest* [See, Appendix VI] shows that there is no similarity between the two letters to support infringement. The competing letters may share a kidney theme, but the details, scenes, events, style, structure, tone, language and characterization of the letters are vastly different.

Respectfully submitted,
Plaintiff,
Sonya Larson,

By her attorneys,
*/s/ Andrew D. Epstein*

Andrew D. Epstein, BBO No.155140
photolaw@aol.com
Barker, Epstein, & Loscocco
176 Federal Street
Boston, MA 02110
(617) 272-5700
Direct Tel: (617) 272-5700

## Certificate of Service

    I certify that Plaintiff-Third Party Defendant, Sonya Larson's Statement of Undisputed Material Facts was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

                              */s/ Andrew D. Epstein*
                              _____
December 8, 2022                        Andrew D. Epstein