# Exhibit 25

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SONYA LARSON<br><br>                         Plaintiff,<br><br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                         Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**AFFIDAVIT OF ATTORNEY JAMES GREGORIO IN SUPPORT OF PLAINTIFF-THIRD PARTY DEFENDANT, SONYA LARSON'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, James A. Gregorio, on oath depose and state as follows:

1.     I am an attorney licensed to practice law in the states of New York and North Carolina.

2.     I represented the Plaintiff, Sonya Larson, from approximately June through September 2018, in connection with her short story, The Kindest, and her dispute with Dawn Dorland Perry ("Dorland"), American Short Fiction, and the Boston Book Festival ("BBF").

3.     I was informed that, after Ms. Dorland accused Ms. Larson of plagiarism, the BBF asked Ms. Larson to completely revise the letter portion of The Kindest.

4.     I was informed that the revised letter portion of the story was sent by Ms. Larson to BBF on June 13, 2018.  I was given a copy.

5.    Sometime in mid-June 2018, while Atty. Paul Sennott, the BBF's attorney, and I were dealing with Dorland's dispute with the BBF and Ms. Larson, Dorland appears to have contacted the Boston Globe.

6.    I recall that I sent a letter to Atty. Cohen on July 17, 2018, on behalf of Ms. Larson, addressing the allegations presented in his July 3, 2018 letter to the BBF.

7.    On July 20, 2018, I received a letter from Attorney Michael Hanna, responding to my letter of July 17, 2018. In his letter, Atty. Hanna requested that I please contact his office *"to discuss this matter further, as time is of the essence for all involved. Otherwise, please stop interfering with our efforts to prevent the further violation of our client's rights."* Thereafter, Atty. Hanna became my exclusive contact with the Cohen Defendant's office.

8.    It is my recollection that, at some point during the negotiations, Atty. Sennott sent the revised version of <u>The Kindest</u> to Atty. Cohen. Atty. Sennott later confirmed this to me in correspondence of September 13, 2018.

9.    I recall that I called Atty. Hanna in the early afternoon of July 23, 2018, to convey Ms. Larson's general willingness to cooperate with the settlement negotiations between Dorland and the BBF. I recall that Atty. Hanna told me Dorland wanted a list of organ donation resources and a thank you to Ms. Dorland for providing those resources included at the beginning of the book to be printed by the BBF. Atty. Hanna also indicated Dorland still took issue with the revised letter in the final version of Larson's story, although he would not be specific about her concerns. I asked Hanna to send the language Dorland took issue with, though Hanna never did.

10.    I am reminded that, late in the afternoon of July 23, 2018, I was told that Graham Ambrose, a reporter from the Boston Globe, had contacted Ms. Larson's employer for an article he was preparing for publication. When I heard this news, I called Atty. Hanna the next day.

11.    Atty. Hanna told me that Dorland now wanted more than what we had discussed the day before. Now Dorland wanted an acknowledgement of her contribution to Larson's story, her name cited, language about how to learn more about donating one's kidney, a kidney donation website address, and $5,000. I told Atty. Hanna that there was no point in discussing settlement if

2

there was going to be a negative article in the Globe. To the best of my recollection, Atty. Hanna told me, "If we get everything we want, we will give our full effort to kill the story."

12.   On July 26, 2018, the Globe published an article entitled "*Inspiration or plagiarism? Writing hackles raised in Boston dispute.*" The article implicated both the BBF and Larson in Dorland's plagiarism/copyright infringement claims and her ethical issues.

13.   About a week later, on August 1, 2018, Atty. Hanna called me to ask if Ms. Larson and the BBF still wanted to settle. I asked Atty. Hanna if he had seen the Globe article. Hanna said yes. I asked what he and Dorland proposed. Hanna said, the exact same thing as before: an acknowledgement of her contribution to Larson's story, her name cited, language about how to learn more about donating one's kidney, a kidney donation website address, and $5,000. I told him that was unreasonable and unrealistic, given the Globe article, and the best I could offer was only a mutual release of all claims. The conversation ended.

14.   I recall that, on August 10, 2018, in a telephone conversation between me and Atty. Hanna, Hanna increased Dorland's demand to $10,000, a $1,500 donation to the National Kidney Registry, full name attribution, and a reference/link to a kidney website.

15.   I recall that, weeks after the BBF canceled One City/One Story, I received a letter from Atty. Hanna dated September 6, 2018, demanding that Ms. Larson enter into a "stipulated judgment" for $180,000, to be held in escrow to ensure Ms. Larson would not violate the terms of a written settlement agreement that we would have to prepare; that Larson agree not to violate the copyright to Ms. Dorland's July 2015 Facebook letter, including an agreement not to make anything derivative of the letter; and pay actual legal expenses of $15,000.

Signed under the pains and penalties of perjury this  7th  day of December 2022.

_James A. Gregorio_

_____

James A. Gregorio

3