# Appendix VI

# Appendix VI

# Dorland's Letter as registered with the U.S. Copyright Office

# Identified as Exhibit 7

Dear Recipient,

My name is Dawn Dorland. I'm a 35-year-old white female, and I live with my husband in LA.

In 2009 I read my first article about living kidney donation, and in the years since, I have been constantly reminded--whether triggered by my reading (I am a writer), or through the stories of people I know--of the harrowing experience of dialysis and the dire need in our country for kidneys. I believe that I knew, from the moment I first became aware of the possibility of donating one of my kidneys, that I would one day find a way to do this.

Once I had all the information, I was motivated to donate at a time when, due to medical advances and the existence of the National Kidney Registry--especially the leaps they've made matching compatible strangers through paired exchange--I stood to make an maximum impact in others' lives with only minimal risk to myself. Personally, my childhood was marked by trauma and abuse; I didn't have the opportunity to form secure attachments with my family of origin. A positive outcome of my early life is empathy, that it opened a well of possibility between me and strangers. While perhaps many more people would be motivated to donate an organ to a friend or family member in need, to me, the suffering of strangers is just as real.

I can't tell you how happy I am that my donation eventually—two organs and four surgeries later--resulted in your receiving Debbie Striks' kidney. Throughout my preparation for becoming a donor, which spanned precisely eight months from my first testing to the date of our surgeries, I was most excited about the recipient who would come off of the deceased donor list and end our chain. I focused a majority of my mental energy on imagining and celebrating _you_.

My gift, which begat Debbie's, trails no strings. You are deserving of an extended and healthy life simply for being here.

Please know that my husband and I would love to know more about you, and perhaps even meet you one day. But I accept any level of involvement or response from you, even if it is none.

Thank you for reading this letter, and be well.

Kindly,

Dawn

# Appendix VI

# Final Version of *The Kindest*

# Letter Section

Right about then is when the letter shows up.

Bao was at work. It was a sunny, ignorant day.

It came in the mailbox: real envelope and paper and gold sticker sealing the flap. It was wrapped in a second letter from the surgeon himself, his boxy handwriting rushed with loops of fervor. So awestruck was he by the selflessness that he just had to chaperone the missive himself. I looked at his letter. I thought that doctors couldn't write at all, not even their own names.

Then came hers. She had used a notepad shaped like a daisy. Blue gel pen.

*Dear Friend,*

*By now you are likely wondering just who this person—your kidney donor—could possibly be. Today I reach out to share a warm hello. It is me.*

*I am a thirty-eight-year-old white female, and I live in Newton, Massachusetts (born and raised). Last year, while lost in a difficult period, I saw a documentary about altruistic kidney donation. As the credits rolled, I felt shocked by the daily hardship of so many people in need. Equipped with this new awareness, I set forth on a journey to offer a great gift, to do my part in bettering a fellow human's life.*

I shook open the letter. Six whole daisy pages. Stuff about her surgery, the prep, the PT. It went on.

*I'm so grateful to the MGH transplant team, who held my hand from my hand from very first blood test. I myself know something of suffering, but from those experiences I've learned courage and perseverance. Whatever you've endured, remember that you are never alone.*
*A few things about me: I like sailing, camping, jewelry, and cats.*
*My journey to you has entailed immense time, money, and yes—pain. But throughout it all I found a profound sense of purpose, knowing that <u>your life</u> depended on my gift.*

I stared at the YOUR LIFE, underlined three times.

*Now I smile at the thought that you are enjoying renewed health. I hope—with all my heart—that you feel emboldened with a new sense of hope.*
*Naturally, I am curious about your healing, and perspective on our shared experience. Perhaps we could meet. If you'd rather not, that's fine, but I'll leave my number here regardless. Consider it token of my affection-- a lifeline, should you ever need reminding that you are loved.*
       *Kindly,*
       *Rose M. Rothario*

There was a photograph. She was tall, slender, a bursting ponytail harnessed to one side. Scissors had cut away the image near her shoulder as if to remove a person who'd been standing beside her. I held it to my nose but it just smelled like a photograph: paper and faint glue, with no whiff of a particular person. She was at some county fair. She was around

# Appendix VI

## Side-by-side comparison and analysis of the Dorland Letter (Exhibit 7) with the Final Version of *The Kindest (Appendix V)*.

**A side-by-side comparison between the Dorland Letter and the letter in the Final Version of *The Kindest* shows there is no similarity between the two texts as a matter of law.**

A side-by-side comparison of the letter from Rose to Chuntao in the final version of *The Kindest* with the Dorland Letter clearly shows that there is virtually no similarity between the two letters to support a finding of copyright infringement.

