UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**OPPOSITION AND MEMORANDUM OF PLAINTIFF, SONYA LARSON ("LARSON")
TO THE MOTION OF DEFENDANT, DAWN DORLAND PERRY ("DORLAND")
TO STRIKE LARSON'S RESPONSE
TO DORLAND'S STATEMENT OF MATERIAL FACTS [DKT. NO. 197]**

Plaintiff/Defendant-in-Counterclaim, Sonya Larson ("Larson") opposes the Motion of Dawn Dorland Perry, Defendant/Plaintiff-in-Counterclaim ("Dorland") to strike Larson's Response to Dorland's Statement Of Material Facts [Dkt. No. 197]. Larson contends that she has substantially complied with the spirit and intent of the Local Rule 56.1, and that neither this Court, nor Dorland have been prejudiced by Larson's responses to Dorland's statement of material facts. [Doc. No. 197]

In support of her Opposition, Larson relies on her Memorandum and Supplemental Affidavit as well as the Affidavit of her attorney, Andrew D. Epstein, which will be submitted herewith.

In the motion that is before the Court, Dorland presents five examples of Sonya Larson's alleged insufficient responses to Dorland's Statement of Material Facts. Dorland's allegations are filled with exaggerations, half-truths, and unsubstantiated claims.

A.   Dorland's "Material Fact" Number 7.

In Dorland's "material fact" Number 7, Dorland states: "In late 2015, Ms. Larson submitted *The Kindest* to Plympton for publication in audio format, and it was accepted for publication." Larson responded that "The agreement with Plympton is part of a written document that speaks for itself and it is not as characterized herein."

Larson's agreement with Plympton is included in its entirety as Exhibit 3 in Larson's Second Amended Complaint ("SAC") and as Exhibit 9 to Larson's Memorandum. [See SAC (Dkt. No. 91) ¶¶ 27-30, and Exhibit 3; see also Exhibit 9 at Dkt. No. 189-9, p. 2].

Paragraph 2.1 of the Plympton agreement states as follows:

> Plympton's only use of the licensed rights [to *The Kindest* and to two other of Larson's short stories] shall be to make commercially reasonable efforts to sublicense the Audiobook Rights and Associated Electronic Publishing Rights to Audible.com. . . . [Emphasis supplied.]

Larson discusses her agreement with Plympton in her Memorandum at Dkt. No. 189, p.12, where she says,

> An early draft of *The Kindest* . . . was sent to a literary agency known as Plympton, Inc., for the limited purpose of seeing if Plympton could sublicense the audiobook rights to Audible.com. (See, Exhibit 9, Section 2.) Plympton was successful in sublicensing the audio rights to Audible.com.

Larson explains that by "mistake" and "without her knowledge or permission,"

> Audible.com recorded and released this early draft as an audio story in August 2016. As soon as Larson discovered the mistake, she demanded that the story be re-recorded, which it was. Audible promptly removed the draft version and released the re-recorded version as an audiobook in October 2016. Larson did not know until two years later that marketing giant AMAZON, which owns both Audible.com and Brilliance Audio, had also released the draft version via Brilliance Audio as a print-on-demand CD. [See,

https://www.audible.com/ep/brilliance ]  Brilliance never had permission to release any recording of Larson's story. Dorland purchased one of these audio recordings in 2018, after the present dispute started.

[Dkt. No. 189, p. 12]

Dorland includes as the reference to her "material fact," the affidavit of Atty. Amadei, Exhibits G, H and RR at pp 59-60, and Doc. Nos. 181-7, 181-8 and 182-18.  Dorland does not reference the Plympton agreement in her rendition of "material facts" even though the Agreement has been part of the record in this action for years.

Dorland's stated "material fact" is simply incorrect.  Plympton was not the intended publisher of *The Kindest*, as Dorland claims, and Larson did not send the story to Plympton "for publication."  Larson submitted *The Kindest* to Plympton so that Plympton could attempt to market Larson's story to Audible.com as an audiobook.  Plympton was never going to publish the story, but only arrange for the publication exclusively by Audible.com.  None of Dorland's exhibits acknowledge that Plympton was acting only as Larson's agent in dealing with Audible.

B.      Dorland's "Material Fact" Number 11.

Dorland's "material fact" Number 11, states: "The story was re-recorded and the re-recorded version was published by Audible; however, the original recorded version remained available on other platforms."

An early draft of *The Kindest* was submitted to Plympton to see if Plympton could generate interest from Audible.com to publish her story.  Plympton was successful and *The Kindest* was recorded by Audible.com.  Unfortunately, the early draft version of her story was recorded by Audible.com by mistake, and not the subsequent version Larson wanted to have recorded.  As soon as Larson realized this mistake, Larson notified Plympton and asked that

Audible re-record her story using the correct version of *The Kindest*. Audible complied with Larson's request. [Larson Supplemental Aff. ¶ 1]

To further compound the mistake, Larson has been informed that both Audible.com and Brilliance Audio are related audiobook publishers, both of which are owned by retail giant Amazon. [See Larson Memo (Dkt. No. 189, p. 12, ¶ III. A. (1) and https://www.audible.com/ep/brilliance] Brilliance Audio apparently released the draft version of *The Kindest* as a print-on-demand CD. Brilliance never had permission to release any version of Larson's story, and certainly not the early draft. [Larson Supp. Aff. ¶ 2]

Also, Dorland's claim that the "original recorded version remained available on other platforms" may not be correct. To the best of Larson's knowledge and belief, the original recorded version was released only by Brilliance Audio, and it was never available on multiple platforms ("platforms" plural in Dorland's rendition of the facts). [Larson Affidavit ¶ __] In support of her contention, Dorland includes a copy of an invoice from Audiobookstand,com as Exhibit FF to her "material facts." This invoice does not support Dorland's contention that the print on demand CD was available from any "platform" other than Audiobookstand,com. Thus, Dorland's "material fact" Number 11, contains a half-truth at best.

