UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                    Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**MOTION FOR RECONSIDERATION OF THIS COURT'S MEMORANDUM & ORDER OF SEPTEMBER 14, 2023, BY PLAINTIFF-THIRD PARTY DEFENDANT, SONYA LARSON WITH RESPECT TO LARSON'S CLAIM FOR INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS**

Plaintiff, Third-Party Defendant, Sonya Larson ("Larson") moves this Court for reconsideration of its Memorandum & Order of September 14, 2023, with respect to Larson's claim for intentional interference with advantageous business relationships. As grounds for this Motion, Larson states as follows:

This court held that Larson failed to establish that she suffered "economic harm" or "pecuniary loss" as a result of the actions of Defendant, Plaintiff-in-Counterclaim, Dawn Dorland Perry ("Dorland"). [Order, Dkt. 211, p. 34-5] Larson maintains that she suffered such losses.

On July 2, 2018, Dorland wrote to Larson's employer, asking that Larson be suspended from her job at GrubStreet. Shortly thereafter, Dorland and her attorneys demanded statutory damages and attorney's fees from Larson that were simply not available for allegations of either

plagiarism or copyright infringement. [17 U.S.C. §§ 412, 504 and 505] Meanwhile, Larson incurred legal fees and costs in defending against these claims. Larson believes that her attorney's fees alone are sufficient economic harm and pecuniary loss caused by Dorland to support a tortious interference claim.

In addition, Dorland and her attorneys continued their quest to punish Larson for including small portions of her Facebook letter in The Kindest. In one instance, Dorland wrote to Larson's employer asking that Larson be suspended from GrubStreet "with or without pay." [Memo, Dkt 189, p. 19] In other instances, Dorland persuaded the *Boston Globe* to write two scathing articles about Larson and her short story. Moreover, both Dorland and her attorneys made ever changing demands for the payment of damages, attorney's fees and recognition for Dorland's kidney donation.

Then, in 2021, as part Dorland's campaign to further punish Larson, Dorland solicited best-selling author, Robert Kolker, to write an article for the *New York Times*. The article, "Who is the Bad Art Friend?" went viral. [https://www.independent.co.uk/life-style/bad-art-friend-new-york-times-kidney-b1933448.html – "New York Times 'bad art friend' story sparks viral debate on social media"] Dorland should have foreseen that any article published by one of the world's most respected newspapers would create problems for Larson. In fact, this is the exact result that Dorland wanted to achieve in 2018, when she first wrote to GrubStreet. Dorland just had to wait three years for her request to be granted.

As a direct and proximate result of the fallout from the Bad Art Friend article, Larson lost her job at GrubStreet. [See Affidavit of Sonya Larson, at Dkt. 189-1 p. 8, ¶ 19; ("As a result of the pressure that the media attention inflicted on GrubStreet after the publication of the NY Times article, "WHO IS THE BAD ART FRIEND?," I was fired from my job, a job I loved very

much.")]  While it took Dorland three years to finally get Larson fired, Dorland's actions were part of the crusade she started in June 2018, when she set out to punish Larson both professionally, in getting the BBF to cancel the One City/One Story ("1C/1S") event, and then financially, when Larson lost her job at GrubStreet.

Larson believes that this Court failed to give due consideration to the financial impact that the attorney's fees Larson paid in defending herself against claims of plagiarism and copyright infringement, as well as the economic impact that losing her job at GrubStreet caused to Larson.  Both the attorney's fees Larson incurred and the salary she lost when she was fired, constitute the requisite economic harm and pecuniary loss necessary to support summary judgment on Larson's claim for tortious interference. [Dkt. 211, p. 35]  The economic harm was caused as a direct result of the totality of actions orchestrated by Dorland.

WHEREFORE, Larson requests that the Count reconsider its findings with respect to Larson's claim for intentional interference with advantageous business relationships, and enter partial summary judgment on this issue in Larson's favor.

September 26, 2023

                                                 Respectfully submitted,
                                                 Plaintiff,
                                                 Sonya Larson,

                                                 By her attorneys,

                                                 */s/ Andrew D. Epstein*

                                                 Andrew D. Epstein, BBO No.155140
                                                 photolaw@aol.com
                                                 Barker, Epstein, & Loscocco
                                                 176 Federal Street
                                                 Boston, MA 02110
                                                 Direct Tel: (617) 272-5700

## Certification under Local Rule 7.1

I certify that I conferred with all counsel in this action in an attempt in good faith to narrow or resolve the issues before the court. Ms. Elovecky stated that there is "no need to discuss the merits" of the motion for reconsideration.

*/s/ Andrew D. Epstein*

September 26, 2023               Andrew D. Epstein

## Certificate of Service

I certify that Plaintiff-Third Party Defendant, Sonya Larson's Motion for Reconsideration and Memorandum in support thereof was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

*/s/ Andrew D. Epstein*

September 26, 2023               Andrew D. Epstein