UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>      Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>      Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**MOTION OF PLAINTIFF-THIRD PARTY DEFENDANT, SONYA LARSON FOR ATTORNEY'S FEES AND COSTS UNDER SECTION 505 OF THE COPYRIGHT ACT AND FED.R.CIV.P., RULES 54(d)(1) AND 54(d)(2)**

In accordance with Fed.R.Civ.P., Rules 54(d)(1) and 54(d)(2), Plaintiff, Third-Party Defendant, Sonya Larson ("Larson") moves for an award of costs and attorney's fees against Defendant, Third-Party Plaintiff, Dawn Dorland Perry ("Dorland") under 17 U.S.C. § 505.  As the basis for this Motion, Larson states that she is the prevailing party relative to Dorland's Counterclaim for Copyright Infringement [Dkt. No. 96, Count I], and for Declaratory Judgment (Count II).  Accordingly, Larson is entitled to request her costs and attorney's fees under Section 505 of the Copyright Act.

On February 26, 2020, Suzanne Elovecky announced in Court that she was about to file a counterclaim for copyright infringement against Sonya Larson.  Previous to this announcement, the only connection this case had to copyright law was Larson's request for declaratory judgment seeking a ruling that her final version of The Kindest (the 2018 Boston Book Festival Letter

version) did not infringe the Dorland Facebook Letter. This Court ultimately entered judgment for Larson on her count for declaratory judgment (Count VIII). [Dkt. No. 219] Larson's request for attorney's fees starts on April 26, 2020, the day that Dorland filed her Amended Complaint [Dkt. No. 96].

From April 26, 2020 onward, Larson's counsel has spent well-over a whopping 687.2 hours in prosecuting and defending this Action.[1] Larson's counsel has carefully scrutinized his time records and costs, and he has made significant reductions in time spent on matters unrelated to Dorland's copyright infringement claims. See, Exhibit A, "Epstein Affidavit" and the attached contemporaneously recorded time records. Included in this Affidavit are both counsel's handwritten contemporaneously made timeslips and a typed version of what was done on each day or series of days (Exhibits A-1 and A-2). Also included in this Affidavit are counsel's good-faith approximations of time he spent each day or on a series of days that are related to copyright issues. The approximations of time spent on copyright issues are stated as percentages. Counsel is mindful that the copyright issues are closely intertwined with Larson's intentional interference and defamation claims.

For example, from August 26 through September 3, 2021, counsel spent 43 hours working on various matters related to the Cohen Defendants' involvement in copyright claims asserted on behalf of Dorland. Even though these claims are closely related to Dorland's claims for copyright infringement, counsel includes only 75% of the time recorded for this date in Larson's request for fees. In addition, none of the time spent from February 8 and 9, 2021, was

---

[1] If all of counsel's time from December 2018 to date is included, the total time spent exceeds 915 hours.

related to the copyright counterclaims but was made relative to the Cohen Defendants' litigation privilege claim. Therefore, none of this time included in the total.

In its Memorandum and Order of September 26, 2023 [Dkt. No. 211], this Court examined the letter section in three versions of Larson's short story, The Kindest, namely the 2016 Brilliance Audio Letter, the 2017 American Short Fiction Letter, and the 2018 Boston Book Festival Letter. While the Court found that the 2016 and 2017 Letters contained language that was substantially similar to Dorland's Facebook letter, the 2018 Letter "is not substantially similar to the Dorland Letter, and therefore does not infringe upon the Dorland Letter." [Dkt. No. 2011, p. 19] Notwithstanding the findings of this Court relative to the 2016 and 2017 Letters in The Kindest, this Court concluded that Larson made fair use of the Dorland Letter in the 2016 and 2017 Letter versions with three of the four factors in Section 107, including the "most important" fourth factor, weighing in favor of Larson's fair use defense.

Larson believes that an award of costs and attorney's fees in this Action is justified for a number of reasons as are more fully articulated in the Memorandum submitted herewith.

1. Dorland did not register the copyright to her July 2015 Facebook letter until June 10, 2018. Thus, even if she proved copyright infringement, her potential damages consisted only of her actual damages and any profits that Larson earned from The Kindest. Larson's total earnings from her short story amounted to $425 ($125 from Audible.com and $300 from American Short Fiction). [See Larson Memorandum at Dkt. No. 189, p. 12 and Larson Aff. Dkt. 189-1, ¶ 9.] By reason of § 412 of the Copyright Act, Dorland was never entitled to statutory damages under § 504(b) nor costs or attorney's fees under § 505.

