UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON<br><br>                    Plaintiff,<br>v.<br><br>DAWN DORLAND PERRY, et al.<br><br>                    Defendants. | Civil Action<br><br>No. 1:19-cv-10203-IT |

**MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF-THIRD PARTY DEFENDANT, SONYA LARSON FOR ATTORNEY'S FEES AND COSTS UNDER SECTION 505 OF THE COPYRIGHT ACT**

Plaintiff, Third-Party Defendant, Sonya Larson ("Larson") submits this Memorandum in support of her Motion for an award of costs and attorney's fees under 17 U.S.C. § 505, against Defendant, Third-Party Plaintiff, Dawn Dorland Perry ("Dorland").

Section 505 of the Copyright Act authorizes a court to award costs and reasonable attorney's fees to the prevailing party. Larson is the prevailing party under Dorland's counterclaims for copyright infringement and for declaratory judgment. [Dkt. Nos. 211 & 219] In awarding costs and attorney's fees under the Copyright Act, prevailing plaintiffs and prevailing defendants must be treated alike. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S.Ct. 1023, 1033 (1994). Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202, 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016)  (Among the factors that inform a court's decision about

whether to award attorney's fees are "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence.") Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 108–09 (1st Cir. 2011) (The First Circuit has "interpreted Fogerty as allowing an award of attorney's fees to a prevailing party if the opposing party's claims are 'objectively quite weak.'")  (Photographic Illustrators Corp. v. Orgill, Inc., No. CV 14-11818-PBS, 2020 WL 3051774, at *1 (D. Mass. June 8, 2020)) (Courts should also consider such factors as "a party's litigation misconduct" and . . . overaggressive assertions of copyright claims.")

**A.     Dorland's potential damages for copyright infringement were modest at best.**

Dorland wrote and published her Facebook letter in July 2015, but she did not register it with the Copyright Office until almost three years later on June 10, 2018.  [Dkt. 189-7, Exhibit 7]  Because of the late registration of her copyright, Dorland was never entitled statutory damages under Section 504(c), or her costs and attorney's fees under Section 505.  Even if Dorland had proved her claim for copyright infringement, the only damages she could have recovered were her actual damages and any profits that Larson earned from The Kindest.  [Section 504(b)]  Larson's total earnings from her short story amounted to $425 ($125 from Audible.com and $300 from American Short Fiction).  [See Larson Memo at Dkt. No. 189, p. 12 and Larson Aff. Dkt. 189-1, ¶ 9.]  Larson did receive a $15,000 grant from the National Endowment for the Arts for her promise as a writer, but not for The Kindest.

Actual damages, which consist of a reasonable licensing fee for the use of Dorland's Facebook Letter in Larson's short story would have been at best, rather nominal.  World Wide Video, LLC v. Pagola, No. CV 08-10391-RWZ, 2009 WL 10693580, at *1 (D. Mass. Oct. 8, 2009)  (reasonable licensing fee is generally computed by determining the fair market value.

"Fair market value" is defined as "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." Significantly, fair market value is "not the highest use for which plaintiff might license but the use the infringer made." [The court cited On Davis v. The Gap, Inc., 246 F.3d 152, 164, 166 & n. 5 and 167 (2d Cir. 2001); emphasis by the court.] It is implausible that a reasonable licensing fee for the Dorland Letter would amount to more than a few hundred dollars at best.

If, during the pendency of this Action, Dorland had requested from Larson a reasonable licensing fee for the use of her Facebook letter, plus the entire $425 Larson received from the publication of her short story (not all of which was profits), the total amount of Dorland's actual damages and profit damages would have been rather modest.

Instead of seeking reasonable damages that might have facilitated a settlement of this dispute, Larson needlessly pressed forward. In September 2018, her attorney demanded damages of $180,000 plus attorney's fees of $15,000, and an agreement that Larson would not write anything derivative of the Dorland Letter in the future. Neither attorney's fees nor damages anywhere approaching $180,000 were available to Dorland under any theory of law. Dorland may have been reasonable when she filed her counterclaims for infringement, but she surely was objectively unreasonable when she continued with her claim long after Larson totally rewrote the 2018 Letter version of her short story, the Boston Book Festival ("BBF") decided not to use The Kindest, and it totally cancelled the One City/One Story ("1C/1S") event.

**B.   Dorland was motivated to harm Larson.**

It is clear that Dorland wanted to punish Larson in any way she could. In mid-August 2018, the BBF notified Larson that it decided to cancel the One City/One Story ("1C/1S") event for 2018. The BBF said it thought Dorland's claims were "baseless," but it could not take

Dorland's relentless pressure and legal threats. The BBF sent this email to Larson on August 13, 2018.

