## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SONYA LARSON,<br><br>              Plaintiff<br><br>v.<br><br>DAWN DORLAND PERRY,<br>COHEN BUSINESS LAW GROUP, PC and<br>JEFFREY A. COHEN, ESQUIRE,<br><br>              Defendants<br><br>_____<br><br>DAWN DORLAND PERRY,<br><br>              Plaintiff-in-Counterclaim<br><br>v.<br><br>SONYA LARSON,<br><br>              Defendant-in-Counterclaim | <br><br><br><br><br><br><br><br>C.A. No. 1:19-cv-10203-IT |

### DAWN DORLAND PERRY'S OPPOSITION TO SONYA LARSON'S MOTION FOR ATTORNEY'S FEES AND COSTS UNDER SECTION 505 OF THE COPYRIGHT ACT

Dawn Dorland Perry opposes Sonya Larson's motion for attorney's fees pursuant to 17 U.S.C. § 505 ("Section 505"). Not only has the Court already ruled concerning the fees and costs in this matter (see ECF No. 219), but it is also the simple fact that Ms. Larson is not the "prevailing party" for the entirety of this litigation, for which she is seeking fees. Where attorneys' fees awards under Section 505 are discretionary, the requisite factors to be considered weigh against the award sought. Further, the request for fees omits the fact that the total time and costs incurred in this matter were not related to the copyright claims, and in some instances, not related to Ms. Dorland, but rather two other defendants who have since been dismissed from

1

this litigation. Finally, the attorney time records that were submitted to the Court are woefully inadequate, and simply do not permit a reasonable attorney's award to be fashioned based on said records, which include "block billing" not only for a single day, but for as much as two weeks' of time entered. As set forth below, the motion for attorneys' fees should be denied.

## Relevant Procedural and Factual Background

As has been extensively briefed in this matter, Ms. Dorland discovered in the summer of 2018 that her former friend and colleague, Sonya Larson, had used significant portions of a letter that Ms. Dorland wrote, following an altruistic kidney donation, in a short story called The Kindest. See ECF No. 180 at pp. 5, 9-10. Upon discovering her own writing was published by another, Ms. Dorland reached out to the publishers concerning this use of her work. Id., pp. 9-10. For several weeks, Ms. Dorland worked with the publishers to seek an acceptable solution to the issue. Id. One of the publishers, American Short Fiction ("ASF"), removed The Kindest from their website, but not a print anthology. Id. Another potential publisher, the Boston Book Festival (the "BBF"), canceled its One City / One Story event, in which The Kindest was slated to be highlighted, in light of the copying and the dispute. Id. Prior to the decision to cancel the One City / One Story event, the BBF informed Ms. Larson that their counsel had reviewed Ms. Dorland's letter, as well as Ms. Larson's use of the letter in The Kindest and determined that "Dawn may have a valid claim, but one that would likely need to be decided by a jury." See ECF 182-4, p. 1.

Documents produced by Ms. Larson in this case are replete with Ms. Larson's admissions that she copied Ms. Dorland's letter when writing The Kindest. See, e.g., ECF No. 181-10; 181-15; 181-21; 182-13, p. 2. Despite her clear knowledge that she had done so, Ms. Larson still proceeded to sue Ms. Dorland, not only for a determination that the last published version of The

Kindest (but not the earlier versions) did not infringe on Ms. Dorland's work, but also for intentional interference with contractual relationships and defamation. See ECF No. 1, Complaint. While the claims for intentional interference with contractual relationships were ultimately dismissed, Ms. Larson amended her complaint to include claims for intentional interference with advantageous business relationships. See ECF No. 91 (Amended Complaint).

In addition to suing Ms. Dorland, Ms. Larson sued Ms. Dorland's prior counsel – likely in an attempt to isolate Ms. Dorland from her trusted advisors while heading into litigation. See ECF No. 1 (Complaint), ECF No. 91 (Amended Complaint). Prior to summary judgment briefing in this matter, but after 3 years and 9 months of litigation, including extensive discovery and depositions, Jeffrey Cohen and his law firm were dismissed from this litigation. See ECF No. 178.

In discovery, Ms. Larson played fast and loose with the process, resisting the production of relevant, responsive production, to the point of requiring Ms. Dorland to file a motion to compel. After said motion was filed, but before the hearing took place, Ms. Larson produced another 420 documents, all of which were highly relevant to all of the claims in this case. See ECF No. 118 (Ms. Dorland's Reply Brief in Support of Motion to Compel). Despite the intervening production, Ms. Larson had still failed to produce all responsive documents, and motion practice resulted in an order requiring same. See ECF No. 135.