Certainly, there is nothing in copyright law that prevents a writer from using a letter to introduce a character into a story. Similarly, there is nothing that prevents an author from writing a story about an anonymous kidney donor sending a letter to the recipient of her kidney. These are simply ideas that are not protected by copyright. Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998) ("copyright protects the original expressions of ideas but not the ideas expressed") See also, CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1514–15 (1st Cir. 1996) ("To the extent that such similarity inheres in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff, then an essential ingredient is lacking from plaintiff's *prima facie* case."); see also, Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 111 S. Ct. 1282, 1287 (1991) citing Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 556, 105 S.Ct. 2218, 2228 (1985)

The inquiry then turns to the question of substantial similarity. Is the letter in the Final Version of *The Kindest*, substantially similar to the Dorland Letter? As will be demonstrated, the answer is simply, no.

I.   **The introduction.**

The Dorland Letter was posted on Facebook as an open letter to the Oregon recipient of a kidney that started with Dorland's kidney donation to a California Rabbi and the subsequent donation of a kidney by the Rabbi's wife, Debbie Striks to the Oregon woman. The letter section in each version of *The Kindest* including the final version, starts when a letter from Rose shows up in Chuntao's mailbox. Chuntao was home but her husband was at work. The letter was written on "a notepad shaped like a daisy. Blue gel pen."

Compare:

> The Dorland Letter: "Dear Recipient, / My name is Dawn Dorland. I'm a 35-year-old white female, and I live with my husband in L.A."

> with

Rose's Letter: "By now you are likely wondering just who this person -- your kidney donor -- could possibly be, Today I reach out to share a warm hello. It is me./ I am a thirty-eight-year-old white female, and I live in Newton, Massachusetts (born and raised).

Anyone receiving a letter from a total stranger who purports to be the donor of a life-saving kidney, would expect that person to identify themselves. This is just what both Dorland and Rose did. These are basic facts. Feist, 499 U.S. 340, 344 ("That there can be no valid copyright in facts is universally understood.")

Curiously, it is not known why Dorland chose to reveal that she is a white woman, however because of the white-savior dynamics in *The Kindest*, and the mixed race Chinese-American heritage of both Larson and Chuntao, Rose's race is a very important part of *The Kindest*.

Including basic facts in a letter from one stranger to another, such as a person's name, age, race and place of residence are not protected by copyright. (Harper & Row, 471 U.S. at 556 ("[n]o author may copyright his ideas or the facts he narrates.")

## II. The need for living kidney donors.

While the sentiment about the need for kidneys is important, both Dorland and Rose via Larson have chosen very different ways of expressing their ideas and the need for organ donors. Besides, any kidney recipient would likely wonder why an anonymous donor would subject themselves to major surgery without giving some explanation of the reasons for their largesse.

The identity of the kidney donor and the need for such donors are basic facts protected by Feist as well as under the merger and *scènes à faire* doctrines.

Granting exclusivity over *scènes à faire* would greatly hinder other authors in the subsequent creation of expressive works. This would be against the constitutionally mandated policy of copyright law which is "to promote the progress of science and the useful arts" in the creation of works (U.S. Constitution. Art. I, Sec. 8, Cl. 8). It would also be an impediment to the public's enjoyment of such further creative expressions. Little benefit to society would flow from grants of copyright exclusivity over *scènes à faire*.

In CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504 (1st Cir. 1996). the court compared the merger and *scènes à faire* doctrines. The court said that the two doctrines were similar in policy in that they both sought to prevent monopolization of ideas. However, merger applied when idea and expression were inseparable, and *scènes à faire* applied despite separability where an external common setting caused use of common elements and thus resulted in similarity of expression.

Compare:

Dorland writes about how and when she first heard about living kidney donations, the harrowing experience of dialysis, and the need for kidney donors. Dorland also volunteers that she is a writer.

with

Larson writes about seeing a documentary about kidney donation, and the hardships many people who need kidneys face. Larson says, "Whatever you've endured, remember you are not alone."

**III.     The motivation for donating a kidney.**

Compare:

Dorland next writes about what motivated her to donate a kidney, the advances in matching compatible strangers through "paired exchanges," and the trauma and abusive childhood she endured. Dorland claims her life experiences taught her empathy, and that instead of donating a kidney to a family member or friend, "the suffering of strangers is just as real." None of this language or sentiment is included in *The Kindest*.

Dorland then writes about the two organs and four surgeries that resulting in the recipient receiving a kidney from Debbie Striks. Dorland explains about the eight month process she had to go through in preparation for becoming a donor. Dorland says she "focused a majority of my mental energy on imagining and celebrating 'you'.

with

None of Dorland's motivation for her decision to donate a kidney is included in the letter from Rose. Rather, Rose expresses gratitude to the MGH transplant team, and explains that she knows something about suffering, "but from those experiences I've learned courage and perseverance." "Whatever you've endured," says Rose, "remember that you are never alone."