C.      Dorland's "Material Fact" Number 12.

Dorland's "material fact" Number 12, states: "In the summer of 2016, Ms. Dorland and Ms. Larson corresponded by email concerning Ms. Larson's short story. At the time Ms. Larson told Ms. Dorland that the story was not yet completed, but she would show Ms. Dorland a copy when it was finished." The email exchange between the parties occurred on July 11, 2016. [See Dorland Exhibit N.] Not only was *The Kindest* still a work in progress at this time, Larson was

under no obligation to supply a copy of her story to Dorland, which is exactly what Larson said in response to Dorland's "material fact."

D.      Dorland's "Material Fact" Number 14.

Dorland's "material fact" Number 14, states: "In May 2018, ASF featured *The Kindest* on its website." Larson responded that she was not sure what the word "featured" means as this word was used in Dorland's "material fact." Therefore, Larson denied this statement. There is no question that Larson's story was published online by ASF in May 2018, but this is not what Dorland was asking Larson to admit. Hence, Larson's response stands as a truthful statement.

E.      Dorland's "Material Fact" Number 16.

Dorland's "material fact" Number 16, "Upon reading the portion of the story that contains a letter from a kidney donor to kidney recipient, Ms. Dorland immediately recognized her own letter." Larson denies this statement is true, because when Larson wrote *The Kindest*, she did not have a copy of the Dorland Letter in her possession. [See SAC ¶ 17: "Larson saw the 2015 Factual Letter that Dorland posted on Dorland's Facebook group page and she found it interesting. Larson did not download or print the 2015 Factual Letter but instead recorded a few thoughts and ideas from the letter in her notes for future reference."]

Here again, Dorland is stretching the truth. Dorland may have recognized certain words or phrases from her letter in *The Kindest*, but this is not what Dorland wants Larson to concede. Larson has consistently admitted that she saw the Dorland Letter in 2015, and copied certain words and phrases from it. When Dorland first read *The Kindest* in June 2018, Dorland may have recognized certain words and phrases from the Dorland Letter, however when Larson wrote her story, she referred only to her notes. Larson did not have a copy of the Dorland Letter when she wrote the early versions of her story. Larson did not receive a copy of the Dorland Letter

until sometime in June 2018, from the BBF. [See Larson Memo, Exhibit 19, [Dkt. No. 190-9, p. 2 – "If there are any words or phrases in it that are causing concern, I would happily change them for 1C1s. I admit, however, that I'm not sure what they are; I don't have a copy of that letter."]

F.   Dorland's "Material Fact" Number 11.

There are several other alleged deficiencies in Larson's responses to Dorland's statement of material facts. For example, Dorland selected certain portions of the Dorland Letter in her rendition of material facts, Nos. 9, 17 and 23. In each instance, Dorland purposefully excludes all references to the context in which these words appear in each version of Larson's short story.

Larson has never disputed that she used certain words and phrases from the Dorland Letter in the first four variations of *The Kindest*. Dorland is misleading the court by purposefully leaving out the context in which the words were used. Larson is claiming that her use of a few words and phrases from the Dorland Letter is at least transformative fair use. However, Dorland's "cherry-picked" sampling of words from her letter is quite misleading.

In addition, Larson maintains that the letter in *The Kindest* introduces racial dynamics to her story, a subject that is not part of the Dorland Letter. Larson totally transformed the Dorland Letter by adding something new, with a further purpose or different character, altering the first with new expression, meaning and message. Campbell v. Acuff-Rose Music Inc., 510 U.S. 569, 579, 114 Sup. Ct. 1164 (1994). [See also Memorandum, Dkt. No. 189 at pp. 32-33.]

Furthermore, the context in which Larson uses certain words and phrases from the Dorland Letter illustrates how substantially different the words in *The Kindest* are from the words in the Dorland Letter. [See Memorandum, Dkt. No. 189 at p. 31], and Exhibit 19 (Dkt. No. 190-9, p. 2); email chain dated June 7, 2018 from Norah Piehl, Deputy Director of the BBF to Larson and Larson's response:

My original idea for this story did emerge from being included in the Facebook group, though of course my story is fiction. Amidst all my research, I remember that letter, and jotted down phrases that I thought were compelling, though in the end I constructed the fictional letter to suit the character of Rose.

G. <u>Larson complied with the spirit of Local Rule 56.1.</u>

Larson response to Dorland's "material facts" certainly complies with the spirit of Local Rule 56.1, if not the letter of the rule. The reason for this discrepancy is fully explained in the affidavit of Atty. Andrew D. Epstein, in which he explains the limitations under which he was operating when he prepared the response to Dorland's material facts. Epstein anticipates that his affidavit will be submitted to the court under his motion for impoundment.

WHEREFORE, Larson believes that she complied with the underlying purpose of Local Rule 56.1, and that neither the Court nor Dorland have been unduly prejudiced by Larson's responses to Dorland's material facts. Larson respectfully asks that this Court deny Dorland's Motion to Strike.

February 1, 2023

                                     Respectfully submitted,
                                     Plaintiff, Third-Party Defendant,
                                     Sonya Larson,

                                     By her attorneys,
                                     <u>/s/ Andrew D. Epstein</u>

                                     Andrew D. Epstein, BBO No.155140
                                     photolaw@aol.com
                                     Barker, Epstein, & Loscocco
                                     176 Federal Street
                                     Boston, MA 02110
                                     (617) 272-5700

<u>Certificate of Service</u>

      I certify that Larson's Opposition and Memorandum was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

                                                  */s/ Andrew D. Epstein*
                                                   _____

February 1, 2023