If Dorland had requested from Larson a reasonable retroactive licensing fee for the use of her Facebook letter plus the entire $425 Larson received from the publication of her short story

(not all of which was profits), the total amount of Dorland's actual damages and profit damages would have been rather modest. Instead of seeking reasonable damages that might have facilitated a settlement of this dispute, Larson needlessly pressed forward with her counterclaim.

2. As early as July 2018, Dorland admitted that the 2018 Letter in the final version of The Kindest "neutralized" her copyright claim. [See Larson Memorandum at Dkt. No. 189, p. 18.] In its Memorandum and Order, this Court held that the letter in the 2018 version of the story did not infringe on the Dorland Letter. Despite Dorland's admission, which was corroborated by this Court's finding of non-infringement, Dorland continued to press her claim for both copyright infringement and for violation of what she calls her "ethical issues." [See, Dkt. No. 189, p. 20] As Larson explained in her Memorandum in Support of her Motion for Partial Summary Judgment [Dkt. No. 189, p. 25], there are no remedies for either plagiarism or for the violation of Dorland's so-called ethical issues. Despite this, Dorland continued to press for substantially greater damages, which only prolonged this litigation and needlessly ran up legal fees.

3. Dorland and the Cohen Defendants were ruthless in their pursuit of Larson. For example, in mid-August 2018, the Boston Book Festival decided to cancel the One City/One Story event for 2018, even though the BBF said it thought Dorland's claims were "baseless." The BBF said that it could not take Dorland's relentless pressure, legal threats and new demands. [Dkt. No. 192-2, Exhibit 32]

At this point, Dorland should have been satisfied with two significant things she achieved. First, the BBF decided not to use The Kindest, totally cancelling the 1C/1S event for the year. Second, by this time, Larson had totally revised her story to the point that it should have been apparent that there was no substantial similarity between it and the Dorland Letter.

Even after the BBF canceled the 1C/1S event, Atty. Hanna of the Cohen Law Defendants demanded a "stipulated judgment" from Larson for $180,000, an agreement by Larson not to write anything derivative of the Dorland Letter, and paying actual legal expenses of $15,000. [Dkt. No. 192-4, Exhibit 34]  Even if Larson had infringed the Dorland Letter in every version of The Kindest (which she did not), neither attorney's fees nor damages at the level requested were available to Dorland.

Other than some relatively nominal actual damages and profit damages, what else did Dorland want?  Dorland wanted revenge.  She wanted to destroy Larson.  Dorland's desire to inflict maximum pain on Larson started in August 2018 and continued throughout this litigation culminating with the "Who is the Bad Art Friend?" article that ran in the New York Times Magazine in October 2021.  [Exhibit 36]  As a result of the pressure from the media attention brought about by the article, Larson was fired from her job at GrubStreet.

Dorland simply did not know when to stop tormenting Larson.  Frankly, Larson is concerned with what Dorland might do next to try to discredit Larson.  Larson believes that ordering Dorland to pay attorney's fees and costs in this Action will act as a deterrent to future unwarranted retribution against Larson.

WHEREFORE, Larson requests this court grant her request for costs in the sum of $9,074.07, and attorney's fees in the sum of $343,600 as shown in Exhibits A-1 and A-2, or such other reasonable sum that this Court deems to be fair and just.

> Respectfully submitted,
> Plaintiff,
> Sonya Larson,
>
> By her attorneys,
> */s/ Andrew D. Epstein*
>
> Andrew D. Epstein, BBO No.155140
> photolaw@aol.com
> Barker, Epstein, & Loscocco
> 176 Federal Street
> Boston, MA 02110
> Direct Tel: (617) 272-5700

October 13, 2023

### Certification under Local Rule 7.1

I certify that I emailed Atty. Suzanne Elovecky on Oct. 12, 2023, in an attempt in good faith to narrow or resolve the issues before the court relative to Larson's Motion for costs and attorney's fees. Not surprisingly, I have not heard back from Atty. Elovecky.

> */s/ Andrew D. Epstein*
> _____
> Andrew D. Epstein

October 13, 2023

### Certificate of Service

I certify that Plaintiff-Third Party Defendant, Sonya Larson's Motion for costs and attorney's fees was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

> */s/ Andrew D. Epstein*
> _____
> Andrew D. Epstein

October 13, 2023