> After thinking we had a path towards a solid agreement with Dawn Dorland and feeling that we were out of danger from being sued, her lawyer was back in touch late last week with new demands. There is seemingly no end to this, and we cannot afford to spend any more time or resources at this moment or risk law suits in the future that could affect not only us, but our sponsor for One City One Story. ¶ Sadly for us, we have already printed 30,000 copies of your story using the acknowledgement Dawn and her lawyer had approved (but now want to change.)"

[Dkt. No. 192-2, Exhibit 32]

At this point, Dorland should have accepted that the totally revised 2018 Letter version of The Kindest was no longer substantial similarity to the Dorland Letter and that her claim was objectively quite weak. Airframe Sys., Inc., 658 F.3d at 108–09. In fact, on more than one occasion, Dorland acknowledged that her claim against Larson was "neutralized." [See Larson Memo at Dkt. No. 189, p. 18.] Also, Dorland should have been satisfied that the BBF decided not to use The Kindest when it cancelled the 1C/1S event for the year. Other than some relatively nominal actual damages and profit damages, what else did Dorland want? Dorland wanted revenge. She wanted to destroy Larson. Dorland's desire to inflict maximum pain on Larson continued throughout this litigation. Revenge is what motivated Dorland. Given the weakness of her claims for infringement, Dorland was being overly aggressive. (Photographic Illustrators Corp. 2020 WL 3051774, at *1 )

Dorland persuaded the Boston Globe to publish a second article about Larson's story. [Dkt. No. 192-3, Exhibit 33] The Globe article also included side-by-side comparisons of the "unauthorized" 2016 Brilliance Audio Letter version of the story, and the 2017 American Short Fiction Letter version of The Kindest [Appendix III]. Not only was the 2016 Letter version never intended to be published, it was not the totally rewritten 2018 Letter version that the BBF

was going to use in the 1C/1S event.  Dorland knew this but encouraged the *Globe* to publish the 2016 Letter version because it was far more damaging to Larson, and would cause more harm.

After the BBF canceled the 1C/1S event, and after the second Globe article was published, Dorland's attorney sent another letter to Larson's attorney demanding that Larson enter into a "stipulated judgment" for $180,000, agree not to violate the copyright to the Dorland Letter, including an agreement not to write anything derivative thereof, and pay actual legal expenses of $15,000.  [Dkt. No. 192-4, Exh. 34]  Even if Larson had infringed the Dorland Letter, neither attorney's fees nor the damages at anywhere near the level claimed were available to Dorland.

Next, on December 26, 2018, Dorland emailed Larson's present counsel and asked if he would accept service on behalf of Larson for a lawsuit that Dorland was planning to initiate presumably in California.  Dorland gave Attorney Epstein five days to respond.  Epstein immediately notified the Cohen Defendants.  [Dkt. 192-5, Exhibit 35]  This present action was filed on January 30, 2019.

Arguably, Dorland should have realized that at this juncture, her copyright infringement claim was weak at best.  Despite the ongoing litigation, Dorland's continued to attack Larson this time by contacting Robert Kolker, a New York Times and Oprah Book Club best-selling author about this dispute.  Kolker wrote the "Who is the Bad Art Friend?" article that ran in the Sunday, New York Times Magazine on October 10, 2021  [Dkt. 192-6, Exhibit 36]  The article went viral.  As a result of the pressure that the media attention to the "Bad Art Friend" article inflicted on GrubStreet, Larson was fired from her job, a job that she loved.  [Dkt. No. 198-1, Larson Aff. ¶ 19]

Dorland simply did not know when to stop tormenting Larson. Frankly, Larson is concerned with what Dorland might do next to harm Larson in the future. Larson believes that ordering Dorland to pay legal fees in this action will act as a deterrent to future unwarranted retribution against Dorland. Compensation and deterrence are two of the factors that should inform the court whether to award attorney's fees.

**C.     Conclusion**.

Throughout the pendency of this Action, Dorland's conduct has been malevolent, unreasonable and motivated by vengeance. An award of costs and attorney's fees will both compensate Larson, and act as a deterrence for future malicious actions by Dorland.

        Respectfully submitted,
        Plaintiff,
        Sonya Larson,

        By her attorneys,
        */s/ Andrew D. Epstein*

        Andrew D. Epstein, BBO No.155140
        photolaw@aol.com
        Barker, Epstein, & Loscocco
        176 Federal Street
        Boston, MA 02110
        Direct Tel: (617) 272-5700

October 13, 2023

## Certificate of Service

I certify that Plaintiff-Third Party Defendant, Sonya Larson's Memorandum in support of her motion for attorney's fees and costs was filed through the court's ECF system and a copy was sent electronically on the day it was filed to all counsel of record.

        */s/ Andrew D. Epstein*
        _____
October 13, 2023        Andrew D. Epstein