In October of 2022, Ms. Dorland filed her motion for summary judgment. Ms. Larson responded with a cross motion, but once again, failed to comply with the relevant Rules, prejudicing Ms. Dorland in that briefing. See, e.g., Motion to Strike. Specifically, Ms. Larson failed to make any response to Ms. Dorland's statement of material facts as required by the Rules, preventing Ms. Dorland from reacting to that response in her reply brief. Id. Instead, Ms.

3

Larson filed her response to Ms. Dorland's statement of facts in her sur-reply, which was the final brief filed in the summary judgment process.  Id.

The Court decided the cross motions for summary judgment on September 14, 2023.  See ECF No. 211.  Through that Order, the Court considered and analyzed both parties' copyright claims, and found that (a) Ms. Larson had access to Ms. Dorland's work, (b) that she did in fact (as she admitted repeatedly) use elements of that work, (c) that in at least two of the three instances, the works were substantially similar, and (d) that the use fell into the fair use exception to copyright infringement.  Id.  At no time did the Court indicate that Ms. Dorland's claims were "weak" or that they were brought in bad faith, as they were not.  Id.  The Court further dismissed Ms. Larson's tort claims. Id.

Following the Court's decision on summary judgment, Ms. Larson filed a motion for reconsideration of the court's dismissal of the claims for intentional interference with advantageous relationships.  See ECF No. 214.   The next day, and nearly two weeks prior to Ms. Dorland's opposition due date, the Court denied that motion.  See ECF No. 217.

On September 29, 2023, Judgment was entered, wherein the Court stated, "All parties shall bear their own costs and fees.  This case is CLOSED."  ECF No. 219.

## Argument

### A.    Pursuant to the Relevant "Fogerty Factors," Ms. Larson's Request Should be Denied

Section 505 of the 1976 Copyright Act allows a court, in its discretion, to award reasonable attorneys' fees to a prevailing party.  See Markham Concepts, Inc. v. Hasbro, Inc., 71 F.4th 80, 85.  While there is no "precise rule or formula for determining to award attorney's fees under § 505, the Supreme Court has endorsed several nonexclusive factors to guide a court's decision: frivolousness, motivation, objective unreasonableness (both in the factual and in the

4

legal components of this case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 543 & n. 19 (1994) (the "Fogerty Factors") (additional internal citations omitted). "Courts considering fee requests should give substantial weight to the objective reasonableness of the losing party's position but must also give due consideration to all other circumstances relevant to granting fees." Id. (internal citations omitted).

Through her motion, Ms. Larson failed to walk the Court through the Fogerty Factors, and focused instead on what damages may have been available should have Ms. Larson have been found liable for copyright infringement (which is not one of the relevant factors), and on her own skewed view – unsupported by the record – concerning Ms. Dorland's motivations. See Ms. Larson's Memorandum in Support of her Motion for Fees, ECF No. 222 (the "Motion"). That is not sufficient, and Ms. Larson has failed to provide an adequate basis upon which fees should be awarded. Id. As set forth below, the Fogerty Factors favor Ms. Dorland, and the denial of Ms. Larson's motion.

       1.       Ms. Dorland's Legal and Factual Position Was Objectively Reasonable.

In her Complaint, Ms. Larson asked the Court to review and analyze one version of The Kindest; the version that was created after the BBF informed Ms. Larson that its counsel had determined that Ms. Dorland "may have a valid [copyright infringement] claim." See ECF 182-4, p. 1. In light of the BBF's counsel's determination that Ms. Dorland's copyright claim may be valid, the BBF required Ms. Larson to either (a) withdraw from the One City / One Story program, or (b) completely rewrite the letter portion of The Kindest. Id. Ms. Larson chose to rewrite the letter. Id.