Also, unlike Dorland's paired exchange, Rose's kidney donation was made directly to Chuntao, and it became part of the story's critique of while savior dynamics, which does not exist in either Dorland's real-life experience or the Dorland Letter.

**IV.     Dorland's says she is a writer, and that she had an abuse childhood. Unlike Dorland, Rose explains her interests.**

Larson was partly motivated to write *The Kindest* by Dorland's living kidney donation and the Dorland Letter. As part of Larson's research for her story, she read several on-line letters from several donor organizations and organ donors that suggested the things that should be included in letters to organ recipients. (See, Larson Aff. ¶ __, Exhibit ___) Although Larson did not save copies of the online sample letters she read in 2015, copies of suggested letters that are similar to those she read in 2015 are attached to the Larson Aff. ¶ __.

In one suggested letter, the National Kidney Foundation encourages living donors to write to *anonymous recipients by including* "personal experiences as a living donor and comments on what led you to make the decision to donate and how long you waited between that decision and the actual donation, as well as how the donation experience affected your life." The Foundation suggests that donors give "information about your job, your family and friends, your hobbies and interests, as well as the name of the state in which you reside."

Sample phrases to jump-start a letter from a living donor are also provided including the following:

- I am feeling well since I donated my kidney. I feel that I made the right decision when I said yes to donation.
- My surgeon let me know that my kidney would go to a person who desperately needed it. It makes me feel good to know I was able to help.
- I think of you and wish you good health. Please write and let me know how you are doing.
- I want to know how you are feeling and learn something about you. I will wait to hear from you.

[www.kidney.org/atoz/content/writing-to-transplant-recipients-guide-donor-families-and-living-donors]

Compare:

Early in the letter, Dorland she says she is a writer, and says she had a "childhood marked by trauma and abuse" where she did not "have the opportunity to form secure attachments with her family of origin."

with

Rose says that she likes "sailing, camping, jewelry, and cats." Rose continues by acknowledging that her journey to becoming a kidney donor "entailed immense time, money, and yes -- pain. But throughout it all I found a profound sense of purpose, knowing that your life depended on my gift."


**V.    The well-wishes.**

Understandably, both Dorland and Rose wish their recipients well. Nevertheless, both writers express these sentiment in dramatically different ways.

Compare:

Dorland: "My gift, which begat Debbie Striks', trails no strings. You are deserving of an extended and healthy life simply for being here."

with

<u>Larson:</u> "Now I smile at the thought that you are enjoying renewed health. I hope – with all my heart – that you feel emboldened with a new sense of hope."

## VI. The meeting of the donor and recipient.

While both the Dorland Letter and the letter in *The Kindest* suggest that the donors and recipients might possibly meet at some future time (which is the ultimate plot line in *The Kindest*), both authors express the possibility of such a meeting in vastly different ways.

<u>Compare</u>:

<u>The Dorland Letter</u>; "Please know that my husband and I would love to know more about you, and perhaps even meet you one day. But I accept any level of involvement or response from you, even if it is none."

<u>with</u>

<u>Rose's expression:</u> "Naturally, I am curious about your healing, and perspective on our shared experience. Perhaps we could meet. If you'd rather not, that's fine, but I'll leave my number here regardless. Consider it [a] (sic) token of my affection – a lifeline, should you ever need reminding that you are loved."

Even if there is some similarity in sentiment in this last section between what Dorland includes in her letter and what Rose says in hers, the two competing letters lack the substantial similarity that is required for an infringement claim. This comparison of the language between the Dorland Letter and the letter in *The Kindest* shows only a possible similarity in ideas but not in expression. ("Substantial similarity is an elusive concept, not subject to precise definition. It refers only to the expression of the artist's concept, not the underlying idea itself; mere identity of ideas expressed by two works is not *substantial* similarity giving rise to an infringement action.") (<u>Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.</u>, 843 F.2d 600, 606 (1st Cir. 1988))

## VII. The signoff for both letters.

There is one minor match that shows up in the signoff that Rose uses in her letter, namely the word, "kindly." Dorland claims that Larson should not have used the word "kindly," because Dorland regularly ends her letters this way. [Exhibit ___; Dorland Dep. p. 2-156, lines 0-9]

Despite Dorland's claim, Larson's use of the word "kindly' is directly related to the title of her story and not to what Dorland perceives to be some proprietary way to end a letter. Besides, single words are not protected by copyright. <u>Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory</u>, 689 F.3d 29, 51–52 (1st Cir. 2012). <u>See</u> also 37 C.F.R. § 202.1(a) (listing "words" as "works not subject to copyright.)