Ms. Dorland brought her counterclaims on April 24, 2020, more than one year after Ms. Larson filed her Complaint which initiated this litigation on January 19, 2019. ECF No. 75. Those counterclaims addressed not only the 2018 version of The Kindest, but also the 2016 and 2017 published versions.  Ms. Larson filed a motion to dismiss those counterclaims, including Ms. Dorland's claims for copyright infringement.  See ECF No. 78.  On February 2, 2021, the Court issued its Memorandum & Order, denying the motion to dismiss the copyright infringement claims.  See ECF No. 99.[1]  In its decision, the Court held that "a side-by-side comparison" of the versions before it, which were attached to the Counterclaim, "does not demand the conclusion that no reasonable jury would find 'substantial similarity' between the two." Id. at p. 6.  The Court further stated that "while there are certain differences between the Dorland Letter and the ASF and Brilliance Letters, there are enough similarities from which a reasonable jury may conclude that the ASF and Brilliance Letters are substantially similar to the Dorland Letter." Id. at p. 7.  Clearly, Ms. Dorland's claims were not "objectively unreasonable." In its decision, the Court further considered Ms. Larson's arguments that any use of Ms. Dorland's letter within The Kindest constituted fair use and determined that the relevant factors for such an analysis required a factual examination which was not appropriate at the motion to dismiss stage.  Id. at p. 8.  Ultimately, despite Ms. Larson's suggestion that Ms. Dorland failed to state a claim concerning copyright infringement, the Court disagreed, and the claims survived. Had the claims been objectively unreasonable, they would have been subject to dismissal at the motion to dismiss stage.

---

[1] Ms. Larson's motion was allowed as to Ms. Dorland's claim for Intentional Infliction of Emotional Distress.  See ECF No. 99.

At summary judgment, the Court again found substantial similarity for the Brilliance Audio Letter, stating "the undisputed evidence mandates a conclusion that the 2016 Letter is substantially similar to the Dorland Letter."  See ECF No. 211, p. 18.  Concerning the 2017 American Short Fiction version of The Kindest, the Court did not make a determination concerning substantial similarity.  Id. at p. 19.  Concerning the 2018 Boston Book Festival Letter, the Court found that the letter was not substantially similar and was not infringing.  Id. However, the Court did not go so far as to state that Ms. Dorland's defense of Ms. Larson's request for declaratory judgment and her assertion of a claim of copyright infringement was unreasonable.  Id., generally, at pp. 18-19.  As courts have acknowledged, determinations of substantial similarity often require a close analysis, and the outcome of that analysis does not necessarily mean that a party's position was "objectively weak."  See Erikson v. Blake, No. 3:11-CV-01129-SI, 2012 WL 1852954, at *1 (D. Or. May 21, 2012) citing Pasillas v. McDonald's Corp., Inc., 927 F.2d 440, 44 (9th Cir. 1991) ("[t]he court does not agree, however, that Plaintiff's complaint was frivolous or even unreasonable. 'Determinations about substantial similarity are rarely obvious.'")

The Court then analyzed whether the use of Ms. Dorland's letter in the earlier versions of The Kindest constituted fair use.  The analysis spans nearly 1/3 of the Court's lengthy decision, and included analysis of a 2023 Supreme Court decision, which was not available to the parties at the outset of this litigation.  See ECF No. 211. There is no indication in the Court's decision finding that Ms. Larson's use of Ms. Dorland's Letter constituted fair use that Ms. Dorland's position was "objectively unreasonable."  In fact, in analyzing the amount and substantiality of the use of the original work (i.e., the Dorland Letter), the Court found that in both the 2016 and 2017 versions, "Larson copied more of the Dorland Letter than necessary".  See ECF No. 211, p.

7

27. Where the Court, in the course of an objective analysis, reached such a conclusion, it certainly was not "objectively unreasonable" for Ms. Dorland to believe that her work had been infringed, and to pursue those claims in litigation which had already been initiated on closely related matters, with overlapping factual background, discovery, testimony and witnesses.

    2.    <u>Ms. Dorland's Copyright Claims Were Not Frivolous</u>

It bears repeating: Ms. Dorland did not initiate this litigation. She was sued by Ms. Larson not only for purposes of a court determination concerning the 2018 (final) version of <u>The Kindest</u>, but also for intentional interference with contractual relationships and defamation. Ultimately, Ms. Dorland discovered, through documents provided in discovery, that Ms. Larson had repeatedly admitted to copying Ms. Dorland's letter in <u>The Kindest</u> – and yet pursued claims that Ms. Dorland had improperly (allegedly resulting in defamation and intentional interference) said the same thing Ms. Larson had admitted multiple times to multiple people: that Ms. Larson copied Ms. Dorland's letter.

While it appears that Ms. Larson is arguing that the amount of potential damages suggests that the counterclaims were frivolous in nature, that is not the case. First, Ms. Larson's own copyright claim had no chance of a damages award, as it was simply seeking declaratory judgment concerning the validity of her copyright, evidencing that a court decision concerning copyright has value in and of itself, regardless of any damages sought. Second, Ms. Larson disingenuously claims that the only potential damages here consist of $425, while claiming that Ms. Larson's NEA grant could not possibly be part of damages that may have been awarded here, claiming that the NEA grant was awarded for "her promise as a writer but not for <u>The Kindest</u>." <u>See</u> ECF No. 222 (Motion for Attorneys' Fees) at p. 2. This is not true. As Ms. Larson testified at her deposition, the NEA Grant was not for $15,000, as the Motion states, but

rather $25,000.  See, e.g., Deposition of Sonya Larson ("Larson Dep."), at p. 445.  Further, Ms. Larson testified that her NEA grant application provided only one writing sample, which was The Kindest.  The only information concerning her other works was "a list of publications that I had in the last five years."  Id. at p. 444.  Further, in discussing the grant award with her friends, Ms. Larson was clear that the grant was based on The Kindest.  In a text message exchange with her friend Celeste Ng, Ms. Larson stated, "It's just so fucking cool.  Three Chunks with NEAs!!"  See Text Exchange, attached hereto as Exhibit A.  ("Three Chunks" refers to Ms. Larson's writing group which goes by the name "Chunky Monkeys," and is frequently shortened to "Chunks").  In response, Ms. Ng stated, "and also SO INCREDIBLY AWESOME that you won it for the KIDNEY STORY" and then "FUCK YOU, DFD!" Id.  ("DFD" refers to "Dawn Fucking Dorland," which is a moniker that Ms. Ng created to refer to Ms. Dorland amongst her and Ms. Larson's peer group.).  Ms. Larson did not correct Ms. Ng, to state that the NEA grant was based on other works.  Instead, she agreed, stating, "I know, RIGHT?? That story has taken SUCH a beating, as you well know, and I'm STILL fighting to get it out there.  DFD is going to freak out, but my lawyers have assured me that she can freak out all she wants; there's nothing she can do."  See Ex. A.  It is therefore not accurate for Ms. Larson to state that the NEA grant was not for The Kindest.[2]

      Ultimately, Ms. Larson does not argue that Ms. Dorland's claims were "frivolous," as they were not.  Not only did the claims represent Ms. Dorland's defense of her intellectual

---

[2] As she has done throughout this litigation, Ms. Larson refers to confidential and inadmissible pre-litigation settlement discussions which took place in 2018, wherein both Ms. Larson and Ms. Dorland were represented by different counsel, to claim that Ms. Dorland has acted improperly in this litigation.  In her present motion, when referring to both the NEA grant and any potential damages, Ms. Larson fails to cite to any record evidence, and asks the Court to simply rely on attorney representations.  See ECF No. 222, p. 3.  Ms. Dorland respectfully requests that the Court disregard uncited facts.

property rights, independent of any potential monetary award, but the potential damages – had Ms. Dorland succeeded – while still modest, did not consist of a "few hundred dollars at best," as Ms. Larson suggests, but rather would have included the $25,000 NEA grant. Regardless, as courts have stated where a case "was not objectively reasonable, it follows that it was not frivolous." See, e.g., Markham Concepts, Inc. v. Hasbro, Inc., 71 F. 4th at 86.

       3.       Ms. Dorland's Motivation in Pursuing Her Copyright Claims Was Proper

As an initial matter, pursuant to the Federal Rules of Civil Procedure, Ms. Dorland's counterclaims were compulsory in nature: "A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim … arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." See Fed. R. Civ. P. 13(a). Where Ms. Larson initiated litigation which included claims concerning Ms. Dorland's letter and Ms. Larson's story, The Kindest, Ms. Dorland was compelled to bring her claims as counterclaims in this case, or to forever lose them. Id.; see also, Complaint, generally. As set forth below, Ms. Dorland's only motivation in bringing her counterclaims was to (a) follow the applicable court rules, and (b) permit a court to determine what rights she had in her written work.

Notwithstanding the compulsory nature of the counterclaims, Ms. Larson spends the vast majority of her Motion attempting to demonize Ms. Dorland due to Ms. Dorland's attempts to advocate for her interests in her own work. See Motion, pp. 3-6. The simple fact, as the Court has confirmed, is that Ms. Larson copied Ms. Dorland's letter, and used significant and meaningful portions of said letter in the earlier versions of The Kindest. Ms. Larson states that Ms. Dorland "wanted to punish Larson in any way she could," but there is no cite to the record to support that brash statement. See Motion, pp. 3-4. Instead, Ms. Larson points to an email that

the BBF sent to Ms. Larson on August 13, 2018 (it was not sent to Ms. Dorland), and states that because of this email, "Ms. Dorland should have accepted that the totally revised Letter version of The Kindest was no longer substantially similar to the Dorland Letter and that her claim was objectively quite weak." Motion, p. 4. Of course, this statement overlooks the fact that at least two prior versions of The Kindest had already been published, which were since found in this litigation to be "substantially similar" to the Dorland Letter. Ms. Dorland's claims, upon which this Motion is based, did not consist solely of the 2018 version of The Kindest. See Amended Counterclaims, ECF No. 91, generally.

     Ms. Larson makes various statements concerning what Ms. Dorland "should have" done, or "should have" accepted, with no citations to the record or case law. Ms. Larson states that Ms. Dorland "wanted revenge," and that she "wanted to destroy Larson", and that she desired to "inflict maximum pain on Larson" – again, with no cites to the record whatsoever. There is no support for these statements, because they are not true. These bald, unsupported statements continue throughout the Motion, ascribing liability to Ms. Dorland for articles written by third parties, over which Ms. Dorland had no control. Ms. Larson further repeats her argument that Ms. Larson was fired from her job as a result of Ms. Dorland's actions, despite the fact that this Court has already pointed out to Ms. Larson that her prior employer published a public statement concerning the reason for that separation, and it was not Ms. Dorland. See, e.g., ECF No. 217, p. 2, n. 1 (stating that Ms. Larson's summary "glosses over the fact that the article reported on Larson's own statements and conduct - as revealed through text messages and other social media communications … GrubStreet in turn cited 'certain documents relating to the lawsuit that recently came to light' in its public statement regarding its leadership reorganization."). Ms. Larson's assertions concerning Ms. Dorland's "motivations" are not grounded in fact, and the

11

record is clear – through the correspondence that Ms. Dorland actually sent to the publishers of The Kindest – as to what her motivation was. See, e.g., 181-26. Ms. Dorland was motivated by protecting her own rights in her own work, conversations about appropriation, and nothing more. Id.

    4.  <u>The Compensation and Deterrence Factors Do Not Favor An Award of Fees</u>.

  There is a reason that Ms. Larson does not cite to the factor of "compensation" in her motion for fees; because Ms. Larson does not seek compensation, as she was represented on a pro bono basis during this litigation. Of course, Ms. Dorland understands that in the ordinary course, pro bono billing relationships do not preclude an award of attorney's fees. However, for an analysis under Section 505, compensation is a relevant factor, and the Court may properly consider whether Ms. Larson is entitled to said compensation. As Ms. Larson had discussed on multiple occasions with her friends, and which was subsequently confirmed amongst counsel, Ms. Larson's current counsel accepted her matter on a pro bono basis. See, e.g., text messages and emails concerning pro bono representation, attached hereto as Exhibit B. Further, a close reading of the present motion reflects that counsel does not – at any point – suggest that Ms. Larson has paid attorney's fees or suffered any hardship related to fees, and the records provided in support of the fees claimed are not billing records, but merely hand-written time sheets. See Motion, generally, including exhibits. Nor does the motion suggest that the purpose of the request is compensation. Instead, Larson states, "Frankly, Larson is concerned with what Dorland might do next to harm Larson in the future. Larson believes that ordering Dorland to pay legal fees in this action will act as a deterrent to future unwarranted retribution against Dorland [sic]. Compensation and deterrence are two of the factors that should inform the court whether to award attorney's fees." See Motion, p. 6.

The "deterrence" factor is designed to deter future frivolous litigation – not to cow a litigant from making statements, talking to the press, or engaging in other non-litigation activities. See, e.g., Markham Concepts, Inc. v. Hasbro, Inc., 71 4th at 90-91 ("[n]o court would look favorably on new litigation challenging that arrangement, and the outcome of this case on the merits thus provides adequate deterrence against plaintiffs pursuing any such action.").

Second, it again bears repeating – it was Ms. Larson, not Ms. Dorland, who initiated this litigation, and maintained her claims in the face of disclosure of facts during discovery that proved her tort claims to be meritless. See, e.g., ECF No. 181-10; 181-15; 181-21; 182-13, p. 2. There is no deterrence required here, where there is no indication that Ms. Dorland would engage in further litigation, as she was not even the one who initiated this litigation.

That a deterrent effect is not required is further bolstered by the fact that Ms. Dorland's counterclaims added very little to the overall time dedicated to this litigation, given the expansive scope of Ms. Larson's complaint, including tort claims and claims brought against other defendants. See ECF No. 1 (Complaint); ECF No. 91 (Amended Complaint).  Of course, even if Ms. Dorland did not bring her copyright infringement claims against Ms. Larson, Ms. Dorland would have still been forced to submit evidence concerning the close copying done in the 2017 and 2018 versions of The Kindest, in defense of the tort claims against her.  See Amended Complaint.  Through those tort claims, Ms. Larson alleged that (a) Ms. Dorland defamed her by stating that Ms. Larson had "plagiarized" Ms. Dorland's letter; of course, in the course of deciding summary judgment, the Court agreed that Ms. Larson had done just that; and (b) that Ms. Dorland intentionally interfered with Ms. Larson's advantageous business relationships by making those same statements; Ms. Dorland was required to prove (and did prove) that she did not interfere with "improper means or motive".  See, e.g., [our SJ argument].

B. **The Request For Attorney's Fees Related To Ms. Larson's Tort Claims And Other Defendants Is Not Proper And The Time Records Are Woefully Insufficient To Form The Basis Of A Fees Request**

It is Ms. Dorland's position that Ms. Larson's request for fees should be denied based on the Fogerty Factors, where Ms. Dorland's copyright claims were not objectively weak or frivolous, where there is no evidence of an improper motivation, and where there is no need for compensation or deterrence. Should the Court disagree, Ms. Larson's request remains improper, as (a) she claims attorney's fees for unsuccessful claims unrelated to the Copyright Act, (b) she claims attorney's fees for claims brought against other defendants (which were later dismissed), (c) she fails to present evidence that the attorney's fees are "reasonable," (d) she provides general timekeeping records with insufficient detail for the court to assess reasonableness, (e) the submitted time records are not broken down by task, including a single summary description of time spent over the course of days at a time, if not weeks and (f) she does not provide any documentation for alleged "costs".[3] All told, the submissions fail to provide adequate information or support for the request for fees.

The Copyright Act only provides for attorneys' fees attributable to defending against copyright and related claims. Stern v. Does, 978 F. Supp. 2d 1031, 1052–53 (C.D. Cal. 2011), aff'd sub nom. Stern v. Weinstein, 512 F. App'x 701 (9th Cir. 2013) citing The Traditional Cat Ass'n, Inc. v. Gilbreath, 340 F.3d 829, 833 (9th Cir.2003). For those claims only, and as this

---

[3] As one example, counsel claims $580.18 in postage costs. Where all pleadings are filed and served electronically, and the vast majority of discovery was also transmitted electronically, it is truly inexplicable how postage could have been utilized to such a degree. See ECF 221-2 at p. 20. Another category of expenses sought is "supplies and miscellaneous items" to the tune of $824.91. There is simply no basis to seek as "costs" an attorney's expenditures for office supplies, and certainly not with no explanation as to what type of "supplies" are being sought.

14

Court explained in the matter of Creative Photographers, Inc. v. FilterGrade, LLC, No. 1:22-CV-10985-IT, 2023 WL 4137296, at *2 (D. Mass. June 22, 2023):

> Under the Copyright Act, the court may also, at its discretion, award costs and/or reasonable attorney's fees to a prevailing party. 17 U.S.C. § 505. Courts take varying approaches to determining whether requested attorney's fees are reasonable, but the First Circuit prefers the lodestar approach, in which the court determines "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); T-Peg, Inc. v. Vermont Timber Works, Inc., 669 F.3d 59, 63 (1st Cir. 2012) (deviation from the lodestar method without adequate explanation of the fee award is abuse of discretion). In its calculation, the court may properly "segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours, and assign more realistic rates to time spent." Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). The party seeking an award of fees must prove the reasonableness of those fees through submission of appropriate evidence. See Hensley, 461 U.S. at 433.

Id. Further, detailed billing records are generally required to assist the Court in its determination of reasonable fees. See, e.g., Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1232 (9th Cir.1997) ("[T]he district court abused its discretion *1053 by not requiring ... original time records and billing statements.").

Here, a review of the affidavit and documents provided reflects that appropriate support for the fees request has not been submitted. See ECF Nos. 221-2, 221-3.  Counsel provides his hourly rate in his affidavit, but provides nothing to reflect that said rate is reasonable through citations to case law, comparisons to going rates in the geographic area, or otherwise.  See Motion (ECF No. 222), Affidavit (ECF No. 221-1).  While it may be the case that $500/hour is reasonable for highly skilled legal work, the time expended and claimed through the present Motion is not all for skilled legal work.  For example, on January 6-7 of 2021, counsel claims **15.3 hours** of "compilation and preparation of documents for production of documents; copying of documents in office."  See ECF No. 221-2 at p. 4.  Similar entries exist throughout the records.  See, e.g., id. at pp. 5, 8, 9, 11.

15

Of course, given the pro bono nature of counsel's representation of Ms. Larson, counsel cannot speak to the rate charged to Ms. Larson. Further, due to the pro bono nature of the representation, as well as counsel's time keeping methods, there are no billing statements to review, but rather illegible hand-written timecards, and counsel's own transcription of same. See ECF No. 221-2, 221-3.

The descriptions provided of time spent do not break down the counsel's time in any meaningful way. For example, for the time period of 4/24 – 5/15/2020 (approximately three weeks of time), counsel recorded 76.8 hours of work with a single block-style description of what was completed. See ECF 221-2, p. 2. See also, id., at p. 6 (block billing recording covering 5 days of work, with a single description). Other descriptions include work completed related to other, now-dismissed defendants (references to "litigation privilege" research regard arguments made by the now-dismissed Cohen Defendants and is unrelated to Ms. Dorland's claims or defenses). See, e.g., ECF No. 221-2, pp. 11, 12.[4] Further, the records make no effort to segregate time between the copyright claims and the tort claims, or to segregate time spent on various defendants' claims and defenses. See ECF 221-2, generally. There is no support for claims for costs whatsoever, although it is clear that Ms. Larson is seeking costs specific to the Cohen Defendants, such as deposition transcripts. Id. See also Erickson v. Blake, No. 3:11-CV-01129-SI, 2012 WL 1852954, at *2 (D. Or. May 21, 2012) ("[i]n addition, Defendant seeks $556.69 in costs. The prevailing party may recover the types of costs specified in 28 U.S.C. § 1920. See Fed.R.Civ.P. 54(d)(1). Some of the costs requested by the Defendant fall outside the

---

[4] It appears that counsel has unilaterally, and without explanation, provided some "discount" to time spent. See, e.g., ECF No. 221-2 at p. 2 (reflecting 75% of actual time expended). In some instances, this "discount" is 75%, in others, it is 50% or 60%. There is no explanation for these supposed "discounts", and no way to verify that they are accurate, due to the truly illegible nature of the handwritten contemporaneous time records.

16

categories enumerated in § 1920 and are therefore not allowable. These include costs for postage, express shipping, messenger services, legal research, and long distance calls.")

In summary, the submission of records of time and costs is woefully inadequate and fails to meet the court's requirements for requests for attorney's fees. It is simply not possible, based on what is submitted (and what appears to be all that exists) to determine whether fees were reasonable, nor to segregate time between successful and unsuccessful claims. Even if the Court were inclined to enter an award of fees, it would be untenable to do so based on the documents provided by Ms. Larson.

## Conclusion

Where Ms. Larson has failed to present evidence to the Court that she is entitled to an attorney's fees award according to the relevant Fogerty Factors, and has further failed to provide meaningful or discernable time records, which clearly include work on non-copyright claims, and work related to defendants who have since been dismissed (and against whom no copyright claim ever existed), her motion must be denied.

Respectfully submitted,

Dawn Dorland Perry

By Her Attorney,

PARTRIDGE SNOW & HAHN LLP


*/s/Suzanne M. Elovecky*
Suzanne M. Elovecky (BBO# 670047)
Hannah Y. Amadei (BBO# 710509)
30 Federal Street
Boston, MA  02110
(617) 292-7900
(617) 292-7910 FAX
selovecky@psh.com
hamadei@psh.com

DATED:      October 27, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October 2023, this document was filed and served through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Suzanne M. Elovecky*
Suzanne M. Elovecky (BBO # 670047)

4541707.1/30402-2